## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## DEFENDANT IBM'S OPPOSITION TO PLAINTIFF VIRTAMOVE, CORP.'S PARTIAL MOTION TO DISMISS (DKT. 65)

# TABLE OF CONTENTS

<u>Page</u>

I.     INTRODUCTION ........................................................................................... 1

II.    LEGAL STANDARD ..................................................................................... 2

III.   IBM HAS SUFFICIENTLY PLED INEQUITABLE CONDUCT BASED ON VIRTAMOVE'S FAILURE TO DISCLOSE CONTRADICTORY STATEMENTS MADE DURING THE EPO PROSECUTION.................................. 4

      A.    VirtaMove Failed To Disclose Contradictory Statements Made During the EPO Proceeding. ........................................................................ 4

      B.    The Omitted Statements From the EPO Proceeding Are Material, and IBM Has Adequately Pled That Their Omission Constitutes Inequitable Conduct. ........................................................................................... 9

IV.   CONCLUSION ............................................................................................. 12

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ATD Corp. v. Lydall, Inc.*,
 159 F.3d 534 (Fed. Cir. 1998)................................................................................10

*Church & Dwight Co. v. Abbott Lab'ys*,
 No. CIV. 05-2142 GEB JJH, 2008 WL 2565548 (D.N.J. June 24, 2008).............................10

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
 655 F.3d 1337 (Fed. Cir. 2011)...............................................................................3

*EIS, Inc. v. IntiHealth Ger GmbH*,
 No. CV 19-1227-GBW, 2023 WL 6799332 (D. Del. Aug. 23, 2023)...........................2, 9, 10

*Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
 No. 6:10-CV-379-LED-JDL, 2011 WL 13134896 (E.D. Tex. Dec. 13, 2011) .......................3

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
 No. 1:11-CV-871, 2013 WL 12178114 (S.D. Ohio Oct. 2, 2013) .......................................1, 9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009).............................................................................2, 3, 9

*iLife Techs. Inc. v. Body Media, Inc.*,
 No. CIV.A. 14-990, 2015 WL 1000193 (W.D. Pa. Mar. 6, 2015) ......................................12

*Inverness Med. Switzerland GmbH v. Acon Lab'ys, Inc.*,
 323 F. Supp. 2d 227 (D. Mass. 2004) ........................................................................9

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
 358 F.3d 898 (Fed. Cir. 2004)................................................................................11

*Security Profiling, LLC v. Trend Micro Am., Inc.*,
 No. 6:16-CV-01165-RWS-JDL, 2017 WL 5150682 (E.D. Tex. Mar. 21, 2017).....................3

*SynQor, Inc. v. Cisco Sys., Inc.*,
 No. 2:11-CV-54, 2012 WL 12892779 (E.D. Tex. Aug. 7, 2012)............................................3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
 649 F.3d 1276 (Fed. Cir. 2011) (en banc)..................................................... *passim*

*Therasense, Inc. v. Becton, Dickinson & Co.*,
 864 F. Supp. 2d 856 (N.D. Cal. 2012) ....................................................................1, 4, 9, 10

**Rules**

Rule 9(b) ...................................................................................................................................2

## I.     Introduction

Plaintiff VirtaMove, Corp.'s ("VirtaMove")[1] motion to dismiss should be denied because it does not address the actual relevant allegations made in IBM's counterclaim for inequitable conduct. Although it is undisputed that VirtaMove provided the Schaefer prior art reference to the United States Patent and Trademark Office (USPTO) during prosecution, the question is whether that disclosure alone was sufficient—it is not.  But while VirtaMove's motion focuses on whether the law required it to submit to the USPTO *the European Patent Office's (EPO) statements* regarding Schaefer, its motion is largely silent on whether the law required it to provide the USPTO with ***its own statements*** to the EPO.  In fact, the law expressly requires an applicant to disclose to the USPTO any contradictory or inconsistent statements that it made in connection with a foreign prosecution.  One of the landmark Federal Circuit cases on inequitable conduct (and one of the first cases cited in VirtaMove's own motion), *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc), addressed this issue.  In that case, the Federal Circuit found that briefs the patentee filed with the European Patent Office were material to its U.S. prosecutions, if the patentee made arguments to the two Patent Offices that were inconsistent such that the USPTO would not have granted the patent "but-for" the patentee's failure to disclose the briefs.  *Id*. at 1296. Indeed, on remand, the District Court found that the EPO briefs were "material" because "it is manifest that the withheld EPO briefs would have contradicted [patentee's] declaration and submission." *Therasense, Inc. v. Becton, Dickinson & Co*., 864 F. Supp. 2d 856, 863 (N.D. Cal. 2012).  Following *Therasense*, district courts routinely consider statements made to foreign Patent Offices material when they "flatly contradict" statements made to the USPTO.  *See, e.g., Ethicon*

---

[1]     VirtaMove was formerly known as Trigence Corp, which was the applicant named in the European Counterpart Application at issue here.

*Endo-Surgery, Inc. v. Covidien, Inc*., No. 1:11-CV-871, 2013 WL 12178114, at *4–5 (S.D. Ohio Oct. 2, 2013) (finding statements made to EPO were "material" because they "flatly contradict those found in the [Asserted] patent specification itself" and "Defendants' Amended Answer does not have to prove the elements of inequitable conduct, it simply must recite sufficient facts from which this Court may '*reasonably infer*' that the requisite elements of inequitable conduct are satisfied") (citation omitted) (emphasis in original); *EIS, Inc. v. IntiHealth Ger GmbH*, No. CV 19-1227-GBW, 2023 WL 6799332, at *6–7 (D. Del. Aug. 23, 2023) (finding arguments related to German Opposition Proceeding relevant and non-cumulative because they were inconsistent with patentee's conduct in front of USPTO).

Here, as set forth in detail in IBM's counterclaim, VirtaMove's correspondence with the European Patent Office was lengthy and material.  In response to three different rejections, VirtaMove repeatedly described the scope of its alleged invention and of the prior art in a way that is plainly inconsistent with what it would later represent to the USPTO.  As IBM alleges, had the USPTO been informed of these statements and positions, it likely would have rejected the U.S. application that led to the '814 patent.  Given the nature and substance of VirtaMove's statements to the EPO, IBM's counterclaim pleads sufficient facts to demonstrate the materiality of VirtaMove's correspondence with EPO, as well as VirtaMove's specific intent to withhold this correspondence to deceive the USPTO.  VirtaMove's partial motion to dismiss IBM's counterclaim for inequitable conduct therefore should be denied.

## II.    Legal Standard

Inequitable conduct requires "that the patentee acted with the specific intent to deceive the PTO."  *Therasense*, 649 F.3d at 1290.  "Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009) (citation omitted).  "[T]he pleading

must identify the specific who, what, when, where, and how of the material representation or omission committed before the PTO." *Id.* at 1328.

"Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense,* 649 F.3d at 1290 (internal quotations omitted). "[A]lthough knowledge and intent may be averred to generally, a pleading of inequitable conduct … must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328–29; *see also Security Profiling, LLC v. Trend Micro Am., Inc.*, No. 6:16-CV-01165-RWS-JDL, 2017 WL 5150682, at *3–4 (E.D. Tex. Mar. 21, 2017), *adopted*, 2017 WL 1950810 (E.D. Tex. May 11, 2017) (Schroeder, J.).  This pleading standard is distinct from the standard on the merits, where deceptive intent must be the "single most reasonable inference. . . ." *Exergen*, 575 F.3d at 1329 n.5 (internal quotation marks omitted) (citation omitted).  Indeed, courts in this District have recognized that—post-*Therasense*—deceptive intent need ***not*** be the "single most reasonable inference" from the pleadings at the motion to dismiss stage. *See, e.g., Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-379-LED-JDL, 2011 WL 13134896, at *3–4 (E.D. Tex. Dec. 13, 2011) (citing *Therasense*, 649 F.3d at 1276; *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1360 (Fed. Cir. 2011)); *SynQor, Inc. v. Cisco Sys., Inc.*, No. 2:11-CV-54, 2012 WL 12892779, at *7–8 (E.D. Tex. Aug. 7, 2012) (same).

Lastly, "as a general matter," a withheld information must be "but-for material," such that the USPTO would not have issued the patent had the information been disclosed.  *See Therasense*, 649 F.3d at 1296 ("[T]he district court should determine *whether the PTO would not have granted the patent but for Abbott's failure to disclose the EPO briefs*.") (emphasis added).

**III.     IBM Has Sufficiently Pled Inequitable Conduct Based on VirtaMove's Failure to Disclose Contradictory Statements Made During the EPO Prosecution.**

Federal Circuit law makes clear that applicants must disclose to the USPTO any material contradictory statements made by the applicants during foreign patent prosecutions.  As noted above, in *Therasense*, the Federal Circuit concluded that statements the patentee made to the EPO could have been material to its U.S. prosecutions, if the arguments the patentee made to the two Patent Offices were inconsistent such that the USPTO would not have issued the patent but for the patentee's failure to disclose the EPO briefs.  *Id.* at 1296.  Accordingly, after remanding the case, the District Court found the EPO briefs "material" because "it is manifest that the withheld EPO briefs would have contradicted [patentee's] declaration and submission." *Therasense,*  864 F. Supp. 2d at 863.  Here, IBM properly and sufficiently alleges in its counterclaim that VirtaMove's submissions to the USPTO included material omissions, because it failed to disclose substantially contradictory statements that it made to the EPO regarding the required unique identity of the claimed containers and the purported novelty of the claimed invention over the prior art. VirtaMove likewise failed to disclose the EPO's multiple rejections of the proposed claims, as well as the conclusions regarding the prior art on which the EPO based its rejections.  Indeed, but for VirtaMove's failure to disclose its statements to the EPO and the EPO's multiple rejections, the USPTO would not have issued the '814 patent, as claimed.  These two sets of omissions constitute sufficient and independent grounds for finding inequitable conduct.

**A.     VirtaMove Failed To Disclose Contradictory Statements Made During the EPO Proceeding.**

As set forth in detail in IBM's counterclaim complaint, VirtaMove was confronted during the EPO proceedings with multiple rejections in view of the Schaefer prior art reference, and VirtaMove introduced certain specific arguments and amendments to overcome those rejections. *See* IBM Answer to Complaint ¶¶ 104–11.  For example, in VirtaMove's August 18, 2006 reply to

the EPO's First Rejection, VirtaMove amended claim 1 to include the limitation "each container of application software has its own unique identity, and that the application software has an identity of a container that it is associated with." *Id*. ¶¶ 103–04.  The amended independent claim is shown below (with the amended language in bold and italicized):

> 1.  In a system having a plurality of servers **(10a, 10b)** with operating systems that differ, operating in disparate computing environments, wherein each server includes a processor **(13)** and an operating system including a kernel **(12)**, a set of associated local system files compatible with the processor **(13)**, a method of providing at least some of the servers in the system with secure, executable, applications **(21a-f)** related to a service, wherein the ***executable*** applications **(21a-21f)** may be executed in a secure environment, wherein the ***executable*** applications **(21a-21f)** each include an object executable by at least some of the different operating systems for performing a task related to the service, the method comprising the steps of:
> storing in memory accessible to at least some of the servers a plurality of secure containers **(20a-20c)** of application software **(21a-21f)**, each container **(20a-20c)** ***of application software having its own unique identity and*** comprising one or more of the executable applications **(21a-21f)** and a set of associated system files required to execute the one or more applications **(21a-21f)**, for use with a local kernel **(12)** residing permanently on one of the servers; wherein the set of associated system files are compatible with a local kernel **(12)** of at least some of the plurality of different operating systems, the containers **(20a-20c)** of application software excluding a kernel, and wherein some or all of the associated system files within a container stored in memory are utilized in place of the associated local system files resident on the server prior to said storing step ***so that executable applications can execute in conjunction with an operating system that said executable application is not originally intended to operate with and would otherwise not function properly, and wherein application software (21a-21f) has an identity of a container that it is associated with***.

*Id.* ¶ 103.

VirtaMove further argued to the EPO that "the present invention as defined by new claim 1 differs from the system and methods disclosed in [Schaefer]" including the added requirement of "a unique identifier identif[ying] each container and the application associated therewith." *Id.* ¶ 104.  VirtaMove asserted that "[n]o such unique identifier for both the container and the applications associated therewith is disclosed in [Schaefer]." *Id.*  VirtaMove further argued that

the claimed invention was novel—and thus patentable over Schaefer—because claim 1 "provides the possibility of running applications on different operating systems even if the respective application was not designed to run on a specific operating system originally. ***In order to achieve this***, ***the present invention*** uses containers, wherein executable applications are associated with containers and ***share a unique identity with these containers so that they may be attributed to the correct container without problems***." *Id.* ¶ 105 (emphasis added).  Notably, by amending claim 1 to include the "unique identity" requirement as a means of differentiating the claimed invention from Schaefer, VirtaMove effectively conceded that Schaefer disclosed at least one limitation of the original version of claim 1.  *See id.* ¶ 106 ("Applicants relied on this requirement in an attempt to distinguish Schaefer, arguing '[t]he ability for a secure container of application software to utilize its own unique network identity where that identity is independent of the OS is not defined in prior art nor in [Schaefer].'").

In its March 31, 2008 reply to the EPO's Second Rejection, VirtaMove likewise argued that amended "Claim 1 defines that each container of application software has its own unique identity, and that the application software has an identity of a container that it is associated with, which differs significantly from the feature identified in the above-referenced Official Communication." *Id.* ¶ 106.  VirtaMove stated that the "unique identity" for "each container of application software" and the "application software [having] an identity of a container that it is associated with" were "***important for the capability*** of the instant invention ***to make it possible*** for applications to be executed on an operating system for which they were not intended or programmed." *Id.* (emphasis added).  VirtaMove then doubled down on the argument made in its response to the EPO's First Rejection, and explained that "the invention defines that each container of application software, a unique application object, has its own unique identity" and that "[t]he ability for a secure container

6

of application software to utilize its own unique network identity where that identity is independent of the OS is not defined in prior art nor in [Schaefer]." *Id.* By VirtaMove's own admission, it necessarily follows that what makes claim 1 novel over the prior art—including Schaefer—is the prior art's failure to disclosure is "container of application software, a unique application object, *[having] its own unique identity*." *Id.*

Crucially, despite the alleged importance of this "unique identity" requirement both to provide an important functionality of the claimed invention and to distinguish the claimed invention over Schaefer, VirtaMove did not include a "unique identity" limitation in independent claim 1 of the U.S. patent application that led to the '814 patent. *Id.* ¶ 107. Moreover, while VirtaMove disclosed the Schaefer reference to the USPTO, it did not disclose any of the correspondences with the EPO where it stated its view of Schaefer's disclosure and argued that the "unique identity" requirement introduced in the EPO specifically made the claim patentable over Schaefer. *Id.*

VirtaMove similarly failed to disclose statements from the EPO related to the Schaefer reference's disclosure that contradicted VirtaMove's argument to the USPTO that the purported invention was novel over the prior art. In particular, the EPO explained in its Second Rejection that Schaefer renders obvious the use of multiple servers and "clearly discloses that applications which were written for a different version of the operating system are adapted in order to be executable on the current operating system version." *Id.* ¶ 114. In its Third Rejection, the EPO explained that Schaefer "was not limited to the Windows operating system," but rather that using it with Windows was merely representative, as Schaefer "discusses other operating systems as well." *Id.* In its Fourth Rejection, the EPO stated that Schaefer discloses a unique root file system for each container.[2] *Id.*

---

[2]   Indeed, in response to the EPO's First Rejection, VirtaMove itself conceded that Schaefer "provides an operating system guard, … which provides, for each application, more or less duplicates of the files of the operating system, and only those duplicates are modified. *Therefore,*

Although by the time of its Second Rejection (on November 23, 2007), the EPO had already found that Schaefer discloses that applications written for a different version of the operating system are adapted to be executable on the current operating system version, VirtaMove told the USPTO nearly 10 months later (on September 3, 2008) that the purported invention's ability to allow multiple application versions to execute on the same operating system represented "**a new and unique ability** for combining, deploying and managing applications." *Id.* ¶ 116 (emphasis added). In the USPTO's December 10, 2008 Notice of Allowance, the Examiner subsequently concluded that "[n]owhere in the prior art is found collectively the *italicized* claim elements (i.e., the various aspects of applications software not being sharable between the plurality of secure (and isolated) containers of application software, and unique root file systems different from an operating system's root file system, so as to allow for different versions of the same operating system running on the same system/server environment), at the **time** of the invention." *Id.* ¶ 113. Yet, by the date of that Notice of Allowance, the EPO had issued three separate rejections on the basis that Schaefer disclosed these very limitations. *See id.* ¶ 114. VirtaMove failed to disclose any of those rejections to the USPTO. *Id.* ¶ 117. Ultimately, VirtaMove's failure to disclose the abovementioned materials, including its statements to the EPO, its corresponding amendments, and the multiple EPO's rejections were material because but for VirtaMove's non-disclosures, the USPTO would not have granted the '814 patent as claimed. *Id.* ¶¶ 109-10; 117.

---

*the operating system itself remains unchanged, and each application sees its own modified system files.*" *Id.* ¶ 115. Yet, despite such concession, in determining the '814 patent was allowable, the USPTO Examiner evaluated the claims solely against the Forbes prior art reference, without analyzing Schaefer. *See generally id.* at Ex. 13 ('814 File History) at 240–75.

**B.    The Omitted Statements From the EPO Proceeding Are Material, and IBM Has Adequately Pled That Their Omission Constitutes Inequitable Conduct.**

IBM has adequately stated a claim for inequitable conduct based on the withheld arguments and statements discussed above—both the EPO's and its own—by pleading facts to plausibly show VirtaMove was aware of these materials, knew they were material, and made a deliberate decision to withhold them. *See Exergen*, 575 F.3d at 1328–29.

VirtaMove expressly stated—and therefore obviously knew—that the "unique identity" limitation it introduced was a key point of novelty that distinguished the claimed invention over Schaefer.  *See* Compl. ¶¶ 103-06.  Based on the EPO's multiple rejections, VirtaMove similarly was aware of the EPO's conclusion that Schaefer disclosed multiple limitations of the '814 patent. *See Id.* ¶¶ 113–16. VirtaMove nevertheless contends that it had no duty to disclose to the USPTO its "correspondence" with the EPO regarding Schaefer, because it disclosed the underlying Schaefer reference.  *See* Mot. at 2, 4–5.  On the contrary, as noted above, numerous courts have held that statements made to foreign patent offices can be material and their omission may provide the basis for an inequitable conduct claim if—as here—those statements are inconsistent with or contradict positions the applicant took before the USPTO.  *See Therasense*, 864 F. Supp. 2d at 856; *Ethicon*, 2013 WL 12178114, at *4–5; *EIS,* 2023 WL 6799332, at *6–7; *see also Inverness Med. Switzerland GmbH v. Acon Lab'ys, Inc.*, 323 F. Supp. 2d 227, 248–49 (D. Mass. 2004) (finding that "although four pieces of prior art relied upon by the EPO were before the patent examiner" and "the examiner knew of the existence of the foreign revocation proceedings," the revocation of the European counterpart in view of the combination of the four references was material because a reasonable examiner would have considered that finding).  Despite repeatedly arguing to the EPO that the "unique identity" requirement is a necessary functionality that distinguished the purported invention

over the prior art, VirtaMove took a contradictory position before the USPTO by failing to include the same requirement in the pending claims.

Unable to avoid this fact, VirtaMove seeks to excuse its failure to disclose its EPO arguments by asserting there can be no "but-for materiality" if the omitted materials were cumulative and contending its arguments distinguishing Schaefer were "inherently cumulative" of the Schaefer reference itself. *See* Mot. at 4–5. Again, however, as the case law makes clear, arguments, such as the ones VirtaMove failed to disclose, are material and non-cumulative because they are inconsistent with its conduct before the USPTO.[3] *See Therasense*, 864 F. Supp. 2d at 856; *EIS*, 2023 WL 6799332, at *6–7. As IBM alleges in its counterclaim, "if the statements to the EPO detailing what applicants actually believed they invented had been disclosed to the USPTO, the claims of the '814 Patent would not have issued as they presently exist." IBM Answer to Compl. ¶ 109. In particular, if VirtaMove had disclosed to the USPTO its amendments and arguments regarding the "unique identity" limitation, the USPTO would have recognized that VirtaMove was attempting to claim more in the United States than it actually believed it had

---

[3] VirtaMove's reliance on *ATD Corp.* and *Church & Dwight* is misplaced. While the Federal Circuit stated in *ATD Corp.* that "[t]he details of foreign prosecution are not an *additional category* of material information," *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998) (emphasis added), this does not mean that such material can never constitute material information. Indeed, *Therasense* rejected the proposition that details of foreign prosecution can never give rise to a duty to disclose. *Therasense,*, 864 F. Supp. 2d at 865 ("The evidence is clear and convincing that Dr. Sanghera and Attorney Pope knew the content of the EPO briefs and knew that the EPO briefs, standing alone, would so seriously undermine their submission that the examiner would have reverted to unpatentability."). *Church & Dwight* is likewise inapplicable because IBM's counterclaim does not allege that "the EPO's analysis or the results of [the] EPO's proceedings" renders the non-disclosure of the EPO's rejections material. *Church & Dwight Co. v. Abbott Lab'ys*, No. CIV. 05-2142 GEB JJH, 2008 WL 2565548, at *4-6 (D.N.J. June 24, 2008). Instead, consistent with the Court's ruling in *Therasense*, the counterclaims are premised not on what *the EPO* stated about Schaefer, but rather what *VirtaMove* stated *to the EPO* in distinguishing its claimed invention from Schaefer. IBM Answer to Compl. ¶¶ 104, 114.

invented, and it is unlikely that claim 1 of the '814 patent would have been allowed as issued, because it does not recite required functionality. *See id.* ¶¶ 109–10. Moreover, as the counterclaim similarly alleges, had VirtaMove disclosed the EPO's rejections based on Schaefer (as well as VirtaMove's related concessions regarding Schaefer's disclosure), the USPTO likely would have rejected the U.S. application on the grounds that "Schaefer discloses the very features that the USPTO Examiner found were not present in the prior art." *Id* ¶ 117. Indeed, the Complaint alleges that "[a]s further evidence of the materiality associated with the Schaefer reference, the counterpart Canadian patent application No. CA 2481613 was similarly rejected by the Canadian patent office over Schaefer." *Id*. It is therefore reasonable to infer that VirtaMove knew that disclosing the correspondences between itself and the EPO would have similarly led the USPTO to reject the application.

VirtaMove further contends that because it supposedly had no duty to disclose the omitted arguments and statements, it cannot plausibly have had an intent to deceive. *See* Mot. at 6. As discussed above, however, VirtaMove *did* have a duty to disclose those materials. IBM's counterclaim sufficiently alleges that VirtaMove made a deliberate decision to withhold those communications, stating "the material admissions set forth in the statements to the EPO were withheld from the USPTO with the intent to deceive the Examiner into allowing the claims of the '814 Patent to issue without the requirement that each container have its own unique identity, thus broadening the scope beyond what applicants had invented."[4] IBM Answer to Compl. ¶ 111; *see*

---

[4]   Because independent claim 1 of the '814 patent does not require each container to have its own unique identity—which VirtaMove unequivocally told the EPO is "important" to the "capability" of the present invention—VirtaMove unlawfully broadened the scope of the claimed invention. IBM Answer to Compl. ¶ 108. Notably, dependent claim 6, which ultimately depends from independent claim 1, expressly introduces a limitation "assigning a unique associated identity to each of the plurality of the containers, wherein the identity includes at least one of IP address, host name, and MAC address." *Id.*; *see also Liebel-Flarsheim Co. v. Medrad, Inc*., 358

*also id.* ¶ 118 (alleging "the material admissions set forth in the statements to the EPO were withheld from the USPTO with the intent to deceive the Examiner into allowing the claims of the '814 Patent to issue, despite certain elements being disclosed in the prior art").  Given the EPO's multiple rejections based on Schaefer, it is more than reasonable to infer that VirtaMove intentionally omitted those rejections and its EPO arguments overcoming them in order to avoid a similar rejection at the USPTO, in an effort to obtain allowability without the "unique identity" limitation.  *See, e.g.*, *iLife Techs. Inc. v. Body Media, Inc.*, No. CIV.A. 14-990, 2015 WL 1000193, at *7 (W.D. Pa. Mar. 6, 2015) ("Here, the EPO's identification of the references as invalidating prior art, and its rejection of foreign counterpart applications based upon that prior art, provides a basis to infer intent for purposes of assessing the sufficiency of Body Media's pleading.").

## IV.   Conclusion

For the reasons set forth above, IBM has stated a plausible claim of inequitable conduct based on VirtaMove's failure to disclose its arguments and statements from the EPO prosecution that are at odds with its conduct before the USPTO that led to the '814 patent's allowance.  IBM therefore respectfully asks the Court to deny VirtaMove's motion.[5]

---

F.3d 898, 910 (Fed. Cir. 2004) ("As this court has frequently stated, the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim.").

[5]   IBM reserves the right to move for leave to amend its Answer and Counterclaims based on the discovery of any additional evidence relating to inequitable conduct.

Dated:  July 19, 2024                    Respectfully submitted,

                                         /s/ Todd M. Friedman

                                         Todd M. Friedman (*pro hac vice*)
                                         KIRKLAND & ELLIS LLP
                                         601 Lexington Avenue
                                         New York, NY 10022
                                         Telephone: (212) 446-4800
                                         Facsimile: (212) 446-4900
                                         Email: todd.friedman@kirkland.com

                                         Brandon H. Brown
                                         State Bar No. 266347
                                         KIRKLAND & ELLIS LLP
                                         555 California Street
                                         San Francisco, CA 94104
                                         Telephone: (415) 439-1400
                                         Facsimile: (415) 439-1500
                                         Email: brandon.brown@kirkland.com


                                         *Of Counsel:*

                                         Andrea L. Fair
                                         Texas State Bar No. 24078488
                                         Email:  andrea@wsfirm.com
                                         WARD, SMITH & HILL, PLLC
                                         1507 Bill Owens Parkway
                                         Longview, TX 75604
                                         (903) 757-6400 (telephone)
                                         (903) 757-2323 (facsimile)

                                         *Attorneys for Defendant*
                                         *International Business Machines Corp.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on July 19, 2024.


*/s/ Todd M. Friedman*
Todd M. Friedman