# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § | **ORAL ARGUMENT REQUESTED** |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | **ORAL ARGUMENT REQUESTED** |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

## DEFENDANT IBM'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................................... 2

    A.    Litigation Status and Technology at Issue ................................................... 2

        1.    The Present Action and Related Cases ........................................... 2

        2.    The Accused Technology ................................................................ 3

    B.    The Relevant Evidence and Witnesses Are Concentrated in NDCA. .................. 3

        1.    Kubernetes ...................................................................................... 3

        2.    Docker ............................................................................................ 4

        3.    Prior Art ......................................................................................... 5

        4.    Counterclaims ................................................................................ 5

        5.    VirtaMove's Willfulness Allegations ............................................ 5

    C.    VirtaMove and the Asserted Patents' Named VirtaMove Inventors Do Not Have Any Connection with This District. ................................................. 6

    D.    IBM's Relevant Connections Are All Outside This District. ................................. 6

    E.    All Other Defendants in the Related Cases Have Strong Ties to NDCA and Have Moved or Are Expected to Move for Transfer to That District. ............. 7

III.  LEGAL STANDARD ............................................................................................. 8

IV.   ARGUMENT .......................................................................................................... 8

    A.    This Case Could Have Been Brought in NDCA. .......................................... 9

    B.    The Private Interest Factors Favor Transfer to NDCA. ............................... 9

        1.    The Availability of Compulsory Process Strongly Favors Transfer. .......... 9

        2.    The Relative Ease of Access to Sources of Proof Strongly Favors Transfer. ................................................................................ 10

        3.    The Cost of Attendance for Willing Witnesses Favors Transfer. ............. 11

4.     Judicial Economy Strongly Favors Transfer................................................ 13

C.     The Public Interest Factors Favor Transfer to NDCA. ......................................... 14

1.     Deciding Localized Interests at Home Strongly Favors Transfer............. 14

2.     Avoiding Conflict of Laws Issues Favors Transfer. ................................. 15

3.     Administrative Difficulties Flowing From Court Congestion ................. 15

4.     Familiarity With Governing Law............................................................. 15

**V.     CONCLUSION ...................................................................................................... 15**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
   No. 6:13-CV-362, 2014 WL 10748106 (W.D. Tex. June 11, 2014) ......................................14

*Aguilar-Ayala v. Ruiz*,
   973 F.2d 411 (5th Cir. 1992) ...................................................................................................9

*DataTreasury Corp. v. First Data Corp.*,
   243 F. Supp. 2d 591 (N.D. Tex. 2003) ...................................................................................15

*Deep Green Wireless LLC v. Ooma, Inc.*,
   No. 2:16-CV-0604-JRG-RSP, 2017 WL 679643 (E.D. Tex. Feb. 21, 2017) ........................12

*Farmobile LLC v. Farmers Edge Inc.*,
   No. 2:21-CV-0411, 2022 WL 2653893 (E.D. Tex. July 7, 2022) ..........................................10

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*,
   No. 2:17-CV-00100-JRG-RSP, 2017 WL 4076052 (E.D. Tex. Sept. 14, 2017)....................11

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)..........................................................................................11, 12

*In re Adobe Inc.*,
   823 F. App'x 929 (Fed. Cir. July 28, 2020)............................................................................16

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) ...........................................................................................9

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)..........................................................................................12, 15

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)...............................................................................................15

*In re HP Inc.*,
   No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ...........................................10, 15

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...............................................9, 10

*In re Juniper Networks*,
   14 F.4th 1313 (Fed. Cir. 2021) ...........................................................................................10, 14

iii

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) .................................................................................9

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...............................................................................8, 14

*In re Volkswagen of Am. Inc.*,
  545 F.3d 304 (5th Cir. 2008) ...............................................................................8, 11

*Intellectual Ventures I LLC v. Hewlett Packard Enterprise Co.*,
  No. 6:21-cv-0226-ADA, Dkt. 49 (W.D. Tex. Nov. 30, 2021) ...................................1, 4, 5, 13

*Jawbone Innovations, LLC v. Amazon.com, Inc.*,
  No. 2:21-CV-00435-JRG, Dkt. 60 (E.D. Tex. Sept. 21, 2022) ...............................................11

*Koss Corp. v. Plantronics, Inc.*,
  No. 6:20-CV-00663-ADA, 2021 WL 2075685 (W.D. Tex. May 20, 2021) .........................11

*Lifestyle Sols., Inc. v. Abbyson Living LLC*,
  No. 2:16-CV-01290-JRG-RSP, 2017 WL 5257006 (E.D. Tex. Nov. 10, 2017) ...................13

*Optimum Power Sols. LLC v. Apple, Inc.*,
  794 F. Supp. 2d 696 (E.D. Tex. 2011) .................................................................................9

*Red Hat, Inc. v. VirtaMove Corp.*,
  No. 3:24-CV-04740 (Aug. 5, 2024) .................................................................................14

*Uniloc USA, Inc. v. Apple Inc.*,
  No. 2:17-CV-00258-JRG, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017) ...................10, 16

*VirtaMove, Corp. v. Amazon.com, Inc.*,
  No. 7:24-cv-00030, Dkt. 1 (W.D. Tex. Jan. 26, 2024) .............................................................3

*VirtaMove, Corp. v. Google LLC*,
  No. 7:24-cv-00033, Dkt. 1 (W.D. Tex. Jan. 31, 2024) ...................................................3, 7, 13

*VirtaMove, Corp. v. Hewlett Packard Enterprise Co.*,
  No. 2:24-cv-00093-JRG, Dkt. 1 (E.D. Tex. Feb. 9, 2024) .......................................................3

*VoIP-Pal.com, Inc. v. Google LLC*,
  No. 6:21-CV-00667-ADA, 2022 WL 2068254 (W.D. Tex. June 8, 2022) ...........................12

*Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*,
  No. 2:10-CV-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012) ...................................12

*XY, LLC v. Trans Ova Genetics, LC*,
  No. W-16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ...............................11

**Statutes**

28 U.S.C. § 1400(b) ...........................................................................................................9

28 U.S.C. § 1404(a) ...................................................................................................1, 8, 16

## I.      INTRODUCTION

Pursuant to 28 U.S.C. § 1404(a), Defendant International Business Machines Corp. ("IBM") respectfully requests that the present action be transferred from this District to the Northern District of California ("NDCA"). Plaintiff VirtaMove Corp. ("VirtaMove") is a Canadian company that accuses IBM, a New York-based corporation with major offices in San Jose and San Francisco, CA, of infringing two patents via the IBM Kubernetes service. VirtaMove's infringement allegations are based on IBM Kubernetes' use of two third-party open source software products: the San Francisco-based Cloud Native Computing Foundation's ("CNCF") Kubernetes software and the Palo Alto, CA-based Docker, Inc.'s Docker software. As a court in the Western District of Texas ("WDTX") previously confirmed in a case involving the same accused technology, all the crucial third-party evidence and witnesses relevant to the creation of the underlying Kubernetes and Docker technology are located in NDCA, not in Texas. *See Intellectual Ventures I LLC v. Hewlett Packard Enterprise Co.*, No. 6:21-cv-0226-ADA, Dkt. 49 at 7–8 (W.D. Tex. Nov. 30, 2021) (granting motion to transfer to NDCA). The IBM team that contributed—and continues to contribute—to the development of this underlying open source technology is located in NDCA. That District also is home to the critical witnesses and evidence relevant to both the prior art that invalidates VirtaMove's asserted patents and the patents that IBM asserts in its counterclaims against VirtaMove. This action's center of gravity plainly is in NDCA.

In contrast, this case does not have any relevant connections with this District. No identified witnesses or relevant facilities are located in this District, and no inventive work on the asserted patents or development work on the accused product took place here. Nevertheless, not only has VirtaMove brought the present action in a venue that is untethered to the subject matter of the case and plainly inconvenient for the likely witnesses, but it has brought three related cases in Texas, as well. Specifically, VirtaMove has also sued Hewlett Packard Enterprise in this District

1

and Amazon and Google in WDTX, alleging infringement of the same asserted patents by the same underlying Kubernetes and Docker software. With these four closely related actions pending before three different judges in two separate jurisdictions in Texas, there is a substantial risk of conflicting rulings. Yet, because none of these cases has any meaningful connection to Texas, there is no basis to transfer them between the two Texas districts. Indeed, the defendants in the other three actions all have sought or are expected to seek transfer of their cases to NDCA, where the key evidence and witnesses reside—and where third-party Red Hat recently filed a declaratory judgment action against VirtaMove based on the same patents and the same accused technology at issue in the Texas cases. To help fix the morass created by VirtaMove's unjustified venue choices in these related cases, the present action should be transferred to NDCA, where it can be consolidated with the Red Hat case—and potentially with the other three cases VirtaMove has brought in Texas, if and when they are transferred to NDCA.

## II.    STATEMENT OF FACTS

### A.    Litigation Status and Technology at Issue

#### 1.    The Present Action and Related Cases

VirtaMove filed this suit on January 31, 2024, alleging infringement of U.S. Pat. Nos. 7,519,814 and 7,784,058 (the "Asserted Patents"). (Dkt. 1.) The Asserted Patents generally relate to software for the "containerization" of computer applications. (*See* Dkt. 1 ¶¶ 3, 11, 21; *id.*, Exs. 1, 3; Ex. B, Rosen Decl. ¶8.) VirtaMove accuses IBM of infringing the Asserted Patents via IBM Kubernetes. (*See* Dkt. 1 ¶¶ 12, 22.) IBM Kubernetes enables IBM customers to use open source software tools such as Docker and Kubernetes to perform the accused containerization. (Ex. B, Rosen Decl. ¶8; Ex. NN, VirtaMove 7/1/24 Corrected Infringement Contentions, at 9, 70.)

VirtaMove has also sued three other companies—Amazon and Google in WDTX and Hewlett Packard Enterprise ("HPE") in the Eastern District of Texas ("EDTX")—similarly

alleging that their services using Kubernetes and Docker software infringe the same Asserted Patents. *See VirtaMove, Corp. v. Amazon.com, Inc.*, No. 7:24-cv-00030, Dkt. 1 (W.D. Tex. Jan. 26, 2024) (the "*Amazon* Case"); *VirtaMove, Corp. v. Google LLC*, No. 7:24-cv-00033, Dkt. 1 (W.D. Tex. Jan. 31, 2024) (the "*Google* Case"); *VirtaMove, Corp. v. Hewlett Packard Enterprise Co.*, No. 2:24-cv-00093-JRG, Dkt. 1 (E.D. Tex. Feb. 9, 2024) (the "*HPE* Case"). On April 17, 2024, VirtaMove's case against IBM was consolidated for pretrial purposes with the case against HPE. *See id.*, Dkt. 32.

### 2.     The Accused Technology

VirtaMove does not accuse any functionality that is unique to IBM Kubernetes as the basis of its infringement allegations against IBM. Rather, VirtaMove's allegations focus solely on functionality provided by open source components of the IBM Kubernetes service, including the Kubernetes and Docker software. (*See* Dkt. 1 ¶¶ 12 (accusing "managed Kubernetes solution"), 22 (same); *id.*, Ex. 2 at 1 (asserting IBM Kubernetes "provides a fully managed container service for Docker (OCI) containers"); *id.*, Ex. 4 at 1 (same).) Indeed, VirtaMove relies for its description of the accused technology almost exclusively on IBM blogs and articles explaining how the third-party Kubernetes and Docker software work. (*See id.*, Exs. 2, 4.) It also points to documents published by Docker to allege infringement. (*See id.*, Ex. 4 at 7, 10, 13–16, 18, 22–23.)

### B.     The Relevant Evidence and Witnesses Are Concentrated in NDCA.

Nearly all relevant evidence and witnesses related to this case are located in NDCA. Virtually none are located in this District.

### 1.     Kubernetes

Kubernetes is an open source platform that allows users to deploy and manage containerized applications. (*See* Ex. B, Rosen Decl. ¶8; Ex. C.) Kubernetes is developed and

managed by CNCF, a sub-foundation of the Linux Foundation.[1] (Ex. D.) Both CNCF and the Linux Foundation have their principal place of business in NDCA. (*See* Ex. A, Bhatia Decl. ¶13; Ex. E; Ex. F.) CNCF's documents relating to the research, design, development, and operation of Kubernetes are located in NDCA. *See Intellectual Ventures*, No. 6:21-cv-0226-ADA, Dkt. 49 at 7–8.

The development of the technology underlying the Kubernetes software occurred in NDCA. The concept behind the accused container orchestration originated at Google—which is headquartered in Mountain View, CA, in NDCA—through its "Borg" Project. The principal engineers for that project were all located in NDCA. *See id.* Since July 2014, CNCF has provided the hosting and support, governance, community engagement, and training services for Kubernetes, although the product itself remains open source. *See id.*

Engineers in IBM's Open Technology Development team, located in San Jose, CA, contributed and continue to contribute to the open source software behind Kubernetes. (*See* Ex. A, Bhatia Decl. ¶¶ 6, 8.) Among the likely IBM witnesses involved in this work are engineers Nimesh Bhatia, and Srinivas Brahmaroutu, both located in NDCA. (*Id.*)

## 2. Docker

Docker is a software platform offered by Docker, Inc. that is used to develop and run applications in containers. (*See* Ex. B, Rosen Decl. ¶8; Ex. G.) Docker, Inc. has its principal place of business in Palo Alto, CA, in NDCA. (*See* Ex. A, Bhatia Decl. ¶15; Ex. H.) Hundreds of Docker engineers located in NDCA work on the Docker software. (*See* Ex. D; Ex. I.) The Docker software was developed in NDCA by engineers located in NDCA, and Docker's documents relating to the

---

[1]   CNCF also maintains the ContainerD product, which is the core of Docker's container technology. (*See* Amazon Ex. 30.)

research, design, and development of this software are located in NDCA. *See Intellectual Ventures*, No. 6:21-cv-0226-ADA, Dkt. 49 at 7–8. Witnesses having relevant knowledge of the Docker software's development currently live in California, with the majority in NDCA: co-founder Solomon Hykes (San Francisco) (*see* Ex. J; *Amazon* Case, Dkt. 32 at Exs. 26–27); former engineer Jessie Frazelle (San Francisco), who collaborated with IBM engineers on the project (*see* Ex. K); and Docker engineers Tonis Tiigi (San Francisco) and Derek McGowan (Sacramento) (*Amazon* Case, Dkt. 33 ¶ 4; *id.*, Dkt. 32 at Exs. 33–35).

### 3. Prior Art

Prior art systems relevant to this case include: "Thinstall," which was developed in NDCA by Jonathan Clark, who resides in NDCA, and was acquired by VMware, located in NDCA (*see* Ex. L; Ex. M); "FreeDSB," which was developed at the University of California–Berkeley in NDCA (*see* Ex. N); "Virtuozzo," which also was developed in NDCA (*see* Ex. O; Ex. P); and "Solaris," which was developed in NDCA by Sun Microsystems (*see Amazon* Case, Dkt. 32 at Exs. 2 at 2–3, 5; 3 at 1; 4 at 4–5).

### 4. Counterclaims

IBM asserts four patents against VirtaMove in its counterclaims for infringement. (*See* Dkt. 49 at Counterclaims ¶ 6.) Allan Havemose, who resides in California, is the sole inventor of three of those patents. (*See id.*, Exs. 2–4; Ex. Q). Two of the inventors of the other IBM-asserted patent are IBM engineers located in New York and India, respectively. (*See* Ex. R; Ex. S.) The remaining inventors are former IBM engineers who are not located in this District. (*See* Ex. T; Ex. U.)

### 5. VirtaMove's Willfulness Allegations

To allege pre-suit notice and knowledge of the Asserted Patents, VirtaMove claims that "representatives of IBM met with representatives of VirtaMove in 2016, 2017, 2018, and 2021 to discuss and demo AppZero technology."  (Dkt. 39 at 4.) As part of that allegation, VirtaMove

identifies Steven Astorino, Cynthia Soto, Joslyn Allen, and Tiffany Chamberlain (*see* Ex. V, VirtaMove Initial Disclosures), as well as Greg O'Connor and Mac Devine (*see* Dkt. 47 ¶ 10). None of those individuals are located in this District. (*See* Ex. W, Astorino LinkedIn; Ex. X, Soto LinkedIn; Ex. Y, Allen LinkedIn; Ex. Z, Chamberlain LinkedIn; Ex. AA, Devine LinkedIn.) Mr. O'Connor resides in San Francisco, CA. (*See* Ex. BB.)

### C. VirtaMove and the Asserted Patents' Named VirtaMove Inventors Do Not Have Any Connection with This District.

VirtaMove is a Canadian company incorporated in Ontario, Canada, and located in Kanata, Canada. (*See* Ex. CC; Ex. DD.) In the U.S., VirtaMove is incorporated in Delaware and has a small office in Andover, MA. (*See* Ex. CC; Ex. EE.) VirtaMove's board of directors has four members—with two located in Toronto, Canada, one in Waltham, MA, and one in Palo Alto, CA, in NDCA. (*See* Ex. DD.) VirtaMove appears to have ten employees, all located in Canada. (*See* Ex. FF.) VirtaMove has identified Nigel Stokes, Susan Cameron, Greg O'Connor, and Mark Woodward as having information related to the company and its business. (*See* Ex. V, VirtaMove Initial Disclosures.) None of those individuals is located in this District. (*See* Ex. GG; Ex. HH; Ex. II.)

The Asserted Patents' named inventors also lack any connection with this District. At the time the Asserted Patents were filed, Donn Rochette resided in Fenton, IA, and Paul O'Leary and Dean Huffman both resided in Kanata, Ontario. (*See id.*) Mssrs. O'Leary and Huffman currently reside in Ottawa, Canada. (*See* Ex. JJ; Ex. KK.) Mr. Rochette currently resides in Dayton, OH. (*See* Ex. LL.) The Asserted Patents' prosecuting attorneys reside in Florida. (*See* Ex. MM.)

### D. IBM's Relevant Connections Are All Outside This District.

 IBM is incorporated in the state of New York and has its headquarters in Armonk, NY. (*See* Ex. B, Rosen Decl. ¶ 7.) The vast majority of IBM work relevant to the development of the Kubernetes software was and is performed in NDCA. In particular, IBM's Silicon Valley Lab—

one of IBM's largest software development laboratories—is located in NDCA. (*See* Ex. A, Bhatia Decl. ¶¶ 5, 6.)  The Silicon Valley Lab contains IBM's Open Technology Development group, which was and is responsible for leading IBM's contributions to open source software projects, including Kubernetes. (*Id.*)[2]

IBM Kubernetes servers are located throughout the world, including in San Jose, CA. (*See* Ex. B, Rosen Decl. ¶ 11.) The IBM address identified in VirtaMove's complaint, 1700 Summit Avenue, Plano, TX 75074, is an old IBM server location, DAL07, that is no longer in use and was never used for IBM Kubernetes. (*See id.* ¶ 15; Dkt. 1 ¶ 9.) IBM has no facilities and few, if any, employees in this District involved in the initial development or current operation of IBM's Kubernetes service. (*See* Ex. B, Rosen Decl. ¶ 14.)

**E.      All Other Defendants in the Related Cases Have Strong Ties to NDCA and Have Moved or Are Expected to Move for Transfer to That District.**

As noted above, VirtaMove has also sued Amazon, Google, and HPE, alleging infringement of the same Asserted Patents based on the same underlying accused technology at issue in this case. Amazon's principal place of business is in Seattle, WA, but it maintains a significant presence in NDCA. (*See Amazon* Case, Dkt. 31 at 4–5, 9–11, 15; *id.*, Dkt. 34 ¶¶ 3–4; *id.*, Dkt. 35 ¶¶ 1, 3.) Amazon has filed a motion to transfer venue to NDCA, and its accused EMP product and ECS product both use Kubernetes and Docker. (*See id.*, Dkt. 31 at 3–4, 14–15; *id.*, Dkt. 33 ¶ 3.) Google's principal place of business is in Mountain View, CA, in NDCA. (*See Google* Case, Dkt. 27 ¶ 6.) The accused Google products—its Migrate to Containers service, Google Cloud

---

[2]     Although the IBM Kubernetes Service is maintained by engineers located in Minnesota, Austin, Texas, and North Carolina, (Ex. B, Rosen Decl. ¶ 13), IBM's Kubernetes Service is not software or an application, but a *service* provided by IBM to help customers manage their Kubernetes infrastructure.  *Id.* at ¶¶ 8-9.  The technology accused of infringement is the open source Kubernetes and Docker software, which was developed in NDCA with contributions from IBM employees in NDCA.  (Ex. A, Bhatia Decl. ¶ 7-11).

Run, and Google Kubernetes Engine—all are designed to work with Kubernetes and Docker. (*See id.*, Dkt. 27 ¶ 16; *id.*, Dkt. 40.) Google has filed motions to extend its deadline to file a motion to transfer venue. (*See id.*, Dkt. 38, 40.) HPE's principal place of business is in Spring, TX. (*See HPE Case*, Dkt. 40 ¶ 6.) The accused HPE product, Ezmeral Runtime Enterprise, is a container orchestration platform that uses Kubernetes and Docker. (*See id.* ¶ 14.)

## III.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), district courts can transfer civil actions for the convenience of the parties and witnesses and in the interest of justice. When evaluating a § 1404(a) transfer request, courts consider "whether a civil action 'might have been brought' in the destination venue" and, if so, whether the private and public interest factors favor transfer. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312 315 (5th Cir. 2008) ("*Volkswagen II*"). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

## IV.   ARGUMENT

This case could have been brought in NDCA, and all factors favor transferring this suit there.  Where, as here, "a case featur[es] most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

### A.      This Case Could Have Been Brought in NDCA.

IBM has offices and established places of business in NDCA, including in San Jose and San Francisco. (Ex. B, Rosen Decl. ¶¶ 8. 11) Those facilities—and the engineers employed at them—were heavily involved in developing the technology at issue in this case. (Ex. A, Bhatia Decl. ¶¶ 6-7, 9-11) IBM also maintains server locations for the accused IBM Kubernetes service in San Jose. (Ex. B, Rosen Decl. ¶¶ 11, 15.) Accordingly, proper jurisdiction and venue exist in the transferee forum, and this case could have been brought there. *See* 28 U.S.C. § 1400(b).

### B.      The Private Interest Factors Favor Transfer to NDCA.

#### 1.      The Availability of Compulsory Process Strongly Favors Transfer.

The availability of compulsory process to secure the attendance of third-party witnesses "will weigh heavily in favor of transfer when more third-party party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014); *see also Optimum Power Sols. LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011). The ability to compel live trial testimony is crucial for evaluating a witness's testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

VirtaMove accuses IBM Kubernetes' use of CNCF Kubernetes and Docker software. Testimony from third-party witnesses with knowledge of the accused Kubernetes and Docker software will be critical, with these witnesses inarguably providing "relevant and material information." *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) (reversing denial of transfer where "vast majority of witnesses to be analyzed under this factor would be subject to compulsory process" in transferee forum). The organizations providing the accused software are based in NDCA, and the witnesses that can provide information regarding its development and operation also reside in NDCA. Moreover, many of the inventors of the prior art that IBM contends invalidates the Asserted Patents are in NDCA, including—at a minimum—

Andrew Tucker, John Beck, Daniel Price, Steven Osman, and Dinesh Subhraveti. Mr. O'Connor—former CEO of VirtaMove predecessor AppZero and knowledgeable about VirtaMove's allegations of willful infringement—likewise resides in NDCA.

Significantly, courts in NDCA can compel the attendance at trial of all these relevant witnesses. Although IBM does not yet know how many of these important third-party witnesses will be unwilling to testify, the sheer number of relevant third-party witnesses suggests that at least some will decline to testify voluntarily.  In any event, any present uncertainty concerning the extent of the need for compulsory process "does not cut in favor of conducting this litigation in the [Eastern] District of Texas rather than in the Northern District of California." *In re Juniper Networks*, 14 F.4th 1313, 1321 (Fed. Cir. 2021).[3] This factor favors transfer where—as here—"the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue." *Hulu*, 2021 WL 3278194, at *4.

Importantly, there are *no* relevant third-party witnesses located in this District.  Because there are several third-party witnesses located in NDCA and no relevant witnesses at all in this district, this factor plainly favors transfer. *See Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 11553227, at *6–7 (E.D. Tex. Dec. 22, 2017) (transfer favored where "multiple third-party witnesses resid[ed] within the [NDCA]" and no "third-party witnesses resid[ed] within the [EDTX] with information 'material or relevant' to the case").

### 2.      The Relative Ease of Access to Sources of Proof Strongly Favors Transfer.

The ease of access to sources of proof is an important factor that remains relevant in the

---

[3]      *See also Farmobile LLC v. Farmers Edge Inc.*, No. 2:21-CV-0411, 2022 WL 2653893, at *3 (E.D. Tex. July 7, 2022) ("When there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor.") (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)).

digital age. *See Volkswagen II*, 545 F.3d at 316; *Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, No. 2:17-CV-00100-JRG-RSP, 2017 WL 4076052, at *3 (E.D. Tex. Sept. 14, 2017). In patent infringement cases, courts look at "the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017) (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).   As noted above, the accused underlying technology was researched, designed, developed, and tested by CNCF, Docker, and others—all located in NDCA. That the relevant "third-party documents . . . are located in NDCA further tips the scales in favor of transfer." *Koss Corp. v. Plantronics, Inc.*, No. 6:20-CV-00663-ADA, 2021 WL 2075685, at *3 (W.D. Tex. May 20, 2021). The IBM Open Technology Development team responsible for contributing to and maintaining the open source technology used in the accused products also is based in NDCA, at IBM's Silicon Valley Lab. Thus, any relevant records of its contributions are located in that District. (Ex. A, Bhatia Decl. ¶¶ 6, 8-10.)  Conversely, there is no indication that any relevant sources of proof are located in EDTX.  VirtaMove is a Canadian company with no presence in Texas, and IBM is a New York company with a significant presence in NDCA. While VirtaMove's pleading points to an IBM server location in Plano, TX, that location is no longer in use, and even when it was, it was not used for the accused IBM Kubernetes services. *See Jawbone Innovations, LLC v. Amazon.com, Inc.*, No. 2:21-CV-00435-JRG, Dkt. 60 at 5–7 (E.D. Tex. Sept. 21, 2022) (finding "evidence related to the Accused Products" in NDCA "weighs in favor of transfer," despite defendant's "facilities in this District" that have "no relevant evidence").

### 3.    The Cost of Attendance for Willing Witnesses Favors Transfer.

"The convenience of the witnesses is probably the single most important factor in [the] transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (internal citation omitted). "This factor appropriately considers the cost of attendance of all willing witnesses,

including both party and non-party witnesses," *VoIP-Pal.com, Inc. v. Google LLC*, No. 6:21-CV-00667-ADA, 2022 WL 2068254, at \*4 (W.D. Tex. June 8, 2022), although "it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Deep Green Wireless LLC v. Ooma, Inc.*, No. 2:16-CV-0604-JRG-RSP, 2017 WL 679643, at \*4 (E.D. Tex. Feb. 21, 2017).

Here, the convenience of multiple third-party witnesses favors transfer to NDCA. Although IBM does not yet know whether the relevant CNCF and Docker witnesses—who are all located in NDCA—will be willing to testify voluntarily, the "personal costs associated with being away from work, family, and community" for these witnesses "would be significantly minimized or avoided by transferring the case to Northern California." *In re Acer Am. Corp.*, 626 F.3d  at 1255 (quotations omitted); *see also Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 2:10-CV-160-JRG, 2012 WL 194370, at \*4 (E.D. Tex. Jan. 23, 2012) ("if there are more witnesses located in the transferee district who will be inconvenienced if the case is *not* transferred, the convenience of the witnesses weighs in favor of transfer"). The time and expense associated with traveling to this District as opposed to appearing in their home state makes it unlikely that most—or any—of the third-party witnesses located in California will be willing to travel to this District voluntarily. IBM intends to call Allan Havemose (inventor of three of the patents asserted in IBM's counterclaims), as well as Andrew Tucker, John Beck, Daniel Price, Steven Osman, and Dinesh Subhraveti (prior art inventors), to testify. All but one of these third-party witnesses is located in NDCA.[4]  Similarly, nearly all of the CNCF and Docker engineers who will be called to testify live and work in NDCA, including—at a minimum—Derek McGowan, Tonis Tiigi, Solomon Hykes, and Jessie Frazelle.

With respect to IBM and VirtaMove witnesses, this factor also favors transfer. IBM has no

---

[4]    Mr. Havemose is located in the Central District of California.

relevant witnesses in this District, but does have relevant witnesses in NDCA, including Nimesh Bhatia and Srinivas Brahmaroutu. No VirtaMove employees reside in this District.

### 4. Judicial Economy Strongly Favors Transfer.

The fourth private interest factor concerns whether the proposed transfer will promote "judicial economy," including by addressing "duplicative suits involving the same or similar issues that may create practical difficulties." *Lifestyle Sols., Inc. v. Abbyson Living LLC*, No. 2:16-CV-01290-JRG-RSP, 2017 WL 5257006, at *4 (E.D. Tex. Nov. 10, 2017).

As discussed above, VirtaMove has asserted the same patents against different defendants in four different lawsuits in EDTX and WDTX, alleging infringement based on the same underlying technology. IBM understands that the other defendants have sought or intend to seek transfer to NDCA, allowing for consolidation of the cases in that District, given the shared factual questions concerning the accused, NDCA-based technology. Amazon has already filed a motion to transfer, based extensively on its accused use of Docker technology. (*See Amazon* Case, Dkt. 31 at 1, 3–4, 11–12, 14–17.) Amazon's motion is before Judge Albright in WDTX, who has previously granted a motion to transfer on similar grounds. *See Intellectual Ventures*, No. 6:21-cv-0226-ADA, Dkt. 49 at 7–8. IBM understands Google and HPE also intend to seek transfer to NDCA, given the substantial amount of relevant evidence and witnesses located in that District. (*See Google* Case, Dkt. 38, 40.)

In addition, Red Hat, an independent subsidiary of IBM, recently filed suit in NDCA seeking a declaratory judgment of non-infringement of the Asserted Patents, because Red Hat's OpenShift product uses the same underlying Docker and Kubernetes technologies. (*See Red Hat, Inc. v. VirtaMove Corp.*, No. 3:24-CV-04740 (Aug. 5, 2024).) The Red Hat case in NDCA shares numerous factual and legal similarities to the cases VirtaMove has brought in Texas.

The judicial economy that would result from transfer to NDCA—followed by the potential

consolidation of the IBM, Google, Amazon, HPE, and Red Hat cases in that District—strongly favors transfer. Even if the other Texas cases are not transferred, VirtaMove's cases are pending before three separate courts in Texas, so any negative impact on judicial economy of IBM's case alone being transferred would be negligible at best (and easily offset by the judicial economy gained by the potential consolidation of the IBM and Red Hat cases in NDCA).

Notably, this Court can grant the present motion without having wasted any resources on becoming familiar with the relevant technology. Discovery has just begun, claim construction is months away, and the Court has not issued any substantive rulings. Indeed, as noted above, transferring this case to NDCA would promote judicial economy, as it would allow a single court to rule on factual issues related to the identical patents presently asserted in five separately filed cases, thereby avoiding the current potential for inconsistent rulings. *See Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. 6:13-CV-362, 2014 WL 10748106, at *6 (W.D. Tex. June 11, 2014).

## C. The Public Interest Factors Favor Transfer to NDCA.

### 1. Deciding Localized Interests at Home Strongly Favors Transfer.

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (internal quotation omitted). In assessing this factor, courts look to the "factual connection" that "the events that gave rise to a suit" have with the transferee and transferor venues. *Id.*; *see also Juniper*, 14 F.4th at 1320 (internal citations omitted). In patent cases, this factor favors transfer when the accused technology was developed in the transferee district. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336, 1338 (Fed. Cir. 2009).

As discussed above, the accused technology in IBM Kubernetes was developed in NDCA, by individuals and companies still located in NDCA—and the prior art invalidating the Asserted Patents also was invented by individuals and companies in NDCA. Because the accused features

were "developed and tested" predominantly in NDCA, and because this suit "calls into question the work and reputation of several individuals residing" in that District, NDCA's interest in this matter is "self-evident." *Id.* at 1336. Conversely, there is no local interest in having this matter decided in this District. VirtaMove has no connection to EDTX, the Asserted Patents were not developed or prosecuted here, the accused technology likewise was not developed here, and IBM has no relevant connection to this District. Although IBM previously maintained a server location in Plano, TX, that former location (again) had nothing to do with the subject matter of this case and does not alter the analysis here. *See In re HP Inc.*, 2018 WL 4692486, at *1–2.

### 2. Avoiding Conflict of Laws Issues Favors Transfer.

Five different cases are pending across four different courts in three districts, relating to the same patents and technology and involving substantially overlapping witnesses and questions of fact. Transfer to NDCA—where these five cases can be consolidated and litigated in the same district—serves the interest of justice by preventing inconsistent decisions. *See DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003).

### 3. Administrative Difficulties Flowing From Court Congestion

Although time to trial in NDCA may be slightly longer than in this District, when "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech,* 566 F.3d at 1347; *see also In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. July 28, 2020).

### 4. Familiarity With Governing Law

Both districts are familiar with federal patent law, making this factor neutral. *See Uniloc*, 2017 WL 11553227, at *10.

### V. CONCLUSION

For the reasons set forth above, transfer to NDCA is warranted under § 1404(a).

Dated:  August 21, 2024

Respectfully submitted,

*/s/ Brandon H. Brown*

Brandon H. Brown
California State Bar No. 266347
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: brandon.brown@kirkland.com

Todd M. Friedman (pro hac vice)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: todd.friedman@kirkland.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:     (903) 757-6400
Facsimile:     (903) 757-2323
Email:  andrea@wsfirm.com

*Attorneys for Defendant*
*International Business Machines Corp*

.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system pursuant to Local Rule CV-5(a)(3) on August 21, 2024.


*/s/ Brandon H. Brown*

Brandon H. Brown

## CERTIFICATE OF CONFERENCE

Counsel for IBM certifies that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). VirtaMove opposes the motion.  Following IBM's August 12, 2024 email requesting VirtaMove's position, Kyle Calhoun, counsel for IBM, and Peter Tong, counsel for VirtaMove, held telephonic conferences on August 12 and 16, 2024.  Mr. Tong first requested that IBM provide (1) a list of witnesses IBM is committed to calling at trial and the locations of each listed witness and (2) a list of evidence IBM intends to rely on at trial and the locations of any physical evidence.  IBM provided that information.  Then, at the August 16 conference, Mr. Tong stated that VirtaMove would most likely oppose IBM's request due to the relative convenience for VirtaMove's Canada-based witnesses to travel to EDTX over NDCA, but requested until August 20 to confer with his client (VirtaMove) on a potential offer that would resolve any opposition to this motion in exchange for IBM's agreement to limit itself to the prior art systems it had identified.  IBM agreed to give VirtaMove additional time to consider whether it was willing to make that offer.  VirtaMove, however, was not able to provide such an offer in its email to IBM on August 20, 2024.  As such, discussions have conclusively ended in an impasse.

Dated:  August 21, 2024

*/s/ Brandon H. Brown*     

Brandon H. Brown