**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | |
|       Plaintiff, | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
|    v. | § | |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | **JURY TRIAL DEMANDED** |
| COMPANY, | § | |
|       Defendant. | § | |
| | § | |
| | § | |

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | |
|       Plaintiff, | § | Case No. 2:24-CV-00064-JRG |
| | § | (Member Case) |
|    v. | § | |
| | § | |
| INTERNATIONAL BUSINESS | § | **JURY TRIAL DEMANDED** |
| MACHINES | § | |
| CORP., | § | |
|       Defendant. | § | |
| | § | |

**PLAINTIFF VIRTAMOVE, CORP.'S OPPOSITION TO
IBM CORP.'S MOTION TO TRANSFER (DKT. 78)**

## <u>TABLE OF CONTENTS</u>

I.    Introduction: IBM's Motion Omits East Coast Witnesses and Evidence and Cannot Meet the Updated Burden of Proof ................................................................................. 1

II.    Recent Fifth Circuit Changes to Transfer Law ................................................................. 2

      A.    Fifth Circuit Law Controls On Procedural Transfer, Not Federal Circuit Law ...... 2

      B.    The 2024 Updated Burden of Proof Articulated by *In re Clarke* .......................... 2

      C.    *TikTok* Restores the "Rigid" 100-Mile Rule ......................................................... 4

      D.    Local Interest looks to *Events* that *Give Rise to the Suit* ....................................... 4

III.    Procedural History, IBM's Delay, and Red Hat Case ........................................................ 5

IV.    Meet and Confer Efforts ................................................................................................... 5

V.    Argument: The Private Interest Factors Weigh Against Transfer ...................................... 6

      A.    Many Willing Witnesses Weigh Against Transfer, and IBM Has No Evidence That Third-Party West Coast Witnesses Are Willing ............................................. 6

      B.    The Compulsory Process Factor Weighs Against Transfer ................................... 8

      C.    Ease of Access to Evidence Weighs Against Transfer ......................................... 10

      D.    Other Practical Problems Weigh Against Transfer ............................................... 11

VI.    Argument: The Public Interest Factors Weigh Against Transfer ...................................... 12

      A.    The Local Interest Factor is Legally Neutral Because Infringement Occurs Nationwide, While Design and Development Are Irrelevant. ............................... 12

      B.    Conflict of Laws Weighs Against Transfer Because HPE Will Stay In EDTX ... 13

      C.    A 27.3 Month Faster Time to Trial Greatly Weighs Against Transfer ................. 14

      D.    Familiarity With Governing Law is Neutral ........................................................ 14

VII.    Argument: IBM Failed FINISH Meeting and Conferring ................................................ 14

VIII.    Conclusion ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Def. Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) ................................................................................ 3, 4, 13

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ................................................................................................ 12

*In re Apple Inc.*,
   52 F.4th 1360 (Fed. Cir. 2022) ................................................................................ 4

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ................................................................................ 4

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ........................................................................... *passim*

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ................................................................................ 2

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ........................................................................ 5, 12

*In re HP Inc.*,
   826 F. App'x 899 (Fed. Cir. 2020) ......................................................................... 12

*In re HP Inc.*,
   No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ................................. 8

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ............................................................................. 4, 13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .......................................................................... 2, 3, 4

*Microchip Tech. Inc. v. U.S. Philips Corp.*,
   367 F.3d 1350 (Fed. Cir. 2004) ................................................................................ 2

*Panduit Corp. v. All States Plastic Mfg. Co.*,
   744 F.2d 1564 (Fed. Cir. 1984) ................................................................................ 2

*Scramoge Tech. Ltd. v. Apple Inc.*,
   No. 6:21-CV-00620-ADA, 2022 WL 4595069 (W.D. Tex. Sept. 30, 2022) .............. 3

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) .................................................................................................. 2

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
   546 U.S. 394 (2006) .................................................................................................. 2

*Winner Int'l Royalty Corp v. Wang*,
   202 F.3d 1340 (Fed. Cir. 2000) ............................................................................. 2

**Statutes**

35 U.S.C. § 102 ......................................................................................................... 10

35 U.S.C. § 271 ........................................................................................................... 5

## I.       Introduction: IBM's Motion Omits East Coast Witnesses and Evidence and Cannot Meet the Updated Burden of Proof

IBM's Motion to Transfer (Dkt. 78)[1] relies on speculating about west coast witnesses while ignoring relevant witnesses and evidence that will come from the east coast. VirtaMove's employees and evidence are in eastern Canada.

The latest Fifth Circuit law requires IBM "clearly to demonstrate" that the NDCA is "clearly more convenient" by showing (1) "that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e. clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (emphasis original). During the meet-and-confer process, VirtaMove asked whether IBM would agree to be bound by the witnesses and evidence identified by IBM as closer to California (i.e., IBM could not present at trial any witness or evidence from sources closer to Texas if VirtaMove agreed to transfer the case). IBM explicitly wrote that it "reserves the right to update or modify" its witness and evidence list because the stage of this case was too early. Ex. 1 at 2.[2] This proves that IBM is unsure whether the witnesses, evidence, or prior art in IBM's motion will *actually* materialize at trial, and IBM is unsure if it might need to present other evidence/witnesses from locations closer to Texas. IBM has, at best, presented a speculative, cherry-picked list of witnesses/evidence for transfer-related purposes. IBM has not clearly demonstrated that a *significant* gain in convenience will result from transferring the case because IBM does not know who or what will be *actually* presented at trial. Under the latest law from 2024, the Court may deny IBM's motion for a *per se* failure to meet its burden of clearly demonstrating that the identified witnesses and evidence will *actually* materialize at trial.

---

[1] All references to consolidated HPE docket 2:24-cv-00093, unless "IBM Dkt." is noted.
[2] All ## exhibits filed herewith. *See* Decl. of Peter Tong, filed herewith.

## II.     Recent Fifth Circuit Changes to Transfer Law

### A.   Fifth Circuit Law Controls On Procedural Transfer, Not Federal Circuit Law

In 2023–2024, the Fifth Circuit reigned in the Federal Circuit's misapplications of transfer law. Transfer law is a procedural matter, so IBM's numerous Federal Circuit cases should be ignored when they conflict with controlling Fifth Circuit law.

"[M]otions to transfer, as a procedural matter, [are] governed by the law of the regional circuit in which [the district court] sits." *Winner Int'l Royalty Corp v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)); *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012) ("transfer motions are governed by regional circuit law"). "Where the regional circuit court has spoken on the subject, [the Federal Circuit] must apply the law as stated." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75 (Fed. Cir. 1984); *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1356 (Fed. Cir. 2004) ("We are obligated to follow regional circuit law. . . ."). Unless an issue "pertains uniquely to patent law," the Federal Circuit is "bound to apply the law of the [regional] Circuit." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 398 (2006).

### B.   The 2024 Updated Burden of Proof Articulated by *In re Clarke*

"[T]he plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the [venue] should be changed." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 n.10 (5th Cir. 2008). This is "a burden of proof question," and "it places a significant burden on the movant to show good cause for the transfer." *Id.* "It is the movant's burden—and the movant's alone—to 'adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.'" *Clarke*, 94 F.4th at 508.

"[T]he fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met by showing one forum is more

likely than not to be more convenient, but instead the party **must adduce evidence** and arguments **that clearly establish good cause** for transfer based on convenience and justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (emphasis added).

> Accordingly, to establish "good cause," a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.

*Clarke*, 98 F.4th at 508 (internal citations omitted, emphasis original).

In summary, IBM has the sole evidentiary burden of *clearly* proving that the NDCA will result in *significant* convenience gains that will *actually* materialize at trial. *Id.* IBM cannot meet this burden by speculating about or cherry-picking witnesses and evidence, without clearly knowing who or what will be presented at trial by both parties. For example, in the *Volkswagen* auto accident case, the universe of witnesses was easy to identify as the parties to the accident, the witnesses to the accident, and any doctors, mechanics, and experts the parties retain. *In re Volkswagen*, 545 F.3d at 317 ("Volkswagen has submitted a list of potential witnesses."). This burden of proof does not change for patent cases.

Pre-*Clarke* transfer motions would routinely involve inaccurate speculation. For example, in a pending case in this Court, Sony filed a transfer motion speculating about many potential witnesses and prior art early in a case, but as the case developed, it was revealed that 90.9% of Sony's predictions were inaccurate. Ex. 2 at 4–7. Other courts similarly expressed concern about such speculation. *See, e.g., Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00620-ADA, 2022 WL 4595069, at *1 (W.D. Tex. Sept. 30, 2022) ("Fact discovery will allow the parties to find the relevant evidence and witnesses that bear on the transfer factors rather than speculate about them.")

Although the Federal Circuit dismissed the lower court's concern about speculation (*In re Apple Inc.*, 52 F.4th 1360, 1362 (Fed. Cir. 2022)), the Sony case shows speculation is an ongoing problem, and inaccurate speculation is no longer permitted under *Clarke*.

### C. *TikTok* Restores the "Rigid" 100-Mile Rule

The Federal Circuit erroneously rejected a "rigid" application of the Fifth Circuit's 100-mile rule. *E.g., In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020) (finding that travel from NY to the WDTX or NDCA will requires the witness "to travel a significant distance no matter where they testify").   The Fifth Circuit's opinion *In re TikTok, Inc.* found that such analysis "ignores our 100-mile test." *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023). The rigid *Volkswagen* 100-mile rule is now restored: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen of Am., Inc.*, 545 F.3d at 317.

### D. Local Interest looks to *Events* that *Give Rise to the Suit*

*Clarke* restored the proper analysis of this factor by looking to the *events that give rise to a suit* (i.e. infringement), doing away with the "design and development" analysis articulated by the Federal Circuit.

> To identify localized interests properly, "[w]e look not to 'the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435).

*Clarke*, 94 F.4th at 511.  The only event giving rise to this suit is infringement, and when it occurs nationwide, it is a "completely diffuse interest."

A completely diffuse interest—that is, an interest that "could apply to virtually any judicial district or division in the United States"—cannot affect the local-interest determination. That's because the interest is the same in both the transferor and transferee venue. These completely diffuse local interests net out to zero—neither favoring nor disfavoring transfer.

*Id.* at 510. The design, research, and development of accused products do not give rise to infringement under 35 U.S.C. § 271 and are instead carved out as experimental use. Thus, *Clarke* restored the rule that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

## III.    Procedural History, IBM's Delay, and Red Hat Case

VirtaMove filed its complaint on January 31, 2024. IBM Dkt. 1. IBM was served on February 8, 2024. IBM Dkt. 10. IBM waited over half a year—until August 21, 2024—before filing its motion to transfer. Dkt. 78.

On August 5, 2024, shortly before IBM filed its venue motion, IBM's subsidiary Red Hat, Inc. filed a complaint for declaratory judgment of noninfringement in California. Ex. 3; Ex. 4 ¶ 6. Red Hat shares IBM's law firm, Kirkland and Ellis. Ex. 4 at 20. VirtaMove is moving to dismiss the Red Hat complaint for lack of a case or controversy and lack of jurisdiction.

## IV.    Meet and Confer Efforts

IBM unilaterally terminated the meet and confer process. Ex. 1 at 1. VirtaMove's and IBM's attorneys met to discuss the locations of evidence and witnesses and the possibility of stipulating to transfer. *Id.* at 1–4. IBM provided an initial list of proposed evidence and witnesses with the reservation that "IBM reserves the right to update or modify these disclosures based on

forthcoming discovery." *Id.* at 2. VirtaMove asked whether IBM would, as a condition of transfer, limit its evidence and witnesses at trial to those identified by IBM as closer to California than to Texas. The parties then conferred with their clients about the proposal. Such arrangement would have precluded IBM from using 1) any VirtaMove evidence/witnesses from Ontario, Canada at trial, and 2) any other prior art not listed in IBM's email. IBM's subsidiary Red Hat filed a declaratory judgement action in California, so VirtaMove wanted to ensure that if this case was transferred, IBM did not circumvent its stipulation by using its subsidiary Red Hat to call other witnesses at trial, use other prior art, or burden VirtaMove's witnesses with cross-continental travel if the case were transferred. VirtaMove also wanted to ensure that both Red Hat and IBM would not circumvent IBM's short list of CA-based prior art by filing an IPR petition based on publications from individuals closer to Texas. *Id.* at 1–2. VirtaMove asked IBM to confirm these details as a condition of stipulating to transfer. *Id.* IBM did not directly answer the questions and terminated the meet-and-confer process. *Id.* VirtaMove believes that IBM is unwilling to explicitly confirm that no east coast evidence/witnesses/prior art are needed at trial.

## V.     Argument: The Private Interest Factors Weigh Against Transfer

### A.  Many Willing Witnesses Weigh Against Transfer, and IBM Has No Evidence That Third-Party West Coast Witnesses Are Willing

IBM's transfer motion fails to consider many willing witnesses who will find trial in the EDTX more convenient. VirtaMove is a small company, so all five of its active employees (Nigel Stokes, Susan Cameron, Cedric Burgins, Steven Antoine, and Emanuel Sousa) likely have some relevant knowledge needed to defend against IBM's counterclaims at trial. Ex. 5 at 10-11. They all reside in Ontario, Canada in Ottawa, Toronto, or Arnprior, all of which are closer to Texas and find the EDTX more convenient under the 100-mile rule. *Id.*

Many of IBM's witnesses are also likely to find travel to Texas more convenient. Three inventors of IBM's counterclaim patents (Amit Paradkar in New York, Matthew Markley in Kansas, and Birgit Pfitzmann) are all closer to Texas, so the EDTX will be more convenient under the 100-mile rule. Dkts. 78-18, 78-20, 78-21.

Additionally, "[t]he individuals most responsible for IBM Kubernetes, including engineers, are predominantly located in Rochester, MN, Austin, TX, and Raleigh, NC." Dkt. 78-2 ¶ 13. These witnesses are closer to Texas and would also find it more convenient under the 100-mile rule, including Rosen. IBM attempts to distinguish their relevance because they worked on IBM's Kubernetes "Service," not the Kubernetes "software" that is accused of infringement. Dkt. 78 at 7 n.2.  IBM's argument falls flat because IBM's motion repeatedly admits that the IBM Kubernetes "Service" is itself accused of infringement. *E.g.,* Dkt. 78 at 1  ("accuses . . . the IBM Kubernetes service"), 3 ("allegations focus solely on . . . the IBM Kubernetes service, including the Kubernetes and Docker software"). Moreover, the service is relevant because it is used "to help customers manage their Kubernetes infrastructure," in other words, the service manages the software. Dkt. 78 at 7 n.2. These individuals in Rochester, Austin, and Raleigh who are "most responsible" for the accused technology are likely to be called at trial because they are "most responsible," for the technology, and they will find trial in Texas more convenient because it is closer under the 100-mile rule. Dkt. 78-2 ¶ 13.

Estes, a former IBM CTO, also revealed that a "handful" of members of an IBM research team in New York contributed to container technology. Ex. 6, 55:7–56:15. Someone from this research team may also be needed to testify about IBM's use of container technology, and because New York is closer to Texas, these IBM research team members will find trial in Texas more convenient under the 100-mile rule.

IBM employee Harvinder Saini is believed to be involved with a 2016 meeting between VirtaMove and IBM in Dallas, Texas. Ex. 7 at 1; Ex. 8. IBM may call Saini at trial if it disagrees with Nigel Stokes's testimony about what happened at this meeting. Saini lives in Pennsylvania, which is closer to Texas, and thus will find trial more convenient here. Ex. 8; Ex. 18.

The Court should not double-count CNCF witnesses, Docker witnesses, or prior art witnesses under this factor. "IBM does not yet know whether the relevant CNCF and Docker witnesses . . . will be willing to testify voluntarily," so IBM has failed to meet its burden of proving that they are unwilling. *Clarke*, 94 F.4th at 508; Dkt. 78 at 12. "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). If anything, the Court should address the CNCF and Docker witnesses under the unwilling witness/compulsory process factor, but the Court should not double count them here. *See* Dkt. 78 at 9–10 (IBM arguing these witnesses are unwilling).

## B. The Compulsory Process Factor Weighs Against Transfer

Holding trial in Texas allows more of the relevant third-party witnesses to attend trial.

Five former VirtaMove employees will only attend trial in Texas. Paul O'Leary and Dean Huffman are named inventors of the VirtaMove patents, and both reside in Kanata, Ontario, Canada. Exs. 9–10 ¶¶ 3–4. Chuck Colford was a former[3] CEO of VirtaMove, resides in Kanata, Canada. Ex. 11 ¶ 3–4. Mark Woodward is a former VirtaMove vice president of product engineering, and resides in Lyndhurst, Canada. Ex. 12 ¶¶ 2-3. Colford and Woodward may testify about the operation of VirtaMove's software, why its operation does not infringe IBM's patents, or the value of VirtaMove's software. Greg O'Connor is a former CEO of AppZero, and he lives

---

[3] For simplicity, "former" individuals worked for VirtaMove Corp. or its predecessors AppZero and/or Trigence.

in Massachusetts, not California. Ex. 13 ¶ 3–4. Greg's LinkedIn page identifies the location of Blue Yonder, not his primary residence. Dkt. 78-28. These five witnesses are only willing[4] to attend trial in Texas because it is closer and thus more convenient than the NDCA under the 100-mile rule. Exs. 9–13 ¶¶ 5–12.

Additionally two former VirtaMove employees, David Roth and Ernesto Benedito reside near Dallas, Texas and can only be compelled to attend trial in the EDTX.  Exs. 15, 16. Roth was a former CEO, and Benedito was a former Software Development Team Lead. *Id.* They may know about the value or operation of the accused VirtaMove product.

When assessing this factor, the Court should discount IBM's proposed third party witnesses because IBM has failed to clearly demonstrate that they will *actually* materialize at trial. IBM attempts to inflate the third-party witness count with 1) prior art witnesses and 2) CNCF/Docker witnesses. Dkt. 78 at 9–10.

IBM failed to prove that the CNCF Kubernetes development team or the Docker development team (Hykes, Frazelle, Tiigi, McGowan) have any relevant testimony at trial.  They may have independently developed Kubernetes or Docker, but independent development of open-source technology is not a defense to infringement. They may know how the open source version of Kubernetes or Docker operate, but IBM has not designated any of them as 30(b)(6) corporate representatives on the topic of the operation of *IBM's specific* implementation of Kubernetes or Docker.  For this testimony, IBM is far more likely to call one of its own engineers at trial.  For example, IBM relies on the declaration of Estes from the *Amazon* case (Dkt. 78 at 5, citing Ex. 16) for the relevance of Tiigi, but when deposed, Estes had no clue why Tiigi would be relevant at trial. Ex. 6 at 59–63. At trial, experts will opine on whether IBM's *specific* deployment of

---

[4] They cannot be compelled in California but are willing to travel to Texas. If the Court does not count them under this factor, then they should count under the willing witness factor.

Docker/Kubernetes infringes. IBM's evidence does not carry the burden of clearly demonstrating that Tiigi, Frazelle, McGowan, or Hykes will materialize at trial.

IBM is also unlikely to call the five prior art inventors (Tucker, Beck, Price, Osman, Subhraveti) at trial. Their publications and publicly released software may be prior art under 35 U.S.C. § 102, but their testimony today is not prior art. Thus, prior art inventors rarely materialize at trial—something this experienced Court has probably noticed.  Given the typical time pressures of a 1-week trial, IBM will likely, at most, only assert its single best prior art at trial and call one prior art inventor. But IBM's refusal to commit to limiting its prior art list for trial and IBM's explicit reservation of its right to assert other prior art, including other prior art with inventors closer to Texas, exacerbates IBM's failure to clearly prove that any of these prior art witnesses will *actually* materialize at trial. Ex. 1 at 2 (reserving right to modify prior art list—meaning IBM may assert prior art based on inventors from Texas). So, unless IBM's upcoming reply commits to limiting its prior art to those involving Tiigi, Frazelle, McGowan, or Hykes, the Court need not credit any prior art witness given the high burden of proof imposed by *In re Clarke*.

## C. Ease of Access to Evidence Weighs Against Transfer

VirtaMove has evidence in eastern Canada that can be more easily transported to the EDTX than to the NDCA. IBM counterclaimed that VirtaMove's software infringes IBM's patents. Relevant evidence about the accused VirtaMove products will be at VirtaMove's office in Kanata, Ontario, which is in eastern Canada and which is closer to Marshall, Texas than to the NDCA. Dkt. 78-29 at 1; *see* Ex. 9 ¶ 10. VirtaMove has physical evidence relevant to this case at its Kanata, Ontario, Canada office. Some of VirtaMove's patent files are kept in paper form in two heavy boxes. Ex. 17. VirtaMove's source code is access controlled and limited to its employees and to Mark Woodward in Ontario, Canada, except that a copy of the source code was made available for

inspection at the offices of Russ, August & Kabat and Kirkland & Ellis in Dallas, Texas in compliance with this Court's Docket Control Order.[5] Dkt. 54 at 6; Dkt. 60 ¶ 10.

IBM argues that Docker and Kubernetes evidence weigh against transfer, but IBM fails to identify any specific evidence that is harder to bring to the EDTX. Docker and Kubernetes are both publicly available open-source projects, meaning their history is documented on public repositories. *See* https://github.com/orgs/docker/repositories (Docker repository); https://github.com/orgs/kubernetes/repositories (Kubernetes repository). In the unlikely event that open-source Docker or Kubernetes code are needed at trial, an expert will be able to download the open-source code just as easily from either district.

IBM has the burden of proving that it has *clearly* demonstrated that it is *significantly* more convenient to hold trial in California based on the ease of access to evidence. *Clarke*, 94 F.4th 508. IBM offers no venue evidence about the quantity of trial evidence IBM has in California, nor does IBM allow the Court to meaningfully compare the difficulty of moving IBM's evidence to the EDTX against the difficulty of moving VirtaMove's evidence across the country from Ontario to California. The Court cannot actually assess whether or not trial in California will be *significantly* more convenient in terms of moving or accessing trial evidence, so this factor cannot weigh in favor of transfer. If anything, the Court should weigh this factor against transfer due to VirtaMove's evidence in eastern Canada.

### D. Other Practical Problems Weigh Against Transfer

VirtaMove's case asserting the same patents against HPE remains pending in this Court, and HPE has not yet moved to transfer. Thus, transferring only the IBM case will only burden another court in the NDCA with learning about the complex technology in VirtaMove's patents.

---

[5] VirtaMove offered to allow source code inspection elsewhere (e.g., in California) if IBM does not use this offering against VirtaMove for transfer motion purposes.

Keeping the IBM case allows this Court to conduct a joint *Markman* hearing for IBM and HPE, where the Court need only learn the patented technology once.  Similar efficiency arises at the summary judgement stage, where this Court will be familiar with VirtaMove's patents if motions for summary judgment of invalidity or noninfringement are filed in both the IBM and HPE cases. Thus, this factor weighs against transfer.

IBM argues that the Red Hat case creates efficiency, but "[t]he problem with this analysis is that "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) (ultimately citing *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). Additionally, the Red Hat case appears to have been filed solely to manipulate the transfer factors. VirtaMove will move to dismiss it for lack of a case or controversy, as well as lack of jurisdiction. *See* Ex. 4 (failing to properly plead jurisdiction, and failing to plead an actual case or controversy).

Amazon and Google moved to transfer, but their motions are just as weak as IBM's. Neither Amazon nor Google are likely to meet the updated burden of proof from *In re Clarke*.

## VI.   Argument: The Public Interest Factors Weigh Against Transfer

### A.  The Local Interest Factor is Legally Neutral Because Infringement Occurs Nationwide, While Design and Development Are Irrelevant.

The local interest factor is neutral because both IBM's products and VirtaMove's products are sold nationwide. *Hoffmann-La Roche*, 587 F.3d at 1338 ("[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue.")

Facts giving rise to willful infringement may have occurred in Dallas, Texas during meetings between VirtaMove and IBM representatives in 2016, where IBM learned about VirtaMove's technology. Ex. 7; Ex. 18.   This event creates local interest in Texas and

counterbalances any local interest that the NDCA may have. *See TikTok*, 85 F.4th at 365 (finding local interest in copyright case at the location of *misappropriation* in China).

As explained in Section II(D) above, the Fifth Circuit did away with the analysis of the Federal Circuit's erroneous "design and development" analysis because these neither "design" nor "development" are "events that gave rise to a suit" for patent infringement under 35 U.S.C. 271. *Clarke*, 94 F.4th at 511 (citing *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435))). IBM does not cite any Fifth Circuit case with "design and development" analysis. Dkt. 78 at 14–15. Thus, none of the design, development, or testing of Kubernetes or Docker are relevant to this factor unless IBM can show that these acts give rise to infringement under Section 271.

## B.  Conflict of Laws Weighs Against Transfer Because HPE Will Stay In EDTX[6]

Keeping the IBM and HPE cases together in the EDTX will reduce the likelihood of any conflict conflicting claim construction decisions.  HPE has not moved for transfer, so transferring the IBM case will certainly create more potential for conflicting court rulings. Thus, this factor weighs against transfer. There is no evidence that HPE will move to transfer, especially now that over eight months have passed since the HPE complaint was filed.

The Red Hat case in the NDCA lacks jurisdiction and lacks any case-or-controversy. This Red Hat filing shares Kirkland & Ellis as counsel, and it appears to be meritless and manufactured solely for the purpose of IBM's venue motion.  VirtaMove will move to dismiss it.[7]

The Amazon and Google cases are also unlikely to transfer. Like IBM's transfer motion, neither Amazon's or Google's transfer motions offer any degree of assurance that their identified witnesses and evidence are the only ones likely to materialize at trial.  Thus, Amazon's and

---

[6]  The argument here assumes, as IBM does, that the Court may double-count the same considerations as the "practical problems" factor. Otherwise, this factor should be neutral.

[7] VirtaMove will supplement the record once the Red Hat Motion to Dismiss is filed.

Google's transfer motions, like IBM's, will likely be denied for failure to prove that transfer will be *significantly* more convenient, and that the convenience will *actually* materialize at trial. For these reasons, none of the Red Hat, Amazon, or Google cases bear on this factor.

### C. A 27.3 Month Faster Time to Trial Greatly Weighs Against Transfer

This case is scheduled for trial on October 20, 2025. Dkt. 76 at 1. The case is proceeding to trial in line with historical statistics. *See* Ex. 19 at 6 (21.6 median months to civil trial). The NDCA has a 48.9 month median time to civil trial. *Id.* at 10. The 27.3 month gap greatly weighs against transfer. The Court should, as IBM cautions, weigh this as a single factor that does not outweigh all other factors.

### D. Familiarity With Governing Law is Neutral

VirtaMove agrees with IBM that this factor is neutral.

## VII.   ARGUMENT: IBM FAILED FINISH MEETING AND CONFERRING

IBM began the meet-and-confer process, but IBM unilaterally terminated the effort in violation of L.R. CV-7(h) before the parties reached an impasse. VirtaMove proposed stipulating to transfer if IBM agreed to only presented at trial evidence and witnesses from sources closer to California. Ex. 1. VirtaMove was initially skeptical but seriously considered the offer after realizing it would have significantly limited IBM's ability to use prior art and after realizing that the proposal would have effectively killed IBM's counterclaims because IBM would be unable to present evidence of infringement from VirtaMove's east coast office. VirtaMove followed up with IBM to close the possibility of loopholes, such as IBM using its subsidiary Red Hat or IPRs to circumvent the stipulation. *Id.* In response, IBM terminated the process. *Id.* at 1.

VirtaMove suspects that IBM unilaterally terminated the meet and confer effort after IBM realized that IBM would likely need to present evidence and witnesses from locations closer to

Texas.  The Court may deny the motion under L.R. 7(h) or interpret this as a *per se* failure of IBM to clearly demonstrate what evidence and witnesses will *actually* materialize at trial.

## VIII.   Conclusion

In conclusion, both the private and public factors weigh against transfer, and IBM has failed to carry the burden of clearly proving under *In re Clarke* that a marginal gain in convenience will be *significant* and *actually* materialize.  IBM's transfer motion should be denied.

| **Transfer Factor** | **Weight** |
|---|---|
| Convenience of Willing Witnesses | Against transfer due to east Canada VirtaMove witnesses and eastern US IBM witnesses |
| Ability to Compel Third-Party Witnesses | Against transfer due to 7 former VirtaMove witnesses |
| Ease of Access to Evidence | Against transfer to due to evidence in east Canada |
| Practical Problems (Judicial Economy) | Against transfer due to co-pending HPE case |
| Time to Trial | Heavily against transfer; 27 months faster in EDTX |
| Local Interest | Against transfer due to Dallas meeting, or neutral because infringing products are sold nationwide |
| Conflict of Laws | Against transfer due to HPE case, or otherwise neutral |
| Familiarity With Laws | Agreed neutral |

Dated: September 20, 2024          Respectfully submitted,


By: */s/ Qi (Peter) Tong*

Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
James A. Milkey (CA SBN 281283)
jmilkey@raklaw.com
Amy E. Hayden (CA SBN 287026)
ahayden@raklaw.com
Jacob Buczko (CA SBN 269408)

jbuczko@raklaw.com
James Tsuei (CA SBN 285530)
jtsuei@raklaw.com
Christian W. Conkle (CA SBN 306374)
cconkle@raklaw.com
Jonathan Ma (CA SBN 312773)
jma@raklaw.com
Daniel B. Kolko (CA SBN 341680)
dkolko@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

Qi (Peter) Tong (TX SBN 24119042)
**RUSS AUGUST & KABAT**
4925 Greenville Ave., Suite 200
Dallas, TX 75206
Telephone: (310) 826-7474

*Attorneys for Plaintiff VirtaMove, Corp.*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on September 20, 2024.

*/s/ Qi (Peter) Tong*
Qi (Peter) Tong