# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| VIRTAMOVE, CORP., <br><br> Plaintiff, <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE COMPANY, <br> Defendant. | Case No. 2:24-cv-00093-JRG <br><br> **(LEAD CASE)** <br><br> **JURY TRIAL DEMANDED** <br><br> ▆▆▆▆▆▆ |
| VIRTAMOVE, CORP., <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORP., <br><br> Defendant. | Case No. 2:24-cv-00064-JRG <br><br> (Member case) <br><br> **JURY TRIAL DEMANDED** |

## DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant Hewlett Packard Enterprise Company ("HPE") submits this Amended Answer, Affirmative Defenses, and Counterclaims in response to the Third Amended Complaint (Dkt. 101) filed by Plaintiff VirtaMove, Corp. ("VirtaMove" or "Plaintiff"). The numbered paragraphs below correspond to the numbered paragraphs in the Third Amended Complaint and constitute HPE's responsive admissions, denials, and allegations thereto. Except as otherwise expressly admitted below, HPE denies each and every allegation contained in the Third Amended Complaint. HPE expressly reserves the right to amend or supplement its Answer, Affirmative Defenses, and Counterclaims. HPE states as follows:

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT –**
**Page 1**

## ANSWER

1.     HPE admits that the Third Amended Complaint purports to bring an action alleging infringement of U.S. Patent Nos. 7,519,814 ("the '814 Patent") and 7,784,058 ("the '058 Patent"). HPE denies that it has infringed either patent.  HPE lacks knowledge or information sufficient to form a belief as to the remaining allegations of this paragraph, and therefore denies these allegations.

2.     HPE lacks knowledge and information sufficient to form a belief as to the allegations of this paragraph, and therefore denies these allegations.

3.     HPE lacks knowledge and information sufficient to form a belief as to the allegations of this paragraph, and therefore denies these allegations.

4.     HPE lacks knowledge and information sufficient to form a belief as to the allegations of this paragraph, and therefore denies these allegations.

5.     HPE lacks knowledge and information sufficient to form a belief as to the allegations of this paragraph, and therefore denies these allegations.

6.     HPE admits that HPE is a Delaware corporation with its principal place of business at 1701 E Mossy Oaks Road, Spring, Texas 77389.  HPE admits that it has a registered agent for service of process at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.  HPE further admits that it is registered to do business in the state of Texas and that its Texas SOS file number is 0802175187.

7.     To the extent the allegations in this paragraph set forth legal conclusions, no response is required.  HPE admits that the Third Amended Complaint purports to bring an action under the patent laws of the United States, Title 35 of the United States Code.  HPE admits that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  HPE denies any allegations regarding patent infringement contained in this paragraph.

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT** – **Page 2**

8.      To the extent the allegations in this paragraph set forth legal conclusions, no response is required.  For purposes of this action only, HPE admits that this Court has personal jurisdiction over HPE.  HPE denies all allegations of wrongdoing or infringement.  HPE denies the remaining allegations of this paragraph.

9.      To the extent the allegations in this paragraph set forth legal conclusions, no response is required.  To the extent that a response is required, HPE does not contest that it is subject to venue in this District for purposes of this litigation only.  HPE expressly reserves the right to request to seek transfer of venue under 28 U.S.C. § 1404(a) in this case and/or to contest venue in any other case as to any party.  HPE denies that it maintains a regular and established place of business at 6080 Tennyson Parkway, Suite 400, Plano, Texas 75204.

10.     HPE         admits         that         a         webpage         at https://web.archive.org/web/20121223171716/https://www.hpcloud.com/partner/appzero displays the image appearing in Paragraph 10 of the Third Amended Complaint.  HPE further admits that HP Co. separated into HPE and HP Inc. but denies that this separation occurred in 2014.  HPE lacks knowledge and information sufficient to form a belief as to the remaining allegations of this paragraph, and therefore denies these allegations.

11.     HPE denies all allegations of infringement and denies that "the technology advertised and marketed by AppZero and/or VirtaMove has made its way into the Accused Products of HPE," that "as a matter of basic due diligence, HPE would have learned that AppZero and/or VirtaMove marketed and/or advertised that their software AppZero (later rebranded as V-Migrate) was patented," or that "HPE would have been willfully blind to this fact."  HPE lacks knowledge and information sufficient to form a belief regarding the remaining allegations of this paragraph and therefore denies these allegations.

12.    HPE repeats and incorporates by reference each of the answers in paragraphs 1-11 as if fully set forth herein.

13.    HPE admits that the '814 Patent includes a cover page that lists a title of "System for Containerization of Application Sets" and indicates an issue date of April 14, 2009.  HPE further admits that what VirtaMove purports to be a copy of the '814 Patent is attached as Exhibit 1 to the Third Amended Complaint.  HPE lacks knowledge and information sufficient to form a belief as to the remaining allegations of this paragraph, and therefore denies these allegations.

14.    HPE admits that its website refers to certain Ezmeral Runtime Enterprise software. HPE denies all allegations of infringement contained in this paragraph.  HPE denies the remaining allegations of this paragraph.

15.    Denied.

16.    Denied.

17.    Denied.

18.    Denied.

19.    HPE denies all allegations of infringement contained in this paragraph.  HPE admits that what VirtaMove purports to be a claim chart is attached as Exhibit 2 to the Third Amended Complaint and denies any contentions included in Exhibit 2.  HPE admits that VirtaMove's operative infringement contentions intentionally asserted apparatus claim 31 of the '814 Patent, but that VirtaMove's Third Amended Complaint and VirtaMove's purported "Corrected Infringement Contentions" disclaim VirtaMove's assertion of any claims of the '814 Patent other than claims 1, 2, 6, 9, and 10.  HPE denies the remaining allegations of this paragraph.

20.    Denied.

21.    HPE denies all allegations of infringement contained in this paragraph.  HPE denies

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT** – **Page 4**

that VirtaMove is entitled to any relief from HPE, including monetary damages, interest, or costs, at least because the claims of the '814 Patent are not valid, enforceable, or infringed, directly or indirectly, by HPE.  HPE denies that VirtaMove is entitled to past damages under 35 U.S.C. § 287. HPE denies that VirtaMove has complied with the requirements of 35 U.S.C. § 287 at all relevant times.   HPE lacks knowledge and information sufficient to form a belief of the remaining statements in this paragraph, and therefore denies these allegations.

22.     HPE repeats and incorporates by reference each of the answers in paragraphs 1-21 as if fully set forth herein.

23.     HPE admits that the '058 Patent includes a cover page that lists a title of "Computing System Having User Mode Critical System Elements as Shared Libraries" and indicates an issue date of August 24, 2010.  HPE further admits that what VirtaMove purports to be a copy of the '058 Patent is attached as Exhibit 3 to the Third Amended Complaint.  HPE lacks knowledge and information sufficient to form a belief as to the remaining allegations of this paragraph, and therefore denies these allegations.

24.     HPE admits that its website refers to certain Ezmeral Runtime Enterprise software. HPE denies all allegations of infringement contained in this paragraph.  HPE denies the remaining allegations of this paragraph.

25.     Denied.

26.     Denied.

27.     Denied.

28.     HPE denies all allegations of infringement contained in this paragraph.  HPE admits that what VirtaMove purports to be a claim chart is attached as Exhibit 4 to the Third Amended Complaint and denies any contentions included in Exhibit 4.  HPE admits that VirtaMove's Third

Amended Complaint and its operative infringement contentions assert claims 1-4 and 18 of the '058 Patent, and that VirtaMove's Third Amended Complaint disclaims VirtaMove's assertion of any claims of the '058 Patent other than claims 1-4 and 18.  HPE denies the remaining allegations of this paragraph.

29.     Denied.

30.     HPE denies all allegations of infringement contained in this paragraph.  HPE denies that VirtaMove is entitled to any relief from HPE, including monetary damages, interest, or costs, at least because the claims of the '058 Patent are not valid, enforceable, or infringed, directly or indirectly, by HPE.  HPE denies that VirtaMove is entitled to past damages under 35 U.S.C. § 287. HPE denies that VirtaMove has complied with the requirements of 35 U.S.C. § 287 at all relevant times.   HPE lacks knowledge and information sufficient to form a belief of the remaining statements in this paragraph, and therefore denies these allegations.

31.     HPE denies that VirtaMove is entitled to any relief from HPE, much less the relief set forth in VirtaMove's Prayer for Relief, at least because the claims of the '814 and '058 Patents are not valid, enforceable, or infringed, directly or indirectly, by HPE.  HPE denies all of the allegations in subparagraphs a–g of VirtaMove's Prayer for Relief.

32.     HPE admits that the Third Amended Complaint sets forth a demand for a jury trial. HPE also requests a trial by jury on all issues so triable by right.

## ADDITIONAL DEFENSES

Without assuming any burden of production or proof that it would not otherwise be required to bear under applicable law, HPE asserts the following defenses.  HPE reserves the right to add additional defenses and/or supplement its defenses as its investigation continues and as discovery progresses.   HPE therefore reserves its right to amend this Answer, including by asserting additional defenses, as discovery progresses.

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT** – **Page 6**

## FIRST DEFENSE (Non-Infringement)

HPE does not infringe and has not infringed any valid and enforceable claim of U.S. Patent Nos. 7,519,814 ("the '814 Patent") and 7,784,058 ("the '058 Patent") (the "Asserted Patents") in any manner under 35 U.S.C. § 271, literally or under the doctrine of equivalents, directly or indirectly. HPE has not performed any act in violation of any rights belonging to VirtaMove.

## SECOND DEFENSE (Invalidity/Ineligibility)

On information and belief, each and every claim of the Asserted Patents is invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, *et seq.*, including but not limited to the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, 112, 116, 119, and/or 120.

## THIRD DEFENSE (Prosecution History Estoppel and Disclaimer)

VirtaMove's claims are barred, in whole or in part, by the doctrines of prosecution history estoppel and/or disclaimer.

## FOURTH DEFENSE (Failure to State a Claim)

The Third Amended Complaint fails to state a claim upon which relief can be granted. For example, VirtaMove's Third Amended Complaint fails to plead its claim for patent infringement with the specificity required under the *Iqbal/Twombly* pleading standard.

## FIFTH DEFENSE (Failure to Mark)

VirtaMove's recovery for alleged infringement of the Asserted Patents, if any, is limited to by 35 U.S.C. § 287 to those damages occurring only after notice of the alleged infringement or properly marking products.

## SIXTH DEFENSE (Attorneys' Fees and Costs)

VirtaMove cannot show this is an exceptional case, and therefore has no basis to recovery of attorneys' fees and cannot recover costs as a matter of law under 35 U.S.C. § 285, the Court's

inherent powers, or any other fee-shifting authority.

### SEVENTH DEFENSE (License, Implied License, Covenant Not to Sue, Exhaustion)

VirtaMove's claims are barred, in whole or in part, by the doctrines of license, implied license, covenant not to sue, and/or exhaustion. For example, VirtaMove's claims are barred to the extent that its allegations rely on the operation of any licensed product or service.

### EIGHTH DEFENSE (No Willful Infringement)

VirtaMove has failed to state a claim for willful infringement upon which relief can be granted. HPE has committed no wrongdoing or infringement, and VirtaMove cannot show any willful infringement occurred. VirtaMove is not entitled to enhanced damages under 35 U.S.C. § 284 or pursuant to the Court's inherent powers because VirtaMove has failed to meet, and cannot meet as a matter of law, the requirements for willful infringement.

### NINTH DEFENSE (No Equitable Entitlement to Injunctive Relief)

VirtaMove is not entitled to injunctive relief at least because any alleged injury to VirtaMove is not immediate or irreparable, and VirtaMove has an adequate remedy at law for its claims. VirtaMove will not be able to demonstrate (1) irreparable injury, (2) that damages are inadequate remedies, (3) that an equitable remedy is appropriate on balance, and (4) that the public interest would not be disserved by the issuance of an injunction.

### TENTH DEFENSE (Limitations on Damages)

VirtaMove's claims for relief are limited by 35 U.S.C. § 286 to the extent they seek any recovery for any alleged infringing acts that occurred more than six years before the filing of the Complaint. VirtaMove is further barred by 35 U.S.C. § 288 from recovering costs associated with its action.

### ELEVENTH DEFENSE (Other Equitable Defenses)

VirtaMove is barred, in whole or in part, under principles of equity, including prosecution

laches, acquiescence, waiver, estoppel, unclean hands, and/or any other equitable remedy.

**TWELFTH DEFENSE (Lack of Standing)**

To the extent that VirtaMove was not the sole and total owner of all substantial rights in any of the Asserted Patents as of the filing date of the Complaint, VirtaMove lacks standing to bring one or more claims in this lawsuit.

**THIRTEENTH DEFENSE (Ensnarement)**

All or some of VirtaMove's claims for infringement are barred by the doctrine of ensnarement.

**FOURTEENTH DEFENSE (Actions of Others)**

The claims made in the Third Amended Complaint are barred, in whole or in part, because HPE is not liable for the acts of others over whom it has no control.

**FIFTEENTH DEFENSE (Government Patent Use)**

VirtaMove's remedies are limited under 28 U.S.C. § 1498(a). HPE is not liable to the extent the Accused Instrumentalities were used or manufactured by or for the United States, and to the extent the Accused Instrumentalities were used or manufactured by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, according to at least 28 U.S.C. § 1498.

**SIXTEENTH DEFENSE (Inequitable Conduct)**

On information and belief, the '814 and '058 Patents, and each claim thereof, are unenforceable for failure to comply with one or more conditions and requirements for patentability set forth in Title 35 of the United States Code, including but not limited to the duty of disclosure, candor, and good faith. *See* Counts V-VII of HPE's Counterclaims below, which are incorporated herein by reference.

## RESERVATION OF RIGHTS

HPE has insufficient knowledge or information upon which to form a belief as to whether it may have yet unstated separate and additional defenses available.  HPE reserves the right to amend this Answer to add, delete, or modify defenses based upon legal theories, which may or will be divulged through clarification of VirtaMove's claims, through discovery, or through further legal analysis of VirtaMove's claims and positions in this litigation.

## **HPE'S COUNTERCLAIMS**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Hewlett Packard Enterprise Company ("HPE" or "Counter-Plaintiff") asserts the following Counterclaims against VirtaMove Corp. ("VirtaMove" or "Counter-Defendant").  Counter-Plaintiff reserves the right to further amend its Counterclaims to assert additional claims which may be revealed during discovery.

## BACKGROUND

1.      On February 9, 2024, VirtaMove filed suit against HPE, alleging infringement of U.S. Patent Nos. 7,519,814 ("the '814 Patent") and 7,784,058 ("the '058 Patent") (collectively, the "Asserted Patents") (Dkt. No. 1).

2.      In its Third Amended Complaint, VirtaMove purports to own all right, title, and interest in the Asserted Patents (the '814 Patent and the '058 Patent).

3.      HPE does not infringe, directly or indirectly, by inducement or by contribution, any valid, enforceable claim of the Asserted Patents.

4.      All claims of the Asserted Patents are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 116, 119, and/or 120.

5.    The Asserted Patents, and each claim thereof, are unenforceable for failure to comply with one or more conditions and requirements for patentability set forth in the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, the duty of disclosure, candor, and good faith and/or 35 U.S.C. §§ 101, 102, 103, 112, 116, 119, 120.

## PARTIES

6.    HPE is a Delaware corporation with its principal place of business at 1701 E Mossy Oaks Road, Spring, Texas 77389.

7.    In its Third Amended Complaint, VirtaMove states that it is a corporation organized and existing under the laws of Canada with its place of business at 110 Didsbury Road, M083, Ottawa, Ontario K2T 0C2.

## JURISDICTION AND VENUE

8.    This is an action for a declaration that each and every claim of the Asserted Patents is invalid, unenforceable, and not infringed pursuant to the Patent Laws of the United States, 35 U.S.C. § 101, *et seq.*  Accordingly, this Court has subject matter jurisdiction under the Federal Declaratory Judgment Act, Title 28, United States Code §§ 2201 and 2202, and under Title 28, United States Code §§ 1331 and 1338(a).

9.    An actual, substantial, and continuing controversy exists between Counter-Plaintiff HPE and Counter-Defendant VirtaMove with respect to which HPE requires a declaration of its rights by the Court.  Specifically, the controversy relates to the invalidity, unenforceability, and non-infringement of the Asserted Patents, and to Counter-Defendant VirtaMove's maintaining of a suit against Counter-Plaintiff HPE for alleged infringement of the Asserted Patents.

10.    Personal jurisdiction is proper for these Counterclaims because VirtaMove elected this forum for suit.  By filing the Complaint in this action, VirtaMove has subjected itself to the jurisdiction of this Court for purposes of these Counterclaims against it.

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT** – **Page 11**

11.    Subject to HPE's defenses and denials, venue is proper for Counter-Plaintiff HPE's counterclaims against Counter-Defendant VirtaMove under 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Counter-Defendant VirtaMove has submitted to the venue of this Court for this case only by filing its Complaint here.

**COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '814 PATENT**

12.    HPE realleges and incorporates by reference the allegations made in Paragraphs 1-11 as though fully set forth here.

13.    This is an action for declaratory judgment of non-infringement of the '814 Patent.

14.    HPE has not infringed and does not infringe any claim of the '814 Patent literally, directly, indirectly, willfully, or under the doctrine of equivalents.

15.    In its Third Amended Complaint, VirtaMove accuses HPE of infringing the '814 Patent.  Absent a declaration that HPE does not infringe the '814 Patent, VirtaMove will continue to wrongfully assert the '814 Patent against HPE and thereby cause injury to HPE.

16.    A substantial, immediate, and real controversy therefore exists, within the meaning of 28 U.S.C. §§ 2201 and 2202, between HPE and VirtaMove as to whether HPE has infringed or infringes any claim of the '814 Patent.

17.    Based on the foregoing, HPE respectfully requests a declaration from the Court that HPE does not infringe any claim of the '814 Patent.

**COUNT II – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '058 PATENT**

18.    HPE realleges and incorporates by reference the allegations made in Paragraphs 1-17 as though fully set forth here.

19.    This is an action for declaratory judgment of non-infringement of the '058 Patent.

20.     HPE has not infringed and does not infringe any claim of the '058 Patent literally, directly, indirectly, willfully, or under the doctrine of equivalents.

21.     In its Third Amended Complaint, VirtaMove accuses HPE of infringing the '058 Patent.  Absent a declaration that HPE does not infringe the '058 Patent, VirtaMove will continue to wrongfully assert the '058 Patent against HPE and thereby cause injury to HPE.

22.     A substantial, immediate, and real controversy therefore exists, within the meaning of 28 U.S.C. §§ 2201 and 2202, between HPE and VirtaMove as to whether HPE has infringed or infringes any claim of the '058 Patent.

23.     Based on the foregoing, HPE respectfully requests a declaration from the Court that HPE does not infringe any claim of the '058 Patent.

### COUNT III – DECLARATORY JUDGMENT OF INVALIDITY OF THE '814 PATENT

24.     HPE realleges and incorporates by reference the allegations made in Paragraphs 1-23 as though fully set forth here.

25.     This is an action for declaratory judgment of invalidity of any and all claims of the '814 Patent.

26.     The '814 Patent, and each claim thereof, is invalid for failure to comply with one or more of the conditions and requirements for patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, 119, and/or 120.

27.     In its Third Amended Complaint, VirtaMove accuses HPE of infringing the '814 Patent.  Absent a declaration that any and all claims of the '814 Patent are invalid, VirtaMove will continue to wrongfully assert the '814 Patent against HPE and thereby cause injury to HPE.

28.     A substantial, immediate, and real controversy therefore exists, within the meaning of 28 U.S.C. §§ 2201 and 2202, between HPE and VirtaMove as to whether there exists any valid claim of the '814 Patent.

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT** – **Page 13**

29.     Based on the foregoing, HPE respectfully requests a declaration from the Court that any and all claims of the '814 Patent are invalid.

## COUNT IV – DECLARATORY JUDGMENT OF INVALIDITY OF THE '058 PATENT

30.     HPE realleges and incorporates by reference the allegations made in Paragraphs 1-29 as though fully set forth here.

31.     This is an action for declaratory judgment of invalidity of any and all claims of the '058 Patent.

32.     The '058 Patent, and each claim thereof, is invalid for failure to comply with one or more of the conditions and requirements for patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 120s.

33.     In its Third Amended Complaint, VirtaMove accuses HPE of infringing the '058 Patent.  Absent a declaration that any and all claims of the '058 Patent are invalid, VirtaMove will continue to wrongfully assert the '058 Patent against HPE and thereby cause injury to HPE.

34.     A substantial, immediate, and real controversy therefore exists, within the meaning of 28 U.S.C. §§ 2201 and 2202, between HPE and VirtaMove as to whether there exists any valid claim of the '058 Patent.

35.     Based on the foregoing, HPE respectfully requests a declaration from the Court that any and all claims of the '058 Patent are invalid.

## COUNT V – DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 7,784,058 BASED ON INEQUITABLE CONDUCT

36.     HPE realleges Paragraphs 1-35 as if fully set forth herein.  HPE's investigation is ongoing, and it therefore reserves the right to seek leave to further amend its Answer to include additional facts or bases of inequitable conduct as they become known.

37.    The '058 Patent is unenforceable for inequitable conduct due to failure by the applicants of the '058 Patent to disclose material prior art to the USPTO.

38.    The withholding of material information with the intent to deceive the USPTO is a violation of the duty of disclosure under 37 C.F.R. § 1.56(a).

39.    Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith to disclose to the USPTO all information known to that individual to be material to patentability.  37 C.F.R. § 1.56(a).

40.    The individuals substantively involved with the filing and prosecution of the '058 Patent owed duties of disclosure under 37 C.F.R. § 1.56 and include, for example, at least Applicants—*i.e.*, named inventors Donn Rochette, Paul O'Leary, and Dean Huffman—as well as others substantively involved with the prosecution, including Charles E. Wands and Christopher F. Regan.  A violation of this duty of disclosure can result in a finding of inequitable conduct. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (*en banc*). "[I]nequitable conduct regarding any single claim renders the entire patent unenforceable."  *Id.* at 1288.

**Material Omissions Concerning Prior Art Reference Solaris 10**

41.    During prosecution of the '058 Patent, at least the named inventors, including Mr. Rochette, Mr. O'Leary, and Mr. Huffman, the named assignee, Trigence Corp., and others substantively involved with the prosecution, including prosecuting attorneys Charles E. Wands and Christopher F. Regan (and any other prosecution attorney or agent for the '058 Patent at Allen, Dyer, Doppelt and Gilchrist, P.A.) ("Applicants") violated 37 C.F.R. § 1.56 by failing to disclose prior art reference Solaris 10 to the USPTO, including papers, publications, and other materials known to at least the named inventors, Trigence Corp., and the prosecuting attorneys.  Applicants withheld the material, noncumulative prior art with the specific intent to deceive the USPTO.  The

'058 Patent claims include limitations found in the withheld prior art and not found by the examiner in any other cited art. Those claims would not have issued but for the failure to disclose Solaris Zones to the USPTO.

42.      Solaris Zones is a feature within the Solaris 10 operating system ("OS") for implementing operating system-level virtualization technology.  More specifically, the Solaris Zones feature creates isolated containers for running software applications. *See generally* Exhibit 1 ('058 Patent Invalidity Chart for Solaris Zones).

43.      Solaris Zones was publicly available at least by February 2004. *Id.* at 1.

44.       Solaris 10 (including its feature Solaris Zones) is prior art to the claims of the '058 Patent.  And the inventors of the '058 Patent were aware that Solaris 10 with the Zones feature predates the '058 Patent. *See, e.g.*, Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 27:3–27:21 (stating that "Solaris predates the two patents ['814 and '058]" and acknowledging awareness of Solaris Zones "before [he] filed the applications that led to these two patents"), 33:18–37:22 (acknowledging access to working versions of Solaris Zones at least by the time of the filing of the provisional applications leading to the asserted patents), 50:21–51:5 (having discussions with Sun Microsystems concerning Solaris Zones), 85:17–22 (learning about Solaris Zones capabilities through "[s]itting down in front of a Solaris operating system and using it. Reading the documentations and using the capabilities and testing it").

45.      As detailed in HPE's invalidity chart concerning Solaris 10 and its Solaris Zones feature (incorporated herein by reference), and as further confirmed by the evidence and testimony referenced below, this prior art is material to the patentability of at least Claims 1, 2, 3, 4, and 18 of the '058 Patent in that it discloses the limitations of those claims.  Exhibit 1 ('058 Patent Invalidity Chart for Solaris Zones).

46.     During the prosecution of the of the '058 Patent, Applicants argued that the prior art relied on by the examiner in previously rejecting the '058 Patent application did not disclose the claim limitations requiring "a shared library having critical system elements (SLCSEs) stored therein for use by the plurality of software applications in user mode and wherein an instance of an SLCSE provided to one or more of the plurality of software applications from the shared library is run in a context of the one or more of the plurality of software applications without being shared with other plurality of software applications and where one or more of the plurality of software applications running under the operating system have use of a unique instance of a corresponding critical system element for performing essentially the same function," "some of the SLCSEs stored in the shared library being functional replicas of OSCSEs," and "when one of the SLCSEs is accessed by one or more of the plurality of software applications, it forms a part of the one or more of the plurality of software applications."  Exhibit 3 ('058 Patent File History) at 24-47 (Jan. 15, 2010 Applicant Arguments/Remarks Made in an Amendment).[1]  Applicants argued that in contrast to the teachings of prior art, "storing some of the SLSCEs in the shared library as functional replicas of OSCSEs" "is particularly advantageous in multiple operating system environments" and that their invention "advantageously provides the ability to create unique environments for an application to execute within or by the SLCSEs."  *Id.* at 34.

47.     Despite these arguments to the USPTO, Applicants, including at least named inventors Mr. Rochette and Mr. O'Leary, the assignee, Trigence Corp., and the prosecuting attorneys, were aware that the Solaris technology (including Solaris 10 and its Solaris Zones feature) disclosed the claimed invention.  Despite this awareness of the Solaris technology and its materiality to the

---

[1] All citations to file histories refer to PDF page numbers.

subject matter of the claimed invention, they intentionally withheld information about that technology during prosecution of the '058 Patent.

48.    Indeed, Mr. Rochette admitted that Solaris 10 practiced the requirements of the '058 Patent, including the claim limitations Applicants argued were not disclosed by the prior art.

49.    For example, Mr. Rochette admitted that Solaris Zones "had support for shared libraries" and that he had been "aware of Solaris's support for shared libraries before [he] filed" the application leading to the '058 Patent.  Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 26:13–16; 27:3–20.  Mr. Rochette also admitted that Solaris Zones allowed developers to move functionality into a shared library from an operating system's kernel, and that such a capability "had been present in Solaris since its first release of its origin."  *Id.* at 38:3–41:6; 63:2–8; 83:22–88:8.  Mr. Rochette also admitted that multiple Zones could make use of the same library, but that Zones provided a "separate container, a separate security environment" in which the application could "have its own version of files" or "a separate instance of files,"  *Id.* at 37:1–14; 38:3–41:6; 76:13–15; 83:22–88:8.  Therefore, on information and belief, Applicants were aware that Solaris 10 disclosed the '058 Patent claim limitations of "a shared library having critical system elements (SLCSEs) stored therein for use by the plurality of software applications in user mode and wherein an instance of an SLCSE provided to one or more of the plurality of software applications from the shared library is run in a context of the one or more of the plurality of software applications without being shared with other plurality of software applications and where one or more of the plurality of software applications running under the operating system have use of a unique instance of a corresponding critical system element for performing essentially the same function" and that "when one of the SLCSEs is accessed by one or more of the plurality of software applications, it

forms a part of the one or more of the plurality of software applications."  Exhibit 3 ('058 Patent File History) at 24-47 (Jan. 15, 2010 Applicant Arguments/Remarks Made in an Amendment).

50.     As another example, Applicants were aware that application or system files could be copied into a container in Solaris Zones and that it would be possible "to still have the original version [of the files] outside of the container" after making copies.  Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 83:18–84:21.  Therefore, on information and belief, Applicants were aware that Solaris 10 disclosed the '058 Patent claim limitation of "some of the SLCSEs stored in the shared library being functional replicas of OSCSEs."  Exhibit 3 ('058 Patent File History) at 24-47 (Jan. 15, 2010 Applicant Arguments/Remarks Made in an Amendment).

51.     Applicants, including at least Mr. Rochette, were likewise aware that the use of shared libraries, such as that described in a paper titled "Shared Libraries in SunOS," which discusses the technology underlying Solaris Zones, was "a pretty big deal" in part because they provided the ability to run older applications on new operating systems or a new version of an operating system.  Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 114:8–116:2; 135:6–137:17.  Therefore, on information and belief, Applicants were aware that Solaris 10 disclosed the '058 Patent claim limitation of a feature for "multiple operating system environments" that "advantageously provides the ability to create unique environments for an application to execute within or by the SLCSEs."  Exhibit 3 ('058 Patent File History) at 24-47 (Jan. 15, 2010 Applicant Arguments/Remarks Made in an Amendment).

52.     Mr. Rochette further admitted he was unable to identify any differences between the claims of the '058 Patent and Solaris 10 and its Solaris Zones feature.  Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 90:2–92:5.

53.     Furthermore, notes from inventor Mr. O'Leary (dated between 2002 and 2005) likewise confirm his awareness of Solaris 10 and its materiality to the '058 Patent. ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████. On information and belief, Mr. O'Leary had knowledge of Solaris 10 and its Solaris Zones feature, and would have known that Solaris 10 discloses the claimed limitations of the '058 Patent.

54.     Internal documents prepared by Trigence Corp.—the original assignee of the '058 Patent, predecessor to VirtaMove, and led by Mr. Rochette and Mr. O'Leary (among others)— further confirm Applicants' awareness of Solaris 10 and its materiality during the prosecution of the '058 Patent. ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████[2]   This technical submission confirms that the Solaris technology was material to the subject matter of the

---

[2] Emphasis added unless otherwise noted.

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT –
Page 20**

'058 Patent, including because it disclosed the '058 Patent claim limitation "a shared library having critical system elements (SLCSEs) stored therein for use by the plurality of software applications in user mode and wherein an instance of an SLCSE provided to one or more of the plurality of software applications from the shared library is run in a context of the one or more of the plurality of software applications without being shared with other plurality of software applications and where one or more of the plurality of software applications running under the operating system have use of a unique instance of a corresponding critical system element for performing essentially the same function."   Exhibit 3 ('058 Patent File History) at 24-47 (Jan. 15, 2010 Applicant Arguments/Remarks Made in an Amendment emphasizing these claim limitation over prior art). Trigence Corp. again referenced Solaris Zones in its December 2008 Release Notes on Version 3.2.0 of its AE product.  *See generally* Dkt. 115 at 45 (citing VM_PA_0000320).  On information and belief, including based on Trigence Corp.'s repeated acknowledgment of Solaris Zones throughout prosecution, it was aware of the materiality of Solaris Zones to the patented subject matter during all relevant times.  Yet Applicants never disclosed this technology to the USPTO.

55.    In finding the claims of the '058 Patent allowable, the USPTO found that Applicants' arguments (which were made without mention of Solaris) demonstrated that none of the prior art disclosed "a shared library having shared library critical system elements (SLCSEs) stored therein for use by the plurality of software applications in user mode and i) wherein some of the SLCSEs stored in the shared library are functional replicas of OSCSEs and are accessible to some of the plurality of software applications and when one of the SLCSEs is accessed by one or more of the plurality of software applications it forms a part of the one or more of the plurality of software applications, and ii) wherein an instance of a SLCSE provided to at least a first of the plurality of software applications from the shared library is run in a context of said at least first of the plurality

of software applications without being shared with other of the plurality of software applications and where at least a second of the plurality of software applications running under the operating system have use of a unique instance of a corresponding critical system element for performing same function[, and] iii) wherein a SLCSE related to a predetermined function is provided to the first of the plurality of software applications for running a first instance of the SLCSE, and wherein a SLCSE for performing a same function is provided to the second of the plurality of software applications for running a second instance of the SLCSE simultaneously (Claim 1).  Instead, Elnozahy discloses kernel extension device driver that are user space extensions of operating system code to minimize kernel calls by web server and Wong discloses user mode accessible copies of kernel-mode memory to facilitate a device driver to execute in user-mode while the graphics engine remains in kernel mode."  Exhibit 3 ('058 Patent File History) at 12-17 (May 3, 2010 Notice of Allowance and Fees Due (PTOL-85)).  Accordingly, the USPTO granted the application and issued the '058 Patent.

56.    Had Applicants disclosed the Solaris technology and its materiality to the claimed invention, the USPTO would not have reached the above conclusion and issued the '058 Patent.

57.    Indeed, the prior art Solaris technology is not cumulative of the prior art that was disclosed to the USPTO because it discloses the claimed limitations the USPTO determined were not found in any art of record during prosecution, and the material information in the reference is not present in any of the prior art that was disclosed to or cited by the patent examiner during the prosecution of the '058 Patent.  Indeed, Applicants did not identify to the USPTO any prior art that they understood to be cumulative of the Solaris technology or otherwise offer any good-faith explanation why they failed to disclose Solaris 10 to the patent examiner.  Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 139:17–149:4.

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT** – **Page 22**

58.    On information and belief—including based on Applicants' recent and extensive knowledge of Solaris 10 and its materiality leading up to and during prosecution, and their failure to disclose the reference during the prosecution of the '058 Patent—Applicants specifically intended to conceal the Solaris technology from the USPTO.  The named inventors, including Mr. Rochette and Mr. O'Leary, all signed a declaration acknowledging their "duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of the Federal Regulations, S.156(a)."  Exhibit 3 ('058 Patent File History) at 362–364 (Donn Rochette, Paul O'Leary, and Dean Huffman acknowledging their duty to disclose).  As previously explained, Applicants, including Mr. Rochette and Mr. O'Leary, had knowledge about the prior art Solaris technology during the prosecution of the '058 Patent, including through ███████ ████████████████████████████████████.  *See, e.g.*, *supra* ¶¶ 44, 47-54.  Mr. Rochette confirmed that the prior art Solaris technology disclosed the vast majority of, if not all, claim limitations of the '058 Patent, including those claims that Applicants represented were not present in the prior art.  *See supra* ¶¶ 48-52.  Mr. O'Leary's inventor notebook further confirms his knowledge of the material Solaris technology prior to and during the prosecution of the claimed invention of the '058 Patent.  *See supra* ¶ 53.  Despite their extensive knowledge, testing, and use of the prior art Solaris technology, and despite knowing that technology was material to the examination of their patent application, Applicants did not identify it to the USPTO, thereby breaching their signed duty to disclose.  Given their recent and material knowledge and known duty of disclosure, there is no colorable reason for Applicants to withhold the Solaris technology other than to deceive the USPTO.  Moreover, on information and belief, Applicants, including at least named inventors Mr. Rochette and Mr. O'Leary and named assignee Trigence Corp., were motivated to deceive the USPTO because securing a patent in the purported invention was critical

to the success of Trigence Corp. For example, around the time of prosecuting the '058 Patent,

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████. At bottom, on information and

belief, Applicants knew that Sun Microsystems had developed the claimed technology prior to

Applicants and that, if disclosed to the USPTO, the teachings of the Solaris technology would

directly undermine Applicants' arguments for patentability, prevent the claims of the '058 Patent

from issuing, and pose a significant risk to Trigence Corp.'s business.

59.    By failing to disclose material, non-cumulative prior art that they were aware of

through their study, use, and work with Solaris 10 that would have led to the invalidation of certain

claims of the '058 Patent, Applicants violated the duty of candor, good faith, and honesty owed by

patent applicants. This constitutes inequitable conduct and renders the '058 Patent unenforceable.

**Material Omissions Concerning Prior Art Reference FreeBSD 4.0**

60.    During prosecution of the '058 Patent, at least the named inventors, including Mr.

Rochette, Mr. O'Leary, and Mr. Huffman, the named assignee, Trigence Corp., and others

substantively involved with the prosecution, including prosecuting attorneys Charles E. Wands

and Christopher F. Regan (and any other prosecution attorney or agent for the '058 Patent at Allen,

Dyer, Doppelt and Gilchrist, P.A.) ("Applicants") violated 37 C.F.R. § 1.56 by failing to disclose

prior art reference FreeBSD 4.0 to the USPTO, including papers, publications, and other materials

known to at least the named inventors, Trigence Corp., and prosecution counsel. Applicants

withheld the material, noncumulative prior art with the specific intent to deceive the USPTO. The

'058 Patent claims include limitations found in the withheld prior art and not found by the examiner

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT** – **Page 24**

in any other cited art.  Those claims would not have issued but for the failure to disclose FreeBSD 4.0 to the USPTO.

61.     BSD jails is a feature within the FreeBSD 4.0 OS that provides the ability to partition the operating system environment, while maintaining the simplicity of the UNIX root model.  *See generally* Exhibit 6 ('058 Patent Invalidity Chart for FreeBSD 4.0) at 1.

62.     FreeBSD has been publicly available at least as early as December 1993, and FreeBSD 4.0 (including its feature BSD jails) was released and was publicly available at least as early as March 14, 2000.  *Id.* at 1.

63.     FreeBSD 4.0 (including its feature BSD jails) is prior art to the claims of the '058 Patent.

64.     As detailed in HPE's invalidity chart concerning FreeBSD 4.0 and its BSD jails feature (incorporated herein by reference), and as further confirmed by the evidence and testimony referenced below, this prior art is material to the patentability of at least Claims 1, 2, 3, 4, and 18 of the '058 Patent in that it discloses the limitations of those claims.  Exhibit 6 ('058 Patent Invalidity Chart for FreeBSD 4.0 with BSD jails).

65.     The materiality of FreeBSD 4.0 is confirmed by the USPTO recently granting a Request for Ex Parte Reexamination ("EPR") of the '058 Patent based, at least in part, on features and technology available in FreeBSD 4.0.  Exhibit 7 (Oct. 24, 2024 Order Granting Request for EPR).[3]

66.     On September 23, 2024, third party Unified Patents, LLC requested reexamination of Claims 1 and 12 of the '058 Patent.  *Id.* at 2.  Unified Patents, LLC's request for reexamination

---

[3] Citations to EPR documents refer to the preexisting page numbers on those documents.

was based on prior art references "Lucas," "Blott," and "Kamp"—all of which were not cited during the original prosecution of the patent application which led to the '058 Patent. *Id.* at 5-6.

67.     Lucas is a publication titled "Absolute BSD: the Ultimate Guide to FreeBSD" and was published in 2002. *Id.* at 5.  Blott is a publication titled "NetTap: an efficient and reliable PC-based platform for network programming" and was published in March 2002. *Id.* at 5-6.  Kamp is a publication titled "Jails: Confining the omnipotent root" and was accessible in 2000. *Id.* at 6.

68.     Based on these references, which discuss features and technology available in FreeBSD prior to the priority date of the '058 Patent, the USPTO determined that "[a] substantial new question of patentability" as to the claims of the '058 Patent is "raised by the request for *ex parte* reexamination," and "[a]s such the filed request for reexamination is granted." *Id.* at 2.

69.     In finding these cited references to be material to the patentability of certain claims of the '058 Patent, the USPTO noted that the Lucas reference "shows in relation to the FreeBSD operating system: an operating system with a kernel having critical system elements . . .; a shared library with critical system elements for use by software applications . . .; and an instance run in a context without being shared with other applications." *Id.* at 7.  The USPTO further noted that the Blott reference "shows in relation to the FreeBSD operating system: shared user-level libraries . . .; and libraries as functional replicas of critical kernel elements." *Id.*  The USPTO further noted that the Kamp reference "discloses in relation to the FreeBSD operating system: shared libraries of an instance not shared with another instance with its own shared libraries . . .; and two simultaneously running instances." *Id.* at 8.

70.     Based on these disclosures, the USPTO described additional functionalities of FreeBSD and its FreeBSD Jails feature.  *See, e.g.*, *id.* at 7 ("[W]hen using FreeBSD, you can build an entire virtual machine on disk, and isolate that machine from the rest of your system. This is

called a jail."); *id.* at 8 ("[T]he expected configuration creates a complete FreeBSD installation for each jail. This includes copies of all relevant system binaries, data files, and its own /etc directory. Such a configuration maximizes the independence of various jails, and reduces the chances of interference between jails being possible."); *id.* ("Processes in a jail are provided full access to the files that they may manipulate, processes they may influence, and network services they can make use of, and neither access nor visibility of files, processes or network services outside their partition"); *id.* ("Processes within the jail will find that they are unable to interact or even verify the existence of processes outside the jail – processes within the jail are prevented from delivering signals to processes outside the jail, as well as connecting to those processes with debuggers, or even see them in the sysctl or process file system monitoring mechanisms. Jail does not prevent, nor is it intended to prevent, the use of covert channels or communications mechanism via accepted interfaces – for example, two processes may communicate via sockets over the IP network interface.").

71.    The USPTO concluded that the above disclosures "constitute teachings pertinent" to multiple claim limitations of the '058 Patent and "were not previously considered in the prosecution" of the '058 Patent. *Id.* at 8–9.  The USPTO further concluded, based on its review of the '058 Patent prosecution history, that these claim limitations "were important to the allowability" of the '058 Patent. *Id.* at 9.

72.    The USTPO further concluded that "[i]n light of these teachings, Lucas in view of Blott and Kamp"—all of which disclose teachings available in FreeBSD—"is found to provide new prior art teachings that would be considered important to a reasonable examiner in evaluating the patentability of claims 1 and 12 [of the '058 Patent].  Accordingly, *Lucas* in view of *Blott* and

*Kamp* raises a substantial new question of patentability with respect to claims 1 and 12." *Id.* (emphasis in original).

73.     During the prosecution of the of the application that led to the '058 Patent, Applicants argued that the prior art relied on by the examiner in previously rejecting the '058 Patent application did not disclose the claim limitations requiring "a shared library having critical system elements (SLCSEs) stored therein for use by the plurality of software applications in user mode and wherein an instance of an SLCSE provided to one or more of the plurality of software applications from the shared library is run in a context of the one or more of the plurality of software applications without being shared with other plurality of software applications and where one or more of the plurality of software applications running under the operating system have use of a unique instance of a corresponding critical system element for performing essentially the same function," "some of the SLCSEs stored in the shared library being functional replicas of OSCSEs," and "when one of the SLCSEs is accessed by one or more of the plurality of software applications, it forms a part of the one or more of the plurality of software applications."  Exhibit 3 ('058 Patent File History) at 24-47 (Jan. 15, 2010 Applicant Arguments/Remarks Made in an Amendment). Applicants argued that in contrast to the teachings of prior art, "storing some of the SLSCEs in the shared library as functional replicas of OSCSEs" "is particularly advantageous in multiple operating system environments" and that their invention "advantageously provides the ability to create unique environments for an application to execute within or by the SLCSEs[]".  *Id.* at 34.

74.     Despite these arguments to the USPTO, Applicants, including at least named inventors Mr. Rochette and Mr. O'Leary, the assignee, Trigence Corp., and the prosecuting attorneys, were aware that the FreeBSD technology (including FreeBSD 4.0 and its BSD jails feature) disclosed the claimed invention.  Despite this awareness of the FreeBSD technology and its materiality to

the subject matter of the claimed invention, they intentionally withheld this information about that material technology.

75.    Indeed, Mr. Rochette admitted that FreeBSD 4.0 practiced the requirements of the '058 Patent, including the claim limitations Applicants argued were not disclosed by the prior art.

76.    For example, Mr. Rochette admitted that he was aware of BSD jails.  Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 59:8-10.  Mr. Rochette also admitted that BSD jails was "another container capability."  *Id.* at 59:18-20.  Therefore, on information and belief, Applicants, including Mr. Rochette, were aware that FreeBSD 4.0 disclosed information material to the patentability of the '058 Patent.

77.    In another instance, Mr. Rochette drew a parallel between BSD jails and Solaris Zones, describing BSD jails as "an open source response to the capabilities in Solaris [Z]ones.  It was a way of obtaining very similar behavior exemplified by zones in an open source Unix capability that didn't require licensing yet."  *Id.* at 59:12-17.  As explained above, Mr. Rochette admitted that the "capabilities in Solaris zones" practice the claimed limitations of the '058 Patent.  Accordingly, on information and belief, Applicants were aware that FreeBSD 4.0 disclosed the '058 Patent claim limitations of "a shared library having critical system elements (SLCSEs) stored therein for use by the plurality of software applications in user mode and wherein an instance of an SLCSE provided to one or more of the plurality of software applications from the shared library is run in a context of the one or more of the plurality of software applications without being shared with other plurality of software applications and where one or more of the plurality of software applications running under the operating system have use of a unique instance of a corresponding critical system element for performing essentially the same function," "some of the SLCSEs stored in the shared library being functional replicas of OSCSEs," and "when one of the SLCSEs is accessed

by one or more of the plurality of software applications, it forms a part of the one or more of the plurality of software applications." Exhibit 3 ('058 Patent File History) at 24-47 (Jan. 15, 2010 Applicant Arguments/Remarks Made in an Amendment).

78.    Notes from inventor Mr. O'Leary (dated between 2002 and 2005) likewise confirm his awareness of FreeBSD 4.0 and its materiality to the '058 Patent. ███████████████████ ██████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████. In light of the above, on information and belief, Mr. O'Leary had knowledge of FreeBSD 4.0 and its BSD jails feature and would have known that FreeBSD 4.0 discloses the claimed limitations of the '058 Patent.

79.    Internal documents prepared by Trigence Corp.—the original assignee of the '058 Patent, predecessor to VirtaMove, and led by Mr. Rochette and Mr. O'Leary (among others)— further confirm Applicants' awareness of FreeBSD 4.0 and its materiality during the prosecution of the '058 Patent. ████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████.  This technical

submission confirms that the FreeBSD 4.0 technology was material to the subject matter of the

'058 Patent, including because it disclosed the '058 Patent claim limitation "a shared library having

critical system elements (SLCSEs) stored therein for use by the plurality of software applications

in user mode and wherein an instance of an SLCSE provided to one or more of the plurality of

software applications from the shared library is run in a context of the one or more of the plurality

of software applications without being shared with other plurality of software applications and

where one or more of the plurality of software applications running under the operating system

have use of a unique instance of a corresponding critical system element for performing essentially

the same function."  Exhibit 3 ('058 Patent File History) at 24-47 (Jan. 15, 2010 Applicant

Arguments/Remarks Made in an Amendment emphasizing these claim limitation over prior art).

Yet Applicants never disclosed this technology to the USPTO.

80.     In finding the claims of the '058 Patent allowable, the USPTO found that Applicants'

arguments (which were made without mention of FreeBSD) demonstrated that none of the prior

art disclosed "a shared library having shared library critical system elements (SLCSEs) stored

therein for use by the plurality of software applications in user mode and i) wherein some of the

SLCSEs stored in the shared library are functional replicas of OSCSEs and are accessible to some

of the plurality of software applications and when one of the SLCSEs is accessed by one or more

of the plurality of software applications it forms a part of the one or more of the plurality of

software applications, and ii) wherein an instance of a SLCSE provided to at least a first of the

plurality of software applications from the shared library is run in a context of said at least first of

the plurality of software applications without being shared with other of the plurality of software

applications and where at least a second of the plurality of software applications running under the operating system have use of a unique instance of a corresponding critical system element for performing same function[, and] iii) wherein a SLCSE related to a predetermined function is provided to the first of the plurality of software applications for running a first instance of the SLCSE, and wherein a SLCSE for performing a same function is provided to the second of the plurality of software applications for running a second instance of the SLCSE simultaneously (Claim 1).  Instead, Elnozahy discloses kernel extension device driver that are user space extensions of operating system code to minimize kernel calls by web server and Wong discloses user mode accessible copies of kernel-mode memory to facilitate a device driver to execute in user-mode while the graphics engine remains in kernel mode."  Exhibit 3 ('058 Patent File History) at 12-17 (May 3, 2010 Notice of Allowance and Fees Due (PTOL-85)).  Accordingly, the USPTO granted the application and issued the '058 Patent.

81.    Had Applicants disclosed the FreeBSD technology and its materiality to the claimed invention, and further refrained from misrepresenting the state of the prior art to the USPTO, the USPTO would not have reached the above conclusion and issued the '058 Patent.

82.    Indeed, the prior art FreeBSD technology is not cumulative of the prior art that was disclosed to the USPTO because it discloses the claimed limitations the USPTO determined were not found in any art of record during prosecution, and the material information in the reference is not present in any of the prior art that was disclosed to or cited by the patent examiner during the prosecution of the '058 Patent.  Indeed, Applicants did not identify to the USPTO any prior art that they understood to be cumulative of FreeBSD.

83.    Applicants' knowledge of FreeBSD 4.0 and its materiality, coupled with their failure to disclose the reference during the prosecution of the '058 Patent, evidence their intent to conceal

the reference from the USPTO.  On information and belief, they withheld FreeBSD 4.0 from the patent examiner with the intent to deceive the USPTO because they knew that its teachings directly undermined their arguments for the patentability of the '058 Patent.  More specifically, the named inventors, including Mr. Rochette and Mr. O'Leary, all signed a declaration acknowledging their "duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of the Federal Regulations, S.156(a)."  Exhibit 3 ('058 Prosecution History) at 362-364 (Donn Rochette, Paul O'Leary, and Dean Huffman acknowledging their duty to disclose).  As previously explained, Applicants, including Mr. Rochette and Mr. O'Leary, had knowledge about the prior art FreeBSD technology during the prosecution of the '058 Patent.  *See, e.g.*, *supra* ¶¶ 74-79.  Through his testimony about FreeBSD directly and in relation to Solaris Zones, Mr. Rochette confirmed that the prior art FreeBSD technology disclosed the vast majority of, if not all, claim limitations of '058 Patent, including those claims that Applicants represented were not present in the prior art.  *See supra* ¶¶ 75-77.  Mr. O'Leary's inventor notebook further confirms his knowledge of the material FreeBSD technology prior to and during the prosecution of the claimed invention of the '058 Patent.  *See supra* ¶ 78.  Despite their extensive knowledge of the prior art FreeBSD technology, and despite knowing that technology was material to the examination of their patent application, Applicants did not identify it to the USPTO, thereby breaching their signed duty to disclose.  Given their recent and material knowledge and known duty of disclosure, there is no colorable reason for Applicants to withhold the FreeBSD technology other than to deceive the USPTO.  Moreover, on information and belief, Applicants, including at least named inventors Mr. Rochette and Mr. O'Leary and named assignee Trigence Corp., were motivated to deceive the USPTO because securing a patent in the purported invention was critical to the success of Trigence Corp.  For example, around the time of prosecuting the '058 Patent,

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████.  Accordingly, on information and belief, Applicants, including at least named inventors Mr. Rochette and Mr. O'Leary, named assignee Trigence Corp., and/or the prosecuting attorneys specifically intended to deceive the USPTO because they knew that if FreeBSD were disclosed to the USPTO, the teachings of the FreeBSD technology would directly undermine Applicants' arguments for patentability, prevent the claims of the '058 Patent from issuing, and pose a significant risk to Trigence Corp.'s business.

84.     By failing to disclose material, non-cumulative prior art that they were aware of through their study of FreeBSD 4.0 that would have led to the invalidation of certain claims of the '058 Patent, Applicants violated the duty of candor, good faith, and honesty owed by patent applicants.  This constitutes inequitable conduct and renders the '058 Patent unenforceable.

## COUNT VI – DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 7,519,814 BASED ON INEQUITABLE CONDUCT

85.     HPE realleges Paragraphs 1-84 as if fully set forth herein.  HPE's investigation is ongoing, and it therefore reserves the right to seek leave to further amend its Answer to include additional facts or bases of inequitable conduct as they become known.

86.     The '814 Patent is unenforceable for inequitable conduct due to failure by Applicants of the '814 Patent to: (1) disclose material prior art to the USPTO; and (2) amend the claims pending before the USPTO to include a claim requirement that Applicants added to the corresponding claims in the European counterpart and repeatedly represented was essential to the operation of the claimed system.  The withholding of material information with the intent to deceive the USPTO is a violation of the duty of disclosure under 37 C.F.R. § 1.56(a).

87.    Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith to disclose to the USPTO all information known to that individual to be material to patentability.  37 C.F.R. § 1.56(a).

88.    The individuals substantively involved with the filing and prosecution of the '814 Patent owed duties of disclosure under 37 C.F.R. § 1.56 and include, for example, at least Applicants—*i.e.*, named inventors Donn Rochette, Paul O'Leary, and Dean Huffman—as well as others substantively involved with the prosecution, including prosecuting attorneys Charles E. Wands and Christopher F. Regan.  A violation of this duty of disclosure can result in a finding of inequitable conduct.  *Therasense*, 649 F.3d at 1285.  "[I]nequitable conduct regarding any single claim renders the entire patent unenforceable."  *Id.* at 1288.

### Material Misrepresentation and Omissions Concerning Prior Art Solaris 10

89.    During prosecution of the '814 Patent, at least the named inventors, including Mr. Rochette, Mr. O'Leary, and Mr. Huffman, the named assignee, Trigence Corp., and others substantively involved with the prosecution, including prosecuting attorneys Charles E. Wands and Christopher F. Regan (and any other prosecution attorney or agent for the '814 Patent at Allen, Dyer, Doppelt and Gilchrist, P.A.) ("Applicants") violated 37 C.F.R. § 1.56 by (1) failing to disclose prior art reference Solaris 10 to the USPTO, including papers, publications, and other materials known to at least the named inventors, Trigence Corp, and the prosecuting attorneys, and (2) making a material misrepresentation to the USPTO regarding the novelty of the claimed invention, despite their knowledge of Solaris 10 and its materiality.  Applicants withheld this material, noncumulative prior art with the specific intent to deceive the USPTO.  The claims of the '814 Patent include limitations found in the withheld prior art and not found by the examiner in any other cited art. The claims would not have issued but for the failure to disclose Solaris 10 to the USPTO.

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT** – **Page 35**

90.    Solaris Zones is a feature within the Solaris 10 operating system ("OS") for implementing operating system-level virtualization technology.  More specifically, the Solaris Zones feature creates isolated containers for running software applications.  *See generally* Exhibit 8 ('814 Patent Invalidity Chart for Solaris Zones).

91.    Solaris Zones was publicly available at least by February 2004.  *Id.* at 1.

92.    Solaris 10 (including its feature Solaris Zones) is prior art to the claims of the '814 Patent.  And on information and belief, Applicants were aware that Solaris 10 with the Zones feature predates the '814 Patent.  *See, e.g.*, Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 27:3-27:21 (confirming that Solaris predates the '814 and '058 Patents and acknowledging awareness of Solaris Zones "before [he] filed the applications that led to these two patents"), 33:18-37:22 (acknowledging access to working versions of Solaris Zones at least by the time of the filing of the provisional applications leading to the asserted patents), 50:21–51:5 (having discussions with Sun Microsystems concerning Solaris Zones), 85:17–22 (learning about Solaris Zones capabilities through "[s]itting down in front of a Solaris operating system and using it" and "reading the documentations and using the capabilities and testing it").

93.    As detailed in HPE's invalidity chart concerning Solaris 10 and its Solaris Zones feature, which is incorporated herein by reference and further confirmed by the evidence and testimony referenced below, this prior art is material to the patentability of at least Claims 1, 2, 6, 9, and 10 of the '814 Patent in that it anticipates or renders obvious each limitation of those claims and would have prevented the patent from issuing.  Exhibit 8 ('814 Patent Invalidity Chart for Solaris with Solaris Zones).

94.    During the prosecution of the of the '814 Patent, Applicants argued that the prior art relied on by the Examiner in initially rejecting the '814 Patent application did not disclose the

claim limitation requiring "wherein said associated system files utilized in place of the associated local system files are copies or modified copies of the associated local system files that remain resident on the server, and wherein the application software cannot be shared between the plurality of secure containers of application software, and wherein each of the containers has a unique root file system that is different from an operating system's root file system."  Exhibit 9 ('814 Patent File History) at 287-334 (Sept. 3, 2008 Applicant Arguments/Remarks Made in an Amendment).

95.     In addition, Applicants of the '814 Patent argued that the claimed invention "enable[d] a new and unique ability for combining, deploying, and managing applications."  Exhibit 9 ('814 Patent File History) at 309.

96.     Despite these arguments to the USPTO, Applicants, including at least named inventors Mr. Rochette and Mr. O'Leary, the prosecuting attorneys, and/or the assignee, Trigence Corp., were aware that the Solaris technology (including Solaris 10 and its Solaris Zones feature) disclosed the claimed invention. Despite this awareness of the Solaris technology and its materiality to the subject matter of the claimed invention, Applicants intentionally withheld information about that technology and misrepresented the state of the prior art in order to characterize the claimed invention as "new and unique."

97.     Indeed, Mr. Rochette admitted that Solaris 10 practiced the requirements of the '814 Patent, including the claim limitations Applicants argued were not disclosed by the prior art. For example, Mr. Rochette admitted that Solaris Zones "ha[d] the ability to create a container – basically take an application that's already outside of a container and then make a copy of it inside of a container," and that application and/or system files could be copied into that container while the "original version" of those files could remain "outside of the container."  Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 83:7–84:21; *see also id.* at 77:21–84:21. Therefore, on information

and belief, Applicants were aware that Solaris 10 disclosed the '814 Patent claim limitation "wherein said associated system files utilized in place of the associated local system files are copies or modified copies of the associated local system files that remain resident on the server." Exhibit 9 ('814 Patent File History) at 287-334 (Sept. 3, 2008 Applicant Arguments/Remarks Made in an Amendment).

98.    As another example, Applicants, including Mr. Rochette, were aware that "applications inside of a container in Solaris Zones" would not "be able to access the software in another container." Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 77:21–84:21; *see also id.* at 38:1–14, 51:5–21. Therefore, on information and belief, Applicants were aware that Solaris 10 disclosed the '814 Patent claim limitation "wherein the application software cannot be shared between the plurality of secure containers of application software." Exhibit 9 ('814 Patent File History) at 287-334 (Sept. 3, 2008 Applicant Arguments/Remarks Made in an Amendment).

99.    Applicants, including Mr. Rochette, were likewise aware that containers in the Solaris Zones feature "could have their own root file systems" that differed from those of the operating system. Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 57:15–22, 82:10–13; *see also id.* at 75:8–11. Therefore, on information and belief, Applicants were aware that Solaris 10 disclosed the '814 Patent claim limitation "wherein each of the containers has a unique root file system that is different from an operating system's root file system," yet still argued that this limitation distinguished the alleged invention from prior art. Exhibit 9 ('814 Patent File History) at 287-334 (Sept. 3, 2008 Applicant Arguments/Remarks Made in an Amendment).

100.    Moreover, during prosecution, Applicants argued that the claimed invention was novel over the prior art of record because it allowed different versions of software to run under the same operating system together. Exhibit 9 ('814 Patent File History) at 287-334 (Sept. 3, 2008

Applicant Arguments/Remarks Made in an Amendment); *see also id.* at 342-45. But, on information and belief, Applicants were aware that container capabilities predating the '814 Patent, such as those in Solaris Zones, included this same functionality. Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 130:13–132:22.

101.    Furthermore, notes from inventor Mr. O'Leary (dated between 2002 and 2005) likewise confirm awareness of Solaris 10 and its materiality to the '814 Patent. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████  ████████████  ████████████  ████████████

████████████. In light of the above, on information and belief, Mr. O'Leary had knowledge of Solaris 10, including its Solaris Zones feature, and would have known that Solaris 10 discloses the claimed limitations of the '814 Patent.

102.    Internal documents prepared by Trigence Corp.—the original assignee of the '814 Patent, predecessor to VirtaMove, and led by Mr. Rochette and Mr. O'Leary—further confirm Applicants' awareness of the operations of Solaris 10 and its materiality during the prosecution of the '814 Patent. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

**HPE'S AMENDED ANSWER AND COUNTERCLAIMS TO THIRD AMENDED COMPLAINT – Page 39**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████.  This technical submission confirms that the Solaris technology was material to the subject matter of the '814 Patent, including because it disclosed the '814 Patent claim limitation "wherein each of the containers has a unique root file system that is different from an operating system's root file system" as well as the other limitations of the '814 Patent.  Exhibit 9 ('814 Patent File History) at 287-334 (Sept. 3, 2008 Applicant Arguments/Remarks Made in an Amendment confirming this limitation is material to patentability).  Trigence Corp. again referenced Solaris Zones in its December 2008 Release Notes on Version 3.2.0 of its AE product.  *See* Dkt. 115 at 45 (citing VM_PA_0000320).  Trigence Corp.'s repeated acknowledgment of Solaris Zones—not only during the early stages of the prosecution of the '814 Patent, but also in the later stages of the prosecution—reflects Applicants' continued awareness of the materiality of Solaris Zones to the patented subject matter.  Yet Applicants never disclosed this technology to the USPTO.

103.    In finding the claims of the '814 Patent allowable, the USPTO found that Applicants' arguments (which were made without mention of Solaris) "serv[ed] to patently ***distinguish the invention from said prior art***" because the prior art "fail[ed] to anticipate, disclose, teach or suggest alone, or in combination, at the time of the invention" "the various aspects of applications software not being sharable between the plurality of secure (and isolated) containers of application software, and unique root file systems different from an operating system's root file system, so as

to allow for different versions of the same operating system running on the same system/server environment." Exhibit 9 ('814 Patent File History) at 340-345 (Dec. 10, 2008 Notice of Allowance and Fees Due (PTOL-85)). Accordingly, the USPTO granted the application and issued the '814 Patent.

104. Had Applicants disclosed Solaris 10, including its Solaris Zones feature, and its materiality to the claimed invention, and further refrained from misrepresenting the state of the prior art, the USPTO would not have reached the above conclusion and issued the '814 Patent.

105. Indeed, the prior art Solaris technology is not cumulative of the prior art that was disclosed to the USPTO because it discloses the claimed limitations the USPTO determined were not found in any art of record during prosecution, and the material information in the reference is not present in any of the prior art that was disclosed to or cited by the patent examiner during the prosecution of the '814 Patent. Indeed, Applicants did not identify to the USPTO any prior art that they understood to be cumulative of Solaris or otherwise offer any good-faith explanation why they failed to disclose Solaris 10 to the patent examiner. Exhibit 2 (Sept. 10, 2024 D. Rochette Dep. Tr.) at 139:17–149:4.

106. On information and belief, Applicants' knowledge of Solaris 10 and its materiality, their known duty of disclosure, and their failure to disclose the reference and the material misrepresentations made to the USPTO during the prosecution of the '814 Patent, evidence their intent to conceal the reference from the USPTO. More specifically, the named inventors, including Mr. Rochette and Mr. O'Leary, all signed a declaration acknowledging their "duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of the Federal Regulations, S.156(a)." Exhibit 9 ('814 Prosecution History) (Donn Rochette, Paul O'Leary, and Dean Huffman acknowledging their duty to disclose) at 58-60. As previously

explained, Applicants, including Mr. Rochette and Mr. O'Leary, had knowledge about the prior art Solaris technology during the prosecution of the '814 Patent, including through their ███ ████████████████████████████████████████. *See, e.g., supra* ¶¶ 92, 96-102.  Mr. Rochette confirmed that the prior art Solaris technology disclosed the vast majority of, if not all, claim limitations of the '814 Patent, including those claims that Applicants represented were not present in the prior art.  *See supra* ¶¶ 97-100.  Mr. O'Leary's inventor notebook further confirms his knowledge of the material Solaris technology prior to and during the prosecution of the claimed invention of the '814 Patent.  *See supra* ¶ 101.  Despite their extensive knowledge, testing, and use of the prior art Solaris technology and despite knowing that technology was material to the examination of their patent application, Applicants did not identify it to the USPTO, thereby breaching their signed duty to disclose.  Given their recent and material knowledge and known duty of disclosure, there is no colorable reason for Applicants to withhold the Solaris technology other than to deceive the USPTO.  Moreover, on information and belief, Applicants, including at least named inventors Mr. Rochette and Mr. O'Leary and named assignee Trigence Corp., were motivated to deceive the USPTO because securing a patent in the purported invention was critical to the success of Trigence Corp. For example, around the time of prosecuting the '814 Patent, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████. At bottom, on information and belief, Applicants knew that Sun Microsystems had developed the claimed technology prior to Applicants and that, if disclosed to the USPTO, the teachings of the Solaris technology would

directly undermine Applicants' arguments for patentability, prevent the claims of the '814 Patent from issuing, and pose a significant risk to Trigence Corp.'s business.

107.    By failing to disclose material, non-cumulative prior art that they were aware of through their study, use, and work with Solaris 10 that would have led to the invalidation of certain claims of the '814 Patent, Applicants violated the duty of candor, good faith, and honesty owed by patent applicants. This constitutes inequitable conduct and renders the '814 Patent unenforceable.

## **Material Omissions to the USPTO Regarding the Required Unique Identity of the Claimed Containers**

108.    During the prosecution of the '814 Patent, a counterpart application with identical claims was filed and prosecuted before the European Patent Office ("EPO") (Application No. 04021916), which published as EP1515229 on March 16, 2005 (collectively, the "European Counterpart Application").

109.    Despite significant amendments to the European counterpart application, the EPO rejected the '814 Patent's European counterpart on four separate occasions. Following these serial rejections, Applicants abandoned the European counterpart application.

110.    For at least the reasons set forth below, and upon information and belief, the '814 Patent is unenforceable because during prosecution of Application No. 10/939,903 (the "'814 Application"), which led to the '814 Patent, Applicants committed inequitable conduct by failing to disclose to the USPTO Applicants' arguments at the EPO that amendments to identical claims in the European counterpart application were necessary for the claimed system to work.

111.    The individuals substantively involved with the filing and prosecution of the '814 Patent owed duties of disclosure under 37 C.F.R. § 1.56 and include, for example, at least the named inventors, including Mr. Rochette, Mr. O'Leary, and Mr. Huffman, the named assignee, Trigence Corp., and others substantively involved with the prosecution, including prosecuting

attorneys Charles E. Wands and Christopher F. Regan (and any other prosecution attorney or agent for the '814 Patent at Allen, Dyer, Doppelt and Gilchrist, P.A.) ("Applicants"). A violation of this duty of disclosure can result in a finding of inequitable conduct. *Therasense*, 649 F.3d at 1285. "[I]nequitable conduct regarding any single claim renders the entire patent unenforceable." *Id.* at 1288.

112.    Applicants were aware of the various representations and admissions Applicants made to the EPO and amendments made to the claims of the European counterpart application. For example, on October 17, 2005, before the EPO issued its first rejection of the European counterpart application, Charles Wands submitted an information disclosure statement to the USPTO which checked a box that the reference contained in the statement "was cited in a communication from a foreign patent office in a counterpart foreign application not more than three months prior." Exhibit 9 ('814 Patent File History) at 62-64. As detailed below, this reference is the same reference that the EPO had cited in its September 7, 2005 communication in the European counterpart prosecution, confirming that Applicants and prosecution counsel for the '814 Patent, including Mr. Wands, were aware of the foreign counterpart prosecution (including the statements made by Applicants as part of that prosecution and the prior art reference) and were informed of communications between Applicants and the EPO during that foreign counterpart prosecution.

113.    On information and belief, at least named inventor Donn Rochette was still employed by the assignee, Trigence Corp., through May 2009 when these statements were made.

114.    On information and belief, Applicants had knowledge that statements made to the EPO during prosecution of the '814 Patent's European counterpart were material to the patentability of the claimed invention, yet they failed to disclose those statements and prosecution history documents during prosecution of the '814 Patent by intentionally withholding and concealing them

with the specific intent to mislead or deceive the USPTO, and thereby wrongly secured the '814 Patent that otherwise would not have issued but for their misconduct.

115.    The statements made to the USPTO by Applicants included material contradictions with and omissions of statements Applicants made to the EPO. Specifically, during the prosecution of the European Counterpart Application, Applicants made representations to the EPO about a claim requirement—the "unique identity" limitation—that purportedly was an important part of the claimed invention, distinguished the claimed invention from the prior art, and enabled the claimed invention. Although the purportedly key and enabling "unique identity" limitation that applicants introduced during the EPO prosecution was added to Claim 1 of the European Counterpart Application, and Applicants repeatedly argued to the EPO that the "unique identity" requirement was a necessary functionality for the claimed system to work in light of the claim's other recitation of containers operating with different operating systems, Applicants withheld these statements from the USPTO and did not amend the independent claims at the USPTO to include the admittedly enabling "unique identity" limitation for the '814 Application. Those amendments and arguments regarding the "unique identity" limitation made during the prosecution of the European Counterpart Application—and their omission during the prosecution of the application leading to the '814 Patent at the USPTO—were material to the patentability of the '814 Patent. The claims of the '814 Patent are broader than the claims presented in the EPO—they do not include the "unique identifiers" limitation that Applicants argued was essential to the operation of the claimed system. The specification of the '814 Patent does not disclose how to make or use a containerized system that operates with different operating systems, where those containers need not have unique identifiers. In other words, Applicants' implicit representation to the USPTO that the broader claims of the application leading to the '814 Patent were enabled by the '814 Patent's

written description is inconsistent with its admission to the EPO that such a system only could work if the containers were required to have unique identifiers. Had the USPTO been aware of all of the relevant statements made by Applicants to the EPO in each of these contexts, the USPTO would not have granted the '814 Patent.

116.    For example, in Applicants' August 18, 2006 reply to the EPO's First Rejection, Applicants amended independent claim 1 of the European Counterpart Application in an attempt to distinguish prior art identified in the EPO's search report (U.S. Publication No. 2002/174215 A1 ("Schaefer")), and stated to the EPO that "[n]ew claim 1 has been clarified to reflect the differences between [Schaefer] and the present invention more precisely."  Exhibit 10 (EPO File History) at 67. For example, applicants amended independent claim 1 as shown below (bold):

1.    In a system having a plurality of servers (**10a, 10b**) with operating systems that differ, operating in disparate computing environments, wherein each server includes a processor (**13**) and an operating system including a kernel (**12**), a set of associated local system files compatible with the processor (**13**), a method of providing at least some of the servers in the system with secure, executable, applications (**21a-21f**) related to a service, wherein the **executable** applications (**21a-21f**) may be executed in a secure environment, wherein the **executable** applications (**21a-21f**) each include an object executable by at least some of the different operating systems for performing a task related to the service, the method comprising the steps of:

storing in memory accessible to at least some of the servers a plurality of secure containers (**20a-20c**) of application software (**21a-21f**), each container (**20a-20c**) **of application software having its own unique identity and** comprising one or more of the executable applications (**21a-21f**) and a set of associated system files required to execute the one or more executable applications (**21a-21f**), for use with a local kernel (**12**) residing permanently on one of the servers; wherein the set of associated system files are compatible with a local kernel (**12**) of at least some of the plurality of different operating systems, the containers (**20a-20c**) of application software excluding a kernel, and wherein some or all of the associated system files within a container stored in memory are utilized in place of the associated local system files resident on the server prior to said storing step **so that executable applications can execute in conjunction with an operating system that said executable application is not originally intended to operate with and would otherwise not function properly, and wherein**

**application software (21a-21f) has an identity of a container that it is associated with**.

*Id.* at 55.

117.   Applicants further explained that "the present invention as defined by new claim 1 differs from ... [Schaefer]" because of the added requirement that "a unique identifier identifies each container and the application associated therewith," arguing that "[n]o such unique identifier for both the container and the application associated therewith is disclosed in [Schaefer]." *Id.* at 67. Applicants later explained that "in accordance with new claim 1, ... a unique identity is provided to each of the plurality of the containers. An application executing in the container environment uses the identity of the container as opposed to the identity that would otherwise be provided by the operating system." *Id.* at 71.

118.   Applicants further argued that new claim 1 was inventive, by stating that claim 1 "provides the possibility of running applications on different operating systems even if the respective application was not designed to run on a specific operating system originally. ***In order to achieve this, the present invention*** uses containers, wherein executable ***applications*** are associated with containers and ***share a unique identity with these containers so they may be attributed to the correct container <u>without problems</u>***." *Id.* at 68.

119.   Additionally, in Applicants' March 31, 2008 reply to the EPO's Second Rejection, applicants further argued that "***Claim 1 defines that each container of application software has its own unique identity***, and that the application software has an identity of a container that it is associated with, which differs significantly from the feature identified in the above-referenced Official Communication." *Id.* at 38-39. Applicants further explained that "***[m]oreover, these features are indeed <u>important for the capability of the instant invention</u> to make it possible for applications to be executed on an operating system for which they were not intended or***

*programmed*." *Id.* at 39. Applicants further asserted that "[i]t is all of these features that together allow an application to run under an operating system for which the application was not intended to run" and "*[t]he invention defines that each container of application software, a unique application object, has its own unique identity*." *Id.* at 40. Applicants expressly argued "[a]s is clearly and succinctly illustrated above, the invention defined in the claims of the instant application provides secure containers of application software *which each have a unique identifier* and which each have the required files as defined in the claims, *so as to be able to operate on different operating systems for which the application was not originally intended to run*." *Id.* at 40. Applicants relied on this requirement in an attempt to distinguish Schaefer, arguing "[t]he ability for a secure container of application software to utilize its own unique network identity where that identity is independent of the OS is not defined in prior art nor in [Schaefer]." *Id.* at 42.

120.    Applicants did not submit Applicants' reply to the EPO First Rejection or Applicants' reply to the EPO Second Rejection to the USPTO.

121.    Applicants' above statements to the EPO are material to the patentability requirements of 35 U.S.C. §§ 101 and 112 because Applicants' statements to the EPO support a finding that the '814 Patent claim 1 is not fully enabled.  The claims of the '814 Patent are broader than the claims presented in the EPO—they do not include the "unique identity" limitation that Applicants unequivocally represented was an important part of the invention and that allowed attribution of applications to the correct container "without problems" (thus avoiding undue experimentation). *Id.* at 68. Applicants' narrowing amendment to independent claim 1 of the EPO application is consistent with this representation, in that it requires "each container … of application software having its own unique identity" and "wherein application software … has an identity of a container that it is associated with."  *Id.* at 39.  Applicants expressly characterized this feature as "***important***

for the capability of the instant invention," in order to allow for the claimed solution. *Id*. But Applicants never disclosed these statements to the USPTO and did not amend independent claim 1 of the '814 Application to include what Applicants represented was an important and necessary enabling feature of their claimed invention.

122.    Because independent claim 1 of the '814 Patent does not require each container to have its own unique identity, which Applicants unequivocally stated to the EPO was "important" for the capability of the purported invention and repeatedly argued to the EPO was necessary for purported invention to work "without problems," Applicants took a contradictory position before the USPTO by failing to include the same "unique identity" requirement in the pending claims and implicitly representing that those broader claims were enabled by the specification of the application leading to the '814 Patent. If Applicants had disclosed to the USPTO the amendments and arguments to the EPO regarding the "unique identity" limitation, the USPTO would have recognized that Applicants were attempting to claim more in the United States than they actually had invented and enabled, and claim 1 of the '814 Patent would not have been allowed as issued. The specification of the '814 Patent does not disclose how to make or use a containerized system that operates with different operating systems, where those containers need not have unique identifiers.

123.    Indeed, dependent claim 6 (which depends from claim 2, which depends from independent claim 1) of the '814 Patent explicitly adds a limitation "assigning a unique associated identity to each of a plurality of the containers, wherein the identity includes at least one of IP address, host name, and MAC address." '814 Patent, claim 6. Yet claim 1 does not require that each container have a unique identity. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("As this court has frequently stated, the presence of a dependent claim that

adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim."). And, as Applicants admitted to the EPO, the specification of the '814 Patent does not enable the full scope of Claim 1 because it does not disclose how to implement a containerization system that uses containers that lack unique identifiers.

124. Amendments and corresponding arguments made in connection with foreign prosecution, such as the ones Applicants failed to disclose to the USPTO, are material and non-cumulative because they are inconsistent with applicants' conduct before the USPTO. *See Therasense*, 864 F. Supp. 2d at 856; *EIS, Inc. v. IntiHealth Ger GmbH*, No. CV 19-1227-GBW, 2023 WL 6799332, at *6-7 (D. Del. Aug. 23, 2023).

125. On information and belief, Applicants' material admissions at the EPO were withheld from the USPTO with the intent to deceive the Examiner into allowing the claims of the '814 Patent to issue without the requirement that each container have its own "unique identity," thus broadening the scope beyond what Applicants had invented and enabled. Applicants (including Mr. Rochette, Mr. O'Leary, Mr. Huffman, Mr. Wands, and Mr. Regan) and others substantively involved with the prosecution of the '814 Patent were aware of the various representations applicants made to the EPO. *See supra* ¶ 112. Moreover, on information and belief, Applicants, including at least named inventors Mr. Rochette and Mr. O'Leary and named assignee Trigence Corp., were motivated to deceive the USPTO because securing a patent in the purported invention was critical to the success of Trigence Corp. *See supra* ¶ 106.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Counter-Plaintiff HPE respectfully demands a jury trial of all issues triable to a jury in this action.

## REQUESTED RELIEF

HPE respectfully requests that this Court enter a judgment in its favor of HPE and against

VirtaMove as follows:

A.  Entry of judgment in favor of HPE and against VirtaMove thereby fully and finally dismissing VirtaMove's Third Amended Complaint in its entirety, with prejudice, with VirtaMove taking nothing by way of its claims;

B.  A declaration that HPE has not and does not infringe any claim of the '814 Patent, either literally or under the doctrine of equivalents;

C.  A declaration that HPE has not and does not infringe any claim of the '058 Patent, either literally or under the doctrine of equivalents;

D.  A declaration that each of the claims of the '814 Patent is invalid;

E.  A declaration that each of the claims of the '058 Patent is invalid;

F.  A declaration that the '814 Patent is unenforceable;

G.  A declaration that the '058 Patent is unenforceable;

H.  A declaration that this is an exceptional case under 35 U.S.C. § 285 and an award to HPE of its costs, attorney fees and expenses; and

I.  Granting HPE any and all other relief to which HPE may be entitled, or which the Court deems just and proper.

Dated:  December 23, 2024

/s/ Katharine M. Burke

Jennifer H. Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX  75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email:  jdoan@haltomdoan.com
Email: jthane@haltomdoan.com

Katharine Burke (Lead Attorney)
DC Bar Number: 985333
Katharine.burke@bakerbotts.com
Samuel L. Kassa
DC Bar Number: 187255
Sam.kassa@bakerbotts.com
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, DC 20001-5692
Tel: (202) 639-7700
Fax: (202) 639-7890

Douglas M. Kubehl
Texas Bar No. 00796909
Doug.kubehl@bakerbotts.com
Morgan Mayne
Texas Bar No. 24084387
Morgan.mayne@bakerbotts.com
Emily Deer
Texas Bar No. 24116352
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
Tel: (214) 953-6500
Fax: (214) 953-6503

David Lien (*pro hac vice*)
California Bar No. 313754
David.lien@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road, Building One,
Suite 200

Palo Alto, CA 94304-1007
Tel: (650) 739-7563
Fax: (650) 739-7663

***ATTORNEYS FOR DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY***

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Katharine M. Burke*
Katharine M. Burke