# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE UNDER
THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE
ABROAD IN CIVIL OR COMMERCIAL MATTERS**

Consistent with Article 3 of the Hague Convention of 18 March 1970 on the Taking of

Evidence Abroad in Civil or Commercial Matters (the "Convention"), the United States District

Court for the Eastern District of Texas (the "Court") has the honor to submit this Letter of Request

to the Appropriate Judicial Authority of the Swiss Confederation to obtain evidence relevant to the

above-referenced case. As is customary, a copy of the present Letter of Request is sent to the

Federal Office of Justice, Central Authority for the Request for Judicial Assistance in Civil and

Commercial Matters, Bundesrain 20, 3003 Bern, Switzerland. The Court requests the assistance

described below.

**1. Senders:**

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
Email: andrea@millerfairhenry.com

Kyle Calhoun
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1527
Facsimile: (415) 439-1500
Email: kyle.calhoun@kirkland.com

**2. Central Authority of the requested state:**

Obergericht des Kantons Schaffhausen
Frauengasse 17
8200 Schaffhausen
Switzerland

Mailing Address:
Frauengasse 17
8200 Schaffhausen
Switzerland

**3. Person to whom the executed Letter of Request is to be returned:**

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
Email: andrea@millerfairhenry.com

**4. Date by which the requesting authority requests receipt of the response to the Letter of Request:**

The requesting authority, the United States District Court for the Eastern District of Texas, Marshall Division, respectfully requests that the response to this Letter of Request be returned by April 7, 2025, or, if that is not possible, at the earliest convenience of the Appropriate Judicial Authority of the Swiss Confederation.

5. **Pursuant to Article 3 of the Convention, the undersigned applicant has the honor to submit the following request:**

    a. **Requesting Judicial Authority:**

The Honorable J. Rodney Gilstrap
United States District Court for the Eastern District of Texas
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, Texas 75670
Phone: (903) 935-2498
Facsimile: (903) 938-7819

    b. **To the Appropriate Judicial Authority of the Swiss Confederation:**

Obergericht des Kantons Schaffhausen
Frauengasse 17
8200 Schaffhausen
Switzerland

6. **Letter of Request to be served upon:**

Virtuozzo International GmbH
Vordergasse 59
8200 Schaffhausen
Switzerland

    a. Names and addresses of the parties and their representatives:

Defendants and Counterclaim Plaintiffs:
INTERNATIONAL BUSINESS MACHINES CORP.

Represented by:
Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400

3

Facsimile: (903) 757-2323
Email: andrea@millerfairhenry.com

Kyle Calhoun
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1527
Facsimile: (415) 439-1500
Email: kyle.calhoun@kirkland.com

Plaintiff and Counterclaim Defendant:
VIRTAMOVE, CORP.

Represented by:
Qi (Peter) Tong
Texas State Bar No. 24119042
RUSS AUGUST & KABAT
4925 Greenville Ave., Suite 200
Dallas, TX 75206
Telephone: (310) 826-7474
Email: ptong@raklaw.com

**7. Nature and purpose of the proceedings and summary of facts:**

This Letter of Request arises from litigation in which VirtaMove, Corp. ("VirtaMove") has accused International Business Machines, Corp. ("IBM") of infringing it patents. In response, IBM has asserted the affirmative defense that the patents asserted against it are invalid because they are anticipated or rendered obvious by prior art.

IBM contends that the Virtuozzo system is a prior art system which invalidates the Asserted Patents (U.S. Patent Nos. 7,784,058 and 7,519,814). Specifically, IBM contends that Virtuozzo anticipates or renders obvious the Asserted Patents. IBM contends that Virtuozzo, in its publicly available form before the earliest possible priority date of the Asserted Patents, had functionality that discloses the alleged inventions of the Asserted Patents. Documentation supporting IBM's contention of Virtuozzo's functionality will support IBM's asserted affirmative defense of invalidity.

Thus, IBM believes that Virtuozzo International GmbH has important information relevant to IBM's affirmative defense, specifically with respect to prior art which anticipates or renders obvious the patents asserted against IBM. Due to pertinent deadlines in this case, this Court respectfully asks that the response to this Letter of Request be received by April 7, 2025.

**8. Evidence to be obtained or other judicial acts to be performed:**

1. Evidence to be obtained or other judicial acts to be performed (Article 3, d):

   a. Documents from Virtuozzo International GmbH (as described in Attachment B)
   b. Witness testimony of a corporate representative of Virtuozzo International GmbH (as described in Attachment C)

**2. Purpose of the evidence or judicial act sought:**

The requested documents and witness testimony will provide important evidence related to IBM's affirmative defense, specifically regarding invalidity of the Asserted Patents. IBM believes that Virtuozzo International GmbH has information relevant to prior art which anticipates or renders obvious the Asserted Patents.

**9. Any requirements that the evidence be given under oath or affirmation and any special form to be used:**

It is respectfully requested that evidence (including witness examinations) be taken under oath or affirmation, and additionally that the witness examinations be recorded by stenographic and/or videographic means.

It is respectfully requested that each document described in Attachment B be submitted without abbreviation or redaction, as maintained in the ordinary course of business.

**10. Identification of the person to be examined (Article 3, e):**

Corporate Representative
Virtuozzo International GmbH
Vordergasse 59
8200 Schaffhausen
Switzerland

5

**11. Questions to be put to the person(s) to be examined or statement of the subject-matter about which they are to be examined (Article 3, f):**

See attached list at Attachment C.

**12. Special methods or procedure to be followed (Articles 3, i and 9):**

1. *Audio recording of the witness testimony and delivery of the recorded media (mp3 or other suitable format) to the requesting judicial authority*

2. *Verbatim transcript of the witness testimony*

3. *Allowing direct examination/cross-examination by counsel*

4. *Allowing the presence of the parties and their U.S. counsel*

5. *(optional) Allowing simultaneous interpretation by an interpreter provided by and for either party or counsel at the party's expense*

A protective order governs documents produced and testimony given in this case. Because this case involves confidential and proprietary business information, the protective order protects such information from public disclosure.

To protect confidential and proprietary information, the United States District Court for the Eastern District of Texas requests that any documents, testimony, and any record of the testimony obtained in response to this Letter of Request be treated in accordance with the provisions of the protective order, a copy of which is attached hereto as Exhibit B. Additionally, the Court requests that the Appropriate Judicial Authority issue a corresponding order to provide similar confidentiality protections in the Swiss Confederation for the documents, testimony, and any record of the testimony produced in response to this Letter of Request.

**13. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7):**

It is requested that the testamentary evidence be given at some time agreeable to all involved in April or early May of 2025. The parties or their representatives, identified above in Sections 6(a), request to be present (in person or by video) at any testimonial deposition.

**14. The fees and costs incurred that are reimbursable will be borne by:**

Fees and costs incurred that are reimbursable under the Convention will be borne by IBM. Payment of such fees and costs by IBM in accordance with this Letter of Request is without prejudice to IBM making subsequent application to an appropriate court for reimbursement.

**15. Reciprocity**

This Court is willing to provide similar assistance to the judicial authorities of the Swiss Confederation, should they ever need such assistance in the United States.

**16. Date of request and signature and seal of the requesting authority:**

WITNESS my hand and seal of said United States District Court for the Eastern District of Texas, Marshall Division, on this _____ day of _____ 2025.

## ATTACHMENT A

### DEFINITIONS

The following definitions are applicable herein, regardless of whether upper- or lower-case letters are used:

1.      "VirtaMove" means and includes VirtaMove Corp., including all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, including but not limited to Appzero Software Corp., Trigence Corp., and all past or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

2.      "IBM" means and includes International Business Machines Corp., including all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

3.      "Virtuozzo" means Virtuozzo International GmbH, including all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, including but not limited to Virtuozzo Inc., SWsoft and/or Parallels, past or present, and all past or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

4.      Unless otherwise indicated below, the terms "you" and "your" mean Virtuozzo and Virtuozzo's, respectively.

5.      "Litigation" means the action captioned consolidated cases: *VirtaMove Corp. v. Hewlett Packard Enterprise Company*, Case No. 6:24-cv-00093-JRG-RSP (E.D. Tex.) (Lead Case), and *VirtaMove Corp. v. International Business Machines Corp.*, Case No. 2:24-cv-00064-

JRG-RSP (E.D. Tex.) (Member Case).

6. "Patents-in-Suit" or "Asserted Patents" means collectively U.S. Patent No. 7,519,814 ("the '814 Patent") and U.S. Patent No. 7,784,058 ("the '058 Patent").

7. "Related Patents" means any patent and patent applications, including any patent application filed or any patent issued outside of the United States, that are related to, in the same family as, and/or claim priority to a common patent or patent application as the Patents-in-Suit or disclose substantially the same subject matter as the Patents-in-Suit.

8. "Technology" means the technology and subject matter purportedly covered by the Patents-in-Suit and/or Related Patents.

9. "Named Inventors" means the inventors listed on the face of each of the Patents-in-Suit.

10. "Virtuozzo System" means the Virtuozzo Systems offered by Virtuozzo, Virtuozzo Inc., SWsoft, or Parallels.

11. "Date" or "day" means the exact day, month, and year, if ascertainable, or if not, the best available approximation (including in relation to other events).

12. "Offer to Sell" means any sale, any offer to sell, any acquisitions, and/or any offer to acquire, to any entity.

13. "Offer to License" means any license, any offer to license, and/or any offer to acquire any rights, to any entity.

14. The term "document" is equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and includes, without limitation, any written, printed, typed, stored, photographed, recorded, or otherwise reproduced communication, compilation, or reproduction, including computer or electronically generated or stored information or data,

whether assertedly privileged or not. "Document" specifically includes all forms of electronic data and tangible things (whether or not a request specifically calls for the production of tangible things). A draft or non-identical copy is a separate document within the meaning of this term.

15.    The term "communication" means the transmittal of information, in the form of facts, ideas, inquiries, or otherwise.

16.    The term "identify" means:

a.    when applicable to a document, to provide at least the control number of the document or, if the document has not been produced, an explanation as to why it has been withheld;

b.    when applicable to an oral communication, to provide at least:

   i.    the date, time, and place of the communication;

   ii.    the manner and substance of the communication;

   iii.    the names of all persons who participated in, listened to, or had access to transcripts or summaries of the communications; and

   iv.    the identity of all documents that memorialize, summarize, record, or directly refer or relate in whole or in part to the communication;

c.    when applicable to a natural person, to provide at least:

   i.    the person's full name and last known residential address;

   ii.    the name and address of the person's last known employer;

   iii.    the person's last known title or position of employment; and

   iv.    if the person is deceased, the person's date of death; and

d.    when applicable to an entity or association, to provide at least:

   i.    the full name of the entity;

      ii.    the last known address of its principal office or place of business;

      iii.    the type of entity *(i.e.,* whether it is a corporation, partnership, or other type of entity);

      iv.    the state, commonwealth, or territory of the United States or foreign jurisdiction in which it is or most recently was registered to do business; and

      v.    if the entity no longer exists, its date of termination.

17.    The term "concerning" means referring to, relating to, reflecting, discussing, describing, showing, commenting on, evidencing, comprising, constituting, or summarizing.

18.    The term "including" means including without limitation.

19.    The terms "related to" and "relating to" mean concerning, alluding, referring, constituting (in whole or in part), describing, discussing, evidencing, mentioning, reflecting, pertaining, involving, depicting, commenting on, embodying, responding, supporting, contradicting, or regarding, as the context makes appropriate.

20.    The term "person" means any natural person or any business, legal, or governmental entity, or association, including without limitation any corporation, partnership, unincorporated association, joint venture, sole proprietorship, or any other organization or group of individuals together with any employees, agents, consultants, and attorneys.

21.    The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb includes also within its meaning all other tenses of the verb so used.

22.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.

23.     Each of the terms "all," "any," and "each" shall be construed as "any and all."

**<u>INSTRUCTIONS</u>**

The following instructions are applicable herein:

1.      Each document is to be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, and as maintained in the ordinary course of business. If multiple copies of a document exist, please produce every copy with notations or markings of any sort that do not appear on other copies.

2.      This subpoena covers documents that exist in electronic form (including without limitation electronic mail, Microsoft Word or other word processing documents, and Portable Document Format (PDF) documents, images, photographs, audio recordings, and video recordings stored on any type of storage device, including flash memory devices, hard drives, back-up tapes, magnetic tapes, and diskettes).

3.      Documents that are maintained in electronic form should be produced in electronic form even if a paper copy of the same document is produced.

4.      Documents attached to each other should not be separated.

5.      Provide the following information for any responsive document or thing withheld from production on the basis that it is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other relevant privilege:

      a.      The author of the document;

      b.      The person(s) for whom the document was prepared, to whom it was sent, and who received copies;

      c.      The date of the document;

      d.      The subject matter of the document;

      e.      The type of document (e.g., letter, memorandum, note, report, etc.);

      f.      The number of pages and attachments; and

      g.      The nature and the basis for the claim of privilege.

6.      If you object to a request, or any part of a request, please produce all documents to which your objection does not apply.

7.      A copy of the Complaint filed in the Litigation is attached as Exhibit A. A copy of the protective order governing the Litigation is attached as Exhibit B.

## ATTACHMENT B

### DOCUMENTS TO BE PRODUCED

1.     Documents sufficient to show any sale, offer for sale, and/or public use in the United States prior to September 21, 2004, including pricing, of the Virtuozzo System.

2.     Documents sufficient to show the structure, function, and operation of the Virtuozzo System sold, offered for sale, and/or publicly used in the United States prior to September 21, 2004, including but not limited to OS virtualization, use of shared libraries, secure containers, and/or Virtuozzo Virtual Environments.

3.     All user manuals and/or operational manuals for the Virtuozzo System sold, offered for sale, and/or publicly used in the United States prior to September 21, 2004.

4.     A complete copy of source code for any version of the Virtuozzo System that was sold, offered for sale, demonstrated to a customer, or used by a potential customer in the United States prior to September 21, 2004.

5.     A sample of any version of the Virtuozzo System that was sold, offered for sale, demonstrated to a customer, or used by a potential customer in the United States prior to September 21, 2004.

6.     Marketing materials, white papers, and/or presentations describing the Virtuozzo System sold, offered for sale, and/or publicly used prior to September 21, 2004.

7.     Virtuozzo patents relating to the Virtuozzo System.

8.     Documents sufficient to show any trade shows at which the Virtuozzo System was shown or demonstrated prior to September 21, 2004.

## ATTACHMENT C

**QUESTIONS FOR TESTIMONY OF CORPORATE REPRESENTATIVE**

1.    Any sale, offer for sale, and/or public use in the United States prior to September 21, 2004 of the Virtuozzo System, including:  (i) the approximate date for each sale, offer for sale, and/or public use; and (ii) the person to whom it was sold or offered for sale.

2.    Structure, function, and operation of the Virtuozzo System sold, offered for sale, and/or publicly used in the United States prior to September 21, 2004, including but not limited to OS virtualization, use of shared libraries, secure containers, and Virtuozzo Virtual Environments.

3.    The authentication of any of the documents produced by Virtuozzo in the Litigation.

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| VIRTAMOVE, CORP.,<br><br>            Plaintiff,<br><br>        v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br>            Defendant. | Case No.  2:24-cv-00093-JRG<br><br>**(LEAD CASE)**<br><br>**JURY TRIAL DEMANDED** |
| VIRTAMOVE, CORP.,<br><br>            Plaintiff,<br><br>        v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.,<br><br>            Defendant. | Case No.  2:24-CV-00064-JRG<br><br>(Member case)<br><br>**JURY TRIAL DEMANDED** |

## THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT AGAINST INTERNATIONAL BUSINESS MACHINES CORP.

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff VirtaMove Corp. (collectively, "Plaintiff" or "VirtaMove") makes the following allegations against Defendant International Business Machines Corp. (collectively, "Defendant" or "IBM"):

## INTRODUCTION AND PARTIES

1.    This complaint arises from Defendant's unlawful infringement of the following United States patents owned by VirtaMove, each of which generally relate to novel containerization systems and methods: United States Patent Nos. 7,519,814 and 7,784,058

1

(collectively, the "Asserted Patents"). VirtaMove owns all right, title, and interest in each of the Asserted Patents to file this case. The only asserted claims in this case are claims 1, 2, 6, 9, and 10 of Patent 7,519,814 and claims 1–4 and 18 of Patent 7,784,058.

2.      VirtaMove, Corp. is a is a corporation organized and existing under the laws of Canada, having its place of business at 110 Didsbury Road, M083, Ottawa, Ontario K2T 0C2. VirtaMove is formerly known as Appzero Software Corp. ("Appzero"), which was established in 2010.

3.      VirtaMove is an innovator and pioneer in containerization. At a high level, a container is a portable computing environment. It can hold everything an application needs to run to move it from development to testing to production smoothly. Containerization lowers software and operational costs, using far fewer resources. It provides greater scalability (for example, compared to virtual machines). It provides a lightweight and fast infrastructure to run updates and make changes. It also encapsulates the entire code with its dependencies, libraries, and configuration files, effectively removing errors that can result from traditional configurations.

4.      For years, VirtaMove has helped customers repackage, migrate and refactor thousands of important, custom, and packaged Windows Server, Unix Sun Solaris, & Linux applications to modern, secure operating systems, without recoding. VirtaMove's mission is to move and modernize the world's server applications to make organizations more successful and secure. VirtaMove has helped companies from many industries achieve modernization success.

5.      The use of containerization has been growing rapidly. For instance, one source predicted the application containers market to reach $2.1 billion in 2019 and $4.3 billion in 2022—a compound annual growth rate ("CAGR") of 30%. *See, e.g.*, https://digiworld.news/news/56020/application-containers-market-to-reach-43-billion-by-2022.

Case 2:24-cv-00093-JRG    Document 131-1    Filed 02/07/25    Page 21 of 51 PageID #:
11516
Case 2:24-cv-00093-JRG    Document 111    Filed 12/05/24    Page 3 of 13 PageID #:
5757

Another source reported the application containers market had a market size of $5.45 billion in 2024 and estimated it to reach $19.41 billion in 2029—a CAGR of 28.89%. *See, e.g.*, https://www.mordorintelligence.com/industry-reports/application-container-market.

6.      Defendant International Business Machines Corp. is a New York corporation. IBM has a principal place of business at One New Orchard Road, Armonk, New York 10504. IBM may also be served with process via its registered agent Amanda Garcia, at 330 North Brand Blvd, Glendale, California 91203.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents.

9.      Venue is proper in this District. For example, IBM has a regular and established place of business, including, e.g., at 1700 Summit Avenue, Plano, Texas 75074.

## ADDITIONAL FACTS

10.      It is reported by 451 Research that:

Since September 2011, IBM Distinguished Engineer Mac Devine has served as the Director and CTO for the SmartCloud portfolio

> within IBM Global Technology Services (GTS). In practice, that makes him responsible for SmartCloud's technical strategy and architecture, and for choosing SmartCloud partners. Most recently, Devine has been involved in a partnership between AppZero and IBM to provide application migration services to enterprises as they adopt cloud computing.

Ex. 5 at 1. It is further reported that:

> It was Devine who performed the due diligence exercise in 2011 that reviewed IBM's options for migration tools. He narrowed down the options to CohesiveFT and AppZero, and then he introduced the companies to each other. Through the resulting Elastic Enterprise Applications partnership, Cohesive handles networking and automation for Linux, while AppZero offers a Windows virtualized application container. Devine is proud that the partners got an offering up and operational in six weeks.

*Id.* at 3.

11.    Additionally, representatives of IBM met with representatives of VirtaMove/VirtaMove in 2016, 2017, 2018, and 2021 to discuss and demo the V-Migrate/AppZero software and its technology for either partnership, use, distribution, and/or investment. Either IBM would have known, as a result of its "due diligence" and ongoing discussions, that VirtaMove/AppZero marketed and/or advertised their V-Migrate/AppZero software was patented as early as 2011, or IBM intentionally stayed willfully blind to this fact. After the demos and disclosures from VirtaMove/AppZero, the technology advertised and marketed by VirtaMove/AppZero has made its way into the Accused Products of IBM as described below.

## <u>COUNT I</u>

## <u>INFRINGEMENT OF U.S. PATENT NO. 7,519,814</u>

12.    VirtaMove realleges and incorporates by reference the foregoing paragraphs as if

fully set forth herein.

13.    VirtaMove owns all rights, title, and interest in U.S. Patent No. 7,519,814 ('814 patent), titled "System for Containerization of Application Sets," issued on April 14, 2009. A true and correct copy of the '814 Patent is attached as Exhibit 1.

14.    On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., IBM's IBM Cloud Kubernetes Service, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '814 patent, for example:

## Run Kubernetes at enterprise scale

Experience a certified, managed Kubernetes solution, built for creating a cluster of compute hosts to deploy and manage containerized apps on IBM Cloud®. IBM manages the master, freeing you from having to administer the host OS, container runtime and Kubernetes version-update process.

https://www.ibm.com/products/kubernetes-service.

15.    The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

16.    Defendant's infringement has been and is willful. Defendant knew of VirtaMove, its products, and at least one of the patents long before this suit was filed and at least as early as 2012. For example, on or about February 2012, in connection with the prosecution of U.S. Patent

App. No. 12/146,322 (assigned to IBM), the examiner cited U.S. Pub. No. 2005/0060722 (which issued as the '814 Patent) against IBM. On or about November 26, 2012, in connection with the prosecution of U.S. Patent No. 8,893,306 (assigned to IBM), the examiner cited the '814 Patent against IBM. On or about June 2015, in connection with the prosecution of U.S. Patent No. 9,166,865 (assigned to IBM), the examiner cited U.S. Pub. No. 2005/0060722 against IBM. Defendant knew, or should have known, that its conduct amounted to infringement of the '814 patent. Accordingly, Defendant is liable for willful infringement.

17.     Defendant also knowingly and intentionally induces infringement of claims of the '814 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '814 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '814 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '814 patent. Defendant does so, knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '814 patent, thereby specifically intending for and inducing its customers to infringe the '814 patent through the customers' normal and customary use of the Accused Products.

18.     Defendant has also infringed, and continue to infringe, claims of the '814 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a

6

staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '814 patent, in violation of 35 U.S.C. § 271(c).

19.    The Accused Products satisfy all claim limitations of claims 1, 2, 6, 9, and 10 of the '814 patent. A claim chart comparing independent claims 1, 2, 6, 9, and 10 of the '814 patent to a representative Accused Product, is attached as Exhibit **2**, which is hereby incorporated by reference in its entirety.  These are the only asserted claims of the '814 patent in this case.

20.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured VirtaMove and is liable for infringement of the '814 patent pursuant to 35 U.S.C. § 271.

21.    As a result of Defendant's infringement of the '814 patent, VirtaMove is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court. VirtaMove is entitled to past damages under 35 U.S.C. § 287. VirtaMove has complied with the requirements of 35 U.S.C. § 287 and is not aware of any unmarked products that practice the claims of the '814 patent. In the alternative, either VirtaMove's product was marked before the filing of this lawsuit, or no requirement for marking applies.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 7,784,058

22.    VirtaMove realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

23.    VirtaMove owns all rights, title, and interest in U.S. Patent No. 7,784,058 ('058

patent), titled "Computing System Having User Mode Critical System Elements as Shared Libraries," issued on August 24, 2010. A true and correct copy of the '058 patent is attached as Exhibit 3.

24.      On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., IBM's IBM Cloud Kubernetes Service, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '058 patent, for example:

### Run Kubernetes at enterprise scale

Experience a certified, managed Kubernetes solution, built for creating a cluster of compute hosts to deploy and manage containerized apps on IBM Cloud®. IBM manages the master, freeing you from having to administer the host OS, container runtime and Kubernetes version-update process.

https://www.ibm.com/products/kubernetes-service.

25.      The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

26.      Defendant's infringement has been and is willful. Defendant knew of VirtaMove, its products, and at least one of the patents long before this suit was filed and at least as early as 2015. For example, U.S. Patent No. 9,176,713 (assigned to IBM) issued on November 3, 2015 and identifies the '058 Patent under "References Cited."  Additionally, U.S. Patent No. 9,934,055

(assigned to IBM) issued on April 3, 2018 and identifies the '058 Patent under "References Cited." Defendant knew, or should have known, that its conduct amounted to infringement of the '058 patent. Accordingly, Defendant is liable for willful infringement.

27.    Defendant also knowingly and intentionally induces infringement of claims of the '058 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '058 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed. Despite this knowledge of the '058 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '058 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '058 patent, thereby specifically intending for and inducing its customers to infringe the '058 patent through the customers' normal and customary use of the Accused Products.

28.    Defendant has also infringed, and continue to infringe, claims of the '058 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '058 patent, in violation of 35 U.S.C. § 271(c).

29.    The Accused Products satisfy all claim limitations of claims 1–4 and 18 of the '058

patent. A claim chart comparing claims 1–4 and 18 of the '058 patent to a representative Accused Product, is attached as Exhibit **4**, which is hereby incorporated by reference in its entirety. Claims 1–4 and 18 are the only claims of the '058 patent asserted in this case.

30.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured VirtaMove and are liable for infringement of the '058 patent pursuant to 35 U.S.C. § 271.

31.     As a result of Defendant's infringement of the '058 patent, VirtaMove is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court. VirtaMove is entitled to past damages under 35 U.S.C. § 287. VirtaMove has complied with the requirements of 35 U.S.C. § 287. 35 U.S.C. § 287 requires the marking of a "patented articles," however VirtaMove makes, offers for sale, and/or sells software and software support services. VirtaMove is unaware of instances where it made, offered for sale, and/or sold "a processor," as required by claim 1 of the '058 patent, with these products. Thus, VirtaMove is not required to mark any of these products that it makes, offers for sale, and/or sells. In the alternative, to the extent VirtaMove is found to have "made," "offered for sale," and/or "sold" "patented articles," including to the extent VirtaMove is found to have made, offered for sale, and/or sold products with "a processor" as required by claim 1 of the '058 patent, VirtaMove's products were marked before the filing of this lawsuit.

### **PRAYER FOR RELIEF**

WHEREFORE, VirtaMove respectfully requests that this Court enter:

a.      A judgment in favor of VirtaMove that Defendant has infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

b.    A judgment in favor of Plaintiff that Defendant has willfully infringed the '814 and '058 patents;

c.    A permanent injunction prohibiting Defendant from further acts of infringement of each of the '814 and '058 patents;

d.    A judgment and order requiring Defendant to pay VirtaMove its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of each of the Asserted Patents;

e.    A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to VirtaMove, including without limitation, pre-judgment and post-judgment interest;

f.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to VirtaMove its reasonable attorneys' fees against Defendant; and

g.    Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

VirtaMove, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: December 5, 2024          Respectfully submitted,

*/s/ Reza Mirzaie*

Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
Amy E. Hayden (CA SBN 287026)
ahayden@raklaw.com
Jacob R. Buczko (CA SBN 269408)
jbuczko@raklaw.com
James S. Tsuei (CA SBN 285530)
jtsuei@raklaw.com
James A. Milkey (CA SBN 281283)
jmilkey@raklaw.com
Christian W. Conkle (CA SBN 306374)
cconkle@raklaw.com
Jonathan Ma (CA SBN 312773)
jma@raklaw.com
Daniel Kolko (CA SBN 341680)
dkolko@raklaw.com
Mackenzie Paladino (NY SBN
mpaladino@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

Qi (Peter) Tong (TX SBN 24119042)
ptong@raklaw.com
**RUSS AUGUST & KABAT**
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: (310) 826-7474

*Attorneys for Plaintiff VirtaMove, Corp.*

## CERTIFICATE OF SERVICE

I certify that on December 5, 2024 a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

*/s/ Reza Mirzaie*
Reza Mirzaie

## MEET AND CONFER CERTIFICATION; CONSENT OF OPPOSING COUNSEL

VirtaMove sought consent from IBM's counsel to file this amendment under Fed. R. Civ. P. 15(a)(2), and IBM responded "IBM does not oppose VirtaMove's proposed amendment to the complaint."

*/s/ Reza Mirzaie*
Reza Mirzaie

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**PROTECTIVE ORDER**

WHEREAS, Plaintiff VirtaMove, Corp. ("Plaintiff") and Defendants Hewlett Packard Enterprise Co. ("HPE") and International Business Machines Corp. ("IBM") (HP and IBM collectively, "Defendants"), each a "Party" and hereafter together referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands in the above-captioned case (the "Action") by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1

1.     Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information or material ("Protected Material").   Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information or material as follows: "CONFIDENTIAL."   The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought.   For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

2.     Any document produced under Patent Rules 2-2, 3-2, and/or 3-4 before issuance of this Order with the designation "Confidential" or "Confidential – Outside Attorneys' Eyes Only" shall receive the same treatment as if designated "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY" under this Order, unless and until such document is redesignated to have a different classification under this Order.

3.     With respect to documents, information or material designated "CONFIDENTIAL, "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "RESTRICTED CONFIDENTIAL –

provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations.  All copies, reproductions, extracts, digests and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.      A designation of Protected Material (i.e., "CONFIDENTIAL," "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE") may be made at any time.   Inadvertent or unintentional production of documents, information or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment.  Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated.  The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information or material derived from or based thereon.

5.      "CONFIDENTIAL" documents, information and material may be disclosed only to the

_____

ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE," both individually and collectively.

following persons, except upon receipt of the prior written consent of the designating party,

upon order of the Court:

(a)     outside counsel of record in this Action for the Parties;

(b)     employees of such outside counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

(c)     in-house counsel for the Parties (including such in-house counsel's immediate paralegals and staff) who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action;

(d)     up to and including 3 designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that either party may in good faith request the other party's consent to designate one or more additional representatives, the other party shall not unreasonably withhold such consent, and the requesting party may seek leave of Court to designate such additional representative(s) if the requesting party believes the other party has unreasonably withheld such consent;

(e)     outside consultants or experts (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that:

    (1) such consultants or experts are not presently employed by the Parties hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Exhibit A hereto and the same is served upon the producing Party with (i) the individual's name and business title; (ii) business address; (iii) business or profession; (iv) a current curriculum vitae; (v) any previous or current relationship (personal or professional) with any Party; (vi) a list of other cases in which the individual has testified (at trial or deposition) within the last five (5) years; and (vii) all patents or patent applications in which the individual is identified as an inventor, applicant, is involved in prosecuting or maintaining, or has any pecuniary interest at least ten (10) days before access to the Protected Material is to be given to that consultant or expert, to allow the producing Party to notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert.  The Producing party shall have five (5) business days to object to and notify the Receiving party in writing. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order;

4

(f)     independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action; and

(g)     the Court and its personnel.

6.     A Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information or material.

7.     Documents, information or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose.  Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action.  Any such copies, duplicates, extracts, summaries or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8.     To the extent a producing Party believes that certain Protected Material qualifying to be designated "CONFIDENTIAL" is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing

in a database or databases) ("Source Code Material"), the producing Party may designate

such Protected Material as "RESTRICTED CONFIDENTIAL – SOURCE CODE."

9.    For Protected Material designated "RESTRICTED CONFIDENTIAL – ATTORNEYS'

EYES ONLY," access to, and disclosure of, such Protected Material shall be limited to

individuals listed in paragraphs 5(a-c) and (e-g); provided, however, that access by in-

house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no

competitive decision-making authority on behalf of the client.  However, for Protected

Material designated "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY"

that is produced by IBM in the above-captioned matters or by VirtaMove in the IBM matter

(Case No. 2:24-cv-00064-JRG), access to, and disclosure of, such Protected Material shall

be limited to only the individuals listed in paragraphs 5(a-b) and (e-g).

10.    For Protected Material designated "RESTRICTED CONFIDENTIAL – SOURCE

CODE," the following additional restrictions apply:

(a)    Access to a Party's Source Code Material shall be provided only on one "stand-
alone" computer (that is, the computer may not be linked to any network, including
a local area network ("LAN"), an intranet or the Internet) (the "Source Code
Computer").   The Source Code Computer may only be located at a mutually-
agreed upon office of the producing Party's outside counsel, or at another location
mutually agreed by the Parties.  The receiving Party's representative may take
notes but is prohibited from circumventing the limitations of this Protective Order
through notetaking, *e.g.*, by transcribing code.  The producing Party shall also be
entitled to visually monitor the receiving Party's activities in the Source Code
Material viewing room from outside such room, through a glass wall or window,
so long as the producing Party cannot hear the receiving Party or see the contents
of the receiving Party's notes or the display of the Source Code Computer and only
to ensure that the provisions of this Order are being adhered to.  The producing
Party may not record (visually, audibly or by other means) the activities of the
receiving Party's representatives.  The producing Party shall not review any notes
taken.  The receiving Party shall maintain a log of all persons accessing the Source
Code Material on the Source Code Computer on behalf of a receiving Party
identifying, for each and every time any source code is viewed, accessed, or
analyzed: (1) the name of each person who accessed the code; (2) the date and time
of access; and (3) the date and time at which such access ended; the producing

Party shall have the right to confirm the identities of persons accessing such Source Code Material by inspecting and photocopying government-issued photo identification for inclusion in such log. No one inspecting Source Code Material is permitted in the Source Code Material viewing room while in possession of any electronic device or device capable of receiving, recording, or retransmitting any electronic signals (as further detailed in paragraph 10(m) below). To facilitate expert trial preparation, the Parties may inspect Source Code up through the close of expert discovery, and subsequent inspection may occur up through trial with the consent of the producing Party, whose consent shall not be unreasonably withheld. For purposes of clarity, this is not an agreement to allow a Party to print source code after the close of fact discovery or to supplement an expert report based on continued inspection of Source Code after the close of fact discovery;

(b)    The receiving Party's access to Source Code Material shall be limited to outside counsel and up to 2 outside consultants or experts[2] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) in the HPE case and up to 4 outside consultants in the IBM case retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above. Prior to the first inspection of any requested Source Code Material, the receiving Party shall provide ten (10) business days' notice of the Source Code Material that it wishes to inspect. The receiving Party shall provide three (3) business days' notice prior to any additional inspection. When requesting inspection of a Party's Source Code Material, the receiving Party shall identify the person permitted above who will inspect the producing Party's Source Code Material on behalf of a receiving Party, including without limitation members of a receiving Party's outside law firm;

(c)    The receiving Party shall make reasonable efforts to restrict its requests for such access to the Source Code Computer to normal business hours of the location, which for purposes of this paragraph shall be 9:00 a.m. through 6:00 p.m. on business days (i.e., weekdays that are not federal holidays). However, upon reasonable notice from the receiving party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the Source Code Computer outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel or any location agreed to under paragraph 10(a) above shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action;

(d)    The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the Source Code Computer in order to access the

_____

[2] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other clerical staff (*i.e.*, those individuals not engaged in the substantive review of Source Code Material). But each such report or staff who substantively reviews the Source Code Material will be subject to the disclosure requirements of Paragraph 5(e) above and will count as a separate consultant/expert.

produced Source Code Material on the Source Code Computer.  The producing Party shall also provide a mouse, full-sized keyboard, and a separate monitor of at least 22 inches in size to be connected to the Source Code Computer upon the timely request of the receiving Party;

(e)    The producing Party will produce Source Code Material in computer searchable format on the Source Code Computer as described above, and the producing Party and receiving Party will meet and confer regarding acceptable and non-burdensome search and analysis software tools appropriate for the type of Source Code Material being produced, provided, however, that the receiving Party possesses an appropriate license to such software tools.  The receiving Party must provide the producing Party with the CD, or DVD or website link(s) containing the agreed-upon requested software tool(s) to be installed on the Source Code Computer no later than five (5) business days before the review.  The producing Party shall install and make the agreed-upon requested software tools available for use on the Source Code Computer provided that the agreed-upon requested search software is compatible with the operating system, and other software necessary to make the Source Code available for inspection, installed on the Source Code Computer, does not prevent or impede the receiving Party's access to the Source Code Material produced for inspection on Source Code Computer and does not side-step any of the security features enabled on a Source Code Computer;

(f)    The receiving Party shall be permitted to have printed by the producing Party a reasonable number of printouts of Source Code Material and up to 3 extra photocopy sets of the printed Source Code Material, reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, depositions, or trial.  Except as provided herein, no person shall copy, e-mail, transmit, upload, download, print, photograph, or otherwise duplicate any portion of the designated Source Code Material.  The receiving Party shall request to have printed only such limited portions of the Source Code Materials and shall not request paper copies for the purpose of reviewing Source Code Material.  In no event may the receiving Party request to have printed more than 20 consecutive pages, or more than 500 standard pages total, of Source Code Material without prior written approval of the producing Party.[3]  The receiving Party's reviewers will be permitted to format printouts (*e.g.* the color and font of text generated in NotePad++ printouts), and to save PDF printouts to a folder on the desktop of the Source Code Computer for printing by the producing Party. Upon the receiving Party's request to have printed any portions of Source Code Material, such request shall be printed and collected by the producing Party.  The producing Party shall Bates number, copy and label "RESTRICTED CONFIDENTIAL - SOURCE CODE" any pages printed at the request of the receiving Party, and either 1) make the printed pages available for pickup at the location for source code inspection within 3 business days of printing

---

[3] HPE and IBM only agree to this provision for the above-captioned case given the facts and circumstances of the above-captioned case, and HPE and IBM do not concede that this is an acceptable number in all cases.

or 2) delivered the printed pages to the receiving Party within four (4) business days of printing, at the option of the receiving Party.  If, following its inspection, the receiving Party believes in good faith that it requires modifications to the page limits herein, the Parties shall make good-faith efforts to resolve the dispute, and failing such resolution, the receiving Party may move the Court for relief;

(g)     A receiving Party may include excerpts of Source Code Material in a pleading, exhibit, expert report, discovery document, deposition transcript, or other Court document (collectively, "Court Documents"), provided that the Source Code Documents are appropriately designated as "RESTRICTED CONFIDENTIAL – SOURCE CODE" under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders;

(h)     To the extent portions of Source Code Material are quoted in a Court Document, either (1) the entire Court Document will be stamped and treated as "RESTRICTED CONFIDENTIAL – SOURCE CODE" or (2) those pages containing quoted Source Code Material will be separately stamped and treated  as "RESTRICTED CONFIDENTIAL – SOURCE CODE";

(i)     No electronic copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create Court Documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically;

(j)     Should such printouts or photocopies be transferred back to electronic media, such media shall be labeled "RESTRICTED CONFIDENTIAL – SOURCE CODE" and shall continue to be treated as such;

(k)     If the receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the printouts or photocopies at: (1) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (2) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (3) any intermediate location reasonably necessary to transport the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or deposition).  Source Code Material, in whatever form, including as an excerpt or in notes, shall not be transmitted (*e.g.*, by email) or taken outside the territorial United States or be made the subject of a "deemed" export within the meaning of US export control laws, without the express prior written consent of the producing Party;

(l)     A producing Party's Source Code Material may only be transported by the receiving

Party at the direction of a person authorized under paragraph 10(b) above to another person authorized under paragraph 10(b) above, via hand carry, Federal Express or other similarly reliable courier with tracking, except as provided in paragraph 10(k) above. Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet; and

(m)    A receiving Party shall not copy, remove, or otherwise transfer any portion of the Source Code material onto any recordable media or recordable device. The receiving Party is prohibited from bringing electronic devices (other than medical devices) into the Source Code Material viewing room, including but not limited to laptops, cellular phones, thumb drives, hard drives, tape drives, modems, modem cards, floppy drives, zip drives, cameras, voice recorders, or any other electronic device. A separate, secure, and substantially private breakout room convenient to the review room will be provided where the receiving Party's reviewer may store their electronic devices prior to entering the Source Code Material viewing room.

(n)    To facilitate secure electronic note-taking, the producing Party shall provide a separate "stand-alone" laptop (the "Note-taking Laptop") located in Source Code Material viewing room. The Note-taking Laptop shall be equipped with Microsoft Word and Microsoft OneNote, or (after reasonable notice to the reviewing Party) equivalent software. The parties shall meet and confer if any other note taking software is requested for use on the Note-taking Laptop, and such request shall not be unreasonably withheld. The producing Party shall provide for any reviewer to load notes, including electronic documents, onto the note-taking laptop prior to a review session and to retrieve notes from the note-taking laptop after a review session, for example by supervised use of a USB storage device.  The receiving Party may not copy entire lines[4] or commands of the Source Code Material into the notes.  Any notes taken and removed from the Note-taking Laptop by the Receiving Party may only be accessed or viewed by those who are entitled to have access to Source Code Material as specified herein. The producing Party is entitled to inspect the filenames and file types of all files loaded onto or removed from the Note-taking Laptop at the time of loading or removal, but not the contents of the notes.  Such inspection is agreed not to be a waiver of any privilege.

(o)    At the request of a Receiving Party with 7 days of notice, a Producing Party shall make the Producing Party's source code available on a computer, in searchable form, at a depositions of any of the Producing Party's following witnesses: 1) Producing Party's employees who have access to source code in the ordinary course of business 2) Producing Party's corporate representatives designated on one or more topics related to source code 3) Producing Party's experts who opine on topics related to source code.

---

[4] This is not intended to prohibit taking notes that overlap with very short lines of code, such as the names of variables, method calls, or return instructions.

11.     Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the Party's Protected Material that is designated as "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY " and/or "RESTRICTED CONFIDENTIAL – SOURCE CODE" (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one (1) year after its conclusion, including all appeals.  To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between any individuals with access to HIGHLY SENSITIVE MATERIAL and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application (or participate in or assist with claim amendments of any patent) pertaining to the field of invention of the patents-in-suit during the period of time when these prohibitions remain in effect.  To avoid any doubt, this paragraph does not restrict any recipient(s) of HIGHLY SENSTIVE MATERIAL's ability to participate in a reissue protest, *ex parte* reexamination, *inter partes* reexamination, *inter partes* review, or other form of post-grant review.

12.     Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity.  If documents, information or

other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity.  Any Party that inadvertently or unintentionally produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information or other material.  The recipient(s) shall gather and return all copies of such documents, information or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

13.    There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

14.    Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (a) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (b) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (c) although not identified as an author, addressee,

or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (d) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (e) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (f) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (g) court reporters and videographers; (h) the Court; or (*i*) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

15.     Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" pursuant to this Order.  Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.  Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY."

16.     Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court.  The filing party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing.  Exhibits to a filing shall conform to

the labeling requirements set forth in this Order.  If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on confidential documents, information or material, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

17.   The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any agreement among the parties, subject to any pretrial or trial order issued by this Court, and subject to the Standing Order Regarding Protection of Proprietary and/or Confidential Information to be Presented to the Court During Motion and Trial Practice dated June 1, 2016.

18.   A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn.  If the designating Party does not agree to redesignation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief.  Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper.  Such application shall be treated procedurally as a motion to compel pursuant to Federal Rules of Civil Procedure 37, subject to the Rule's provisions relating to sanctions.   In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met.   Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

19.   Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this

Order, shall be informed that he or she is subject to the terms and conditions of this Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

20. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties," and each a "Third Party") and in the event that such Third Parties contended the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

21. To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL" or "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY" any documents, information or other material, in whole or in part, produced or given by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information or other material so produced or given shall be treated as "CONFIDENTIAL" in accordance with this Order.

22. The provisions of this Order shall continue to be binding after final termination of this case until a producing Party agrees otherwise in writing or a court order otherwise directs. Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been

admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request. Notwithstanding the foregoing, outside counsel of record shall be entitled to maintain copies of all pleadings, expert reports, motions and trial briefs (including all supporting and opposing papers and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition transcripts (and exhibits thereto), trial transcripts and hearing transcripts, and exhibits offered or introduced into evidence at any hearing or trial, emails and their attachments, and their attorney work product which refers or is related to any DESIGNATED MATERIAL, and will continue to be bound by this Order after the conclusion of this Action. This provision does not apply to the Court, including court personnel and the Court's reporter. Any destruction obligations under this Protective Order shall not apply to electronically-stored information in archival form stored on backup tapes or computer servers that are created only for disaster recovery purposes, provided that such electronic archives are not used as reference materials for a receiving Party's business operations.

23.    The failure to designate documents, information or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof.   The entry of this Order and/or the production of documents, information and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

24.    Any Party knowing or believing that any other party is in violation of or intends to violate

this Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances.  Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

25.    Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

26.    Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

27.    Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

**So Ordered this**

**Jun 21, 2024**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**APPENDIX A**
**UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING**
**PROTECTIVE ORDER**

I, _____, declare that:

1.   My address is _____.

     My current employer is _____.

     My current occupation is _____.

2.   I have received a copy of the Protective Order in this action.  I have carefully read and

     understand the provisions of the Protective Order.

3.   I will comply with all of the provisions of the Protective Order.  I will hold in confidence,

will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" that is disclosed to me.

4.      Promptly upon termination of these actions, I will return all documents and things designated as  "CONFIDENTIAL," "RESTRICTED CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

2