# EXHIBIT 6

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § | |
| | § | |
| Defendant. | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT INTERNATIONAL BUSINESS MACHINES CORP.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES (NO. 15)**

Pursuant to the Federal Rules of Civil Procedure, International Business Machines Corp. ("Defendant" or "IBM") hereby supplements its objections and responses to Plaintiff VirtaMove Corp.'s ("Plaintiff" or "VirtaMove") Second Set of Interrogatories (No. 15) served on October 23, 2024. These responses are based on the information presently available to IBM after a reasonable investigation. These objections and responses are without prejudice to IBM's right to use or rely on subsequently discovered information, as well as otherwise supplement these responses.

## GENERAL OBJECTIONS

1. IBM objects to VirtaMove's Interrogatories to the extent that they are broader than, or purport to impose obligations upon IBM beyond those required by the Federal Rules of Civil Procedure, the Local Rules of this Court or other guidance provided by the Court.

2. IBM's discovery and investigation in connection with this case are ongoing. As a result, IBM's responses concern information obtained and reviewed to date, and are given without prejudice to its right to amend or supplement its responses after considering information obtained or reviewed through further discovery and investigation.

3. IBM objects to each Interrogatory to the extent it seeks information or documents protected by a claim of privilege, including attorney-client privilege, the work product doctrine, and/or any other applicable privileges or immunities, and to the extent it seeks information or documents not relevant to the subject matter of the present litigation and/or not proportional to the needs of the present litigation.

4. IBM objects to each Interrogatory to the extent it (i) uses terms or phrases that are not defined or understood, or (ii) fails to identify with reasonable particularity the information requested. IBM will not speculate as to the meaning ascribed to VirtaMove's terms or phrases, and IBM objects to such Interrogatories on the grounds that they are vague and ambiguous.

5. IBM objects to each Interrogatory to the extent it calls for a legal opinion or conclusion.

6. IBM objects to each Interrogatory as improper and premature to the extent it seeks an expert opinion or conclusion. IBM will provide its expert reports in accordance with the Docket Control Order in this action.

7. IBM objects to each Interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not relevant to any claim or defense, is not proportional to the needs of the case, and/or is not appropriately limited in time or scope. IBM does not concede that the information sought by the Interrogatories is relevant to this action, and IBM preserves all objections to competency, relevancy, materiality, and admissibility of the information requested. IBM reserves the right to object to further discovery into any subject matter sought by the Interrogatories.

8. IBM objects to each Interrogatory to the extent it purports to require IBM to identify or describe or identify "each," "any," or other similarly expansive, infinite, or all-inclusive terms as overbroad and unduly burdensome.

9. IBM objects to each Interrogatory to the extent it is not limited in time and seeks information for periods of time that is not relevant to any claim or defense and is not otherwise proportional to the needs of this case.

10. IBM objects to each Interrogatory to the extent it seeks information that IBM is not permitted to disclose pursuant to a privacy right of a third party. IBM also objects to the Interrogatories to the extent they seek information which, if furnished, would violate a domestic or foreign judicial order, confidentiality or protective order, stipulation of confidentiality, or confidentiality agreement that has been entered into with respect to such information. IBM also

objects to the Interrogatories to the extent they seek information or documents protected from discovery by one or more protective orders in any separate proceeding(s), or other privileges or immunities based upon statute or recognized at common law, and/or Federal Rule of Evidence 501.

11. Inadvertent production of privileged information by IBM shall not constitute a waiver of any applicable privilege or immunity nor shall the production of any such information in responding to these Interrogatories or any other discovery requests be construed as a waiver of any objection to its admissibility, and IBM reserves all rights to recall any privileged information that is inadvertently produced. IBM's response to any particular Interrogatory shall not be construed as an acknowledgement or representation by IBM that any information responsive to that Interrogatory exists and/or is properly discoverable.

12. IBM objects to the Interrogatories to the extent they seek information that is already in VirtaMove's possession, custody, or control.

13. IBM objects to the Interrogatories to the extent they seek information that is not in IBM's possession, custody, or control.

14. The General Objections set forth above are made as to the matters that are clearly objectionable from the face of the Interrogatories. These objections are made without prejudice to and without waiver of IBM's right to object on all appropriate grounds to the specific information sought by each Interrogatory. IBM's response to any Interrogatory is not a waiver of its objections or its right to object to any additional, supplemental, or further Interrogatory, or any part thereof.

15. Neither these General Objections nor the Specific Objections and Responses set forth below are an admission relative to the existence of any information, documents, or things

sought, the relevance or admissibility of any response, or the truth or accuracy of any statement or characterization contained in any particular Interrogatory.

16. IBM incorporates by references the General Objections set forth herein into the Specific Objections and Responses set forth below. IBM may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection does not waive any General Objection to the Interrogatory. Moreover, IBM does not waive its right to amend its objections.

17. IBM objects to any factual characterizations in VirtaMove's Interrogatories. By responding, IBM does not accept or admit any of VirtaMove's factual characterizations.

18. IBM objects to each Interrogatory as overbroad and unduly burdensome to the extent it calls for information that is publicly available, is as easily obtained by VirtaMove as by IBM, or is already in the possession of VirtaMove.

19. IBM objects to the definition of "Defendant," "IBM," "you," and "your" as vague, overbroad, and unduly burdensome. For purposes of these responses, IBM understands "Defendant," "IBM," "you," and "your" as referring to International Business Machines Corp.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. IBM objects to the "Definitions" and "Instructions" sections to the extent they purport to alter the plain meaning and/or scope of any specific Request. IBM states that it will respond based on the commonly understood meanings of the terms used in the Requests and the Rules unless further defined herein.

2. IBM objects to VirtaMove's definition of "Accused Product(s)" as overbroad and unduly burdensome and to the extent that the definitions inaccurately attribute technical properties to any IBM products or products by others. Additionally, IBM objects to the definitions as vague and ambiguous to the extent that they fail to adequately define terms or fail to describe the

4

information sought with reasonable particularity. IBM further objects to the definition of "Accused Product" as overbroad, unduly burdensome, and seeking information not relevant to the subject matter of this proceeding, including to the extent it seeks to encompass products that VirtaMove does not accuse of practicing the Asserted Patents. IBM further objects to the definition of "Accused Product(s)" as calling for a legal conclusion and mischaracterizing the facts.

3. IBM objects to VirtaMove's definitions of "correspondence" and "communication" as overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence, and/or not proportional to the needs of the case to the extent that the definition at least to the extent they purport to impose on IBM any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and applicable rules and orders of the Court. IBM further objects to these definitions as improperly seeking to encompass documents and information outside the scope of discovery contemplated by the Court's rules and the Federal Rules of Civil Procedure.

4. IBM objects to VirtaMove's definitions of "Relevant Instrumentalities" and "Related Instrumentalities" as vague, ambiguous, overbroad, and unduly burdensome to the extent that the definition purports to include products not accused of infringement in this action. IBM objects to any other definition that incorporates the definition of "Accused Product(s)."IBM objects to VirtaMove's definitions of "relate," "relates to," "related to," and "relating to" as overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence, and/or not proportional to the needs of the case to the extent that the definition at least to the extent it purports to impose on IBM any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and applicable rules and orders of the Court. IBM further objects to these definitions as improperly

seeking to encompass documents and information outside the scope of discovery contemplated by the Court's rules and the Federal Rules of Civil Procedure.

5. IBM objects to VirtaMove's definition of "products" as vague, ambiguous, overbroad, and unduly burdensome to the extent that the definition purports to include products that are not relevant to in this action.

## INTERROGATORY RESPONSES

In the following responses, "Counterclaim Patents" shall mean U.S. Patent Nos. 9,722,858 (the "'858 Patent"), 9,697,038 (the "'038 Patent"), 10,606,634 (the "'634 Patent"), and 8,943,500 (the "'500 Patent"). "Counterclaim Asserted Claims" shall mean the claims of the Counterclaim Asserted Patents identified in IBM's Answer and IBM's infringement contentions, including any amendments or supplements thereof.

**INTERROGATORY NO. 15:**

Separately, for each Counterclaim Patent, chronologically describe the development of the claimed subject matter from conception to reduction to practice (even if actual reduction to practice occurred after constructive reduction to practice), including but not limited to the claimed subject matter's date of conception, date of reduction to practice, date of "invention" under 35 U.S.C. § 102(g), and the date of first experimental and/or test use, and identify each person involved in the development of the claimed subject matter from conception to reduction to practice of each Counterclaim Asserted Claim.

**RESPONSE TO INTERROGATORY NO. 15 (November 22, 2024):**

IBM incorporates by reference all General Objections as well as its objections to the definitions and instructions as if fully stated herein. IBM objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any joint defense privilege or doctrine. IBM objects to this Interrogatory

6

as compound and containing multiple subparts asserted in a single Interrogatory. IBM further objects to this Interrogatory to the extent it calls for a legal conclusion or prematurely seeks expert discovery. IBM objects to this Interrogatory as overbroad and unduly burdensome, and not proportional to the needs of this action.

Subject to and without waiver of these and its General Objections, IBM responds as follows:

**The '500, '634, and '038 Patents**

The inventions of the Counterclaim Asserted Claims of the '500, '634, and '038 patents were conceived of and constructively reduced to practice no later than April 10, 2009, by filing U.S. Application No. 12/421,691. To the extent that VirtaMove relies on art that pre-dates the Priority Filing, IBM reserves its right to rely on the conception and actual reduction to practice of the subject matter of the asserted claims of the '500, '634, and '038 patents.

Dr. Allan Havemose is the sole named inventor of the '500, '634, and '038 patents. Dr. Havemose conceived of and reduced to practice a system and method that, in part, can create isolated environments that enhance operational integrity and security through dynamic resource allocation and updates in isolated environments in response to application demands. No later than 2003, Dr. Havemose began developing checkpoint technology for high availability products. Between 2006 and 2008, Dr. Havemose continued to develop checkpointing and high-availability technology to be used on financial and telecommunications platforms. Building on the checkpointing and high-availability techniques, beginning in the summer of 2008 and culminating in the fall of 2008, Dr. Havemose finalized the invention of isolated OS environments conferring security benefits and operational integrity. The development of such an isolated OS environment started around summer 2008 and was completed by spring 2009.

**The '858 Patent**

The inventions of the asserted claims of the '858 Patent were conceived of and constructively reduced to practice no later than November 29, 2012, by filing U.S. Provisional Application No. 13/689,500. To the extent that VirtaMove relies on art that pre-dates the Priority Filing, IBM reserves its right to rely on the conception and actual reduction to practice of the subject matter of the asserted claims of the '858 Patent.

The named inventors of the '858 patent, Matthew A. Markley, Amitkumar M. Paradkar, Venkata Vinay Parisa, and Birgit M. Pfitzmann, are current or former IBM employees. The named inventors conceived of and reduced to practice a method that, in part, is for analyzing and preparing a source computing system's infrastructure for migration to a cloud environment, including through identifying compatibility and potential conflicts with target cloud infrastructures. The invention includes functionality for discovering source infrastructure management components, obtaining detailed descriptions of target cloud infrastructures, and assessing compatibility to ensure successful migration.

Before cloud migration became mainstream, migration services focused on data center to data center migrations. When migration is from one data center to another, the migration customer often has control over both the source infrastructure and target infrastructure, and thus compatibility between the infrastructures is less of a concern. U.S. Patent No. 9,722,858, 31:35-37. On the other hand, when migration is from physical environment to cloud environment, infrastructure compatibility is more of a concern because the target infrastructure is owned by the cloud provider and the migration customer has no control over the target infrastructure. *Id.* at 1:25-29. Thus, in Managed-Infrastructure-as-a-Service (MIaaS) clouds, migration implies the need for infrastructure compatibility analysis. *Id.* at 33:49-50. Recognizing this need, in 2012, the

8

inventors of the '858 patent developed a technology that can advantageously provide the ability to systematically analyze infrastructure changes needed in cloud migration and to apply them in a "rapid migration" process. *Id.* at 33:50-53. This invention was meaningful to their industry and received significant praise. For example, for their contributions to the inventions contained in the '858 patent, in 2013, IBM awarded the GBS Outstanding Technical Achievement Award to at least Venkata Vinay Parisa, one of the named inventors of the '858 Patent.

Further, pursuant to Fed. R. Civ. P. 33(d), IBM has produced documents demonstrating information responsive to this Interrogatory regarding agreements and associated details for the Counterclaim Patents. *See, e.g.*, IBM_VM_0000000647; IBM_VM_0000000483; IBM_VM_0000000888; IBM_VM_0000000147; IBM_VM_0000000001; IBM_VM_0000000088; IBM_VM_0000000107; IBM_VM_0000000128.

IBM's investigation is ongoing, and IBM reserves all rights to amend, modify, and/or supplement this response.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15 (February 3, 2025):**

Subject to and without waiver of the General and Specific Objections, IBM responds as follows:

**The '858 Patent**

IBM set out to solve issues in the process of migration from a source environment to a target environment as early as 2009 and the named inventors of the '858 Patent, Matthew A. Markley, Amitkumar M. Paradkar, Venkata Vinay Parisa, and Birgit M. Pfitzmann, conceived of the inventions embodied in the asserted claims of the '858 Patent no later than May 14, 2011. *See* IBM_VM_000024896 (IBM Cloud team presentation); IBM_VM_000024885 (IBM Watson

9

Research presentation). The named inventors of the '858 Patent were diligent in continuously reducing the inventions of the '858 Patent to practice through further testing after the initial conception and "Proof of Concept." *See, e.g.*, IBM_VM_000024885 at 889–895, 897, 912, 941; IBM_VM_0000000147 at 150–325. As such, the asserted claims of the '858 Patent are entitled to a priority date of no later than May 14, 2011.

Further, pursuant to Fed. R. Civ. P. 33(d), IBM has produced documents demonstrating information responsive to this Interrogatory regarding agreements and associated details for the Counterclaim Patents. *See, e.g.*, IBM_VM_0000000147; IBM_VM_000024885; and IBM_VM_000024896.

Dated: February 3, 2025

By: */s/ Kyle Calhoun*
Todd M. Friedman (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: todd.friedman@kirkland.com

Brandon H. Brown
California State Bar No. 266347
Kyle Calhoun (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: brandon.brown@kirkland.com
Email: kyle.calhoun@kirkland.com

Of Counsel:
Andrea L. Fair
Texas State Bar No. 24078488
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604

Telephone: (903) 757-6400
Facsimile: (903) 757-2323
Email: andrea@millerfairhenry.com

*Attorneys for Defendant International Business Machines Corp.*

11

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on February 3, 2025.

Dated: February 3, 2025              */s/ Kyle Calhoun*
                                     Kyle Calhoun