**If that wUNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § | |
| | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |

**<u>IBM'S REPLY CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. DISPUTED TERMS ........................................................................................................ 1

    A. "A system, comprising … wherein the one or more isolated environments are created during installation of the one or more applications … wherein the one or more isolated environments are removed as part of an uninstall of the one or more applications" (Claim 1 of the '500, '634, and '038 patents) ............................................................................................................. 1

    B. "the system resources" (Claim 19 of the '500 and '038 patents) ........................... 5

    C. "appropriate for infrastructure configuration mapping" ......................................... 6

    D. "instance of an image" (Claims 1 and 19 of the '858 patent) ................................ 6

    E. "capturing" (Claim 1 of the '858 patent) ................................................................ 8

    F. "non-functional requirement" (Claims 3–5 and 7 of the '858 patent) .................... 9

    G. "module" (Claim 18 of the '858 patent) ............................................................... 10

    H. "cloud infrastructure" (Claims 1, 4–6, 8–12, and 19 of the '858 patent) .............. 10

# **TABLE OF AUTHORITIES**[1]

**Page(s)**

**Cases**

*In re Downing*,
  754 F. App'x 988 (Fed. Cir. 2018) ................................................................................5

*Freeny v. Fossil Grp., Inc.*,
  2:18-CV-00049-JRG-RSP, 2019 WL 2078783 (E.D. Tex. May 10, 2019)..............................2

*H-W Tech., L.C. v. Overstock.com, Inc.*,
  758 F.3d 1329 (Fed. Cir. 2014)......................................................................................3

*HTC Corp. v. IPCom GmbH & Co.*,
  667 F.3d 1270 (Fed. Cir. 2012).....................................................................................2

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005)..............................................................................1, 2, 3

*Iris Connex, LLC v. Dell, Inc.*,
  235 F. Supp. 3d 826 (E.D. Tex. 2017)..........................................................................4

*In re Katz Interactive Call Processing Pat. Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011).....................................................................................3

*MasterMine Software, Inc. v. Microsoft Corp.*,
  874 F.3d 1307 (Fed. Cir. 2017)..............................................................................2, 3, 4

*RightQuestion, LLC v. Samsung Elecs. Co.*, No. 2:21-cv-00238-JRG, 2022 WL 1154611 (E.D. Tex. Apr. 18, 2022) ..........................4

*Seagen Inc. v. Daiichi Sankyo Co.*,
  No. 2:20-CV-00337-JRG, 2021 WL 4168660 (E.D. Tex. Sept. 14, 2021) ...............................6

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
  844 F.3d 1370 (Fed. Cir. 2017).....................................................................................6

*Thorner v. Sony Comput. Ent. Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012).....................................................................................4

*UltimatePointer, L.L.C. v. Nintendo Co.*,
  816 F.3d 816 (Fed. Cir. 2016)..............................................................................1, 2, 3, 4

---

[1] All emphases herein are added unless otherwise noted.

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
  392 F.3d 1325 (Fed. Cir. 2004)..................................................................................................5

**Statutes**

35 U.S.C. § 112(6) ........................................................................................................................10

**I.   INTRODUCTION**

Plaintiff/Counterclaim-Defendant VirtaMove Corp. ("VirtaMove") advances arguments that distort the claim language, ignore the specification, and mischaracterize the only expert opinion in this case. VirtaMove selectively cites authority while ignoring critical aspects of the Federal Circuit's indefiniteness framework. Where the disclosures and precedent show there is clarity and certainty, VirtaMove improperly insists on finding indefiniteness. For these reasons, IBM respectfully submits that VirtaMove's claim construction positions should be rejected.

**II.   DISPUTED TERMS**

**A.   "A system, comprising … wherein the one or more isolated environments are created during installation of the one or more applications … wherein the one or more isolated environments are removed as part of an uninstall of the one or more applications" (Claim 1 of the '500, '634, and '038 patents)**

| IBM: | VirtaMove: |
|---|---|
| Plain and ordinary meaning. | Indefinite. |

VirtaMove asserts these claims are indefinite because, in its view, they recite the performance of method steps, rather than describing the capabilities of an apparatus. *See* Dkt. 152 at 2. Yet, as IBM and its expert explained, these claims do not describe a method that must be performed by a user; rather, they recite the apparatus's ***functional capability***. No user action is required, and this capability does not need to be performed to infringe. *See* Dkt. 142 at 11–14.

VirtaMove misapplies the case law, arguing that whether the claims are indefinite under *IPXL* depends on whether the recited capability is "divorced from the recited structure." *See* Dkt. 152 at 6 (citing *UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 827 (Fed. Cir. 2016)). Even under VirtaMove's interpretation of *IPXL*, however, the claims here are not indefinite, because they recite specific structure—including the claimed "system," "central processing units," and "one or more isolated environments"—that is ***not*** divorced from the recited functional capabilities. On the contrary, the claim language clearly links the claimed apparatus—*i.e.*, the "system," which

possesses a CPU and "one or more isolated environments"—to the recited capability of being "created during installation …." In *UltimatePointer*, the Federal Circuit found that "[i]f an apparatus claim is clearly limited to an apparatus ***possessing the recited structure***"—such as the "system" recited here— "and ***capable of performing*** the recited functions, then the claim is not invalid as indefinite." 816 F.3d at 826 (citation and quotations omitted).

VirtaMove's argument based on *HTC* fails for the same reason, because the claims ***do*** recite specific structure within the apparatus that is capable of performing the recited functionality. Contrary to VirtaMove's assertion, this recited structure is not "anything or anyone." Dkt. 152 at 8. Rather, the claims recite particular structures linked to the functional capabilities, *i.e.*, "***[a] system***, comprising: ***one or more central processing units***; and ***one or more isolated environments*** including ***one or more applications*** and ***executables***…." Dkt. 142-1, Cl. 1. This Court has found terms describing the capability of similar structures to be sufficiently definite. *See Freeny v. Fossil Grp., Inc.*, 2:18-CV-00049-JRG-RSP, 2019 WL 2078783, at *25 (E.D. Tex. May 10, 2019) ("the phrases describe the functional capabilities of the recited '***computer unit***'").

Further, the Federal Circuit's canonical *IPXL* test—on which IBM relies—remains controlling. The Federal Circuit has consistently applied that test to determine whether an apparatus claim appropriately recites functional capability, and has specifically analyzed whether user action is required. *See HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1277 (Fed. Cir. 2012) ("[t]he *IPXL* claim [was] ambiguous because it recited both a system that allowed a user to practice a method step ***and the user's practicing*** the method step," whereas the *HTC* claims "do not recite a mobile station and then have the mobile station ***perform*** the six enumerated functions"); *UltimatePointer*, 816 F.3d at 826–27 ("the associated structures ***have this capability*** … and ***do not require*** that ***any [action]*** be actually generated ***by the user***"); *MasterMine Software,*

2

*Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1316 (Fed. Cir. 2017) (term without "***specific actions performed by the user***" is definite). As discussed, IBM's claims do not require any ***performance*** of the recited capability of creating the "one or more isolated environments during installation." Dkt. 142-1, Cl. 1. This is in stark contrast with claims the Federal Circuit has found indefinite. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) ("the ***user uses*** the input means"); *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) ("said ***individual callers*** digitally enter data"); *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1336 (Fed. Cir. 2014) ("wherein said ***user completes***" and "said ***user selects***").

VirtaMove also mischaracterizes Dr. Stavrou's testimony. VirtaMove asked Dr. Stavrou, "in order to practice the limitation … you agree that the one or more isolated environments must be created during installation of the one or more applications. Correct?," and Dr. Stavrou agreed. Dkt. 152, Ex. A at 10:7–15. But agreeing that the "one or more isolated environments must be created during installation"—*i.e.*, that the creation takes place during installation—is ***not*** the same as agreeing that the claim requires the ***performance of*** any step, as VirtaMove suggests. *See* Dkt. 152 at 3, 9. Indeed, Dr. Stavrou's response is consistent with his opinion that the claims recite functional capabilities and that the specification further supports this reading. *See* Dkt. 142-7 ¶ 53.

In addition, VirtaMove incorrectly contends that the claim language in question does not recite capability because it does not use the term "configured to." *See* Dkt. 152 at 3. However, as the Federal Circuit made clear, "***verbs*** … represent permissible functional language," they can be "used to describe capabilities," and they do not render a claim indefinite. *MasterMine,* 874 F.3d at 1315. The Federal Circuit has never mandated that a verb must be preceded by "configured to" to avoid indefiniteness. Indeed, the terms at issue in *MasterMine* and *UltimatePointer* were "***receives*** from the user" and "***generating*** data"—which are comparable to the "created" and "removed"

3

verbs at issue here. The lack of "configured to" did not prevent such verbs from "represent[ing] ***permissible functional language***…." *Id*.; *UltimatePointer*, 816 F.3d at 826.

VirtaMove's further argument that passive voice creates ambiguity runs counter to this Court's precedent finding that passive voice indicates ***no*** user action is required. *See RightQuestion, LLC v. Samsung Elecs*. Co., No. 2:21-cv-00238-JRG, 2022 WL 1154611, at *8 (E.D. Tex. Apr. 18, 2022). The term at issue in *RightQuestion*, "wherein the user ***is logged in***," is comparable to the language here: "wherein the . . . environments ***are created*** …." *Compare id.* at *8, *with* Dkt. 142-1 ('500 patent), Cl. 1. And, as in *RightQuestion*, the present claims link the claimed apparatus with the recited functional capability. Both merely recite that capability, rather than any actual performance. *See RightQuestion,* 2022 WL 1154611, at *8.

VirtaMove's final argument—that if the claims are not indefinite, the construction requires "independently of user intervention"—is both procedurally improper and substantively incorrect. Dkt. 152 at 9. Despite being fully aware of IBM's positions, VirtaMove never previously raised this alternative construction, which also contravenes black-letter law that the plain and ordinary meaning should govern unless a patentee clearly disavows scope. *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). No such disavowal exists, as the claims merely recite the apparatus's functional capabilities such that no user intervention or performance is ***required***, rather than barring a user from ever performing the action. Similarly, VirtaMove's belated attempt to rely on undisclosed extrinsic evidence misses the mark because the evidence— user manual instructions—does not prevent a finding that the accused system has the ***functional capability***. *See* Dkt. 152 at 10, 152-3; *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 847 (E.D. Tex. 2017) ("claim constructions are not evaluated in light of the accused products.").

B.    **"the system resources" (Claim 19 of the '500 and '038 patents)**

| **IBM**: | **VirtaMove**: |
|---|---|
| Plain and ordinary meaning. | Indefinite. |

VirtaMove contends that this term is indefinite for lack of antecedent basis. In making that argument, VirtaMove mischaracterizes the law governing antecedent basis, misreads the claim language, and ignores both the intrinsic record and unrebutted expert testimony demonstrating that a POSITA would have understood the claim's scope with reasonable certainty.

The claim language is clear on its face. As IBM has explained, this term's plural form can refer to mapping one or more system resources *inside* the isolated environment with one or more system resources *outside* the isolated environment. *See* Dkt. 142, 11–12 (citing *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004)). Tellingly, VirtaMove does not address the Federal Circuit's *Versa* decision. VirtaMove also fails to address IBM's citations to portions of the specification describing a single resource being mapped. *See* Dkt. 142 at 12–13 (citing '500 patent at 5:50-67, Fig. 2). Instead, VirtaMove asserts IBM "does not even allege a specific antecedent basis" for the term. Dkt. 152 at 12. On the contrary, IBM explained that Claim 18's "resources" term provides clear and consistent context that applications use system resources. *See* Dkt. 142 at 14. In view of this intrinsic evidence, the term is not indefinite to a POSITA because it can only refer to the system resources that are "*mapp[ed]*" inside and outside the isolated environment *and used* by applications. *See In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018) (claim not indefinite where term "could only refer to the end user using the product"). Thus, VirtaMove's assertion that IBM's explanation is "circular" also fails. Dkt. 152 at 15.

In addition, VirtaMove incorrectly claims Dr. Stavrou's testimony is inconsistent. *See id.* at 12–15. In fact, the testimony that VirtaMove cites directly supports IBM's argument that "the system resources that are referred to in Claim 19 are connected to the additional resources that are

5

mentioned in Claim 18." *Id.*, Ex. A at 11:16–12:6. Dr. Stavrou also explained that the term refers to resources "mapp[ed] between the system resources… inside and outside the one or more isolated environments" and that it "does not require an exhaustive list," which likewise is consistent with IBM's argument that neither the claims nor the specification require "all" or a "plurality" of the system resources to be mapped. *Id.*, Ex. A at 12:12–15; 12:23–13:2.

VirtaMove's argument that Dr. Stavrou somehow "walked back his testimony" similarly lacks merit. Dkt. 152 at 13. VirtaMove focuses exclusively on a sentence where Dr. Stavrou disagreed because counsel's question recapped only ***one part*** of his previous answer. *See id.*, Ex. A at 11:21–12:6. Dr. Stavrou went on to add what counsel failed to recap from his previous testimony—namely, that the claims "contemplate any system resources that would satisfy the requirements of claims … 18 and 19, rather than requiring an exhaustive list of all system resources," which is consistent with Dr. Stavrou's declaration and IBM's arguments. *Id.* at 11:21–13:21. VirtaMove's attempt to distort Dr. Stavrou's unrebutted testimony should be rejected. *See Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-CV-00337-JRG, 2021 WL 4168660, at *14 (E.D. Tex. Sept. 14, 2021) (the only available expert testimony confirms claim is not indefinite); *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (attorney argument does not constitute clear and convincing evidence of indefiniteness).

C. **"appropriate for infrastructure configuration mapping"**

Despite withdrawing its indefiniteness challenge, VirtaMove insists this term "requires an objective determination," yet it provides no support or explanation as to what it believes the determination entails. Dkt. 152 at 15. The term should be given its plain and ordinary meaning.

D. **"instance of an image" (Claims 1 and 19 of the '858 patent)**

| **IBM**: | **VirtaMove**: |
|---|---|
| Plain and ordinary meaning, which is "an occurrence or copy of an image." | Image: a template that includes virtual hardware suggestions and a virtual disk containing at least |

6

|  | an operating system.<br>Instance of an image: a virtual machine derived from an image, which further includes virtual hardware allocations and a hypervisor of virtual machine runtime.<br>In the alternative: Indefinite. |
|---|---|

VirtaMove incorrectly contends that columns 15 and 50 of the '858 patent contain two inconsistent "definitions" of the term "instance of an image." In fact, the specification makes clear that the meanings of "image" and "instance" depend on the specific embodiment involved, *i.e.*, physical versus virtual embodiments. Unlike VirtaMove's definitions, which improperly read out the non-virtual embodiments, IBM proposes a definition that includes both.

Notably, what VirtaMove incorrectly calls the "column 15 lexicography," Dkt. 152 at 17, are definitions that apply only to ***specific embodiments***—*i.e.*, those in the section titled "Migration to Managed Clouds," which discusses "the new technique described along [with] FIGS. 4–7 and 9[.]" Dkt.142-4 ('858 patent) at 8:12, 16:62–63. VirtaMove quotes out of context the statement that "[c]ertain terms employed herein will now be defined," ignoring the immediately preceding paragraphs that refer only to those specific embodiments. *See* Dkt 152 at 16. Indeed, the four paragraphs right before that sentence describes "one or more embodiments" or "some embodiments" in Figs. 4–7. *See* Dkt.142-4 at 9:22–15:6.

What VirtaMove incorrectly calls the "column 50 lexicography" also describes a specific embodiment and is not a universal definition. Dkt. 152 at 21. VirtaMove quotes out of context the paragraph at 50:52–51:10 and ignores the immediately preceding sentence stating that "referring now to ***FIG. 34***, in at least ***some embodiments*** … as listed below …." The proceeding paragraphs also indicate that the description on which VirtaMove relies only describes certain embodiments that "provide techniques for replacing the disks[.]" Dkt.142-4 at 50:40–50:51.

VirtaMove further contends that the claims are indefinite because the discussion in column 50 is "limited to virtual machine embodiments" whereas column 15 "expressly include[s] both

7

physical and virtual servers." Dkt. 152 at 19. Yet, VirtaMove's very argument underscores that its proposed construction improperly reads out the non-virtual embodiments. As Dr. Stavrou confirms, the claimed "instance" can be either physical or virtual, and there is nothing indefinite about claiming both as options. Indeed, column 15 includes physical "instances" (directly running on server) *and* virtual "instances" (running on hypervisor). *See* Dkt. 142-4 at 8:12; Dkt. 142-7 ¶¶ 43, 75. As part of a section directed to "Replacing *Virtual Machine* Disks," the "instance" discussed in column 50 pertains to an embodiment that specifically runs on hypervisor. Dkt. 142-4 at 50:24. There is no indefiniteness just because one embodiment describes both physical and virtual instances while another discusses a virtual instance.

VirtaMove also misses the mark when it asserts that the language in column 15 is "potentially confusing" because it is allegedly recursive. Dkt. 152 at 17. Contrary to VirtaMove's suggestion, column 15 does not use the word "instance" itself to describe the term "instance." Rather, it uses the phrase ***"operating system instance"*** ("OSI"), which is a common term in the industry that refers to a virtual or bare metal server running an operation system. *See* Ex. 1 at 3. VirtaMove's misreading of column 15 is not basis for indefiniteness.

Attempting to manufacture "ambiguity," VirtaMove conflates the specification's description of an "image" with the term "instance of image." Dkt. 152 at 17. As IBM noted, "image" is a common term in cloud computing that requires no further construction. Dkt. 142-7 ¶ 72. Column 15 explains that the image is a file representation of the instance, and the instance is a running or static occurrence that the image represents. Dkt.142-4 at 15:30–15:36. A POSITA therefore would understand "instance of an image" as an occurrence or copy of an image.

E. **"capturing" (Claim 1 of the '858 patent)**

| **IBM**: | **VirtaMove**: |
|---|---|
| Plain and ordinary meaning. | Prior: Indefinite. (**Withdrawn**) |
| | In the alternative, "transferring into a file." |

8

Although VirtaMove has withdrawn its argument that this term is indefinite, it still maintains—against clear evidence in the intrinsic record—that the result of capturing must be a file. Specifically, VirtaMove cites Fig. 5 and the corresponding embodiment in column 10 for the proposition that the "capture" step (step 534) must result in a Virtual Machine Disk Format (VMDK) file. *See* Dkt. 152 at 23–24; Dkt.142-4 ('858 patent) at 10:41–43. Yet, as IBM explained, the full sentence on which VirtaMove relies states that it is describing "one or more ***non-limiting exemplary embodiments***." Dkt. 142, at 22 (citing Dkt.142-4 at Fig. 5, 10:41–42). What is captured need not be a file—it can be data, which can then be "transported to cloud location." *Id.*; Dkt. 142-7 ¶ 42. Moreover, the specification introduces known tools such as Platespin for controlling the transfer of instance captured in step 534. *Id.* ¶¶ 42, 87. Such tools support both network migration and file migration, showing a POSITA would understand data can be captured. *Id.*

F.  **"non-functional requirement" (Claims 3–5 and 7 of the '858 patent)**

| **IBM**: | **VirtaMove**: |
|---|---|
| Plain and ordinary meaning. | Indefinite. |

VirtaMove contends that "the claim language does not give any guidance as to what 'non-functional requirements' are." Dkt. 152 at 25. As IBM discussed, however, Claims 5 and 7 of the '858 patent indicate that non-functional requirements refer to the requirements of source and target management infrastructures, including those used for "mapping the source management infrastructure with the target management infrastructure." *See* Dkt. 142 at 23–24.

VirtaMove also contends the specification is unclear as to whether a Service Level Agreement ("SLA") is an example of a non-functional requirement, pointing to a statement that reads: "[A]pplication-level description can include, [for example,] an SLA or non-functional requirement, but SLA's can be seen as non-functional requirements as well." Dkt. 152 at 26 (citing Dkt. 142-4 at 39:40–49). Contrary to VirtaMove's argument, this description makes clear that

9

SLAs *can* affirmatively be viewed as non-functional requirements—it is not ambiguous as to whether they qualify. This term therefore is not indefinite in view of the intrinsic record.

### G. "module" (Claim 18 of the '858 patent)

VirtaMove has withdrawn its argument that this term is subject to 35 U.S.C. § 112(6).

### H. "cloud infrastructure" (Claims 1, 4–6, 8–12, and 19 of the '858 patent)

| IBM: | VirtaMove: |
|---|---|
| Plain and ordinary meaning, which is "a network of interconnected nodes." | Plain and ordinary meaning, which is "an infrastructure comprising a network of interconnected nodes that provides for on-demand self-service, broad network access, resource pooling, rapid elasticity, and measured service providing transparency for both the provider and consumer of the utilized service." |

VirtaMove contends IBM's proposal does not capture the "cloud" aspect of "cloud infrastructure." Dkt. 152 at 27. By definition, however, a network of interconnected nodes encompasses the "cloud." *See* Dkt. 142-7 ¶ 107; Dkt. 142-4 ('858 patent) at 5:31–33. VirtaMove fails to explain why the possible characteristics of the *cloud model* should be treated as the definition of "cloud infrastructure." Not only does the patent not use these traits as a definition, but they are merely characteristics the cloud model "*may*" include." *Id.* ('858 patent) at 4:15–16.

Tellingly, VirtaMove does not offer any argument based on the intrinsic record, apart from citing a piece of *extrinsic* evidence that it states parallels the patent's (irrelevant) discussion of those five characteristics. Yet, even the extrinsic document on which VirtaMove relies notes that "[p]ersonal definitions or conceptions of cloud vary widely" and refers to the five characteristics as "guidelines." Dkt. 152-5 at 21. Moreover, Dr. Stavrou has provided unrebutted testimony explaining why defining "cloud infrastructure" in terms of these five characteristics is inconsistent with the intrinsic record. *See* Dkt. 142-7 ¶¶ 104, 106–7.

10

Dated:  March 14, 2025

Respectfully submitted,

*/s/ Todd M. Friedman*

Todd M. Friedman (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email: todd.friedman@kirkland.com

Brandon H. Brown
California State Bar No. 266347
Kyle Calhoun (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:     (415) 439-1400
Facsimile:      (415) 439-1500
Email: brandon.brown@kirkland.com
Email: kyle.calhoun@kirkland.com


*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:     (903) 757-6400
Facsimile:      (903) 757-2323
Email:  andrea@millerfairhenry.com

*Attorneys for Defendant
International Business Machines Corp*

11

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on March 14, 2025.

                                        */s/ Todd M. Friedman*
                                        Todd M. Friedman