## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:24-CV-00093-JRG |
| | § | (LEAD CASE) |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:24-CV-00064-JRG |
| | § | (MEMBER CASE) |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two Partial Motions to Dismiss (the "Motions") filed by Plaintiff VirtaMove, Corp. ("VirtaMove"). (Dkt. Nos. 65; 128.)  In the first, VirtaMove moves to dismiss International Business Machines Corp.'s ("IBM") inequitable conduct counterclaim (Count 5) in IBM's Answer, Affirmative Defenses, and Counterclaims (Dkt. 49) for failure to plead with particularly as required by Federal Rule of Civil Procedure 9(b).  (Dkt. No. 65 at 1.)  In the second, VirtaMove moves to dismiss Count VI(2) of Hewlett Packard Enterprise Company's ("HPE's") inequitable conduct counterclaim in HPE's Amended Answer and Counterclaims (Dkt. 116) for a similar failure to plead with particularity. (Dkt. No. 128 at 1.)  For the reasons set forth herein, the Court finds that VirtaMove's Motions should be **DENIED**.

# I.     BACKGROUND

## A.     VirtaMove's Patent Infringement Actions

VirtaMove filed patent infringement actions against IBM and HPE (the "Defendants") on January 31, 2024, and February 9, 2024, respectively.  (Member Case No. 2:24-CV-00064-JRG, Dkt. No. 1; Lead Case No. 2:24-CV-00093-JRG, Dkt. No. 1).[1]  In both actions, VirtaMove alleges that Defendants infringe U.S. Patent No. 7,519,814 (the "'814 Patent"). (Dkt. No. 1 at 1; Member Case No. 2:24-CV-00064-JRG, Dkt. No. 1 at 1.)[2]

On June 5, 2024, IBM filed its Answer, Affirmative Defenses, and Counterclaims. (Dkt. No. 49.)[3]  In Count 5 of its Counterclaims, IBM seeks a declaratory judgment that the '814 Patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office (the "PTO"). (Dkt. No. 49 at ¶¶ 76-118.)  Specifically, IBM alleges that the '814 Patent is unenforceable because the applicants of the '814 Patent failed to disclose to the PTO materials relating to proceedings concerning the European counterpart application.  (Dkt. No. 49 at ¶ 79.)

On November 14, 2024, HPE filed its Amended Answer and Counterclaims. (Dkt. No. 116.)  In Count VI(2) of its Counterclaims, HPE similarly seeks a declaratory judgment that the '814 Patent is unenforceable due to inequitable conduct before the PTO.  (Dkt. No. 116 at ¶¶ 108-125.)  Specifically, HPE alleges that the '814 Patent is unenforceable because the applicants of the '814 Patent failed to disclose to the PTO their arguments at the EPO that the amendment to identical claims in the European counterpart application were necessary for the claimed system to work. (*Id.* at ¶ 110.)

---

[1] All citations are made to the Lead Case, Case No. 2:24-cv-00093, unless stated otherwise.

[2] On April 17, 2024, VirtaMove's suit against IBM was consolidated for pretrial purposes with VirtaMove's patent infringement suit against HPE. (Dkt. No. 32.)

[3] On December 19, 2024, IBM filed its Amended Answer, Affirmative Defenses, and Counterclaims. (Dkt. No. 115.) Shortly thereafter, VirtaMove and IBM filed a Joint Stipulation (Dkt. No. 125) stipulating that VirtaMove did not need to re-file or re-brief its Motion (Dkt. 65) because the same Count 5 is present in IBM's Amended Answer, Affirmative Defenses, and Counterclaims (Dkt. No. 115). VirtaMove and IBM further stipulated that the Motion can be decided by the Court as currently briefed. (Dkt. No. 125 at 2.) Accordingly, since the briefing related to VirtaMove's Motion cites to the paragraphs in the First Answer, Affirmative Defenses, and Counterclaims (Dkt. No. 49), the Court does so as well in this Memorandum Opinion and Order.

### B.    The Prosecution of the '814 Patent

The application for the '814 Patent was filed with the PTO on September 13, 2004, by its named inventors—Donn Rochette, Paul O'Leary, and Dean Huffman—as well as others involved with the prosecution such as Charles E. Wands and Christopher F. Regan (the "Applicants"). (Dkt. Nos. 49 at ¶¶ 78, 83; 116 at ¶ 111; 128 at 1). A European Counterpart Application of the '814 Patent was filed with the European Patent Office ("EPO") two days later, on September 15, 2004.  (Dkt. Nos. 49 at ¶ 84; 65 at 1; 116 at ¶ 108; 128 at 1.)

The EPO issued a search report on September 7, 2005, identifying U.S. Publication No. 2002/174215 AI ("Schaefer") as relevant prior art. (Dkt. Nos. 49 at ¶ 85; 65 at 1-2; 116 at ¶ 116; 128 at 1-2.) The Applicants disclosed Schaefer to the PTO in an Information Disclosure Statement on October 17, 2005. (Dkt. Nos. 49 at ¶ 86; 65 at 2; 116 at ¶ 112; 128 at 2.)  The Examiner signed off on the Schaefer reference on May 21, 2008.  (Dkt. Nos. 49-13 at 284; 65 at 2; 128 at 2.)

On June 3, 2008, the PTO issued a Non-Final Rejection in view of U.S. Patent No. 6,381,742 ("Forbes"). (Dkt. No. 49 at ¶ 94.) Before the Applicants amended the '814 application, the EPO issued a series of rejections that caused the Applicants to amend claim 1 to add a "unique identifier" to the Counterpart Application that was "important" to the invention. (*See* Dkt. Nos. 49 at ¶¶ 87-101; 116 at ¶¶ 115-120.) The Applicants did not disclose to the PTO any of the EPO's rejections, the EPO's conclusions regarding the Schaefer prior art on which the EPO based its rejections, nor any of the Applicants' own replies. (*See* Dkt. Nos. 49 at ¶¶ 103-107; 65 at 5; 71 at 2-3; 69 at 4, 7; 116 at ¶¶ 115-120.) On September 3, 2008, the Applicants amended the '814 application to distinguish Forbes but did not add the "unique identifier" limitation. (Dkt. No. 49 at ¶ 95.) On December 10, 2008, the PTO issued a notice of allowance of the application for the '814 Patent. (*Id.* at ¶ 97.) The Applicants subsequently abandoned prosecution of the Counterpart Application, however, and the EPO considered it withdrawn on September 9, 2009. (Dkt. No. 49 at ¶ 100.)

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Inequitable conduct is a form of fraud committed on the patent office. *See Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1326–27 (Fed. Cir. 2009). If proven, inequitable conduct renders a patent unenforceable. *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1287 (Fed. Cir. 2011). Unenforceability is a potent remedy, often called the "atomic bomb" of patent law. *Id*. at 1288. As a result, inequitable conduct must be pled with greater specificity under Fed. R. Civ. P. 9(b) than other claims. *Exergen*, 575 F.3d at 1327.

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). In determining whether inequitable conduct has been properly pled under Rule 9(b), the Court looks to Federal Circuit law. *Exergen*, 575 F.3d at 1326. For inequitable conduct, "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1327. At the pleading stage, this requires the accused infringer to plead three elements: (1) the patentee made a material misrepresentation to or withheld material information from the patent office; (2) that person knew of the falsity of the statement or of the materiality of the information withheld; and (3) that person had a specific intent to deceive the patent office. *Exergen*, 575 F.3d at 1327; *Therasense*, 649 F.3d at 1290.

4

## III.     DISCUSSION

VirtaMove asks the Court to dismiss Count 5 of IBM's inequitable conduct counterclaim and Count VI(2) of HPE's inequitable conduct counterclaim on the basis that the Counterclaims "fail[] as a matter of law" because "there is no duty to submit foreign prosecution correspondence regarding Schaefer prior art when the applicant submitted the underlying Schaefer prior art." (Dkt. No. 65. at 4; 128 at 4 (citing *ATD Corp. v. Lydall, Inc*., 159 F.3d 534, 547 (Fed. Cir. 1998).) In *ATD Corp.*, the Federal Circuit stated that the "details of foreign prosecution are not an additional category of material information." 159 F.3d at 547. Rather, it "is the reference itself, not the information generated in prosecuting foreign counterparts, that is material to prosecution in the United States." *Id.*

While neither IBM nor HPE dispute that the Applicants timely provided the Schaefer prior art reference to the PTO during prosecution of the '814 patent, Defendants argue that the Schaefer disclosure was insufficient since "the law expressly requires an applicant to disclose to the USPTO any contradictory or inconsistent statements that it made in connection with a foreign prosecution." (Dkt. No. 69 at 1; *see also* Dkt. No. 135 at 6-7.)

IBM, in particular, contends that the Applicants failed to disclose to the PTO contradictory statements made by the Applicants during the EPO proceeding and multiple statements made by the EPO. (Dkt. No. 69 at 5-7; Dkt. No. 49 at ¶¶ 102-116.) IBM also contends that the Applicants' failure to disclose these statements, including its statements to the EPO, its corresponding amendments, and the multiple EPO's rejections, were material because but for the Applicants' non-disclosures, the PTO would not have granted the '814 patent as claimed. (Dkt. Nos. 69 at 8; 49 at ¶¶ 109-110.) As a result, IBM contends it pled sufficient facts to demonstrate the materiality of the Applicants' correspondence with the EPO, as well as the Applicants' specific intent to withhold this correspondence to deceive the PTO. (Dkt. 69 at 2.)

HPE similarly contends that the Applicants failed to disclose to the PTO contradictory statements made by the Applicants. (Dkt. No. 116 at ¶¶ 120-122.) HPE also contends that the Applicants' failure to disclose these statements was material because if the Applicants had disclosed them to the PTO, claim 1 of the '814 Patent would not have been allowed as issued. (*Id.* at ¶ 122.) Further, HPE pleads that these statements were withheld from the PTO with intent to deceive the Examiner into allowing the claims of the '814 Patent to issue without the requirement that each container have its own "unique identity," thus broadening the scope beyond what the Applicants had invented and enabled. (*Id.* at ¶ 125.)

In reply, VirtaMove makes three arguments. First, VirtaMove argues that Defendants failed to rebut that the Applicants discharged their duty as a matter of law when it submitted Schaefer to the PTO. (Dkt. Nos. 71 at 1; 140 at 1.) Second, VirtaMove argues that the Applicants had no duty to disclose the cumulative, non-prior art EPO correspondence about Schaefer. (Dkt. Nos. 71 at 1; 140 at 1.) Third, VirtaMove argues that Defendants failed to identify any contradictory statement made by the Applicants to the EPO and PTO, about Schaefer or anything else. (Dkt. Nos. 71 at 1-2; 140 at 1-2.) Accordingly, VirtaMove asks the Court to dismiss Defendants' inequitable conduct counterclaims with prejudice, without leave to amend. (Dkt. Nos. 71 at 1; 140 at 1.)

## A.    The Analysis

There is no dispute that the Applicants timely submitted the Schaefer prior art reference by which the EPO based its rejection of the European Counterpart Application. (Dkt. Nos. 65 at 5; 69 at 1, 7; 71 at 1; 135 at 8.) Consequently, the question before this Court is whether the Applicants had a duty to disclose to the PTO any of the Applicants' allegedly contradictory statements when the Applicants had timely disclosed the relevant prior art reference. (*See* Dkt. No. 69 at 4; *see also Therasense*, 649 F.3d at 1290 (holding that the accused infringer must prove that the patentee withheld material information from the PTO).)

### 1.    Duty to Disclose Contradictory Statements

Defendants argue that applicants must disclose to the PTO any contradictory statements they made in connection with a foreign prosecution even if the applicants timely disclose a prior art reference. (Dkt. No. 69 at 1; Dkt. No. 135 at 8-9.) As support, Defendants contend that courts have considered statements made to foreign patent offices to be material when the statements contradict statements made to the PTO. (Dkt. Nos. 69 at 1-2; 135 at 9 (citing, e.g., *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, No. 1:11-CV-871, 2013 WL 12178114, at *5 (S.D. Ohio Oct. 2, 2013).)[4]

Federal Circuit precedent supports Defendants' position that an applicant owes a duty to disclose contradictory statements made in a foreign prosecution even if the applicant timely disclosed the relevant prior art reference. *See Therasense,* 649 F.3d 1276, 1284-85, 1296 (Fed. Cir. 2011) ("[T]he district court should determine whether the PTO would not have granted the patent but for Abbott's failure to disclose the EPO briefs"); *see also Therasense, Inc. v. Becton, Dickinson & Co.*, 864 F. Supp. 2d 856, 863 (N.D. Cal. 2012) (finding on remand that "the withheld EPO briefs would have contradicted Abbott's declaration and submission").

Accordingly, even though the Applicants timely disclosed Schaefer to the PTO, the Court finds that Defendants can satisfy their burden to plead that the Applicants knowingly withheld material information by pleading that the Applicants withheld contradictory statements made in a foreign prosecution of the counterpart application. The Court will now address whether the Defendants have satisfied this burden at the pleading stage.

---

[4] The facts of *Ethicon* are illustrative of a situation where an applicant owed a duty to disclose its own statements made to a foreign patent office when those statements "flatly contradict[ed]" its statement to the PTO.  *See* 2013 WL 12178114, at *5. There, the applicant submitted a declaration to the EPO admitting that a portion of the clamping force and pressure ranges for a surgical instrument claimed in its U.S. patent specifications were "inoperable and/or found in the prior art." *Id.* at *1, 5. The applicant also stated in its declaration that it "narrowed the appropriate clamping force and pressure ranges claimed in [its U.S. patent] and the EPO Application." *Id.* at *1. The applicant, however, did not disclose this declaration to the PTO nor did the applicant actually narrow the claims in its U.S patent to reflect what it admitted was inoperable or found in the prior art. *Id.*  The district court held that the applicant owed a duty to disclose its own statements because they "flatly contradict[ed]" those found in its U.S. patent's specifications.  *Id.* at *5.

### 2.    Defendants Sufficiently Plead the Elements of Inequitable Conduct

IBM contends it "properly and sufficiently alleges in its counterclaim that VirtaMove's submissions to the PTO included material omissions, because [the Applicants] failed to disclose substantially contradictory statements that it made to the EPO regarding the required unique identity of the claimed containers and the purported novelty of the claimed invention over the prior art." (Dkt. No. 69 at 4 (citing Dkt. No. 49 at ¶¶ 104–11).) Similarly, HPE contends it "properly and sufficiently alleges . . . that VirtaMove made material omissions from its disclosures to the USPTO, having represented to the USPTO that the '814 patent claims were enabled as written, but withholding that it had admitted to the EPO that another requirement—a 'unique identity'—was necessary to enable the alleged invention." (Dkt. No. 135 at 9 (citing Dkt. 116 at ¶¶ 119, 121–22).)

At the pleading stage, Defendants do not have to prove the elements of inequitable conduct; rather, Defendants simply must recite sufficient facts from which a court may "reasonably infer" that the requisite elements of inequitable conduct are satisfied. *Exergen*, 575 F.3d at 1328-29. Determining whether the withheld statements are sufficiently contradictory to be material information is, by its very nature, a highly fact intensive question. In considering Plaintiff's Motions to Dismiss, the Court must accept Defendants' well-pleaded facts as true and in the light most favorable to the Defendants. *See U.S. Silica Co. v. Amberger Kaolinwerke Eduard Kick GmbH & Co. KG*, No. 2:20-CV-00298-JRG, 2021 WL 5415294, at *2 (E.D. Tex. Nov. 19, 2021). Consequently, after having considered all the facts alleged in Defendants' Counterclaims, the Court finds that Defendants have pled sufficient facts from which the Court may reasonably infer that the Applicants knew of the withheld material information and withheld this information with a specific intent to deceive the PTO. *See* IBM's Counterclaim (Count 5), Dkt. No. 49 at ¶¶ 76-118; HPE's Counterclaim (Count VI(2)), Dkt. No. 116 at ¶¶ 85-88, 108-125.) Accordingly, the Court concludes that Defendants' inequitable conduct counterclaims have been sufficiently pleaded.

## IV.    CONCLUSION

For the reasons set forth above, Court finds that VirtaMove's Motions (Dkt. Nos. 65; 128) should be and are **DENIED**.

**So ORDERED and SIGNED this 24th day of March, 2025.**


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE