# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |

**INTERNATIONAL BUSINESS MACHINES CORP.'S
MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. SAM MALEK**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. LEGAL STANDARD ............................................................................................................ 2

III. ARGUMENT .......................................................................................................................... 2

    A. Dr. Malek's New Claim Constructions Introduced Outside the *Markman* Process Should Be Excluded. ................................................................................. 2

    B. Dr. Malek's Opinions That Any Prior Art Computing System Would Render The Havemose Patents Obvious Should Be Excluded For Contradicting The Court's Claim Construction Order. ........................................... 4

    C. Dr. Malek's Non-Infringement Opinions Incorrectly Portraying IBM's Accusations Regarding V-Migrate and V-Maestro and Contradicting This Court's Claim Construction Order Should Be Excluded. ...................................... 7

    D. Dr. Malek's Opinions Regarding Non-Infringing Alternatives For The Accused V-Maestro Product Should Be Excluded. .............................................. 9

IV. CONCLUSION ...................................................................................................................... 9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alere, Inc. v. Rembrandt Diagnostics, LP*,
   791 F. App'x 173 (Fed. Cir. 2019) ...........................................................................................6

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
   132 F.3d 701 (Fed. Cir. 1997) ...................................................................................................6

*BMC Software, Inc. v. Servicenow, Inc.*,
   No. 2:14-CV-903-JRG, 2016 WL 367251 (E.D. Tex. Jan. 29, 2016) .......................................2

*Cent. Admixture Pharm. Servs. v. Advanced Cardiac Sols, P.C.*,
   482 F.3d 1347 (Fed. Cir. 2007) .................................................................................................4

*Cordis Corp. v. Boston Sci. Corp.*,
   658 F.3d 1347 (Fed. Cir. 2011) .................................................................................................2

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ........................................................................................................1, 2, 9

*Elder v. Tanner*,
   205 F.R.D. 190 (E.D. Tex. 2001) ..............................................................................................2

*Grain Processing Corp. v. Am. Maize Prods. Co.*,
   185 F.3d 1341 (Fed. Cir. 1999) .................................................................................................9

*Hoffer v. Microsoft Corp.*,
   405 F.3d 1326 (Fed. Cir. 2005) .................................................................................................6

*Javelin Pharms., Inc. v. Mylan Lab'ys Ltd.*,
   No. CV 16-224-LPS, 2017 WL 4511352 (D. Del. Oct. 10, 2017) ...........................................6

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ..................................................................................................................2

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ......................................................................................................... passim

*PerdiemCo, LLC v. Industrack LLC*,
   No. 2:15-CV-00727-JRG-RSP, 2016 WL 6432699 (E.D. Tex. Oct. 31, 2016) ........................3

*Sci. Applications Int'l Corp. v. United States*,
   154 Fed. Cl. 594 (2021) ............................................................................................................3

*Stoller Enters., Inc. v. Fine Agrochemicals Ltd.*,
　705 F. Supp. 3d 774 (S.D. Tex. 2023) .................................................................................9

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
　574 U.S. 318 (2015)..............................................................................................................3

**Rules**

Federal Rule of Evidence 702 ...............................................................................................1, 2, 9

Defendant and Counterclaim-Plaintiff International Business Machines Corp. ("IBM") respectfully requests that the Court strike certain improper opinions of Dr. Sam Malek, an expert for Plaintiff and Counterclaim-Defendant VirtaMove, Corp. ("VirtaMove").

## I.      INTRODUCTION

IBM moves the Court to strike and exclude certain opinions of Dr. Sam Malek, VirtaMove's technical expert on issues related to U.S. Pat. Nos. 8,943,500, 9,697,038, and 10,606,634 (collectively the "Havemose Patents") and U.S Pat. No. 9,722,858 (the "'858 Patent") (collectively, the "Counterclaim Patents"). Several of Dr. Malek's opinions are inadmissible under Federal Rule of Evidence 702 and the standards articulated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Specifically, IBM moves to strike:

1. Dr. Malek's opinions that rely on new claim constructions never raised during the *Markman* process, *see* Ex. 1 (Malek Op. Rpt.) ¶ 239;

2. Dr. Malek's opinions that any prior art computing system would render the Havemose Patents obvious based on his incorrect interpretation of the "wherein" clauses in the Havemose Patents' asserted claims—an interpretation that contravenes the Court's *Markman* Order and effectively read the "wherein" clauses out of the claims, *see id.* ¶¶ 316–18, 375–77, 425–27 and Ex. 2 (Malek Reb. Rpt.) ¶¶ 72, 77, 80, 82, 84, 86, 88, 90;

3. Dr. Malek's opinions that IBM's infringement allegations against the accused VirtaMove V-Migrate and V-Maestro products are directed against those products in combination and that V-Migrate does not infringe on its own, which misrepresent IBM's infringement theory and are based on an incorrect claim interpretation already rejected by this Court, *see* Ex. 2 (Malek Reb. Rpt.) ¶¶ 54, 104-105, 118, 138-139, 153, 183-184, 229-230; and

4. Dr. Malek's opinion that ceasing the sale of the V-Maestro product is an acceptable non-infringing alternative to the Counterclaim Patents, which is unreliable because the non-infringing alternative VirtaMove proposes, V-Migrate, also infringes at least the Havemose Patents, *see id.* ¶¶ 250-254.

Allowing these unreliable and unsupported opinions at trial would risk confusing the jury and would substantially prejudice IBM. Accordingly, these improper opinions should be excluded.

## II. LEGAL STANDARD

In performing its "gatekeeping role," a court must ensure that an expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (*Daubert* analysis applies to expert testimony based on "technical" or "specialized knowledge"). Federal Rule of Evidence 702 allows expert testimony to be admitted only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflect a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702. Under Rule 702, the "ultimate inquiry [is] whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial." *BMC Software, Inc. v. Servicenow, Inc.*, No. 2:14-CV-903-JRG, 2016 WL 367251, at *1 (E.D. Tex. Jan. 29, 2016). While an expert may opine as to how the Court's claim constructions apply to the facts of a case, when an expert's opinion is based on an "incorrect understanding of the claim construction," the Court "must disregard the testimony." *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011). Conclusory opinions in an expert report that do not set forth the "reasoning" or "thought process" relating to a conclusion regarding anticipation or obviousness also are inadequate and should be stricken. *Elder v. Tanner*, 205 F.R.D. 190, 193 (E.D. Tex. 2001).

## III. ARGUMENT

### A. Dr. Malek's New Claim Constructions Introduced Outside the *Markman* Process Should Be Excluded.

It is well-established that the construction of patent claims is a matter of law reserved exclusively for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

While experts may seek to provide context regarding how a person of ordinary skill in the art would understand certain terms, they may not offer legal conclusions or alternative constructions that supplant the Court's authority. *See Sci. Applications Int'l Corp. v. United States*, 154 Fed. Cl. 594, 633 (2021) (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015)) ("An expert may articulate the meaning of a term to a POSITA, but then the court must conduct a legal analysis to see if that same meaning fits with the term in the context of the specific patent claim under review, because experts may be examined to explain terms of art ... but they cannot be used to prove the proper or legal construction of any instrument of writing.") (internal quotations and citations omitted).

Here, Dr. Malek offers new claim constructions that were not introduced and briefed during this Court's *Markman* process. Specifically, in his opening report, Dr. Malek asserts that "[c]laim 4 of the '038 Patent **might be interpreted in two different ways**, that either 1) the calls are created by the one or more applications, or 2) that the system libraries are created by the one or more applications. I have addressed both possibilities above." Ex. 1 (Malek Op. Rpt.) ¶ 239. By presenting multiple alternative interpretations of the claim language—which, to be clear, IBM does not agree with—Dr. Malek is not merely providing technical context or purporting to explain how a POSITA would interpret a term. Rather, he is engaging in untimely and improper claim construction outside the Court's process and schedule for that endeavor, and is usurping the Court's exclusive authority to construe the claims. *See Markman*, 517 U.S. at 372. Dr. Malek's new claim constructions are clearly untimely, as this Court has already issued an order construing the disputed terms. *See* Dkt. 222. VirtaMove did not raise either of Dr. Malek's new interpretations during the *Markman* process, and it is too late for Dr. Malek to introduce these interpretations now. *See PerdiemCo, LLC v. Industrack LLC*, No. 2:15-CV-00727-JRG-RSP, 2016 WL 6432699, at *3

(E.D. Tex. Oct. 31, 2016) (claim interpretation arguments that "were never raised during claim construction … are thus waived") (citing *Cent. Admixture Pharm. Servs. v. Advanced Cardiac Sols, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)).

Dr. Malek's newly-offered claim construction is improper and risks confusing the jury, because they invite the jury to consider not just a pair of untimely interpretations but conflicting, alternative interpretations that have not gone through the *Markman* process. IBM is clearly prejudiced because it has been deprived of any opportunity to submit and have the Court consider claim construction arguments opposing these new interpretations. Dr. Malek's opinions also are improper because they are likely to mislead the jury as to the applicable legal standard for interpreting claims. Accordingly, the new claim interpretations that Dr. Malek offers in paragraph 239 of his opening report should be stricken and excluded.[1]

### B. Dr. Malek's Opinions That Any Prior Art Computing System Would Render The Havemose Patents Obvious Should Be Excluded For Contradicting The Court's Claim Construction Order.

Dr. Malek improperly treats the testimony of Dr. Allan Havemose—the Havemose Patents' inventor—that he built prototypes of his invention on Windows and Linux as a claim construction admission that "virtually any prior art computing systems" would satisfy the Havemose Patents' "wherein" clauses, rendering the claims obvious. *See* Ex. 1 (Malek Op. Rpt.) ¶¶ 316–18, 375–77, 425–27). That conclusion should be excluded because it is based on a claim interpretation that contradicts the Court's claim construction order.

---

[1] In addition, in its claim construction order, the "Court ORDER[ED] each party not to refer, directly or indirectly, to its own or any other party's claim-construction positions in the presence of the jury," and further ordered that "the parties [are] to refrain from mentioning any part of [the Court's Claim Construction] opinion, other than the actual positions adopted by the Court, in the presence of the jury," which precludes Dr. Malek from offering and relying on these newly-introduced claim construction positions at trial. *See* Dkt. 222 at 33.

Dr. Malek acknowledges in his report that Dr. Havemose testified about his prototype development, which is a normal part of any invention process. *See id.* ¶¶ 317, 376, 426 (relying on testimony "describing Dr. Havemose's prototype and its development . . . ."); *see also* Ex. 2 (Malek Reb. Rpt.) ¶¶ 72, 77, 80, 82, 84, 86, 88, 90 (same) (internal citations omitted). Dr. Malek opines, however, that this testimony demonstrates that the claims are directed to mere "capabilities" and thus are invalid because Dr. Havemose did his prototyping using Windows and Linux—which, like any prior computing system, "**had the capability** to run and execute the code that [Dr. Havemose] provided them to perform [his] invention."' Ex. 1 (Malek Op. Rpt.), ¶ 317. Based on this reasoning, Dr. Malek opines that ***any prior computing systems*** would constitute prior art to the Havemose Patents because any prior art would be able to carry out instructions. *See id.*[2]

Notably, Dr. Malek's opinion mirrors VirtaMove's already-rejected *Markman* arguments that the Havemose Patents' "wherein" clauses are directed to ***mere capabilities*** that are "'divorced from the recited structure,'" Dkt. 152 at 5–6, as Dr. Malek now interprets the "wherein" clauses as being directed to "provid[ing] those computing systems with instructions via user inputs to cause those systems to perform the claimed functionality." Ex. 1 (Malek Op. Rpt.) ¶¶ 317, 376, 426. That interpretation flies in the face of this Court's construction "***reject[ing]*** VirtaMove's alternative position," which requires "these terms to be performed 'independently of user interaction,'" "and constru[ing] (1) 'wherein the one or more isolated environments are created . . .' as 'wherein ***the system is configured to*** create . . . .' and (2) 'wherein the one or more isolated

---

[2] Dr. Malek makes this argument to support not only his opinion that the Havemose Patents are obvious because virtually any prior art computing systems would disclose the inventions in the Havemose Patents, he relies on the same arguments to support his opinion that VirtaMove does not infringe. *See* Ex. 2 (Malek Reb. Rpt.) ¶¶ 72, 77, 80, 82, 84, 86, 88, 90 ("Additionally, as I explained in my opening report, if simply allowing for the functionality to be practiced would satisfy the claim language, then ***practically any pre-existing system would practice this limitation***."). Such opinions should be excluded for the same reason.

environments are removed . . .' as 'wherein *the system is configured to* be removed . . . .'" Dkt. 222 at 24 ("Thus, a skilled artisan would be reasonably certain the challenged language requires *the system to be configured to* (1) to create isolated environments during installation of the applications, and (2) remove the isolated environments as part of an uninstall."). The Court's claim construction lays out clear metes and bounds of the "wherein" clauses in relation to "the system," demonstrating that these clauses are *not* directed to mere capability divorced from any structure, regardless of the system, and thus are *not* satisfied by "virtually any prior art computing systems," as Dr. Malek contends. Ex. 1 (Malek Op. Rpt.) ¶ 317.

Moreover, even assuming for the sake of argument that Dr. Malek's untimely claim construction opinion purportedly based on inventor testimony did not directly contradict the Court's *Markman* order, "[t]he testimony of an inventor . . . concerning claim construction is . . . entitled to little or no consideration." *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997). Dr. Malek's invalidity opinions that rely on an interpretation of the "wherein" clauses based solely on Dr. Havemose's alleged inventor interpretation should be excluded as unreliable on this ground, as well.

In addition, not only is Dr. Malek's obviousness opinion based on a claim interpretation that contradicts this Court's *Markman* order, but his interpretation effectively reads all the "wherein" clauses out of the claims. *See Javelin Pharms., Inc. v. Mylan Lab'ys Ltd.*, No. CV 16-224-LPS, 2017 WL 4511352, at *3 (D. Del. Oct. 10, 2017) *citing Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329–30 (Fed. Cir. 2005) ("However, when the 'whereby' [or 'wherein'] clause states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention."); *Alere, Inc. v. Rembrandt Diagnostics, LP*, 791 F. App'x 173, 178 (Fed. Cir. 2019) (holding that the wherein clause imposes a limitation on the claim language). Because Dr.

Malek's opinions that virtually any prior art computing system would render the Havemose Patents obvious will mislead the jury as to the important issue of claim interpretation, these opinions in paragraphs 316–18, 375–77, and 425–27 of his opening report should be excluded.

    **C.**    **Dr. Malek's Non-Infringement Opinions Incorrectly Portraying IBM's Accusations Regarding V-Migrate and V-Maestro and Contradicting This Court's Claim Construction Order Should Be Excluded.**

Dr. Malek incorrectly opines in his rebuttal report that IBM's infringement read requires using V-Migrate and V-Maestro together. *See, e.g.,* Ex. 2 (Malek Reb. Rpt.) ¶ 54 ("Dr. Wicker alleges that V-Maestro and V-Migrate together (including their components) infringe.") These statements by Dr. Malek mispresent the underlying opinion of IBM's technical expert, Dr. Wicker. Throughout this case, IBM has accused both V-Migrate and V-Maestro, ***individually*** and in combination, of infringement. *See, e.g.,* Ex. 3 (IBM Interrogatory Nos. 26–39) at 3–5 (defining Accused VirtaMove Products, including various versions of V-Migrate). Consistent with those accusations, Dr. Wicker based his infringement analysis on the source code and documentation for ***each*** accused product by itself and together. For the Havemose Patents, Dr. Wicker relies, for example, solely on the V-Migrate product's source code to demonstrate infringement, because that product can infringe alone. *See* Ex. 4 (Wicker 7/18/25 Tr.) at 224:11–225:6 (explaining that "for each limitation of the [Havemose] patents" he "compared the . . . V-Migrate software to the [Havemose] patents" and "pointed out where in the software the individual limitations were implicated"), 225:9–226:14 (explaining "V-Maestro includes the functionality of V-Migrate [b]ut V-Migrate is a . . . separate migration process" and is primarily "a user interface product"). Dr. Malek's opinion that IBM accuses V-Migrate and V-Maestro only in tandem should be excluded because it mischaracterizes the record and risks confusing the jury about the actual accused products and basis for infringement.

Separately, Dr. Malek's opinion that V-Migrate, standing alone, does not infringe also should be excluded, because it is based on a claim construction this Court has already rejected. In his rebuttal report, Dr. Malek states:

> It is my opinion that V-Migrate alone, without V-Maestro, would not infringe according to Dr. Wicker's theories. For instance, Dr. Wicker concedes that the only way that the recited functionality is even allegedly **_automated_** (and thus **_not up to customers to implement_**, for which VirtaMove would have no liability) is through V-Maestro.

Ex. 2 (Malek Reb. Rpt.) ¶¶ 104, 138; *see also id.* ¶¶ 104–05, 138–39, 183–84, 239–40. In reaching this opinion, Dr. Malek relies on VirtaMove's unsuccessful proposed interpretation that the Havemose Patents' claims must be "automated," *i.e.*, that they must be performed "independently from user intervention." *Id.* ¶ 33; *see also* Ex. 5 (Malek 07/18/25 Dep. Tr.) at 101:13-25) ("And ***under VirtaMove's proposal*** that this limitation must be met, you know, ***independently of user interaction*** . . . . Dr. Wicker is relying exclusively on V-Maestro for any such ***automation***."). Critically, this Court has already expressly rejected VirtaMove's incorrect construction that the Havemose Patents' "wherein" clauses must be performed "automated" or "independent of user intervention," instead finding that "the system's operation does not require any user action or intervention, not that it must be a requirement of the claims." *See* Dkt. 222 at 24 ("IBM represented only that the claims are agnostic as to how these actions are triggered, whether it is via an automated process or some unclaimed user input.") (internal citations and quotations omitted). Thus, Dr. Malek's requirement of automation or zero user intervention is ***not*** included in the Court's claim construction order. *See id.* at 23, 32.

Because the non-infringement opinions set forth in paragraphs 54, 104–05, 118, 138–39, 153, 183–84, and 229–30 of Dr. Malek's rebuttal report mischaracterize IBM's infringement allegations and rely on a claim interpretation that is inconsistent with this Court's claim construction order, those opinions should be excluded.

### D. Dr. Malek's Opinions Regarding Non-Infringing Alternatives For The Accused V-Maestro Product Should Be Excluded.

Dr. Malek opines that as a potential non-infringing alternative, VirtaMove could simply stop selling its V-Maestro product. *See* Ex. 2 (Malek Reb. Rpt.) ¶¶ 250–54. This opinion is unreliable because—as indicated by the very term "***non-infringing*** alternative"—to be a non-infringing alternative, the law requires the purported alternative to be both available and acceptable ***and*** non-infringing. *Stoller Enters., Inc. v. Fine Agrochemicals Ltd.*, 705 F. Supp. 3d 774, 798 (S.D. Tex. 2023) (citing *Grain Processing Corp. v. Am. Maize Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999)). As discussed above, for at least the Havemose Patents, IBM accuses VirtaMove's V-Migrate product both ***individually*** and in combination with the V-Maestro product. Merely stopping sales of V-Maestro would not avoid infringement, because IBM accuses V-Migrate itself of infringing the Havemose Patents. *See* Ex. 4 (Wicker 7/18/25 Tr.) at 224:11–225:6, 225:9–226:14.

As a matter of law, to be a non-infringing alternative, the "alternative" cannot itself be accused of infringement. Accordingly, to avoid confusing the jury on the proper legal standard for an available non-infringing alternative, the opinions set forth in paragraphs 250–254 of Dr. Malek's rebuttal report should be excluded.

### IV. CONCLUSION

For the reasons set forth above, the opinions of Dr. Malek addressed in this Motion are unreliable and should be excluded under *Daubert* and Federal Rule of Evidence 702.

Dated: July 28, 2025                              Respectfully submitted,

                                                /s/ Todd M. Friedman
Todd M. Friedman (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (*pro hac vice*)
Nathaniel Ngerebara (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:     (415) 439-1400
Facsimile:     (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (*pro hac vice*)
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:     (714) 982-8822
Facsimile:     (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:     (903) 757-6400
Facsimile:     (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Defendant
International Business Machines Corp.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served on July 28, 2025, with a copy of this document via electronic mail.

/s/ Todd M. Friedman
Todd M. Friedman

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that Exhibits 2 and 3 cited in the foregoing document are authorized to be filed under seal pursuant to the Protective Order entered in this matter.

/s/ *Todd M. Friedman*
Todd M. Friedman

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on July 25, 2025. The parties are unable to reach agreement as to IBM's requested relief.

                                                                       */s/ Todd M. Friedman*
                                                                       Todd M. Friedman