# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**<u>DEFENDANT INTERNATIONAL BUSINESS MACHINES CORP.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

III.  LEGAL STANDARD......................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 7

    A.    In view of rights held by VirtaMove USA, VirtaMove has failed to meet its burden to show it has statutory standing to bring this infringement suit. .......... 7

        1.    VirtaMove has not established that it retains all substantial rights in the Asserted Patents. .................................................................... 8

        2.    VirtaMove's efforts to sidestep the questions raised by the ██████████████ are unavailing. ................................................. 10

    B.    VirtaMove lacks constitutional standing because there is a break in the chain of title from AppZero Corp. ████████ that purportedly conveyed the Asserted Patents to VirtaMove. ...................................................... 13

V.    CONCLUSION................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A123 Sys., Inc. v. Hydro-Quebec*,
626 F.3d 1213 (Fed. Cir. 2010).................................................................................9

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F.3d 1359 (Fed. Cir. 2010)...........................................................................14, 15

*In re Cirba Inc.*,
No. 2021-154, 2021 WL 4302979 (Fed. Cir. Sept. 22, 2021) ............................7, 10

*Cucuras v. Sec'y of Dep't of Health & Hum. Servs.*,
993 F.2d 1525 (Fed. Cir. 1993)...............................................................................11

*Enzo APA & Son, Inc. v. Geapag A.G.*,
134 F.3d 1090 (Fed. Cir. 1998)...............................................................................14

*Intell. Tech., LLC. v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir. 2024) ..................................................................................7

*Keranos, LLC v. Silicon Storage Technology, Inc.*,
797 F.3d 1025 (Fed. Cir. 2015)..................................................................................7

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019).........................................................................7, 9, 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................................................6

*Maimon v. United States*,
175 Fed. Cl. 553 (2025) ..............................................................................................6

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007)..................................................................................6

*Script Sec. Sols., LLC v. Amazon.com, Inc.*,
No. 2:15-CV-1030-WCB, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016)................7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................................................................6, 10, 13

*Walter Kidde Portable Equipment, Inc. v. Universal Sec. Instruments, Inc.*,
479 F.3d 1330 (Fed. Cir. 2007).................................................................................15

*WiAV Sols. LLC v. Motorola Inc.*,
   631 F.3d 1257 (Fed. Cir. 2010) ........................................................................7

**Statutes**

35 U.S.C. § 261's ...............................................................................................14

35 U.S.C. § 281 ...............................................................................................7, 9

Patent Act ...........................................................................................................7

**Rules**

Fed. R. Civ. P. 12(b)(1) ...............................................................................1, 6, 15

## I.    INTRODUCTION

Like all parties asserting patent infringement, Plaintiff VirtaMove Corp. ("VirtaMove" or "VirtaMove Canada") must be able to make the threshold showing that it has both statutory and constitutional standing to assert the patents-in-suit.  Because VirtaMove cannot meet that burden, Defendant International Business Machines Corp. ("IBM") respectfully moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss VirtaMove's operative complaint for lack of subject matter jurisdiction due to lack of standing.

VirtaMove cannot establish statutory standing because it cannot demonstrate that it has all substantial rights to the '814 and '058 Patents (the "Asserted Patents").  In 2015, to borrow money from Comerica Bank ("Comerica"), VirtaMove Canada entered into a ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ These documents relating to VirtaMove's loan confirm that non-party VirtaMove USA has substantial rights in the Asserted Patents, including (at a minimum) the right to transfer an interest in them.  Despite repeated requests from IBM, VirtaMove has failed to account for exactly what rights VirtaMove USA possesses in the patents.  Critically, VirtaMove has also failed to demonstrate —in view of VirtaMove USA's apparent substantial rights—that VirtaMove itself has "all substantial rights" in the patents, which it needs in order to have standing to assert them.  As

such, VirtaMove has not met its burden to establish statutory standing.

Separate and apart from that deficiency, VirtaMove cannot show that it has Article III standing to assert the patents-in-suit. Sometime before August 2010, an entity called AppZero Corp., which held title to the Asserted Patents, ███████████████████. When AppZero Corp. ████████████████████████, allegedly including the Asserted Patents, and purported to transfer them to a new entity, AppZero Software Corp., which later became VirtaMove.  Despite repeated requests from IBM, VirtaMove has not produced any agreements confirming what rights in the Asserted Patents ████████████████████████████ ███████ nor has VirtaMove shown that title to the patents was actually transferred ███████████ ███████.  Given this break in the chain of title, VirtaMove cannot meet its burden of establishing what rights ██████████ possessed when they supposedly transferred the patents to AppZero Software Corp.  Moreover, while AppZero Corp. itself purported to transfer its rights in the patents directly to AppZero Software Corp. via a later assignment, VirtaMove has not established what rights, if any, AppZero Corp. retained ███████████████████████ ████████████████  Given the significant questions these events—and the missing documentation—raise regarding the patents' chain of title, VirtaMove cannot meet its burden to demonstrate constitutional standing.

## II.     BACKGROUND

VirtaMove filed this suit on January 31, 2024, alleging infringement of U.S. Pat. Nos. 7,519,814 and 7,784,058. Dkt. 1. VirtaMove's Complaint identified VirtaMove as the sole owner of the Asserted Patents. *Id.* ¶ 1.  VirtaMove was originally called Trigence Corp. *Id.* ¶ 2.  Trigence Corp. later changed its name to AppZero Corp. *Id.*  On August 19, 2010, after AppZero Corp.

████████████████████████████████████████

████████████████████████████████████  Ex. 1 at

VM_IBM_0022598.  Also on August 19, 2010, AppZero Corp. ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██  Ex. 2 at VM_IBM_0022608.  On August 20, 2010, AppZero Corp.'s ███████████████

████████████████████████████████████████████████████████████

████████████████████████████  Ex. 3 at VM_IBM_0022541.  ███████████████

████████████████████████████████████████████████████████.  *Id.* at

VM_IBM_0022582.    In  2018,  AppZero  Software  Corp.  was  renamed  VirtaMove  Corp.

("VirtaMove" or "VirtaMove Canada").  Ex. 4 (Stokes 5/20/25 Tr.) at 66:6–8.

IBM  has  repeatedly  asked  VirtaMove  to  provide  evidence  confirming  that  title  to  the

Asserted Patents was transferred to AppZero Corp.'s ████████ following AppZero Corp.'s ████████

such that ██████████████████████████████████████████  *See, e.g.*, Exs.

6–8  (emails  between  counsel).    To  date,  VirtaMove  has  provided  no  such  corroboration.    USPTO

assignment records do not show any transfer of title from AppZero Corp. ████████████████████

████████  to AppZero Software Corp.  *See* Exs. 10–11. The USPTO records do show a purported

transfer  of  the  Asserted  Patents  from  AppZero  Corp.  to  AppZero  Software  Corp.  on  August  20,

2010.  Ex. 10.  However, VirtaMove has provided no evidence that AppZero Corp. retained any

title  that  it  could  transfer  following  its  August  19,  2010  ████████████████████████

████████████████████████████  *See* Ex. 2 at VM_IBM_0022608.

On September 4, 2015, ██████████████████████████████████

██████████████████████████████████████████, AppZero Software Corp.

(today known as VirtaMove) █████████████████████  with Comerica Bank, and with its sister

entity, AppZero Software Inc. ("VirtaMove USA"), ██████████████. *See* Ex. 12 (the ████

████████). The ████████████████ both VirtaMove and VirtaMove USA ████████████

*Id.*, VM_IBM_0024148, at -4154–55. The ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ *Id.* at -4154, -4173.

The ██████████ that VirtaMove USA ██████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ Ex. 13 (the ████████████████████████ at

VM_IBM_0044954.  Exhibit A to the ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████ *Id.* at VM_IBM_0044969.

On July 25, 2018, Comerica wrote to VirtaMove to confirm the "total aggregate outstanding amount" owed to Comerica by VirtaMove and VirtaMove USA pursuant to the 2015 loan. Ex. 15 (the "Comerica Letter") at VM_IBM_0000530.  In addition to ████████████████,
the Comerica Letter identifies four agreements related to the loan: ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████ and (d) an "***Intellectual Security***

***Agreement given by VirtaMove USA*** … and registered at the US Patent and Trademark Office … against the intellectual property ***described in Exhibits 'A', 'B' and 'C' attached hereto*** [*i.e.*, to

4

the Comerica Letter] ...."

> (d) the Intellectual Property Security Agreement granted by VirtaMove USA in favour of the Bank and registered at the US Patent and Trademark Office ("USPTO") on September 17, 2015 against the intellectual property described in Exhibits "A", "B" and "C" attached hereto and registered at the Canadian Intellectual Property Office ("CIPO") on September 28, 2015 against the intellectual property described in Exhibit "D" attached hereto;

*Id.* VirtaMove's CEO "acknowledged" and signed the Comerica Letter on August 2, 2018.



*Id.* at VM_IBM_0000533. Exhibit B to the Comerica Letter expressly lists both Asserted Patents, indicating that these patents were among the intellectual property in which VirtaMove USA granted a security interest under its "Intellectual Property Security Agreement" with Comerica:

**EXHIBIT B**

**U.S. Patents**

| Description | Application / Patent Number | Issue Date / Filing Date |
|---|---|---|
| System for containerization of application sets | 10939903/7519814 | 04-14-2009/ 09-13-2004 |
| Malware containment by application encapsulation | 11432843/7757291 | 07-13-2010/ 05-12-2005 |
| System including run-time software to enable a software application to execute on an incompatible computer platform | 11380285/7774762 | 08-10-2010/ 04-26-2006 |
| Computing system having user mode critical system elements as shared libraries | 10946536/7784058 | 08-24-2010/ 09-21-2004 |
| Software service application and method of servicing a software application | 11415028/NONE | 05-01-2006 |
| Method and system for providing a program for execution without requiring installation | 12075842/NONE | 03-13-2008 |

Ex. 15 at VM_IBM_0000535. A redacted copy of the Comerica Letter was recorded with the USPTO as part of the assignment records. *See* Ex. 16, VM_IBM_0024127 at -4129, -4132, -4134.

During discovery, IBM repeatedly asked VirtaMove to explain when and what rights in the

Asserted Patents were ever transferred or granted to VirtaMove USA, such that VirtaMove USA could grant a security interest in the patents to Comerica. *See* Ex. 6–8. IBM also asked VirtaMove to produce documents cited in the Comerica Letter, including "the Intellectual Property Security Agreement granted by VirtaMove USA in the favour of the Bank." *See id.* VirtaMove responded that: ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ Ex. 9 at 34; Ex. 8 at 6. IBM noted to VirtaMove that its statements do not directly answer the question of whether any rights in the Asserted Patents were transferred or granted to VirtaMove USA, do not explain the basis for VirtaMove's ███████████████████████ and conspicuously leave the door open for Mr. Stokes's "recollection" and VirtaMove's position on these issues to change. Ex. 8 at 1–3. To date, VirtaMove has not supplemented its response.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of any claims over which the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court lacks subject matter jurisdiction if a plaintiff lacks standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A party invoking federal jurisdiction bears the burden of showing that it has constitutional and statutory standing to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). As the purported patentee, VirtaMove must prove it has valid title to the Asserted Patents. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338 (Fed. Cir. 2007); *see also Maimon v. United States*, 175 Fed. Cl. 553, 559 (2025) (plaintiff must demonstrate it held enforceable title at inception of suit).

A "factual" challenge to jurisdiction does not assume the correctness of the factual allegations in the complaint. *Script Sec. Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *2 (E.D. Tex. Oct. 31, 2016) (citations omitted).

To have constitutional standing, VirtaMove must show that it suffered an injury-in-fact that is redressable by the Court. *Intell. Tech., LLC. v. Zebra Techs. Corp.*, 101 F.4th 807 (Fed. Cir. 2024). Only "those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019). VirtaMove therefore must show that it possesses exclusionary rights in the Asserted Patents. *See, e.g.*, *In re Cirba Inc.*, No. 2021-154, 2021 WL 4302979, at *3 (Fed. Cir. Sept. 22, 2021). "Exclusionary rights" are the "ability to exclude others from practicing an invention or to forgive activities that would normally be prohibited under the patent statutes." *Lone Star Silicon Innovations LLC*, 925 F.3d at 1234.

To meet the statutory standing requirement for bringing this infringement action, VirtaMove must show that it is a "patentee" under 35 U.S.C. § 281. To be a patentee, a party must have "a legally protected interest in the patent created by the Patent Act." *Intell. Tech.*, 101 F.4th at 813. Only parties holding "all substantial rights" in a patent meet this requirement. *WiAV Sols. LLC v. Motorola Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *see also Keranos, LLC v. Silicon Storage Technology, Inc.*, 797 F.3d 1025, 1031–32 (Fed. Cir. 2015).

## IV.    ARGUMENT

### A.    In view of rights held by VirtaMove USA, VirtaMove has failed to meet its burden to show it has statutory standing to bring this infringement suit.

Contemporaneous documents related to VirtaMove's loan from Comerica indicate that VirtaMove USA has an ownership interest in the Asserted Patents and possessed a right to transfer an interest in the patents to Comerica. This evidence suggests VirtaMove USA possesses

substantial rights in the Asserted Patents, such that VirtaMove alone does not have "all substantial rights." At a bare minimum, the ▆▆▆▆▆▆ raise critical questions regarding what rights VirtaMove USA has in the patents, what rights VirtaMove retains, and whether whatever rights VirtaMove has are sufficient to constitute the "all substantial rights" it must possess in order to have statutory standing to assert the patents against IBM. Despite numerous requests from IBM, VirtaMove has failed to answer these critical questions and therefore has not met its burden to establish statutory standing.

### 1. VirtaMove has not established that it retains all substantial rights in the Asserted Patents.



As discussed above, the evidence in this case shows that VirtaMove USA ▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ to VirtaMove in 2015, with VirtaMove USA ▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Ex. 13, VM_IBM_0044954 at -4954, -4962. The record also shows that VirtaMove's CEO, Nigel Stokes, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Ex. 15, VM_IBM_0000530 at -0533, -0535.

The ▆▆▆▆▆▆▆ that VirtaMove entered into with ▆▆▆▆ also lists VirtaMove USA as ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. 12, VM_IBM_0024148, at -4154–55, -4173. Notably, the ▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ of both VirtaMove USA and VirtaMove. *Id.* at -4150. In this manner, the ▆▆▆▆▆▆▆ that in 2015, VirtaMove and VirtaMove USA were co-owners of VirtaMove's "property and assets," with each entity having the power to transfer those

8

assets.  VirtaMove contends that its property and assets in 2015 included the Asserted Patents.  *See* Ex. 14 at VM_IBM_0020945.    Accordingly, like ██████████████████████████████ confirms that VirtaMove USA had an ownership right—and the power to transfer an interest—in the Asserted Patents.  *See* Ex. 12, VM_IBM_0024148 at -4154–55.  In addition, the September 4, 2015 ██████████████ between VirtaMove USA ██████████ similarly specifies that

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██   Ex. 13, VM_IBM_0044954 at -4969.

Individually and collectively, these documents indicate that VirtaMove USA—a non-party to this lawsuit—has substantial rights in the Asserted Patents, including ownership rights in the patents and the ability to transfer an interest in the patents.  Indeed, in stating that VirtaMove USA is deemed a ██████████████████████████████████████████████████████ suggests that if VirtaMove were to assert these patents against a target, VirtaMove USA unilaterally could transfer the patents to that target and negate the lawsuit.  *See* *Lone Star*, 925 F.3d at 1231, 1234 (concluding Lone Star "does not possess the right to sue for 'all infringement'" and "cannot assert the patents in its own name under § 281").    These ███ ██████████ thereby call into question whether—given VirtaMove USA's evident substantial rights in the Asserted Patents—Plaintiff VirtaMove possesses "all substantial rights" that are necessary for it to be deemed a "patentee" under § 281 and to have statutory standing to bring this infringement suit against IBM on its own.  *See, e.g.*, *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) ("In determining ownership for purposes of standing, labels given by

the parties do not control.  Rather, the court must determine whether the party alleging effective ownership has in fact received all substantial rights ….").

Significantly, the Federal Circuit has found that the power to transfer patents— ███████ ███████████████████████████████████████████████████—is evidence of substantial rights in the patents.  *See In re Cirba Inc.*, No. 2021-154, 2021 WL 4302979, at *3 (Fed. Cir. Sept. 22, 2021) (confirming dismissal of plaintiff for lack of standing because subsidiary had proprietary rights in the patents and had made no promise it would not license them to others).  Here, VirtaMove USA's apparent ability to transfer the Asserted Patents suggests VirtaMove does ***not*** have all substantial rights and therefore lacks statutory standing.  *See Lone Star*, 925 F.3d 1229.  At a minimum, it is VirtaMove's burden to account for the distribution of rights in the Asserted Patents between VirtaMove USA and itself, and to establish that—notwithstanding VirtaMove USA's rights—it has "all substantial rights."  *See Spokeo*, 578 U.S. at 338 (purported patentee bears burden to show standing).  Despite repeated requests from IBM, VirtaMove has failed to make that showing.

## 2.    VirtaMove's efforts to sidestep the questions raised by the Comerica ████████████████ are unavailing.

Common Interrogatory No. 7 requires VirtaMove to "provide the factual and legal basis for [its] contention" that it "own[s] all necessary rights for the assertion of the Asserted Patents … including a description of all assignments, transfers, or licenses relating to the Asserted Patents …."  Ex. 9 (VirtaMove 5th Suppl. Resp. to Common Rog. No. 7) at 29.  As noted above, IBM repeatedly asked VirtaMove to update its response to this interrogatory to address the questions raised by ████████████████████████████, including the origin and scope of VirtaMove USA's rights in the Asserted Patents and ████████████████ ████████████████████████████████████████████████████████

██████  Exs. 7–8.  Following multiple requests, VirtaMove finally updated its interrogatory response to assert that ████████████████████████████████████████ and that ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████  Ex. 9 at 34.  Yet, VirtaMove has failed to explain how VirtaMove USA was capable of providing ██████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████  Ex. 12, VM_IBM_0024148 at -4154–55.  Nor has VirtaMove explained why ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████  See Ex. 15 at VM_IBM_0000533.

In its supplemental interrogatory response, VirtaMove asserts that ████████████ ████████████████████████████████████████████████████████ █████████████████████████████████  Ex. 9 at 34.  Notably, the only source that VirtaMove cites for its supposed "knowledge" of the facts asserted in its interrogatory response is the "recollection" of its CEO, Nigel Stokes.  *See id.*  Yet, VirtaMove conspicuously fails to provide any reason why Mr. Stokes's purported "recollection"—at least seven years after the events in question—should be considered more trustworthy than the contrary statements in the contemporaneous ██████████████████████████████ that ***Mr. Stokes himself*** acknowledged via his signature on August 2, 2018.  *See Cucuras v. Sec'y of Dep't of Health & Hum. Servs.*, 993 F.2d 1525 (Fed. Cir. 1993) ("[O]ral testimony in conflict with contemporaneous

documentary evidence deserves little weight.").  Indeed, Mr. Stokes himself frequently admitted during his deposition that he could not recall facts about this case and had to rely on VirtaMove's interrogatory responses.  *See*, *e.g.*, Ex. 4 (Stokes 5/20/25 Tr.) at 69:1–6 (objection omitted), Ex. 5 (Stokes 5/21/20 Tr.) at 365:22–366:3, 412:8–21 (objection omitted).

VirtaMove appears to be suggesting ▇▇▇▇▇▇ somehow mistakenly referenced



*See* Ex. 8 at 7 ▇▇▇▇▇▇▇▇

Yet, the evidence indicates that is not the case.  The

was registered with the USPTO on September ***17***, 2025.  *See* Ex. 15 at VM_IBM_0000530. As VirtaMove itself acknowledges, ▇▇▇▇▇▇

was registered on September ***21***, 2025.  *See* Ex. 14, VM_IBM_0020945 at -0946; Ex. 8 at 7.  Thus, for the ▇▇▇▇▇▇

Ex. 9 at 34, there would have to be ***two separate errors***

It is highly unlikely that there were two such errors—and the fact that the letter was "acknowledged" and countersigned by VirtaMove's CEO suggests VirtaMove did not find any errors in it.  Again, the VirtaMove USA ▇▇▇▇▇▇ that VirtaMove has failed to produce is critical to the issue of standing because, ▇▇▇▇▇▇

████████████████████████████████████████████████████ in the Asserted Patents from VirtaMove USA to Comerica.  *See* Ex. 15, VM_IBM_0000530 at 0535.

Further, VirtaMove may attempt to rely on the absence of any listed transfer of rights to VirtaMove USA in the USPTO's assignment records to argue that, ████████████████████ ████████████████ VirtaMove USA did not have any rights in the Asserted Patents. *See* Ex. 18 at VM_IBM_0024118.  As discussed below, however, this would not be the first time VirtaMove has failed to produce patent transfer or assignment records or to properly register them with the USPTO.  In any event, the USPTO assignment records do include the Comerica Letter, which VirtaMove relies on to show that Comerica released its security interest in the patents.  *See* Ex. 16, VM_IBM_0024127 at -4127.  As discussed above, the Comerica Letter indicates VirtaMove USA has substantial rights in the Asserted Patents.

Ultimately, as the party invoking federal jurisdiction, VirtaMove has the burden to show that it has standing to sue.  *See Spokeo*, 578 U.S. at 338.  In the face of evidence that VirtaMove USA has substantial rights in the Asserted Patent, VirtaMove has failed to meet its burden to show that it has "all substantial rights," and its unsupported denial of the written evidence to the contrary is insufficient to prove it has statutory standing.

**B.     VirtaMove lacks constitutional standing because there is a break in the chain of title from AppZero Corp. ████████████ that purportedly conveyed the Asserted Patents to VirtaMove.**

VirtaMove cannot meet its burden of show that it has the "exclusionary rights" required to establish Article III standing, because it has not shown what rights—if any—were granted from AppZero Corp. ██████████████ that purportedly transferred the Asserted Patents to AppZero Software Corp. (now VirtaMove).  As discussed above, AppZero Corp. ████████████████ ██████████████████████████████████████████████ *See* Ex. 5 (Stokes 5/21/25 Tr.) at 410:24–411:22. On August 19, 2010, ████████████ sent AppZero Corp.

13

a ██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Ex. 1 at VM_IBM_0022598.  On the same

day, AppZero Corp. informed ██████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████ Ex. 2, VM-

_IBM_0022607 at -2608.  Indeed, one day later, on August 20, 2010,█████████████

████████████████████████████████████████████████████

██████████████████████████████ *See* Ex. 3, VM_IBM_0022545 at -2582.

Significantly, despite repeated requests from IBM, VirtaMove has not produced any

written documents showing what patent rights, if any, AppZero Corp. granted █████████

██████ nor has VirtaMove produced any record of title being transferred or assigned from

AppZero Corp. █████████. *See* Ex. 8 at 1–7.  Especially given 35 U.S.C. § 261's requirement

that "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an

instrument *in writing*," the absence of any such written instrument produces a break in the chain

of title that calls into question ███████████████████ purported transfer of the patents to

VirtaMove.  *See, e.g.*, *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir.

2010) (finding "there was no valid written assignment to Abraxis" due to failure to satisfy § 261's

requirement that "assignments of patents must be in writing"); *Enzo APA & Son, Inc. v. Geapag*

*A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (same).

The ██████████████████████████████ does not make up for this gap

in the chain of title because, on its face, the ██████ simply declares an intent ██████████

████████████████—it does not establish that they held any right ████████████ in the first

14

place.  Similarly, ███████████████████████████ with AppZero Software Corp. is

insufficient to show what rights, if any, were originally transferred ████████████.

While VirtaMove may argue that a recorded assignment from AppZero Corp. to AppZero

Software Corp. on August 20, 2010—███████████████████████—is sufficient to establish

that VirtaMove has Article III standing, that purported assignment cannot clarify what happened

to the patent rights in connection with the undocumented ████████████████████████████

██████████████████████ of the competing transfers to AppZero Software Corp. took place.

It is well-established that a *post hoc* agreement should not be given retroactive effect in order to

cure standing issues that arose prior to the agreement.  *See, e.g.*, *Abraxis*, 625 F.3d at 1365 (finding

Abraxis lacked standing because, although it purportedly acquired patent assets from AstraZeneca

UK, the predecessor Astra entities did not execute a formal assignment to AstraZeneca UK, and a

retroactive assignment could not cure the issue); *Walter Kidde Portable Equipment, Inc. v.*

*Universal Sec. Instruments, Inc.*, 479 F.3d 1330, 1337 n.6 (Fed. Cir. 2007) ("[I]t is highly doubtful

that the 'confirmatory assignment' could have cured that jurisdictional defect….").  At bottom,

notwithstanding the supposed direct assignment from AppZero Corp. to AppZero Software Corp.,

VirtaMove has not shown that AppZero Corp. still had any title to transfer after its

███████████████████████████████████████████████████████████████████████████

████████████ *See* Ex. 2, VM_IBM_0022607 at -2608.  Due to the cloud over the Asserted

Patents' chain of title created by VirtaMove's failure to produce any documents demonstrating the

purported transfer of rights from AppZero Corp.████████████, VirtaMove has not met its burden

to show that it has constitutional standing to bring the present suit.

## V.     CONCLUSION

For the reasons set forth above, IBM respectfully asks the Court to dismiss VirtaMove's

operative complaint under Rule 12(b)(1) for lack of statutory and/or constitutional standing.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Dated: July 28, 2025

Respectfully submitted,

_/s/ Todd M. Friedman_

Todd M. Friedman (_pro hac vice_)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (_pro hac vice_)
Nathaniel Ngerebara (_pro hac vice_)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:    (415) 439-1400
Facsimile:     (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (_pro hac vice)_
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:    (714) 982-8822
Facsimile:     (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

_Of Counsel:_

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:    (903) 757-6400
Facsimile:     (903) 757-2323
andrea@millerfairhenry.com

_Attorneys for Defendant_
_International Business Machines Corp_

16

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served on July 28, 2025, with a copy of this document via electronic mail.

*/s/ Todd M. Friedman*
Todd M. Friedman

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Todd M. Friedman*
Todd M. Friedman
