# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## DEFENDANT INTERNATIONAL BUSINESS MACHINES CORP.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF THE ISSUES TO BE DECIDED .................................................. 2

III.  LEGAL STANDARD ........................................................................................... 2

      A.    Summary Judgment ................................................................................. 2

      B.    Express License ....................................................................................... 3

      C.    Implied License and Equitable Estoppel .................................................. 5

      D.    Burden to Prove Infringement of a Claimed Method ............................... 5

IV.   ARGUMENT ...................................................................................................... 5

      A.    IBM Has a License to the Accused Technology ........................................ 5

            (i)    The 2014 IBM Assistance Agreement Gives IBM an
                 Express License To Use VirtaMove's "Feedback" in any
                 Manner Whatsoever. ..................................................................... 6

            (ii)   VirtaMove's Feedback to IBM Included the Features It
                 Now Accuses of Infringement. ...................................................... 8

      B.    The Doctrine of Equitable Estoppel Bars VirtaMove's
           Infringement Claims. ............................................................................. 14

            (i)    VirtaMove's Misleading Conduct Led IBM To Infer
                 VirtaMove Would Not Sue IBM for Infringement. ...................... 14

            (ii)   IBM Relied on VirtaMove's Misleading Conduct When
                 Developing the Accused Products. ............................................... 16

            (iii)  IBM Will Be Materially Prejudiced if VirtaMove Proceeds
                 With Its Infringement Claims. ..................................................... 17

      C.    VirtaMove Has Not Presented Evidence That IBM or IBM's
           Customers Practice the Method Recited in the '814 Patent's
           Asserted Claims. ................................................................................... 17

            (i)    Because IKS Supports Only the Ubuntu Operating System,
                 It Cannot Meet the Claim Limitation Requiring "a System
                 Having a Plurality of Servers With Operating Systems That
                 Differ." ...................................................................................... 17

i

(ii)     VirtaMove has Provided No Evidence That IKS Has Servers With Operating Systems That Differ. ............................ 18

(iii)    A Product With the Mere Capability To Infringe Does Not Infringe a Method Claim. ............................................................ 20

**V.    CONCLUSION .......................................................................... 22**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*222 Bloomingdale Rd. Assocs. v. NNEX Props. Co.*,
    703 N.Y.S.2d 737 (N.Y. App. Div. 2000) ...............................................................................4

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992)...................................................................................4, 16, 17

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*,
    52 F.3d 1062 (Fed. Cir. 1995)...............................................................................................17

*Alexsam, Inc. v. IDT Corp.*,
    715 F.3d 1336 (Fed. Cir. 2013).............................................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................................3

*Aspex Eyewear Inc. v. Claritt Eyewear Inc.*,
    605 F.3d 1305 (Fed. Cir. 2010).............................................................................................17

*Autodata Sols., Inc. v. Versata Software, Inc.*,
    No. 2:12-CV-704-JRG-RSP, 2016 WL 1271567 (E.D. Tex. Mar. 31, 2016) ......................3, 8

*Bank of Tokyo-Mitsubishi, Ltd., New York Branch v. Kvaerner a.s.*,
    243 A.D.2d 1, 671 N.Y.S.2d 905 (1998) ................................................................................8

*Bethlehem Steel Co. v. Turner Constr. Co.*,
    141 N.E.2d 590 (N.Y. 1957)...................................................................................................4

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*,
    72 F.3d 872 (Fed. Cir. 1995)..................................................................................................3

*Commil USA, LLC v. Cisco Sys.*,
    575 U.S. 632 (2015)................................................................................................................6

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012).........................................................................................21, 22

*Feifer v. Prudential Ins. Co. of Am.*,
    306 F.3d 1202 (2d Cir. 2002).................................................................................................4

*Forschung e.V. v. Sirius XM Radio Inc.*,
    138 F.4th 1373 (Fed. Cir. 2025) ...........................................................................................15

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010).............................................................................2, 21

*High Point SARL v. Sprint Nextel Corp.*,
817 F.3d 1325 (Fed. Cir. 2016)..............................................................................4, 15

*Intel Corp. v. VIA Techs., Inc.*,
319 F.3d 1357 (Fed. Cir. 2003)............................................................................13, 14

*Iris Connex, LLC v. Acer Am. Corp.*,
No. 2:15-CV-1909-JRG, 2016 WL 4596043 (E.D. Tex. Sept. 2, 2016) .................................17

*Kabushiki Kaisha Hattori Seiko v. Refac Tech. Dev. Corp.*,
690 F. Supp. 1339 (S.D.N.Y. 1988)...................................................................................4

*Keith v. Houck*,
451 N.Y.S.2d 492 (N.Y. App. Div. 1982) ............................................................................3

*Lucent Techs., Inc. v. Gateway, Inc.*,
543 F.3d 710 (Fed. Cir. 2008)...................................................................................22

*Mass Eng'd Design, Inc. v. Ergotron, Inc.*,
633 F. Supp. 2d 361 (E.D. Tex. 2009) ..........................................................................15, 16

*Moore v. Kopel*,
653 N.Y.S.2d 927 (N.Y. App. Div. 1997) ............................................................................4

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
30 F.4th 1339 (Fed. Cir. 2022) ....................................................................5, 19, 22

*Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*,
871 F.2d 1082 (Fed. Cir. 1989)......................................................................................3

*Reda v. Eastman Kodak Co.*,
649 N.Y.S.2d 555 (N.Y. App. Div. 1996) ............................................................................3

*Schumer v. Lab. Comput. Sys., Inc.*,
308 F.3d 1304 (Fed. Cir. 2002)......................................................................................5

*T-Rex Prop. AB v. Regal Entm't Grp. T-Rex Prop.*,
No. 6:16-CV-927-JDK-KNM, 2019 WL 4935310 (E.D. Tex. Sept. 12, 2019) .....................13

*Uniloc Luxembourg, S.A. v. eClinicalWorks, LLC*,
991 F. Supp. 2d 1097 (C.D. Cal. 2013), *aff'd sub nom, Uniloc Luxembourg*
*S.A. v. EClinical Works, LLC*, 579 F. Appx 998 (Fed. Cir. 2014)...........................................21

*Vocalife LLC v. Amazon.com, Inc.*,
No. 2:19-CV-00123-JRG, 2020 WL 5815950 (E.D. Tex. Sept. 30, 2020) ..............................2

*Wang Labs., Inc. v. Mitsubishi Elec. Am., Inc.,*
    103 F.3d 1571 (Fed. Cir. 1997)..............................................................................5

*Winbond Elecs. Corp. v. Int'l Trade Comm'n,*
    262 F.3d 1363 (Fed. Cir. 2001)..............................................................................5

**Statutes**

35 U.S.C. § 271(a) ..................................................................................................3

WS 2012..........................................................................................................11, 12

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................2

Fed. R. Civ. P. 56(a) ...............................................................................................2

## I.    INTRODUCTION

IBM respectfully moves for summary judgment of non-infringement with respect to VirtaMove's remaining asserted patent, U.S. Pat. No. 7,519,814 (the "'814 Patent"). Given the undisputed facts in the record, VirtaMove's infringement claims based on the '814 Patent fail as a matter of law for multiple, independent reasons.

**First,** VirtaMove expressly licensed IBM to use the very containerization technology it now accuses of infringement, and VirtaMove's conduct in encouraging IBM to adopt that technology estops it from asserting infringement. In the course of the parties' business partnership to develop software for IBM's cloud environment, IBM and VirtaMove entered into an agreement whereby VirtaMove granted IBM an express license ████████████████████ ████████████████████████████████████████████████ ████████████████████ Ex. 1 (VM_IBM_0022070) at -2071. VirtaMove's ████████ under the agreement included materials describing the purported benefits of Docker and Kubernetes containerization technology, as well as suggestions that IBM should implement this technology in the IBM cloud. Now VirtaMove is suing IBM for using the same technology. Given IBM's express license ████████████████████████████ summary judgment of non-infringement is warranted. Based on VirtaMove's conduct ████████████████ ████████████████—and IBM's reliance on that conduct when it was developing the accused products—IBM also is entitled to summary judgment that VirtaMove is equitably estopped from proceeding with its infringement claims.

**Second,** VirtaMove has not met its burden to show that IBM or IBM's customers practice the asserted method claims of the '814 Patent. All of the '814 Patent's asserted claims 'require the recited method steps to be performed "[i]n a system having a plurality of servers with operating

1

systems that differ." Ex. 2 ('814 Patent) at cl. 1. Yet, VirtaMove has not presented any evidence or expert analysis showing that any use of the accused IBM Kubernetes Service ("IKS") practices the claimed method steps on "a plurality of servers with operating systems that differ." Instead, VirtaMove and its technical expert, Dr. Koskinen, allege, at most, that the accused IKS system is *capable* of supporting a plurality of servers having different versions of the same Ubuntu operating system. As both the Federal Circuit and this Court have repeatedly held, to meet the patentee's burden to show infringement of a method claim, "it is not enough to simply show that a product is capable of infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010); *see also Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2020 WL 5815950 at *2 (E.D. Tex. Sept. 30, 2020). Because VirtaMove has failed to show that the claimed method is practiced on servers with operating systems that differ, IBM is entitled to summary judgment of non-infringement of the '814 Patent's on this ground, as well.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

IBM moves pursuant to Fed. R. Civ. P. 56 for summary judgment of no infringement of the '814 Patent. The issues to be decided are whether: (1) VirtaMove granted IBM a license covering the accused IBM technology; (2) VirtaMove is equitably estopped from pursuing its infringement claims; and (3) VirtaMove has failed to present evidence showing the accused products satisfy the claim limitation requiring "a plurality of servers having operating systems that differ," as recited in all of the '814 Patent's asserted claims.

## III.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment" and "[a] dispute about a material fact is 'genuine' when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Autodata Sols., Inc. v. Versata Software, Inc.*, No. 2:12-CV-704-JRG-RSP, 2016 WL 1271567 at *1 (E.D. Tex. Mar. 31, 2016).

### B.     Express License

Patent infringement occurs when a party, "***without authority*** makes, uses, offers to sell or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor . . . ." 35 U.S.C. § 271(a). Although a patent grants its owner the right to exclude others from making, using, offering for sale, or selling the patented invention, the patentee may waive all or part of that right by granting a license, either express or implied. *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995). A license to make, use, offer for sale, or sell the patented invention is a complete defense to an action for infringement. *Id.*

License agreements are contracts governed by state law. *Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989). Under New York law, "[o]rdinarily, the interpretation of a contract is a question of law appropriate for resolution by way of summary judgment." *Keith v. Houck*, 451 N.Y.S.2d 492, 493 (N.Y. App. Div. 1982). "When interpreting a written contract [governed by New York law], the court should give effect to the intent of the parties as revealed by the language and structure of the contract, and should ascertain such intent by examining the document as a whole." *Reda v. Eastman Kodak Co.*, 649 N.Y.S.2d 555, 557 (N.Y. App. Div. 1996). "Where a contract is clear and unambiguous on its face, its plain meaning

should govern its interpretation." *222 Bloomingdale Rd. Assocs. v. NNEX Props. Co.*, 703 N.Y.S.2d 737, 737 (N.Y. App. Div. 2000); *see also Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002) ("It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract[.]"). Disagreement between the parties as to the correct interpretation of specific terms or sections of the agreement does not render it ambiguous nor by itself raise a triable issue of fact. *Bethlehem Steel Co. v. Turner Constr. Co.*, 141 N.E.2d 590, 593 (N.Y. 1957); *see also Moore v. Kopel*, 653 N.Y.S.2d 927, 929 (N.Y. App. Div. 1997) ("[A] contract is not rendered ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms."). Parties are free to use whatever language they believe is appropriate to define the nature and scope of the rights conveyed by a license, and the specific terms of the grant clause are paramount in defining the license' scope. *Kabushiki Kaisha Hattori Seiko v. Refac Tech. Dev. Corp.*, 690 F. Supp. 1339, 1342 (S.D.N.Y. 1988). A license agreement may be drafted broadly to convey unrestricted rights to whole classes of products or technology. *Id.* at 1344 (noting that to create a narrow scope, the drafter must include "appropriate words of restriction").

As with a license, equitable estoppel is a complete defense to patent infringement. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992). Equitable estoppel occurs in the patent infringement context where:

> (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

*High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016). "Misleading 'conduct' may include specific statements, action, inaction, or silence when there was an obligation to speak." *Aukerman*, 960 F.2d at 1028.

4

### C.        Implied License and Equitable Estoppel

A patentee may convey an implied license, which "signifies [the] patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention." *Wang Labs., Inc. v. Mitsubishi Elec. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997). Implied licenses arise by acquiescence, by conduct, by equitable estoppel, or by legal estoppel. *Id.*

> An implied license by equitable estoppel requires proof that: (1) the patentee, through statements or conduct, gave an affirmative grant of consent or permission to make, use, or sell to the alleged infringer; (2) the alleged infringer relied on that statement or conduct; and (3) the alleged infringer would, therefore, be materially prejudiced if the patentee is allowed to proceed with its claim.

*Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001), *opinion corrected*, 275 F.3d 1344 (Fed. Cir. 2001).

### D.        Burden to Prove Infringement of a Claimed Method

"A method claim is infringed only by one practicing the patented method." *Schumer v. Lab. Comput. Sys., Inc.*, 308 F.3d 1304, 1309 n.3 (Fed. Cir. 2002). Proving infringement requires showing that "every step of a properly constructed method claim was performed by the accused direct infringer." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1351 (Fed. Cir. 2022) (noting "[s]ummary judgment of noninfringement is appropriate when no reasonable juror could find that" this required showing is made).

## IV.    ARGUMENT

### A.        IBM Has a License to the Accused Technology

Beginning in 2014, as part of a cooperative business relationship between IBM and VirtaMove, VirtaMove provided materials and suggestions to IBM recommending and identifying the benefits of using Docker and Kubernetes containerization in the IBM cloud. An Assistance Agreement between the parties gives IBM a license to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ IBM    subsequently    implemented    Docker    and    Kubernetes

containerization in certain cloud-based IBM products. VirtaMove now accuses those products of

infringement ███████████████████████████████████████████████████████

Because the Assistance Agreement gives IBM an express license ██████████████████████

██████████████████████████████████████████████████—VirtaMove's

infringement claims are foreclosed as a matter of law, and IBM is entitled to summary judgment

of non-infringement of the '814 Patent.[1]

> **(i)    The 2014 IBM Assistance Agreement Gives IBM an Express License To Use VirtaMove's "Feedback" in any Manner Whatsoever.**

In 2012, IBM partnered with VirtaMove—then known as AppZero[2]—███████████

█████████████████████████████████████████████████████████████

███████████ SoF ¶ 1. In 2014, as part of this initiative, AppZero presented ███████████

███████████████ *Id.* ¶¶ 2–3, 8. As its name suggests, ███████████████████████

█████████████████████████████████████████████████████████████

█████████████. *Id.* ¶¶ 3–7. Containerization is a method of packaging all the code and

dependencies needed to run a given application into a standardized unit of software that can be run

the same across different computing infrastructures, such as on a desktop hard drive or the cloud.

*Id.* ¶ 4. Through ██████████████████████████████████████████████████████

---

[1] IBM has also presented evidence and expert testimony sufficient to demonstrate that the license to use ██████████████████████████████████████ forecloses VirtaMove's infringement claims with respect to the '058 Patent, as well. However, now that the Court has found that a term in independent claim 1 of the '058 Patent is indefinite, *see* SoF ¶ 91, the '058 Patent's asserted claims are invalid and unenforceable and therefore cannot be infringed. *See Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 637 (2015). Accordingly, IBM is no longer moving for summary judgment of non-infringement of the '058 Patent but reserves the right to re-raise this issue if necessary at an appropriate juncture.

[2] The names "AppZero" and "VirtaMove" are used interchangeably in this motion when discussing events that took place before AppZero changed its name to VirtaMove.

████████████████████████████████████████████████████████████████████

████████████████████. *Id.* ¶ 6.

Shortly after AppZero made ███████████████████████ to IBM, the parties entered

into an Assistance Agreement ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ¶¶ 14–18.  In connection with this

agreement, AppZero provided a software license to IBM ████████████████████████

█████████████████  *See* Ex. 3 (VM_IBM_0022045) at -2049.  Notably, separate from that software

license, the Assistance Agreement also included a further license provision that stated:



SoF ¶ 18 (emphasis added).  The ███████████ relevant to the Assistance Agreement—and thus

to this provision granting a license ██████████████████████████—include IBM's

cloud platform.  *Id.* ¶¶ 15–17.

Notwithstanding this express grant to IBM of a █████████████████████████

██████████████████  VirtaMove's damages expert, Mr. Bergman, contends that this provision

of the Assistance Agreement does not mean what it says on its face.  Mr. Bergman suggests that

§ 5.1 ████████████████████ somehow overrides the ████████ license provided in § 5.3

because §5.1 ████████████████████████████████████████████████████████████

█████████  Ex. 4 (Bergman Reb. Rpt.) ¶ 146.  Yet, Mr. Bergman mischaracterizes § 5.1.  Far from

stating that IBM does not receive a license to any VirtaMove intellectual property, § 5.1 states ████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████



████ Ex. 1 (VM_IBM_0022070) at -0701.  In other words, ██████████████

███████████████████████████████████.  In contrast, ████████████████

████████████████████—and expressly grants a license to—████████████████

███████████████████████████████████████████.  Further, § 5.1 goes on

to state ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████    *Id.* Comparing the two sentences of § 5.1 confirms that the parties knew how to draft

language that would have denied IBM a license to ***any*** VirtaMove intellectual property, just as that

section denies VirtaMove a license to any IBM intellectual property.  Instead, the parties chose a

narrower scope for the first statement, limiting it to █████████████████████ as opposed

to ██████████████████████ by VirtaMove.[3]

       Nor, despite Mr. Bergman's suggestion, is there any conflict between ████████████

████████████████████████████████████████████████████████████  *See* Ex.

4 (Bergman Reb. Rpt.) ¶ 147.  Mr. Bergman notes that █████████████████████████

████████████████████████████████████████████████  *Id.*  In fact, two licenses

***are*** explicitly set forth: ██████████████████████████████████████████

████████████████ *see id.* ¶ 148, and █████████████████████████████████

   **(ii)    VirtaMove's Feedback to IBM Included the Features It Now Accuses
              of Infringement.**

       It is undisputed that AppZero provided IBM with materials and suggestions related to the

_____

[3] Even if § 5.1 were directed to VirtaMove's intellectual property in general—and not specifically to software—that general provision still would not override § 5.3, which (again) is a specific provision regarding the right to use ████████████████  Under New York law, which governs the Assistance Agreement, SoF ¶ 21, "if there is an inconsistency between a general provision and a specific provision of a contract, the specific provision controls."  *Bank of Tokyo-Mitsubishi, Ltd., New York Branch v. Kvaerner a.s.*, 243 A.D.2d 1, 8, 671 N.Y.S.2d 905, 910 (1998).

IBM cloud during the course of the parties' Assistance Agreement.  In particular, in the 2014–2016 timeframe, AppZero provided ████████████████████████████████████ ████████████████████ and AppZero repeatedly suggested ████████████████████ ███████████████████ SoF ¶¶ 22–31; *see also* Ex. 5 (Wicker Op. Rpt.) ¶¶ 154–66. AppZero also provided IBM with ██████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ SoF ¶ 26. Mr. O'Connor himself confirmed at his deposition that ████████████████████ ████████████████████████████████████████████ ██████████████████████ *Id.* ¶ 22; *see also* Ex. 5 (Wicker Op. Rpt.) ¶¶ 157, 161.

It is not surprising that AppZero provided these particular materials and suggestions to IBM during the course of the agreement.  The software that AppZero was developing for use by IBM customers relied on ████████████████████████████████████ ██████████████████ SoF ¶¶ 3–8. For IBM customers to use ██████████████████ ████████████████████████████████████████████ ██████. *Id.* ¶ 9.  Otherwise, customers could have simply used the alternative virtual-machine image approach, as AppZero was concerned they would.  *Id.* ¶¶ 9, 11.  Accordingly, AppZero had a strong business incentive to persuade IBM ██████████████████████████████ ████████████████████████████████████████ *Id.* ¶ 9.  To encourage IBM to implement its suggestions ██████████████, AppZero also had a strong incentive to grant IBM a license ██████████████████████████████ ████████████████████████ *See* Ex. 6 (Malackowski Op. Rpt.) ¶¶ 39–42; SoF ¶ 18.

Nevertheless, despite providing copious materials and suggestions ████████████████

████████████████████████████████████████████████—and despite the Assistance Agreement's unambiguous provision granting IBM a license ████████ ████████—VirtaMove brought suit alleging that IBM infringes the '814 Patent by using Docker- and Kubernetes-based containerization technology in the accused IBM cloud products.  SoF ¶¶ 40. Critically, as set forth in the Statement of Facts accompanying this motion—and as explained in the Reply Expert Report of Stephen B. Wicker Regarding U.S. Patent Nos. 7,519,814 and 7,784,058—the materials and suggestions that AppZero provided to IBM after the parties entered into the Assistance Agreement ████████████████████████████████ ████████████████████████████████████████████████ *See id.* ¶¶ 42–88; Ex. 7 (Wicker Reb. Rpt.) ¶¶ 379–80; Ex. 5 (Wicker Op. Rpt.) ¶¶ 379–80.

As but one representative example, for the limitation of claim 1 of the '814 Patent that requires "containers of application software excluding a kernel," Dr. Koskinen contends that containers in IKS rely on the kernel residing "permanently on the worker node server" such that a container's image size is smaller than a virtual machine image, solving one of the "performance penalties" of virtual machines.   SoF ¶ 70.   Yet, this same kernel-exclusion feature of Docker containers (which has always been a feature of Docker containers) was emphasized ████████ ████████████████████████████ *Id.* ¶¶ 71-73; *see also* Ex. 30 (VM_IBM_0029923) at -9923- 25 ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ In that manner, ████████████████ included the exact feature that Dr. Koskinen now identifies as meeting this claim limitation—and the same thing is true for *every* accused feature Dr. Koskinen identifies.  *Id.* ¶¶ 42–88.  Moreover, to the extent Dr. Koskinen identifies some details of IBM's implementation of Docker and Kubernetes that were not *expressly*

referenced in ██████████████, those details are directed to features ***inherently*** required when this technology is implemented in the cloud environment, ████████████████████████████ ████. *See, e.g.*, *id.* ¶¶ 55–59 ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ In short, VirtaMove is suing IBM ████████████████ ████████████████████████████████████████—materials and suggestions that the agreement gives IBM a license to use ████████████████████

Notwithstanding these indisputable facts, VirtaMove's damages expert, Mr. Bergman, contends—"[b]ased on [his] discussions with Dr. Koskinen"—that VirtaMove did not provide any ████████████████████████████████████████" Ex. 4 (Bergman Reb. Rpt.) ¶ 145.  Noting that the Assistance Agreement's ████████████████████████████ ████████████████████████████ Mr. Bergman asserts that the agreement's ████████████████████████████████████████ ████████████████████████ *Id.*  In other words, Mr. Bergman appears to be concluding that the only relevant ████████████████████

Mr. Bergman is incorrect.  Although the Assistance Agreement does not define the term ████████████ it notes that the relevant ████████████████████████ ████████████████████████ SoF ¶ 15.  While the accompanying Statement of Work does not expressly use the term ████████████ it states that ████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████ *Id.* ¶ 17.  In turn, the Statement of Work defines the ████████████████████████—which is the system now known as

██████████████ *Id.* ¶ 18.  Accordingly, ████████████████████████████████

████████████████████████████████████ *Id.*  Indeed, ████████████████████████

████████████████████████████████████████ materials and suggestions that

VirtaMove might provide ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 9.[4]  The Statement of Work happens to refer to

████████████████████████████████████████████████████████████████████████████

████    *Id.* ¶ 3.  However, ████████████████████████████████████████████████

██████████████████████████████████████. *See Id.* ¶¶ 1, 18.

Mr. Bergman also cites IBM's prior relationship with Docker, Inc. as allegedly indicating that IBM's knowledge of and "relationship with Docker was not the result of 'materials or suggestions' by AppZero." Ex. 4 (Bergman Reb. Rpt.) ¶ 145.  Yet, just because IBM had worked with Docker, Inc. to develop some Docker-container-based products for use on IBM platforms, *see* SoF ¶¶ 12–13, does not mean ██████████████████████████████████████████

████████████████  On the contrary, together with a broad industry movement toward implementing containers in the cloud, AppZero's suggestion that IBM ██████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████  *Id.* ¶ 37.  Notably, despite the partnership between IBM and Docker, Inc. that was announced in 2014, █████████████████████████████████████████████████████████

---

[4] As IBM's damages expert, Mr. Malackowski, opined, "In my experience, VirtaMove would have had a strong incentive to grant this license to IBM ████████████████████████████████████

████████████████████████████████████████████████████████████████████  Ex. 6 (Malackowski Op. Rpt.) ¶ 41.  In his rebuttal report, Mr. Bergman conspicuously fails to address that opinion, let alone rebut it. *See* Ex. 4 (Bergman Reb. Rpt.) ¶¶ 144–49.

███████████████████████████████████████████████████████████████████

████████ SoF ¶ 11.  In any event, nothing in the Assistance Agreement's ██████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████. *See Id.* ¶ 18.  As noted above, the Feedback

need only be ████████████████████ *id.*, which it was.

Ultimately, under the plain language of the Assistance Agreement, IBM has an express

license to implement ██████████████████████████████████████████████████████

██████████████████████████. *Id.* ¶¶ 17–18.  Assuming any such license is even needed for

IBM to implement open-source Docker and Kubernetes technology, the Assistance Agreement's

express license covers ████████████████████████████████████████████████

*Id.* ¶¶ 18, 42.  Moreover, the license provided by the agreement ████████████. *Id.* ¶¶ 19–20.

Accordingly, to the extent VirtaMove now contends that IBM's use of this licensed technology

infringes the '814 Patent, IBM necessarily has a license to that alleged embodiment of the patent,

and therefore is entitled to summary judgment of non-infringement.  *See, e.g.*, *Alexsam, Inc. v. IDT*

*Corp.*, 715 F.3d 1336, 1345–46 (Fed. Cir. 2013) (affirming judgment as a matter of law that license

to conduct an activity that allegedly practiced the asserted patent foreclosed patentee's

infringement claims under that patent); *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357 (Fed. Cir.

2003) (affirming summary judgment of non-infringement based on license to practice certain

graphics chip standards, even where asserted patent was not identified in license).[5]

---

[5] To be clear, IBM does not concede that its accused products practice the '814 Patent.  As
addressed in § IV.B below, VirtaMove has failed to show that they do.  However, even assuming
for the sake of argument that the accused products do practice the patent, IBM's license to "use"
██████████████████ *See, e.g.*, *T-Rex Prop. AB v. Regal Entm't Grp. T-Rex Prop.*, No. 6:16-CV-927-
JDK-KNM, 2019 WL 4935310, at *4 (E.D. Tex. Sept. 12, 2019), *report and recommendation*

### B.    The Doctrine of Equitable Estoppel Bars VirtaMove's Infringement Claims.

VirtaMove misleadingly encouraged IBM to implement the container technology VirtaMove now accuses of infringement, and IBM relied on that conduct when developing the accused products.  Given IBM's substantial investment in the products, IBM will be materially prejudiced if VirtaMove's infringement claims are allowed to go forward.  The Court therefore should determine that VirtaMove is equitably estopped from pursuing its claim that IBM infringes the '814 Patent (and/or that VirtaMove granted IBM an implied license via equitable estoppel).

### (i)    VirtaMove's Misleading Conduct Led IBM To Infer VirtaMove Would Not Sue IBM for Infringement.

From 2012 to 2023, IBM and AppZero/VirtaMove participated in a cooperative business relationship to develop technology to migrate IBM customers' applications into the IBM cloud. SoF ¶¶ 1, 32. By the end of 2014, ████████████ IBM had also entered into a strategic partnership with Docker, Inc. to offer container services on the IBM cloud.  *Id.* ¶¶ 12–13.  Yet, throughout the over-decade-long period when IBM and VirtaMove were partners in this endeavor, VirtaMove never indicated that IBM's use of any containers, containerization, or application migration technology—including Docker, Kubernetes, or the accused Docker- and Kubernetes-based IBM products—infringe any VirtaMove patents.  *Id.* ¶ 35.  Nor did VirtaMove ever assert that IBM needed a license from VirtaMove to use this technology.  *Id.*  VirtaMove similarly has never accused Docker itself of infringing.  *Id.* ¶ 92.

Not only was VirtaMove silent as to any alleged infringement, but (as discussed above) it repeatedly and affirmatively encouraged IBM to adopt Docker container technology in the IBM cloud.  *Id.* ¶¶ 22–31.  Moreover, AppZero/VirtaMove provided ████████████████████

---

*adopted*, No. 6:16-CV-927-JDK-KNM, 2019 WL 5558061 (E.D. Tex. Oct. 29, 2019) (recognizing defendant has license to patent and "thus cannot infringe").

███████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ¶ 33. Further, ██████████████████████ the accused IKS product at least by its 2017 release date. *Id.* ¶ 34. Nevertheless, it was not until VirtaMove filed its present infringement action in January 2024—almost twelve years since the parties first partnered to co-develop cloud-based technologies—that IBM learned VirtaMove was accusing IBM's cloud-based container technology of infringement. *Id.* ¶¶ 38–40.

Given VirtaMove's current position that IBM's Docker- and Kubernetes-based products infringe, VirtaMove's previous conduct—including its consistent failure to assert infringement, its repeated recommendations ████████████████ to IBM, and its longstanding partnership with IBM to develop tools based on the technology—was, at a bare minimum, misleading. Indeed, courts in this District have found similar conduct by a patentee was sufficient to make the alleged infringer conclude that the patentee did not intend to assert its rights. For example, the court in *Mass Eng'd Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361 (E.D. Tex. 2009), granted judgment as a matter of law that the patentee was equitably estopped from asserting infringement where its conduct included "never mention[ing] or assert[ing]" its patent during a six-year business relationship with the alleged infringer, "never object[ing]" to the allegedly infringing products, affirmatively encouraging the alleged infringer to invest in the products, and profiting from the products. *Id.* at 385–86.[6] Here, VirtaMove likewise never mentioned or asserted its patents during

---

[6] The Federal Circuit has also affirmed determinations that patent owners were equitably estopped from asserting infringement based on similar conduct. *See High Point*, 817 F.3d at 1331 (affirming grant of summary judgment barring infringement claims because patent owner was "actively involved in" discussions with alleged infringer concerning its technology and induced "business relationships" utilizing that technology, yet "failed to challenge" the alleged infringement for over seven years); *Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*, 138 F.4th 1373, 1379 (Fed. Cir. 2025) (finding misleading conduct where patent owner assisted in development of accused system and knew "of the allegedly infringing activities" for at least five years, yet failed to assert its patent rights "for years to come").

its decade-long business relationship with IBM, and it never objected to IBM's use of Docker or

Kubernetes container technology. SoF ¶¶ 35, 40. On the contrary, AppZero/VirtaMove

encouraged IBM ███████████████████████████████████████████ so

VirtaMove could profit ███████████████████████████████████████

*Id.* ¶¶ 9, 11, 22, 24–30, 33. IBM reasonably inferred from this "affirmative, long term, and

misleading conduct" that VirtaMove did not intend to assert any patent rights against IBM's use

of this technology. *Mass Eng'd Design*, 633 F. Supp. 2d at 385; *see also* SoF ¶ 35.[7]

### (ii)    IBM Relied on VirtaMove's Misleading Conduct When Developing the Accused Products.

In the absence of any indication from VirtaMove that it believed IBM's use of Docker or

Kubernetes infringed its patents, IBM continued to develop the Docker- and Kubernetes-based

cloud products that VirtaMove now accuses of infringement. IBM made a substantial investment

of money, personnel, and other resources in developing and rolling out this technology. SoF ¶ 36.

If VirtaMove had informed IBM that it believes the Docker and Kubernetes technology IBM was

implementing infringed its patents, IBM would have pursued a different design that incorporated

an alternative containerization technology. *Id.* ¶ 38. Again, however, despite the parties' long

business relationship and extensive communications on the topic of containers, containerization,

and application migration technologies, VirtaMove never communicated any belief that IBM's use

of these technologies infringed its patents. *Id.* ¶ 35. In this manner, IBM had "a relationship [and]

---

[7] The Federal Circuit has noted that for "[t]he patentee's conduct [to] have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer . . . the alleged infringer cannot be unaware . . . of the patentee and/or its patents . . . and also must know or reasonably be able to infer that the patentee has known of the [alleged infringer]'s activities for some time." *Auckerman*, 960 F.2d at 1042. IBM obviously was aware of AppZero/VirtaMove via the parties' business relationship, and on the same basis, IBM knew VirtaMove was aware of IBM's activities with respect to developing, making, using, offering for sale, and selling cloud-based container products. *See, e.g.*, SoF ¶¶ 1, 14–15, 34.

communication[s] with [VirtaMove] which lull[ed] [it] into a sense of security in going ahead with building the [allegedly infringing products]." *Aukerman*, 960 F.2d at 1043.

(iii)    <strong>IBM Will Be Materially Prejudiced if VirtaMove Proceeds With Its Infringement Claims.</strong>

As discussed above, IBM would not have made the same decisions and investments when developing its Docker- and Kubernetes-based products if VirtaMove had told it of the alleged infringement. SoF ¶¶ 37–38. As a result, IBM will be materially prejudiced if VirtaMove is permitted to proceed with its infringement claims, because IBM experienced "a change of economic position flowing from actions taken or not taken by [VirtaMove]," when VirtaMove encouraged IBM ███████████████████████████████████████████████

███████████████████████████████████████████ *Aspex Eyewear Inc. v. Claritt Eyewear Inc.*, 605 F.3d 1305, 1312–13 (Fed. Cir. 2010) (citing *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995)).

**C.    VirtaMove Has Not Presented Evidence That IBM or IBM's Customers Practice the Method Recited in the '814 Patent's Asserted Claims.**

(i)    <strong>Because IKS Supports Only the Ubuntu Operating System, It Cannot Meet the Claim Limitation Requiring "a System Having a Plurality of Servers With Operating Systems That Differ."</strong>

Every asserted claim of the '814 Patent requires that the claimed method be performed on a "system having a plurality of servers with operating systems that differ." SoF ¶¶ 44, 96. It is undisputed that the accused IKS product supports only one operating system: Ubuntu. *Id.* ¶ 104. Because there is no dispute that IKS is used on servers having a single operating system, VirtaMove cannot meet its burden to show that IKS satisfies the '814 Patent's claim limitation requiring "a system having a plurality of servers with operating systems that differ." IBM is entitled to summary judgment of non-infringement on this ground alone. *See, e.g., Iris Connex, LLC v. Acer Am. Corp.*, No. 2:15-CV-1909-JRG, 2016 WL 4596043, at *17 (E.D. Tex. Sept. 2,

17

2016) ("[S]ummary judgment of non-infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents.") (internal citation omitted).

> **(ii)    VirtaMove has Provided No Evidence That IKS Has Servers With Operating Systems That Differ.**

Faced with the undisputed fact that IKS supports only the Ubuntu operating system, VirtaMove argues that the claim limitation requiring "a plurality of servers with operating systems that differ" is met by IBM's brief support of successive *versions* of Ubuntu—namely, versions 20 and 24—for IBM's Kubernetes product. SoF ¶ 115. IBM expressly tells its customers that "[t]o migrate your worker nodes to a new Ubuntu version, you must provision a new worker pool, add worker nodes to the new pool, then remove the original worker pool." SoF ¶ 112; Ex. 8 (IBM_VM_000005276). Under that approach, even when the operating system is upgraded, each IKS cluster would have only a single version of Ubuntu running on its worker nodes at any given time. SoF ¶ 112. Notwithstanding that fact—and IBM's express instruction—Dr. Koskinen opines that "the better solution" for updating the OS would be to have worker nodes of different operating system versions operate in a cluster simultaneously, because "this is possible to do without any changes to the container." Ex. 9 (Koskinen Op. Rpt.) ¶ 240. Applying this hypothetical scenario, Dr. Koskinen contends there is a limited period of time in which a cluster may have some server nodes using one version of Ubuntu and other nodes using a different version. SoF ¶ 115.

Even assuming for the sake of argument that VirtaMove is correct that servers having different *versions* of the *same* operating system can meet the '814 Patent's claim limitation requiring "a plurality of servers with *operating systems that differ*," VirtaMove fails to present any evidence that Dr. Koskinen's hypothetical scenario has been carried out and that the claimed method has ever been performed on IKS servers, where some are running Ubuntu 20 and others

are running Ubuntu 24. On the contrary, the undisputed evidence shows this does not happen.

As an initial matter, IBM specifically disallows the use of IKS clusters running multiple operating systems. SoF ¶¶ 109–14. When IKS clusters are provisioned and deployed, only one version of the Ubuntu operating system can run on the worker nodes. *Id.* ¶¶ 113–14; *see also* Ex. 7 (Wicker Reb. Rpt.) ¶ 162. Because IBM designates a single "default" Ubuntu version that users are required to use when deploying a new Kubernetes cluster, different versions of Ubuntu cannot be deployed on the same cluster. SoF ¶ 113. Once the operating system is configured, an IKS cluster will deploy worker nodes using only that operating system. *Id.* ¶ 113; *see also* Ex. 7 (Wicker Reb. Rpt.) ¶ 162 (confirming through testing that "the specification for a worker pool contains only a single operating system value applied worker-pool-wide").

Moreover, not only does IBM specifically disallow the allegedly infringing scenario from occurring, but even under Dr. Koskinen's hypothetical scenario, IBM itself does not perform the required steps—at best, those steps would be performed by the ***customer***, who is responsible for upgrading nodes to the latest supported version of the operating system. *See* SoF ¶ 116; *Niazi Licensing*, 30 F.4th at 1351 (proving infringement requires showing "every step of a properly constructed method claim was performed ***by the accused direct infringer***"). There is no evidence of IBM customers performing these steps. VirtaMove has taken no discovery of IBM's customers to determine how they upgrade their operating systems, and has not questioned any witnesses on this topic. Indeed, Dr. Koskinen confirmed that he did not identify a single instance where IBM or its customers used the accused Kubernetes product on servers having different versions of the same operating system or servers having different operating systems. SoF ¶ 117. Nor has Dr. Koskinen himself even used the accused product, let alone used it to try to confirm that he could practice the claimed method on "a plurality of servers with operating systems that differ." *Id.*

Far from teaching its customers to use IKS in a way that would cause a cluster to have server nodes with different versions of the operating system, IBM encourages customers **not** to use multiple operating system versions, instead instructing them to "migrat[e] your worker nodes to new OS versions as they become available" "[t]o avoid disruptions to your workload." *Id.* ¶ 116; *see also* Ex. 10 (IBM_VM_000192933)*.* Indeed, IBM makes clear that having the latest supported version of Ubuntu "is important for keeping your Kubernetes setup running smoothly," and indicates that maintaining efficient and properly managed clusters requires having worker nodes run the same version of the operating system (*i.e..*, the latest supported version of Ubuntu). SoF ¶ 112; *see also* Ex. 11 (IBM_VM_000192921). It therefore is not surprising that Dr. Koskinen has failed to identify any actual instance of IKS being used on "a plurality of servers with operating systems"—or even operating system versions—"that differ." *See* Ex. 9 (Koskinen Op. Rpt.) ¶¶ 238–40. Given the lack of any evidence to support VirtaMove's infringement theory, summary judgment of non-infringement is warranted.

> **(iii)    A Product With the Mere Capability To Infringe Does Not Infringe a Method Claim.**

Rather than demonstrate any actual instance of infringement of the claimed method, VirtaMove and Dr. Koskinen contend, at best, that IKS is **capable** of deploying Kubernetes on mixed versions of the operating system. Dr. Koskinen states in his report that "IBM's cloud product offering … **can** have a wide variety of operating system[s] installed" and that "operating systems are **permitted** to differ from one cluster to another." *Id.* ¶ 239. He similarly testified that IKS "**enables** operating systems that differ," Ex. 12 (Koskinen 7/18/25 Tr.) at 124:23–25, 125:18–20, that IBM systems offer "**support** for multiple operating systems," *id.* at 129:25–130:2, and that "there is the **ability** to have multiple operating systems that differ." *Id.* at 132:6–9.

Even if one accepts for the sake of argument that IKS clusters are **capable** of being operated

with different nodes running different versions of an operating system simultaneously (and that such operation would meet the claim requirements), mere capability is legally insufficient to establish infringement of the asserted method claims. Unless the claim explicitly states that the capacity is sufficient, "it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement." *Fujitsu,* 620 F.3d at 1329; *see also ePlus, Inc. v. Lawson Software, Inc.,* 700 F.3d 509, 522 (Fed. Cir. 2012).

Again, VirtaMove has not presented evidence of any specific instances of IBM infringing the claimed method. SoF ¶ 117. The unrebutted evidence instead shows that IBM instructs IKS's users ***not*** to use different versions of the operating system. *Id.* ¶ 112; Ex. 8 (IBM_VM_000005276). IBM therefore is entitled to summary judgment. *See, e.g., Uniloc Luxembourg, S.A. v. eClinicalWorks, LLC,* 991 F. Supp. 2d 1097, 1107–08 (C.D. Cal. 2013), *aff'd sub nom, Uniloc Luxembourg S.A. v. EClinical Works, LLC,* 579 F. Appx 998 (Fed. Cir. 2014) (observing "Plaintiffs must prove that all steps of the method patent were performed, either by Defendants' clients alone or in conjunction with Defendants," and granting summary judgment of non-infringement because plaintiffs failed to show direct infringement by defendants and "Plaintiffs ha[d] not identified a single purchaser of Defendants' software who is alleged to have performed any of the steps of the claimed methods"); *ePlus, Inc.,* 700 F.3d 509 at 521–22.

As noted above, Dr. Koskinen bases his infringement theory on a hypothetical scenario in which an IKS cluster updating from one version of Ubuntu to another has operating system versions that differ for a limited period of time. *See* SoF ¶ 115. In commercial use, however, IKS clusters are updated by commissioning a new worker pool, worker nodes are added to that pool, and the original worker pool is then removed—which eliminates the need to have multiple servers running different operating system versions. *Id.* ¶ 112. Via this process, the worker nodes running

the older version of Ubuntu are removed from the cluster, and the remaining worker nodes are all running the same, newer version of Ubuntu, such that the operating system version does not differ between worker nodes in the cluster.  *Id.*

Critically, Dr. Koskinen and VirtaMove have failed to provide any evidence that—instead of using IBM's recommended operating system update procedure—IBM or any IBM user ever employed the hypothetical update procedure posited by Dr. Koskinen.  Neither VirtaMove nor Dr. Koskinen identified any actual exemplary infringing use, or provided evidence supporting an inference that customers use IKS in a way that runs counter to IBM's recommendations and instructions.  Accordingly, "it is simply 'too speculative a leap to conclude that any customer actually performed the claimed method.'" *Niazi Licensing*, 30 F.4th at 1353. When "circumstantial evidence presented by [plaintiff] establishe[s] only uncertainty and speculation as to whether the" claimed method was performed even once, no infringement is shown.  *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 723 (Fed. Cir. 2008).  In such cases, as here, there is no triable issue of infringement, and summary judgment is appropriate.  *Id.* at 1353.

## V.    CONCLUSION

For the reasons set forth above, IBM respectfully asks the Court to grant its motions for summary judgment of no infringement.

Dated: July 28, 2025

Respectfully submitted,

_/s/ Todd M. Friedman_
Todd M. Friedman (_pro hac vice_)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (_pro hac vice_)
Nathaniel Ngerebara (_pro hac vice_)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:      (415) 439-1400
Facsimile:      (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (_pro hac vice_)
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:      (714) 982-8822
Facsimile:      (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

_Of Counsel:_

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:      (903) 757-6400
Facsimile:      (903) 757-2323
andrea@millerfairhenry.com

_Attorneys for Defendant_
_International Business Machines Corp._

23

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served on June 28, 2025, with a copy of this document via electronic mail.

_/s/ Todd M. Friedman_____
Todd M. Friedman

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document is authorized to be filed under seal pursuant

to the Protective Order entered in this case.


<u>/s/ Todd M. Friedman</u>
Todd M. Friedman