**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| VIRTAMOVE, CORP.,<br><br>        Plaintiff,<br>        v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>        Defendant. | Case No. 2:24-cv-00093-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| VIRTAMOVE, CORP.,<br><br>        Plaintiff,<br>        v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.,<br><br>        Defendant. | Case No. 2:24-CV-00064-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF VIRTAMOVE, CORP.'S MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT IBM'S SIXTH, SEVENTH, EIGHTH, AND ELEVENTH AFFIRMATIVE
DEFENSES**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.   STATEMENT OF ISSUES .................................................................. 2

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ..................... 3

IV.   ARGUMENT: SUMMARY JUDGMENT SHOULD BE GRANTED ON IBM's SIXTH, SEVENTH, EIGHTH, AND ELEVENTH AFFIRMATIVE DEFENSES ...................... 9

    A.   Legal Standard for Summary Judgment ................................................ 9

    B.   IBM Has Not Set Forth Evidence to Support Its Sixth Affirmative Defense Regarding an Express License. .......................................................... 10

        1.   ██████████████████████████████████████ ................................................................ 10

        2.   ██████████████████████████ ......... 13

    C.   IBM Has Not Set Forth Evidence to Support Its Eighth Affirmative Defense..... 16

        1.   The '814 Patent is Not Unenforceable due to the Alleged Inequitable Conduct .................................................. 16

        *2.*   No Intent to Deceive Based on Foreign Office Action Responses........... 17

        *3.*   No Intent to Deceive Based on Solaris 10 Art ......................... 18

    D.   IBM Has Not Set Forth Evidence to Support Its Seventh Affirmative Defense .. 19

    E.   IBM Has Not Set Forth Evidence to Support Its Eleventh Affirmative Defense . 21

V.   CONCLUSION................................................................................. 23

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) ............................................................................... 9

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ........................................................... 21

*ATD Corp. v. Lydall, Inc.*,
159 F.3d 534 (Fed. Cir. 1998) .............................................................. 17

Conan Properties, Inc. v. Conans Pizza, Inc.,
752 F.2d 145 (5th Cir. 1985) ............................................................... 22

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
No. 15-1202, 2017 WL 275465 (E.D. Tex. Jan 20, 2017) ................... 22

*iFLY Holdings LLC v. Indoor Skydiving Germany GmbH*,
No. 14-1080, 2016 WL 3675136 (E.D. Tex. Mar. 25, 2016) ............... 22

*In re Omeprazole Patent Litig.*,
483 F.3d 1364 (Fed. Cir. 2007) ........................................................... 22

*JumpSport, Inc. v. Academy, Ltd.*,
2018 WL 10124888 (E.D. Tex. Sept. 6, 2018) ..................................... 21

*Keystone Driller Co. v. Gen. Excavator Co.*,
290 U.S. 240 (1933) ............................................................................. 22

*Oyster Optics, LLC v. Infinera Corp.*,
No. 2:19-CV-00257-JRG, 2021 WL 1109130 (E.D. Tex. 2021) .......... 11

Qualcomm Inc. v. Broadcom Corp.,
548 F.3d 1004 (Fed. Cir. 2008) ........................................................... 21

*Salazar v. AT&T Mobility LLC et al*,
2:20-cv-0004-JRG, D.I. 222 (E.D. Tex, May 25, 2021) ...................... 21

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*,
528 F.3d 1365 (Fed. Cir. 2008) ........................................................... 16

*Schron v. Troutman Sanders LLP*,
986 N.E.2d 430 (N.Y. 2013) ................................................................ 11

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*,
537 F.3d 1357 (Fed. Cir. 2008) ........................................................... 16

*Tech 7 Systems, Inc. v. Vacation Acquisition, LLC*,
594 F. Supp. 2d 76 (Dist. D.C. 2009) .................................................... 9

*Therasense, Inc. v. Becton*, Dickinson and Co.,
649 F.3d 1276 (Fed. Cir. 2011) ........................................... 2, 16, 19, 22

*Thorpe v. Utility Masters, LLC*,
Case No. 4:09CV92, 2010 WL 11530466 ............................................. 9

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009) ............................................................. 9

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................ 9

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| Exhibit 1 | U.S. Patent No. 7,519,814 |
| Exhibit 2 | File History for foreign patent application EP04021916.4 |
| Exhibit 3 | Information Disclosure Statement |
| Exhibit 4 | September 10, 2024 Deposition Tr. of Donn Rochette |
| Exhibit 5 | May 5, 2025 Deposition Tr. of Donn Rochette |
| Exhibit 6 | May 15, 2025 Deposition Tr. of Paul O'Leary |
| Exhibit 7 | July 16, 2025 Deposition Tr. of Robert Stoll |
| Exhibit 8 | IBM Assistance Agreement |
| Exhibit 9 | May 14, 2025 Deposition Tr. of Andrew Wojnicki |
| Exhibit 10 | Statement of Work |
| Exhibit 11 | Defendant's Corrected Supplemental Responses to Plaintiff's Interrogatories (Nos. 1-2, 5-6, 8-13, and 19-21), served on June 4, 2025 |
| Exhibit 12 | Email from counsel for Defendant to counsel for Plaintiff regarding 30(b)(6) topic designations, dated May 9, 2025 |
| Exhibit 13 | Defendant's First Supplemental Initial and Additional Disclosures, served on April 11, 2025 |
| Exhibit 14 | Defendant's Supplemental Responses to Plaintiff's Common Interrogatories (Nos. 1 and 2), served on May 29, 2025 |
| Exhibit 15 | Opening Report of Robert Stoll, served on June 23, 2025 |
| Exhibit 16 | Plaintiff's Fourteenth Supplemental Responses to Defendants' First Set of Common Interrogatories (Nos. 1-9), served on June 11, 2025 |
| Exhibit 17 | Corrected Rebuttal Expert Report of Dr. Stephen Wicker, served on July 15, 2025 |
| Exhibit 18 | *Salazar v. AT&T Mobility LLC et al*, 2:20-cv-0004-JRG, D.I. 222 at 5 (E.D. Tex, May 25, 2021) |

## I.    **<u>INTRODUCTION</u>**

Summary judgement should be granted on Defendant International Business Machines Corp.'s ("IBM") Sixth Affirmative Defense regarding an express license; Seventh Affirmative Defense for Limitation on Damages as to marking; Eighth Affirmative Defense as to Unenforceability; and Eleventh Affirmative Defense for "Equitable Defenses" as to waiver, acquiescence, unclean hands, and unenforceability. Summary judgment is appropriate as IBM has simply failed to adduce evidence sufficient to create a genuine issue of material fact for these defenses.

Summary judgment of no express license should be granted because IBM's interrogatory responses fail to identify any license or other agreement granting IBM rights to the patents-in-suit. IBM's interrogatory response in support of its express license defense relies solely on a ██████ provision in an IBM Assistance Agreement, which grants a ████████ ██████ However, IBM's reliance on this ██████ provision fails for two separate reasons. First, it is directly inconsistent with other provisions of the agreement between the parties that indisputably take precedence over ████████████ And second, IBM presents no evidence that IBM ever ***used*** the ████████████ in developing the Accused Products.

Summary judgment of no inequitable conduct of the '814 Patent should also be granted because Defendant failed to establish, by clear and convincing evidence, that the Applicant intended to deceive the Patent Office during prosecution. Defendant's inequitable conduct expert explicitly states that he does not opine on intent to deceive. There was no evidence that the purported two pieces of undisclosed information were known by the applicant to be material, or that the prosecution counsel or the applicant made a conscious decision to withhold that

information. Indeed, the purported non-disclosure is due to other reasons, e.g., because it was not relevant to the U.S. prosecution, cumulative information was already disclosed, or that the inventors believed their invention was different. Defendant cannot possibly meet the high bar of "the clear and convincing evidence" that the intent to deceive is "the single most reasonable inference able to be drawn from the evidence." *Therasense, Inc. v. Becton*, Dickinson and Co., 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc).

Summary judgment rejecting IBM's assertion that damages should be limited for failure to mark is also warranted. In this case there is no dispute that VirtaMove and its predecessors have never offered unmarked, practicing products, and IBM failed to even serve an *Arctic Cat* notice, which is a prerequisite for a defendant meeting their burden on a marking defense.

Lastly, IBM has failed to adduce any facts sufficient to demonstrate the defenses of waiver, acquiescence, or unclean hands. In its interrogatory response on the issue of affirmative defenses, IBM does not even mention waiver, acquiescence, or unclean hands. Nor has IBM identified any (i) assurances by VirtaMove that induces reliance by the IBM, (ii) intentional relinquishment of a known right by VirtaMove, or (iii) allegedly extreme or unconscionable actions by VirtaMove. Accordingly, the Court should grant summary judgment in favor of Plaintiff VirtaMove, Corp. ("VirtaMove"), and reject these affirmative defenses.

## II.    <u>STATEMENT OF ISSUES</u>

1.     Whether summary judgment is appropriate on IBM's Sixth Affirmative Defense for License regarding whether IBM has an express license to the Asserted Patents;

2.     Whether summary judgment is appropriate on IBM's Seventh Affirmative Defense for Limitation on Damages;

3.     Whether summary judgment is appropriate on IBM's Eighth Affirmative Defense for Unenforceability; and

4.     Whether summary judgment is appropriate on IBM's Eleventh Affirmative Defense for "Equitable Defenses" as to waiver, acquiescence, unclean hands, and unenforceability.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     IBM' Sixth Affirmative Defense is entitled "License and/or Exhaustion."[1]  It reads in its entirety: "To the extent that Plaintiff has licensed . . . its rights and remedies as to products or services that are accused by way of the TAC, or to products or services that Plaintiff alleges are covered by the Asserted Patents, IBM is not liable to Plaintiff for any alleged acts of infringement related to such products or services."  Dkt. 115 at 9.

2.     IBM's Seventh Affirmative Defense is entitled "(Limitation on Damages)."  *Id.* at 10.  It reads in its entirety: "Plaintiff's claims for damages are statutorily limited under 35 U.S.C. §§ 286 and 287."  *Id.*

3.     IBM's Eighth Affirmative Defense is entitled "Unenforceability, Equitable Estoppel, and/or Implied License."  *Id.*  It reads in its entirety: "Plaintiff's claims are barred as unenforceable in whole or in part by the doctrine of equitable estoppel and/or implied license."  *Id.*

4.     IBM's Eleventh Affirmative Defense is entitled "Equitable Defenses."  *Id.*  It reads in part: "Each of VirtaMove's claims is barred, in whole or in part, by the equitable defenses of waiver, acquiescence, unclean hands, inequitable conduct and/or any other equitable remedy."  *Id.*

5.     U.S. Patent No. 7,519,814 (the "'814 Patent") was filed on September 13, 2004, and claims priority to provisional applications 60/512,103, filed on October 20, 2003, and provisional application No. 60/502,610 filed on September 15, 2003. Ex. 1 ('814 Patent), Cover.

---

[1] IBM dropped its Sixth Affirmative Defense as to Exhaustion.

3

6.      The inventors of the '814 Patent are Donn Rochette, Paul O'Leary, and Dean Huffman.  Ex. 1 ('814 Patent), Cover.

7.      The '814 Patent has a related foreign patent application EP04021916.4 (the "EP '916 Application") which was filed in the European Patent Office ("EPO") on September 15, 2004. Ex. 2 (EP '916 FH) at 1406.

8.      During the prosecution of the EP '916 Application, the EPO's examiner cited U.S. Patent Publication No. US2002174215 ("Schaefer") as the prior art. Ex. 2 (EP '916 FH) at 1534.

9.      The applicant disputed with EPO that Schaefer teaches every element of the EP '916 Application in the office action responses. *See, e.g.*, Ex. 2 (EP '916 FH) at 1550-1570, 1575-1588, 1599-1614.

10.     The Schaefer reference was submitted to the US Patent Office in an Information Disclosure Statement ("IDS") before the examination of the '814 Patent. Ex. 3 ('814 FH) at 23231-23233.

11.     The examiner considered the Schaefer reference during the prosecution of the '814 Patent and did not rely on Schaefer to reject the then pending claims of the '814 Patent. Ex. 3 ('814 FH) at 23452 (examiner initialed the IDS disclosing Schaefer), 23406-23443 (examiner rejected the claims under Forbes).

12.     The inventors do not know whether Solaris Zones (which is the alleged prior art feature in Solaris 10) existed before the '814 Patent's provisional applications. Ex. 4 (9/10/2024 Rochette Depo Tr.) at 105:16-106:3, 118:17-119:3; Ex. 5 (5/5/2025 Rochette Depo Tr.) at 87:24-1; 89:8-23; Ex. 6 (5/15/2025 O'Leary Tr.) at 308:23-309:11.   The inventors believed that Solaris 10 is vastly different from their inventions in the '814 Patent. Ex. 6 (5/15/2025 O'Leary Tr.) at 308:23-309:11, 484:3–486:16; Ex. 5 (5/5/2025 Rochette Tr.) at 104:11-24.

13.    IBM's expert Mr. Robert Stoll on inequitable conduct does not have an opinion on the inventors' "intent to deceive." Ex. 7 (Stoll Depo Tr.) at 35:11-23, 70:2-71:5.

14.    In June 2014, AppZero and IBM signed an IBM Assistance Agreement ("Assistance Agreement") pursuant to which ███████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████ The Assistance Agreement is attached as Exhibit 8.

15.    ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████

16.    During his May 14, 2025, deposition, IBM's Rule 30(b)(6) designee on licensing, Mr. Andrew Wojnicki, testified that he did not know the specifics of ███████████████ ████████████████████████████████████████

17.    ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████

18.    ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

19. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

20. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

21.     VirtaMove's Interrogatory No. 22 requested "[f]or each affirmative defense asserted by IBM in its Answer to VirtaMove's Third Amended Complaint, describe the factual and legal basis for your contention, identify and describe all documents supporting your contention, and identify all witnesses knowledgeable." Ex. 11, IBM's Objections and Responses to VirtaMove's Sixth Set of Interrogatories (No. 22) at 128.

22.     IBM's response to VirtaMove's Interrogatory No. 22 states, in relevant part:

**6. License and/or Exhaustion:**

...

IBM has an express license to use the claimed technologies of the Asserted Patents as well as the technologies VirtaMove has accused of infringing the Asserted Patents. For example, IBM and AppZero entered into an IBM Assistance

6

Agreement (Agreement #4914008281) in June 27, 2014.



As to the nature and quality of



. . .

## 7. Limitation on Damages:

IBM incorporates by reference its Responses to VirtaMove's Interrogatory Nos. 1, 2, 3, 8, and 13 and documents cited therein. IBM further incorporates VirtaMove's Responses to IBM's Interrogatory No. 4 and documents cited therein. IBM further incorporates VirtaMove's Responses to IBM and HPE's Common Interrogatory No. 8 and documents cited therein.

IBM further incorporates by reference the deposition testimony of at least Walter Falk, Nigel Stokes, and Greg O'Connor as given in this case. See, e.g., Falk Tr., at 23:21-24:20, 78:3-85:13; Stokes Tr., at 467:11-521:4; O'Connor Tr., at 279:18-284:6, 341:23-343:6.

. . .

Pursuant to 35 U.S.C. § 287, "[i]n the event of failure so to mark [a patented article], no damages shall be recovered by the patentee in any action for infringement,

except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." VirtaMove has yet to demonstrate that its purported patent-embodying products had been marked such that VirtaMove provided notice that such products specifically practiced the Asserted Patents. To the extent that VirtaMove purports to have published its "Product Patents" website on July 20, 2023 and that its website sufficient meets the marking requirements of 35 U.S.C. § 287, VirtaMove is not entitled to any recovery for any alleged infringement prior to said date.

Furthermore, as explained in IBM's Responses to VirtaMove's Interrogatory Nos. 1, 2, and 13, as well as in its responses to its bases for its defense of License and/or Exhaustion, Unenforceability, Equitable Estoppel, and/or Implied License, and No Willful Infringement, IBM maintains that VirtaMove never provided IBM with "actual notice" of its Asserted Patents, that IBM had an express license to use the claimed technologies of the Asserted Patents, and that IBM had an implied license to use the claimed technologies of the Asserted Patents and/or that VirtaMove is equitably estopped from asserting patent infringement against IBM. Accordingly, VirtaMove is not entitled to any damages, much less any enhanced damages on account of any purported willful infringement of the Asserted Patents.

## 8. Unenforceability, Equitable Estoppel, and/or Implied License:

IBM incorporates by reference its Answer to Complaint against International Business Machines Corp., Affirmative Defenses, and Counterclaims, including but not limited to Counts 5-7.

IBM further incorporates by reference its Responses to VirtaMove's Interrogatory Nos. 1,2, 5, 8, and 13.

IBM further incorporates by reference its responses to its bases for its defenses of Failure to State a Claim and License and/or Exhaustion.

IBM further incorporates by reference the deposition testimony of at least Ryan Santurri, Paul O'Leary, and Donn Rochette as given in this case. See, e.g., Santurri Tr., at 129:24-143:2; O'Leary (5/15/2025) Tr., 301:1-311:13, 385:16-410:11; Rochette Tr., at 89:24-91:22, 104:5-105:10, 147:10-153:1, 177:1-178:10.

As to unenforceability, VirtaMove's Asserted Patents are at least unenforceable because VirtaMove intentionally failed to disclose prior art references material to the patentability of the VirtaMove Asserted Patents to the USPTO. . . .

## 11. Equitable Defenses:

IBM incorporates by reference its responses herein to its bases for its defenses of Failure to State a Claim, No Infringement, Invalidity, Prosecution History Estoppel and/or Disclaimer, Ensnarement and/or Claim Vitiation, License and/or

Exhaustion, Limitation on Damages, Unenforceability, Equitable Estoppel, and/or Implied License, No Willful Infringement, and No Injunctive Relief.

IBM further incorporates by reference its Responses to VirtaMove's Interrogatory No. 5 and documents cited therein. IBM further states that Docker and Kubernetes are not the same system as VirtaMove's application migration products. VirtaMove itself has disparaged Docker and Kubernetes, pointing out the differences between them and its own products, as demonstrated by at least the documents identified in IBM's Responses to Interrogatory No. 5. IBM further incorporates by reference its Answer to Complaint against International Business Machines Corp., Affirmative Defenses, and Counterclaims, including but not limited to Counts 5-7.

IBM's investigation is ongoing, and IBM reserves all rights to amend, modify, and/or supplement this response.

Ex. 11 at 144-162.

## IV.    ARGUMENT: SUMMARY JUDGMENT SHOULD BE GRANTED ON IBM'S SIXTH, SEVENTH, EIGHTH, AND ELEVENTH AFFIRMATIVE DEFENSES

### A.    Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "A fact is material if its resolution will affect the outcome of the case." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1323 (Fed. Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "To defeat summary judgment, the evidence as properly construed must be sufficient for a reasonable jury to find for the nonmoving party; a mere scintilla of evidence will not suffice." *Id.*

"Where summary judgment is sought based on an affirmative defense, as it is here, the defendant bears the burden of proof of establishing facts supporting the affirmative defense." *Tech 7 Systems, Inc. v. Vacation Acquisition, LLC*, 594 F. Supp. 2d 76, 80 (Dist. D.C. 2009); *see also Thorpe v. Utility Masters, L.L.C.*, No. 4:09CV92, 2010 WL 11530466, at *2 n.1 (E.D. Tex. July 21, 2010) ("Since Defendants would have the burden to prove these affirmative defenses, it would be their obligation to offer summary judgment evidence to raise a fact issue. . . . [T]he failure of

9

Defendants to offer summary judgment evidence on defenses where they bear the burden of proof would be grounds for granting the motion for summary judgment.").

**B.     IBM Has Not Set Forth Evidence to Support Its Sixth Affirmative Defense Regarding an Express License.**

No evidence exists to support an express license defense, because IBM cannot identify any license to the patents at issue.

IBM's interrogatory response in support of its express license defense relies solely on a ███████████████ an IBM Assistance Agreement, which grants a ████████████ ██████████████████████████████████████████ ██████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████

However, IBM's reliance on ███████████████ fails for two separate reasons. First, it is directly inconsistent with ████████████████████████ ███████████████████████████████████. And second, IBM presents no evidence that IBM ever *used* ████████████████████ in developing the Accused Products.

**1.     ██████████████████████████** ████████████████████████████

IBM's reliance on ███████████████ the Assistance Agreement between IBM and AppZero (Ex. 8) is governed by New York law. *See* Ex. 8 (Assistance Agreement) at Section 9.7 ("Governing Law: New York laws govern the terms of this Agreement.").

Under New York law, contracts are construed consistent with the parties' intent, the "best evidence of [which] is what is written in the contract." *Oyster Optics, LLC v. Infinera Corp.*, No. 2:19-CV-00257-JRG, 2021 WL 1109130, at *3 (E.D. Tex. 2021) (citing *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013)). Because the contract itself is the best evidence of the parties' intent, a "court may only look beyond the four corners of a document if it finds an ambiguity in the contract terms." *Id.*

Here, the Assistance Agreement is ██████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ In fact, the Assistance Agreement is explicit that, ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

Under IBM's theory, ██████████████████████████████ grants IBM a license to use the '814 and '058 Patents, which were issued in 2009 and 2010, respectively. However, the ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

    ████████████████████████████████████████████████

████████████████████████████████████████████████████

IBM, however, cannot identify any provision in the complete agreement ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

Of course, if ████████ were interpreted in the way that IBM suggests (████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████.

Reconciliation of ████████████████ is straightforward, however, when ████████

██ is interpreted and understood in view of ███████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

Given that the intellectual property at issue here (the Asserted Patents) ███████████

████████████████████████, it cannot be licensed under any plausible interpretation

of the agreement as a whole, because the agreement as a whole makes clear that ████████

██████████████████████████████

     **2.** ████████████████████████████

████████████████████████

Even under a legally flawed interpretation of ████████████████████████

██████████████████████████████████████████████████

████████████████████ IBM's express license theory cannot succeed. This is because

██████████████████████████████████████████████████

██████████████████████████████████████████████████

13

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

Here, there is no evidence (or even allegation) that IBM **used** ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

Specifically, ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

Accordingly, the evidence of record cannot support any finding that IBM actually *used* ██

████████████████████████████████████████████████████████████

██████████

IBM's interrogatory responses confirm as much. For instance, IBM's interrogatory response regarding IBM's "reasons for designing, developing, and/or introducing [] Your products that include the accused secure containerization functionality" identifies nothing about ██

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Accordingly, even if IBM contends that there are material disputes of fact regarding what the alleged ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

\*      \*      \*

In sum, IBM's express license defense fails for two independent reasons. First, ████████

████████████████████████████████████████████████████████████

███████████████████████████████████████ And second, here is no evidence that IBM *used* ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

### C.    IBM Has Not Set Forth Evidence to Support Its Eighth Affirmative Defense

IBM's Eighth Affirmative defense asserts defenses based on, *inter alia*, unenforceability.

### 1.    The '814 Patent is Not Unenforceable due to the Alleged Inequitable Conduct

Inequitable conduct is an equitable defense to patent infringement and is therefore a question decided by the Court. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). Defendant IBM has the burden of proving inequitable conduct by clear and convincing evidence. *Therasense*, 649 F.3d at 1287. To prevail on its inequitable conduct allegations, Defendant must prove both (1) specific intent to deceive the Patent Office, and (2) but-for materiality by clear and convincing evidence. *Id*. at 1287. Defendant failed to meet this burden because there is no specific intent to deceive the Patent Office during the prosecution of the '814 Patent.[2] *Therasense,* 649 F.3d at 1287 ("the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO").

The "specific intent to deceive" requires someone with a disclosure duty "(a) knew of the information, (b) knew of the materiality of the information, and (c) made a conscious decision not to disclose the information in order to deceive the USPTO." *Therasense,* 649 F.3d at 1296. The specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, 649 F. 3d at 1290 (*quoting Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). When there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found. *Therasense*, 649 F.3d at 1290-91 (*citing Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008)). Here, IBM has no evidence, let alone to prove by clear and convincing evidence, that the inventors and prosecution

---

[2] Although not a focus of this Motion for Summary Judgment, Plaintiff disputes that the alleged nondisclosures were material to patentability.

counsels knew that the alleged non-disclosure is material to patentability, and made a conscious decision to conceal.

### 2.    No Intent to Deceive Based on Foreign Office Action Responses

Defendant's accusation that Applicant should have submitted the office action responses in an European counterpart application of the '814 Patent does not demonstrate inequitable conduct, because there was no evidence that the applicant (including its prosecution counsel) knew that the European office action responses were material to the prosecution of a patent under a different jurisdiction (i.e., in the U.S.) or made a conscious decision to deceive the U.S. Patent Office. The only evidence Defendant can present is a theory that applicant knew the EPO's prosecution. Ex. 15 (Stoll Report) at paras. 141-149; *see also* Ex. 7 (Stoll Depo Tr.) at 35:11-23 (Mr. Stoll does not offer an opinion that the inventors intended to deceive the patent office); 70:2-71:5. But there was no evidence that the applicant knew EPO's office action responses are *material* to prosecution in the U.S., let alone demonstrating that applicant chose to hide them to deceive.

Furthermore, there are many plausible explanations, other than a deceptive intent, on why the office action responses in the EPO were not submitted to the Patent Office. As an initial matter, the office action responses with a foreign patent office do not have to be disclosed to the US Patent Office. The Federal Circuit has held that such communications "are not an additional category of material information" that requires disclosure. *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998) ("Although international search reports may contain information material to patentability if they contain closer prior art than that which was before the United States examiner, it is the reference itself, not the information generated in prosecuting foreign counterparts, that is material to prosecution in the United States. The details of foreign prosecution are not an additional category of material information."). Here, the EPO's office action responses are even more far-

17

fetched from U.S. prosecution. It is not disputed that the prosecution in the EPO focused on the sole prior art reference Schaefer. Undisputed Fact No. 8; Ex. 2 (EP '916 FH) at 1534. It is also not dispute that the Schaefer reference was in fact disclosed to the U.S. Patent Office, and the examiner considered this reference. Undisputed Fact Nos. 10-11; Ex. 3 ('814 FH) at 23231-23233 (applicant submitted the Schaefer reference in an IDS before the first office action in the '814 Patent), 23452 (the examiner initialed the IDS disclosing Schaefer). But in the U.S. prosecution, the examiner did not use the Schaefer reference to reject the claims (Undisputed Fact No. 11), presumably because he determined Schaefer is not the best art. As the EPO and the U.S. Patent Office do not apply the same art, there was even less reason to disclose the EPO's office action responses in the U.S.

### *3.*    **No Intent to Deceive Based on Solaris 10 Art**

Defendant asserted Solaris 10[3] as prior art to the '814 Patent and at the same time argues that there is inequitable conduct based on the non-disclosure of Solaris 10 in the prosecution of the '814 Patent. But Defendant cannot establish that the inventors of the '814 Patent intended to deceive the Patent Office based on this alleged non-disclosure. *See* Ex. 7 (Stoll Depo Tr.) at 35:11-23 (Mr. Stoll does not offer an opinion that the inventors intended to deceive the patent office); 70:2-71:5 (Mr. Stoll only offered an opinion that the inventors knew Solaris 10); Ex. 15 (Stoll Report) at paras. 181-191. There was no evidence that inventor believed Solaris 10 was material to the patentability of the '814 Patent and chose to hide it from the Patent Office. Nor was the intent to deceive the single most reasonable inference in light of the evidence. Indeed, the parties do not dispute that the inventors thought Solaris 10 was very different from the inventions that

---

[3] Solaris 10 is an operating system with confidential components and source code. Unlike this litigation, inventors did not have access to that confidential information and the inventors could not possibly disclose all information of Solaris 10 that IBM used in this litigation which is what IBM seems to require the inventors to disclose.

they came up with for the '814 Patent. Undisputed Facts No. 12; Ex. 5 (5/5/2025 Rochette Depo Tr.) at 87:24-88:1; Ex. 6 (5/15/2025 O'Leary Depo Tr.) at 308:23-309:11. And the inventors have testified that they did not know whether Solaris Zones (the alleged prior art feature in Solaris 10) predate the provisional applications of the '814 Patent. Undisputed Fact No. 12; Ex. 4 (9/10/2024 Rochette Depo Tr.) at 105:16-106:3, 118:17-119:3; Ex. 5 (5/5/2025 Rochette Depo Tr.) at 87:24-1; 89:8-23; Ex. 6 (5/15/2025 O'Leary Depo Tr.) at 308:23-309:11. Indeed, there was no evidence that the inventors knew Solaris Zones was prior art to begin with.

Although IBM's expert, Mr. Stoll, attempted to argue that the inventors knew of Solaris 10, but knowledge on its own is not sufficient to establish inequitable conduct. The inventors must also appreciate that Solaris 10 was material to the patentability, and made a conscious decision to withhold it. *Therasense*, 649 F.3d at 1290. Here, the undisputed evidence is that the inventors thought Solaris 10 was very different from their inventions. There is no evidence supporting a finding that the intent to deceive is the "single most reasonable inference." Thus, Defendant could not meet its burden of demonstrating inequitable conduct based on Solaris 10. *Therasense*, 649 F.3d at 1290.

### D.    IBM Has Not Set Forth Evidence to Support Its Seventh Affirmative Defense

IBM's Seventh Affirmative defense asserts a defense based on limitation on damages. IBM basis for its affirmative defense with respect to marking is that "VirtaMove has yet to demonstrate that its purported patent-embodying products had been marked such that VirtaMove provided notice that such products specifically practiced the Asserted Patents." Ex. 11 at 153-154. In this contention, IBM generally incorporates by reference, *inter alia*, VirtaMove's Responses to Defendants' Common Interrogatory No. 8.

VirtaMove's Response to Common Interrogatory No. 8 contends in pertinent part: "*product and service offerings relating to 'VMigrate,' and 'VMaestro,' as sold to and/or **used by customers*** as designed or directed, practice . . . the asserted claims of the '814 patent." Ex. 16 (VirtaMove's Supplemental Objections and Responses to Defendants' Common Interrogatories Nos. 1-9) at 37-38 (emphasis added). The only "asserted claims" of the '814 patent are claims 1, 2, 6, and 10, and claim 1 is the only independent asserted claim. Claim 1 and its dependents are *method* claims, such that they cannot be practiced until they are actually *used* in the United States; software alone, barring an infringing *use* of that software, obviously cannot practice a *method* claim. Thus, in the context of the '814 patent assertions, "as sold to and/or used by customers as designed or directed" is clearly about "used by customers," not "as sold to." VirtaMove has never alleged that the software itself, without any usage of it, practices claim 1 of the '814 patent, and that assertion would be nonsensical. IBM has never made *any* allegation to the contrary, and indeed IBM disputes that the VirtaMove software practices claim 1 even when it is used by customers. Ex. 17 (Wicker Rebuttal Report) at ¶¶ 38-39. Therefore, there is no material dispute of fact regarding whether VirtaMove (or its predecessors) sold any products that embody any claims of the '814 Patent.

Regarding the '058 patent, VirtaMove made clear that while its software as made available to customers ***does*** practice the asserted claims of that patent ***when incorporated into a customer's system***, the software alone does ***not*** meet all of the claim limitations. *See* Ex. 16 at 39 (specifying that the software does not meet the "processor" or "operating system" limitations of the asserted claims of the '058 patent). Like with the '814 patent, IBM has never made any allegation to the contrary.

The fact that there is no dispute that VirtaMove and its predecessors have never offered unmarked, practicing products is especially clear here, where IBM failed to even serve an *Arctic Cat* notice, which is a prerequisite for a defendant meeting their burden on a marking defense. *See Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) (establishing that the law places the initial "burden of production" on the accused infringer to "put [VirtaMove] on notice that [VirtaMove] or [its] authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent."); *see also* Ex. 18 *Salazar v. AT&T Mobility LLC et al*, 2:20-cv-0004-JRG, D.I. 222 at 5 (E.D. Tex, May 25, 2021) (granting summary judgment for plaintiff on Section 287 marking because defendant failed to identify "specific unmarked products which the alleged infringer believes practice the patent").

Accordingly, summary judgment rejecting IBM's assertion that damages should be limited for failure to mark is warranted.

### E.    IBM Has Not Set Forth Evidence to Support Its Eleventh Affirmative Defense

IBM's Eleventh Affirmative defense asserts "Equitable defenses" including waiver, acquiescence, unclean hands, and unenforceability.[4]

Waiver occurs in the patent infringement context "when a party with full knowledge of material facts, either intentionally relinquishes its rights to enforce the patents, or engages in conduct so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *JumpSport, Inc. v. Academy, Ltd.*, 2018 WL 10124888, at *4 (E.D. Tex. Sept. 6, 2018) (citing *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1021–22 (Fed. Cir. 2008)). The defense of acquiescence requires "the plaintiff's implicit or explicit assurances to the

---

[4] For the reasons discussed in Section IV.C., summary judgment is warranted as to IBM's unenforceability defense.

defendant ... induce[ ] reliance by the defendant." *JumpSport, Inc. v. Academy, Ltd.*, 2018 WL
10124888, at *4 (E.D. Tex. Sept. 6, 2018) (citing *Conan Properties, Inc. v. Conans Pizza, Inc.*,
752 F.2d 145, 153 (5th Cir. 1985)).

An unclean hands defense requires that there be a nexus between the improper conduct and
the legal issues in the case. To invoke the unclean hands doctrine, the defendant must point to an
unconscionable act by the patentee that has an "immediate and necessary relation to the equity" of
the relief that the patentee seeks. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245
(1933). In patent cases, unclean hands applies only in "extreme circumstances."
*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 15-1202, 2017 WL 275465, at *7 (E.D.
Tex. Jan 20, 2017) (Bryson, J.); *see Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276,
1287 (Fed. Cir. 2011). Such circumstances are those that "shock the moral sensibilities of the
judge" or are "offensive to the dictates of natural justice." *iFLY Holdings LLC v. Indoor Skydiving
Germany GmbH*, No. 14-1080, 2016 WL 3675136, at *1 (E.D. Tex. Mar. 25, 2016). The accused
infringer bears the burden of proving unclean hands by clean and convincing evidence. *In re
Omeprazole Patent Litig.*, 483 F.3d 1364, 1374 (Fed. Cir. 2007).

IBM provides no facts that can form the basis of acquiescence, waiver, or unclean hands.
In its interrogatory response on the issue of affirmative defenses, IBM does not even mention these
defenses. Instead, IBM merely incorporates by reference its (i) defenses for Failure to State a
Claim, No Infringement, Invalidity, Prosecution History Estoppel and/or Disclaimer, Ensnarement
and/or Claim Vitiation, License and/or Exhaustion, Limitation on Damages, Unenforceability,
Equitable Estoppel, and/or Implied License, No Willful Infringement, and No Injunctive Relief;
(ii) IBM's response to VirtaMove's Interrogatory No. 5, which requested IBM's non-infringement
contentions (*see* Ex. 11 at 53); (iii) a statement that "Docker and Kubernetes are not the same

system as VirtaMove's application migration products. VirtaMove itself has disparaged Docker and Kubernetes, pointing out the differences between them and its own products"; and (iv) IBM's Answer to VirtaMove's Third Amended Complaint. *See* Ex. 11 at 161-162. The defenses of acquiescence, waiver, and unclean hands are simply absent from this list, and none of what is "incorporate[d] by reference" into IBM's interrogatory response on the issue of affirmative defenses alleges any (i) assurances by VirtaMove that induces reliance by the IBM, (ii) intentional relinquishment of a known right by VirtaMove, or (iii) allegedly extreme or unconscionable actions by VirtaMove.

Accordingly, IBM has failed to adduce any facts sufficient to demonstrate waiver, acquiescence, or unclean hands and VirtaMove is entitled to summary judgment.

## V.  **CONCLUSION**

For the foregoing reasons, summary judgment should be granted in favor of VirtaMove as to IBM's Sixth Affirmative Defense regarding an express license; Seventh Affirmative Defense for Limitation on Damages as to marking; Eighth Affirmative Defense as to Unenforceability; and Eleventh Affirmative Defense for "Equitable Defenses" as to waiver, acquiescence, unclean hands, and unenforceability.


Dated:  July 28, 2025                    Respectfully submitted,

                                         */s/ Reza Mirzaie*
                                         Reza Mirzaie
                                         CA State Bar No. 246953
                                         Marc A. Fenster
                                         CA State Bar No. 181067
                                         Neil A. Rubin
                                         CA State Bar No. 250761
                                         Jacob R. Buczko
                                         CA State Bar No. 269408
                                         James S. Tsuei

CA State Bar No. 285530
James A. Milkey
CA State Bar No. 281283
Christian W. Conkle
CA State Bar No. 306374
Jonathan Ma
CA State Bar No. 312773
Mackenzie Paladino
NY State Bar No. 6039366
Daniel Kolko
CA State Bar No. 341680
Jefferson Cummings
DC State Bar No.  90027452
Linjun Xu
CA State Bar No. 307667
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
Telephone: 310-826-7474
Email: rmirzaie@raklaw.com
Email: mfenster@raklaw.com
Email: nrubin@raklaw.com
Email: jbuczko@raklaw.com
Email: jtsuei@raklaw.com
Email: jmilkey@raklaw.com
Email: cconkle@raklaw.com
Email: jma@raklaw.com
Email: dkolko@raklaw.com
Email: mpaladino@raklaw.com
Email: jcummings@raklaw.com
Email: lxu@raklaw.com

Qi (Peter) Tong
TX State Bar No. 24119042
8080 N. Central Expy, Suite 1503
Dallas, TX 75206
Email: ptong@raklaw.com

**ATTORNEYS FOR PLAINTIFF
VIRTAMOVE, CORP.**

24

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2025, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System, and served defendants with a copy via electronic mail.

/s/ *Reza Mirzaie*
Reza Mirzaie

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ *Reza Mirzaie*
Reza Mirzaie