# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## DEFENDANT INTERNATIONAL BUSINESS MACHINES CORP.'S OPPOSITION TO PLAINTIFF VIRTAMOVE'S MOTION TO EXCLUDE EXPERT OPINIONS OF ROBERT STOLL

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD.......................................................................................... 5

III.  ARGUMENT ....................................................................................................... 5

     A.    Mr. Stoll's Opinions Regarding Materiality Are Admissible..................... 5

     B.    Mr. Stoll's Opinions Regarding the Applicants' Knowledge Are Admissible ............................................................................................... 10

     C.    Mr. Stoll's Opinions Regarding the Breach of the Duty of Disclosure Are Admissible ...................................................................... 14

IV.   CONCLUSION.................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Am. Med. Sys. v. Laser Peripherals,*
    LLC, 712 F. Supp. 2d 885 (D. Minn. 2010) .........................................................................14

*Apple Inc. v. Motorola, Inc.,*
    757 F.3d 1286 (Fed. Cir. 2014).........................................................................................5, 9

*Cave Consulting Grp., Inc. v. Optuminsight, Inc.,*
    No. 15-cv-03424-JCS, 2019 U.S. Dist. LEXIS 161139 (N.D. Cal. Aug. 28,
    2019) ...................................................................................................................................3, 9

*Charalambopoulos v. Grammer,*
    No. 14-cv-2424-d, 2017 WL 930819 (N.D. Tex. March 8, 2017)..........................................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ................................................................................................................5

*Deere & Co. v. Kinze Mfg., Inc.,*
    No. 20-cv-00389-RGE-HCA, 2024 U.S. Dist. LEXIS 52740 (S.D. Iowa Feb.
    8, 2024) ............................................................................................................................4, 11

*Fisher v. Halliburton,*
    Nos. H-05-1731, H-06-1971, H-06-1168, 2009 WL 5216949 (S.D. Tex. Dec.
    21, 2009) ........................................................................................................................12, 13

*GREE, Inc. v. Supercell Oy,*
    No. 19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 132121 (E.D. Tex. July
    27, 2020) ..........................................................................................................................4, 11

*Johnson v. Packaging Corp. of Am.,*
    No. CV 613-SDD-EWD, 2023 WL 8649814 (M.D. La. Dec. 14, 2023) .........................12, 13

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)................................................................................................................5

*Maxell, Ltd. v. Apple Inc.,*
    No. 5:19-CV-00036-RWS, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) .............................1

*Mobile Equity Corp. v. Walmart Inc.,*
    No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 242525 (E.D. Tex. Sep.
    23, 2022) ................................................................................................................................5

*Network-1 Techs. v. Alcatel-Lucent USA, Inc,*
    No. 11-cv-492-RWS-KNW, 2017 U.S. Dist. LEXIS 154434 (E.D. Tex. Sep.
    21, 2017) ........................................................................................................................ *passim*

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
    No. 15 C 1067, 2019 U.S. Dist. LEXIS 179951 (N.D. Ill. Mar. 13, 2019) ........................4, 14

*Se-Kure Controls, Inc. v. Vanguard Prods. Grp.*,
    No. 02 C 3767, 2008 U.S. Dist. LEXIS 3993 (N.D. Ill. Jan. 17, 2008)..........................8, 9, 10

*SB IP Holdings LLC*, 20-CV-00886, Dkt. No. 375 (E.D. Tex. June 15, 2023)................1, 2, 7, 10

*Shire Viropharma Inc. v. CSL Behring LLC*,
    No. 1:17-CV-00414, 2021 WL 1227097 (D. Del. Mar. 31, 2021) ................................1, 5, 8, 9

*Shuffle Tech Int'l LLC v. Sci. Games Corp.*,
    No. 15 C 3702, 2017 U.S. Dist. LEXIS 141445 (N.D. Ill. Sep. 1, 2017).........................10, 11

*Spreadsheet Automation Corp. v. Microsoft Corp.*,
    587 F. Supp. 2d 794 (E.D. Tex. 2007) ..............................................................................4, 11

*Sundance, Inv. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008)................................................................................................8

*Therasense v. Becton, Dickinson & Co.*,
    Nos. C 04-02123-WHA, C 04-03327-WHA, C 04-03732, C 05-03117 WHA,
    2008 WL 2037732 (N.D. Cal. May 12, 2008) ...............................................................2, 6, 8

*United States v. Valencia*,
    600 F.3d 389 (5th Cir. 2010) .................................................................................................5

*Worldwide Home Products, Inc. v. Time, Inc., et. al.*,
    No. 11-cv-03633, Dkt. 225 (S.D.N.Y. Sept. 30, 2013)...................................................2, 4, 14

**Rules**

37 CFR § 1.56 ............................................................................................. *passim*

Fed.R.Evid. 702 .............................................................................................5, 10

Fed.R.Evid. 704 .............................................................................................5, 15

## I.    INTRODUCTION

As this Court has previously found, "Mr. Stoll is undoubtedly qualified as an expert on USPTO practice and procedure." *SB IP Holdings LLC*, 20-CV-00886, Dkt. No. 375 (E.D. Tex. June 15, 2023) (quoting *Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2020 WL 8269548, at *14 (E.D. Tex. Nov. 11, 2020)).  Indeed, Mr. Stoll is a former Commissioner for Patents at the United States Patent and Trademark Office ("USPTO"), and has nearly three decades of experience in patent examination, policy, and enforcement at the USPTO.  In the past decade, Mr. Stoll has applied his expertise acquired at the USPTO to provide qualified expert opinions and analysis in dozens of cases, including on issues relating to patent prosecution, the examination process, and reasonable practices to meet the duty of disclosure to the USPTO under Rule 56.  "As other courts have recognized, [Mr.] Stoll is well qualified to testify on the materiality prong of the inequitable conduct inquiry as this is an inquiry that is analyzed from the perspective of the USPTO." *Id*. (citing *Shire Viropharma Inc. v. CSL Behring LLC*, No. 1:17-CV-00414, 2021 WL 1227097, at *30 (D. Del. Mar. 31, 2021)).

Consistent with the type of expert testimony he has offered dozens of times in the past, Mr. Stoll has drawn on his expertise to offer his analysis and opinions on these same issues as they pertain to the inequitable conduct claims IBM has raised in this case.  Specifically, Mr. Stoll has relied on his deep familiarity with USPTO policy and procedure to opine on the materiality of the '814 Patent's Applicants' (the "Applicants") inconsistent statements to the European Patent Office ("EPO"), the materiality of the Solaris 10 prior art reference, and the impact of the Applicants' failure to disclose this material information to the USPTO.  Mr. Stoll reached these opinions after considering substantial supporting evidence and testimony, including conducting a review of full prosecution histories, deposition transcripts of the named inventors and prosecuting counsel, and

key internal VirtaMove documents discussing the withheld information. Mr. Stoll also held discussions with IBM's technical expert, Dr. Stephen Wicker, concerning Dr. Wicker's opinion that the withheld information was but-for material to the '814 Patent's patentability. On each of the three issues VirtaMove questions, Mr. Stoll has offered just the sort of expert testimony that courts regularly permit to inform the trier of fact on these issues. *See, e.g.*, *SB IP Holdings*, 20-CV-00886, Dkt. No. 375 (denying motion to exclude Mr. Stoll's testimony); *Worldwide Home Products, Inc. v. Time, Inc., et. al.*, No. 11-cv-03633, Dkt. 225 (S.D.N.Y. Sept. 30, 2013) (holding "expert's testimony with regard to the propriety of the Plaintiff's conduct before the patent office and the materiality of the omitted information to the PTO examiner's decision is properly admissible").

This Court should deny in its entirety VirtaMove's motion to exclude certain opinions of Robert Stoll—IBM's expert on issues relating to IBM's inequitable conduct defenses. VirtaMove challenges three aspects of Mr. Stoll's testimony: (1) his employment of the Rule 56 (37 CFR § 1.56) and "but-for" standards of materiality in his opinions on the materiality of the Applicants' communications with the EPO and Solaris 10 to the '814 Patent's patentability, as well as his qualification to render such opinions; (2) his qualification to discuss the Applicants' knowledge of the withheld information; and (3) his discussion of the Applicants' breach of their duty of disclosure under Rule 56. All three of VirtaMove's challenges fail, as they are based on mischaracterizations of Mr. Stoll's opinions and/or misapplications of the relevant legal authority.

***First***, far from applying an irrelevant legal standard, Mr. Stoll has properly provided opinions relevant to the Court's materiality determination as his expertise allows. *See, e.g.*, *Therasense v. Becton, Dickinson & Co.*, Nos. C 04-02123-WHA, C 04-03327-WHA, C 04-03732, C 05-03117 WHA, 2008 WL 2037732, at *3–4 (N.D. Cal. May 12, 2008) ("Some issues of

materiality may be so independent of scientific complexity that even patent lawyers can understand them. . . . Lawyers skilled in practice before the [US]PTO and familiar with how the duty of candor works in practice should be allowed to opine on whether [information] should have been revealed to the [US]PTO.").  As a patent law expert, Mr. Stoll understands the Rule 56 and "but-for" standards of materiality, and his opinions regarding the materiality of the withheld information properly "stems from his expertise in [US]PTO rules and practice"—such as Rule 56—"not in the underlying [ ] technology" of the '814 Patent.  *Network-1 Techs. v. Alcatel-Lucent USA, Inc,*, No. 11-cv-492-RWS-KNW, 2017 U.S. Dist. LEXIS 154434, at *14 (E.D. Tex. Sep. 21, 2017).  This is wholly appropriate, as courts regularly find a party's compliance (or lack thereof) with relevant USPTO requirements (including Rule 56) to assist in the final determination of inequitable conduct.  *See, e.g.*, *Cave Consulting Grp., Inc. v. Optuminsight, Inc.*, No. 15-cv-03424-JCS, 2019 U.S. Dist. LEXIS 161139, at *52-53 (N.D. Cal. Aug. 28, 2019) ("While the PTO's duty of candor is not equivalent to the inequitable conduct standard, whether a party has complied with that duty may nevertheless be a factor relevant to the jury's consideration of whether the party intended to deceive the PTO, whether conduct was egregious, and whether it was part of a pattern of deceit.").  Nor does Mr. Stoll venture into technical analysis; instead, to support his own analysis of materiality, he deferred entirely to the technical conclusions of IBM's technical expert, Dr. Wicker, that the withheld information was but-for material to the '814 Patent's patentability.

**Second**, VirtaMove incorrectly contends that Mr. Stoll has offered opinions on the Applicants' mental state.  This, too, is incorrect.  As part of his analysis of how the Applicants' conduct in applying for and prosecuting the '814 Patent departed from typical practice by applicants who abide by the duty of disclosure, Mr. Stoll does identify relevant evidence showing that the Applicants were aware of material information that was withheld from the USPTO.  Yet

in doing so, Mr. Stoll makes clear that he is not offering opinions on the Applicants' subjective knowledge and intentions. *See, e.g.*, Ex [[X]] (Stoll Op. Rpt.) ¶ 45; Ex [[X]] (Stoll 7/16/2025 Tr.) at 35:8–10; 35:21–22; 36:18–21.   Courts have routinely permitted such expert opinions and analyses related to the inequitable conduct inquiry. *See, e.g.*, *Network-1 Techs.*, 2017 U.S. Dist. LEXIS 154434, at *20 (holding expert "may explain and point to the underlying factual record and other evidence bearing on issues of intent and knowledge"); *Deere & Co. v. Kinze Mfg., Inc.*, No. 20-cv-00389-RGE-HCA, 2024 U.S. Dist. LEXIS 52740, at *22 (S.D. Iowa Feb. 8, 2024) (holding expert's opinions "asserting her account of best practices for reasonable patent prosecutors are admissible" as they relate to intent to deceive); *GREE, Inc. v. Supercell Oy*, No. 19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 132121, at *6–7 (E.D. Tex. July 27, 2020) ("Experts can opine, however, on the underlying facts that may show a party's state of mind.") (citing *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 803 (E.D. Tex. 2007)); *Worldwide Home*, No. 11-cv-03633, Dkt. 225.

**Third**, VirtaMove wrongly claims that Mr. Stoll offers improper legal opinions when explaining how the Applicants breached their duty of disclosure to the USPTO.  In fact, courts regularly permit expert testimony on this topic to inform the fact finder's determination regarding inequitable conduct—especially where, as here, the expert does not offer a conclusion on the ultimate issue of inequitable conduct. *See, e.g.*, *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15 C 1067, 2019 U.S. Dist. LEXIS 179951, at *9 (N.D. Ill. Mar. 13, 2019) ("[T]he Court agrees with NP that this is admissible circumstantial evidence regarding Oil-Dri's intent. Dickinson may appropriately testify that certain actions ran afoul of Oil-Dri's duty of candor."); *Worldwide Home*, No. 11-cv-03633, Dkt. 225 (holding expert's testimony that applicants' conduct violated "the Patent Office rules" was admissible).

## II.    LEGAL STANDARD

Federal Rule of Evidence ("FRE") 702 provides for the admission of expert testimony that helps the trier of fact understand the evidence or determine a fact in issue.  *See* FED. R. EVID. 702. Under FRE 702, the ultimate question for purposes of determining admissibility is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the trier of fact.  *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993)).  An expert opinion "is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(A).  "District courts are accorded broad discretion" in determining whether expert testimony is admissible.  *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 242525, at *2 (E.D. Tex. Sep. 23, 2022) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

## III.    ARGUMENT

### A.    Mr. Stoll's Opinions Regarding Materiality Are Admissible

VirtaMove asserts that Mr. Stoll should be precluded from testifying "about whether Solaris 10 or certain communications with the European Patent Office ('EPO') is 'material' or 'highly material.'"  Dkt. 226 at 2.  VirtaMove contends Mr. Stoll "does not have the required technical background to render such opinion[s]" and that his testimony is based on the wrong legal standard.  *Id.*  Both arguments are incorrect.

***First***, contrary to VirtaMove's contention, Mr. Stoll does not offer "technical related opinions for the inequitable conduct analysis."  *Id*.  As Mr. Stoll makes clear in his report, he relies on Dr. Wicker for analysis of the relevant technology.  *See, e.g.*, Ex. [[1]] (Stoll Op. Rpt.) ¶¶ 19, 130, 139, 153, 155, 160, 165–66; Ex. [[2]] (Stoll 7/16/2025 Tr.) at 21:20–23, 22:1–4, 39:24–41:24. Experts "routinely rely upon other experts by the party they represent for expertise outside of their field."  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014); *see also Shire*, 2021

U.S. Dist. LEXIS 61551, at *90–91 (holding Mr. Stoll properly relied on technical expert as part of materiality analysis).

In addition, none of the sections of Mr. Stoll's expert report cited by VirtaMove offer opinions that go beyond his expertise. VirtaMove first challenges Mr. Stoll's observation that Claim 1 of the '814 Patent does not have a "unique identifier" requirement, *see* Dkt. 226 at 3 (citing Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 117–40), which Mr. Stoll notes to show the materiality of Applicants' statements to the EPO about what enables the claimed invention. Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 120–31. That observation does not require knowledge outside of Mr. Stoll's expertise—a "unique identifier" is simply not recited in Claim 1 of the '814 Patent (nor has any party ever contended otherwise), but only in dependent Claim 6. *See* Ex. [[2]] (Stoll 7/16/2025 Tr.) at 57:4–60:12. Based on his experience as a patent lawyer and at the USPTO, Mr. Stoll explained that this limitation in the dependent claim is necessarily absent from the independent claim. *Id.* That is precisely the type of testimony that experts on patent prosecution and examination are qualified to provide. *See, e.g.*, *Therasense*, 2008 WL 2037732, at *3 ("Some issues of materiality may be so independent of scientific complexity that even patent lawyers can understand them. . . . Lawyers skilled in practice before the [US]PTO and familiar with how the duty of candor works in practice should be allowed to opine on whether [information] should have been revealed to the [US]PTO."). In any event, even if this observation did require some level of technical expertise beyond Mr. Stoll's capabilities, he relied on Dr. Wicker's independent technical analysis to confirm that Claim 1 of the '814 Patent does not require the enabling "unique identifier" feature. *See, e.g.*, Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 130, 139; Ex. [[2]] (Stoll 7/16/2025 Tr.) at 51:3–54:21.

VirtaMove also purports to question the qualifications for Mr. Stoll's statement that

████████ his statements that the Solaris prior art is not cumulative of other art, his reference to the inventor's deposition testimony regarding the Solaris technology, and his discussion of statements by the examiner and applicants. *See* Dkt. 226 at 3 (citing Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 156–66). Again, however, Mr. Stoll has properly relied on Dr. Wicker's analysis for any technical facts that that inform Mr. Stoll's opinions. *See, e.g.*, Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 19, 153–55, 160; Ex. [[2]] (Stoll 7/16/2025 Tr.) at 39:24–41:24. In particular, Mr. Stoll relies on Dr. Wicker to show that Solaris 10 is but-for material to the patentability of at least Claim 1 of the '814 Patent because Solaris 10 discloses the limitations of that claim that the examiner found were missing from the prior art the examiner considered. *See* Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 153–55, 160. Contrary to VirtaMove's contention, none of Mr. Stoll's references to inventor testimony regarding the technology and to statements by the examiner and the Applicants "involve technical discussions of the claims and the prior art." Dkt. 226 at 3. Instead, that discussion in Mr. Stoll's report involved the non-technical tasks of reviewing and assessing applicant and examiner arguments, *see id.* ¶¶ 63–72, 152–66, which is well within the scope of his expertise. *See Network-1 Techs.*, 2017 U.S. Dist. LEXIS 154434, at *16 (holding expert "may render an opinion regarding the materiality of Defendant's broadening contentions" concerning the scope of the alleged invention, where expert's opinion drew from "his experience in PTO policy, practice, and procedure"). Mr. Stoll worked for many years at the USPTO, including as an examiner, and is well acquainted with the routine practice of reviewing file histories, including discussions by and between applicants and examiners, and understanding the impact of such discussions on patentability. *Network-1 Techs.*, 2017 U.S. Dist. LEXIS 154434, at *14 (allowing testimony that "stems from [expert's] expertise in [US]PTO rules and practice, not in the underlying [ ] technology"); *SB IP Holdings*, 20-CV-00886, Dkt. No. 375 ("As other courts have recognized, Stoll is well qualified to testify on

7

the materiality prong of the inequitable conduct inquiry as this is an inquiry that is analyzed from the perspective of the USPTO."). Mr. Stoll's extensive experience with these tasks and "general procedures involved in the patent application process" place these opinions well within the scope of his expertise to offer. *Se-Kure Controls, Inc. v. Vanguard Prods. Grp.*, No. 02 C 3767, 2008 U.S. Dist. LEXIS 3993, at *11 (N.D. Ill. Jan. 17, 2008) (allowing testimony of expert with four decades of experience, including as a patent examiner, to testify regarding materiality).

VirtaMove's reliance on the *Sundance* case to try to criticize Mr. Stoll's opinions is unavailing. *See* Dkt. 226 at 3–4. In *Sundance*, the court excluded a patent law expert's opinion because the expert offered testimony focused on the issues of noninfringement and invalidity, even though he was not qualified as an expert in the pertinent art. *See Sundance, Inv. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361–63 (Fed. Cir. 2008). Mr. Stoll is not offering such opinions here, and courts have expressly declined to apply the *Sundance* holding to exclude expert opinions similar to those Mr. Stoll is offering here. *See, e.g.*, *Network-1 Techs.*, 2017 U.S. Dist. LEXIS 154434, at *11 (rejecting same argument VirtaMove now makes based on *Sundance*); *Shire*, 2021 U.S. Dist. LEXIS 61551, at *89 (same).

Second, VirtaMove wrongly contends that "Mr. Stoll's materiality analysis misleadingly attempted to mix the duty of disclosure under Rule 56 with inequitable conduct." Dkt. 226 at 4. Rather than offer ultimate testimony on the issue of inequitable conduct, Mr. Stoll's expertise allows him to provide pertinent and relevant analysis of Applicants' conduct in light of USPTO procedures and disclosure obligations. Mr. Stoll's testimony in both his report and deposition makes clear that he understands the distinction between the Rule 56 materiality standard and the "but-for" materiality standard for inequitable conduct under *Therasense*, and that the but-for standard is the correct standard to establish the materiality prong of inequitable conduct. *See, e.g.*,

Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 33,48, 55–56; Ex. [[2]] (Stoll 7/16/2025 Tr.) at 40:23–41:24. VirtaMove's contention appears to be that the Rule 56 materiality standard (and Mr. Stoll's discussion of that standard) is somehow irrelevant to the inequitable conduct determination, but that is incorrect, as courts also consider a party's compliance with Rule 56 to be relevant to an inequitable conduct analysis: "[w]hile the PTO's duty of candor is not equivalent to the inequitable conduct standard, whether a party has complied with that duty may nevertheless be a factor relevant to the jury's consideration of whether the party intended to deceive the PTO, whether conduct was egregious, and whether it was part of a pattern of deceit." *Cave Consulting Grp., Inc.*, 2019 U.S. Dist. LEXIS 161139, at *52–53. Mr. Stoll's explanation of Rule 56—and his discussion of the ways in which patent practitioners are made aware of and comply with this rule's duty of disclosure of material information—provides relevant background information for the trier of fact, including for determining what the Applicants understood their duty of disclosure to entail and whether they acted in accordance with that duty. *See, e.g.*, Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 107–11.

Further, VirtaMove assertion that "[s]ince Mr. Stoll did not offer an opinion on 'but-for' materiality, he should not be permitted to testify on this issue" has no basis in law. Dkt. 226 at 5. As discussed above, courts regularly allow experts to present testimony that is informed by opinions supplied by other experts (as Mr. Stoll has done with information provided by Dr. Wicker). *Apple*, 757 F.3d at 1321 (Fed. Cir. 2014); *see also Shire*, 2021 U.S. Dist. LEXIS 61551, at *90–91. Mr. Stoll appropriately relied on Mr. Wicker's but-for materiality findings to "shed light on what a reasonable examiner would have considered important." *Se-Kure Controls, Inc.*, 2008 U.S. Dist. LEXIS 3993, at *12. Specifically, based on his experience at and with the USPTO, Mr. Stoll discussed how the USPTO would have had a meaningfully "stronger case" for denying

the '814 Patent in view of the withheld, but-for material information.  *See* Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 29–44, 118–66; Ex. [[2]] (Stoll 7/16/2025 Tr.) at 40:17–41:24; 53:17–54:23.

Ultimately, Mr. Stoll's testimony will assist the Court in understanding the USPTO's expectations for disclosure, the significance of foreign office actions and prior art references, and the procedural context in which the Applicants' omissions to the USPTO occurred.  Understanding these matters requires the type of specialized knowledge that Mr. Stoll brings from his decades of experience at the USPTO, and is precisely the type of expertise that FRE 702 contemplates.  *See, e.g.*, *SB IP Holdings LLC*, 20-CV-00886, Dkt. No. 375 (denying motion to exclude Mr. Stoll's testimony); *Se-Kure Controls, Inc.*, 2008 U.S. Dist. LEXIS 3993, at *12 (holding that if expert "can shed light on what a reasonable examiner would have considered important, his testimony is admissible"); *Shuffle Tech Int'l LLC v. Sci. Games Corp.*, No. 15 C 3702, 2017 U.S. Dist. LEXIS 141445, at *42 (N.D. Ill. Sep. 1, 2017) (allowing expert testimony on the materiality of a reference based on its citation in related applications and applicant responses to PTO rejections indicating the reference disclosed a "key feature" of the asserted patent).

### B.    Mr. Stoll's Opinions Regarding the Applicants' Knowledge Are Admissible

VirtaMove argues that "Mr. Stoll should be prevented from discussing the applicant's knowledge because he is not qualified to provide such testimony."  Dkt. 226 at 5.  Yet, VirtaMove mischaracterizes both the nature and the scope of Mr. Stoll's testimony.

Despite VirtaMove's assertion that Mr. Stoll opined "[i]n various places" on the Applicants' knowledge, *id.*, Mr. Stoll repeatedly made clear that he is not offering opinions on the Applicants' state of mind or their intent to deceive the USPTO.  *See, e.g.*, Ex [[X]] (Stoll Op. Rpt.) ¶ 45 ████████████████████████████████████████████████████████

████████ Ex [[X]] (Stoll 7/16/2025 Tr.) at 35:8–10, 35:21–22, 36:18–21 (testifying same).

Rather than "go[ing] into the [Applicants'] subjective 'state of mind,'" as VirtaMove

contends, Dkt. 226 at 5, Mr. Stoll properly applies his experience to identify the factual bases in the record from which a trier of fact can infer knowledge or intent relevant to an inequitable conduct determination. Courts regularly permit such expert testimony, including in the context of claims for inequitable conduct. *See, e.g.*, *Network-1 Techs.*, 2017 U.S. Dist. LEXIS 154434, at *20 (holding expert "may explain and point to the underlying factual record and other evidence bearing on issues of intent and knowledge"); *Deere & Co.*, 2024 U.S. Dist. LEXIS 52740, at *22 (holding expert's opinions "asserting her account of best practices for reasonable patent prosecutors are admissible" as they relate to intent to deceive); *see also GREE, Inc.*, 2020 U.S. Dist. LEXIS 132121, at *6–7 ("Experts can opine, however, on the underlying facts that may show a party's state of mind.") (citing *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 803 (E.D. Tex. 2007)).

In particular, to assist the trier of fact in determining whether the Applicants were aware of material and contemporaneous communications made during the prosecution of the European Counterpart Application to the '814 Patent Application, Mr. Stoll applies his experience and expertise to explain that "during the prosecution of foreign counterpart patent applications, the prosecuting attorneys are in communication and share relevant information, particularly where prior art is cited in rejections and responses are made to those rejections" and that "it is also common for named inventors to be kept informed of proceedings related to applications on which they are named as inventors." Ex. [[1]] (Stoll. Op. Rpt.) ¶ 146–49. Mr. Stoll supports that opinion by identifying evidence in the record showing that such materials were in fact shared with the inventors and their counsel involved in prosecuting the '814 Patent Application. *Id.* ¶¶ 143–45. Such testimony is well within the scope of Mr. Stoll's expertise and should not be excluded. *See, e.g.*, *Shuffle Tech*, 2017 U.S. Dist. LEXIS 141445, at *32 (holding expert could testify "regarding

the typical behavior of in-house and external IP counsel" based on his experience).

Mr. Stoll's analysis of the named inventors' and the prosecuting counsel's conduct in connection with the Solaris prior art technology likewise is proper and helpful to the trier of fact in making a determination regarding knowledge and intent. For example, Mr. Stoll observes that

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████ and he opines that in his experience, ██████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████ Ex. [[1]] (Stoll.

Op. Rpt.) ¶ 37. Mr. Stoll then contrasts that typical practice with evidence in the record showing that the Applicants referenced Solaris Zones in an application related to the '814 Patent but not during the prosecution of the '814 Patent itself. *See id.* ¶¶ 190–96. Mr. Stoll also opines that ████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

███████████████ *Id.* ¶ 164. Mr. Stoll then notes evidence in the record indicating that the named inventors had discussed the Solaris prior art technology as containing these purportedly missing limitations and also discussed its general closeness to the '814 Patent's alleged invention. *See id.* ¶¶ 181–92; Ex. [[2]] (Stoll 7/16/2025 Tr.) at 32:23–33:4. It is within Mr. Stoll's expertise to discuss these objective facts found in the record. To be clear, however, Mr. Stoll does not opine on the ultimate question of whether such evidence shows the Applicants had knowledge or intent relevant to the inequitable conduct inquiry—he expressly reserves that determination for the trier of fact.

Although VirtaMove cites the *Fisher* and *Johnson* cases in support of its argument that experts cannot opine on state of mind, those cases are inapposite. *See* Dkt. 226 at 5. In *Johnson*,

12

the court excluded the expert's opinions on "what a reasonable pulp and paper mill plant owner or operator would or should have known based on industry knowledge" because the expert had no "specialized knowledge or experience in the pulp and paper industry." *Johnson v. Packaging Corp. of Am.*, No. CV 613-SDD-EWD, 2023 WL 8649814, at *1 (M.D. La. Dec. 14, 2023). In *Fisher*, the court struck an expert's testimony that merely included conclusory statements as to state of mind with no reference to any of the facts n evidence. *Fisher v. Halliburton*, Nos. H-05-1731, H-06-1971, H-06-1168, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009). As explained above, in stark contrast with the experts in those cases, Mr. Stoll has relevant expertise and has expressly stated that he is *not* opining on state of mind; rather, he has applied his specific expertise to a substantial factual record to assist the trier of fact in making its own determination about knowledge and intent. *See, e.g.*, Ex. [[2]] (Stoll 7/16/2025 Tr.) at 35:8–10; 35:21–22; 36:18–21; Ex. [[1]] (Stoll Op. Rpt.) ¶ 45.

Further, contrary to VirtaMove's assertion, Mr. Stoll is not improperly "reiterat[ing] what the lawyers can offer in argument." Dkt. 226 at 5–6 (citing *Charalambopoulos v. Grammer*, No. 14-cv-2424-d, 2017 WL 930819 at *12 (N.D. Tex. March 8, 2017)). In *Charalambopoulos,* the court found an expert's opinions were "pure speculation" because she did not provide "any [factual] basis for her opinion." 2017 WL 930819 at *12. That is in stark contrast to here, where Mr. Stoll offers far more than mere "attorney arguments," but rather leverages his substantial expertise to identify proper and improper conduct in front of the USPTO. Mot. at 6. And unlike *Charalambopoulos*, VirtaMove does not dispute that Mr. Stoll identifies supporting evidence for his opinions, let alone does VirtaMove dispute any of the evidence he relies on. Mr. Stoll's reliance on evidence to support and provide context for his opinions does not amount to argument a lawyer could offer in his place—rather, it is how all reliable experts support their opinions.

### C.      Mr. Stoll's Opinions Regarding the Breach of the Duty of Disclosure Are Admissible

VirtaMove argues that Mr. Stoll offers an improper legal conclusion that the Applicants breached their duty of disclosure to the USPTO.  *See* Dkt. 226 at 6.  Not so.  Contrary to VirtaMove's overbroad assertion that opining on a breach of the duty of disclosure "is a conclusion of law that courts have found inadmissible," *id.*, courts have found that experts may properly opine on the breaches of the duty of disclosure in the inequitable conduct context.  *See, e.g.*, *Oil-Dri*, 2019 U.S. Dist. LEXIS 179951, at *9 (holding expert "may appropriately testify that certain actions ran afoul of Oil-Dri's duty of candor."); *Worldwide Home*, No. 11-cv-03633, Dkt. 225 (finding expert testimony that applicants' conduct before USPTO violated "the Patent Office rules" was admissible).  As explained above, Mr. Stoll has applied his experience leading the USPTO and his extensive knowledge of its practices and procedures to explain how Dr. Wicker's findings under the higher "but-for" materiality standard confirm the withheld information's materiality under Rule 56, as well as to explain how the Applicants' withholding of that material information, combined with their undisputed knowledge of the information, supports the conclusion that they breached their Rule 56 duty.  Ex. [[1]] (Stoll. Op. Rpt.) ¶¶ 107-96.

Unlike the expert in *American Medical Systems, Inc.* which VirtaMove cites, Dkt. 226 at 6–7, Mr. Stoll has not "simply [told the] court what conclusion to reach on the issue of inequitable conduct."  *Am. Med. Sys. v. Laser Peripherals*, LLC, 712 F. Supp. 2d 885, 903 (D. Minn. 2010). Instead, like the expert opinions found to be appropriate in *Oil-Dri*, Mr. Stoll's opinions are limited to identifying facts in the record and putting them in their appropriate context in light of his expertise in order to help the trier of fact make its own determination as to predicate issues in the inequitable conduct inquiry, including intent.  *See Oil-Dri*, 2019 U.S. Dist. LEXIS 179951, at *9; Section III.B, *supra*.  Notably, Mr. Stoll touches on the breach of the duty of disclosure only as

part of his analysis of how the Applicants' conduct in applying for and prosecuting the '814 Patent departed from the typical practice of applicants who comply with the duty of disclosure. *See, e.g.,* Ex. [[1]] (Stoll Op. Rpt.) ¶¶ 150–51, 193–96. For example, Mr. Stoll opines that in his experience,

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████ *Id.* at ¶ 37. Mr. Stoll later identifies objective conduct by the Applicants'—namely, not disclosing material information to the USPTO—that departs from what Mr. Stoll, based on his experience, recognizes as accepted practices regarding disclosure. *See, e.g., id.* ¶¶ 150–51, 193–96. While VirtaMove is free to cross-examine Mr. Stoll on his analysis and opinions, nothing about them warrants exclusion.

At bottom, Mr. Stoll expressly affirms that he is not offering a legal conclusion to supplant the role of the fact finder. *Id.* ¶ 45. Indeed, he repeatedly acknowledges that the ultimate determination on inequitable conduct rests with the trier of fact, and his role is to provide relevant analysis of the underlying facts to help inform that determination. *See, e.g.*, Ex. [[2]] (Stoll 7/16/2025 Tr.) at 25:7–26:14; Ex. [[2]] (Stoll Op. Rpt.) ¶¶ 26–28, 45. While Mr. Stoll's opinions on USPTO procedures, the duty of disclosure, and whether the Applicants' conduct was consistent may help frame the ultimate issue of inequitable conduct, they stop short of reaching it, and are permissible under the Federal Rules of Evidence. *See* FED. R. EVID. 704(A) ("An opinion is not objectionable just because it embraces an ultimate issue.").

## IV.    CONCLUSION

For the reasons set forth above, IBM respectfully asks the Court to deny Plaintiff VirtaMove's Motion to Exclude Expert Opinions of Robert Stoll.

Dated: August 11, 2025

Respectfully submitted,

*/s/ Todd M. Friedman*

Todd M. Friedman (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (*pro hac vice*)
Nathaniel Ngerebara (*pro hac vice)*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:     (415) 439-1400
Facsimile:     (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (*pro hac vice*)
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:     (714) 982-8822
Facsimile:     (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:     (903) 757-6400
Facsimile:     (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Defendant*
*International Business Machines Corp.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served on August 11, 2025, with a copy of this document via electronic mail.

_/s/ Todd M. Friedman_
Todd M. Friedman

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.


*/s/ Todd M. Friedman*
Todd M. Friedman