# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## INTERNATIONAL BUSINESS MACHINES CORP.'S OPPOSITION TO VIRTAMOVE'S MOTION TO STRIKE OPINIONS OF JAMES E. MALACKOWSKI

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 1

     A.     Mr. Malackowski Properly Offers Opinions Pertaining to the Factual Underpinnings of IBM's Express and Implied License Defenses. ...................................................................................................... 1

         (i)     Mr. Malackowski properly opines that the reasonable royalty due to VirtaMove would be *de minimis* .............................. 1

         (ii)    Mr. Malackowski also properly discusses the factual underpinnings of IBM's implied license defense. ......................... 4

     B.     Mr. Malackowski Properly Apportions His Royalty Base When Opining on Damages for VirtaMove's Infringement of the Counterclaim Patents. ................................................................................ 5

         (i)     IBM's infringement analysis addresses both VirtaMove's V-Migrate and V-Maestro products, individually and together. ........................................................................................ 5

         (ii)    Mr. Malackowski properly identifies the accused products and revenue base. ...................................................................... 6

     C.     Mr. Malackowski Properly Relies on Discussions with Chris Rosen. ............................................................................................................ 8

         (i)     IBM identified Mr. Rosen in its initial disclosures and did not refuse to produce him for deposition. ....................................... 8

         (ii)    VirtaMove's hearsay argument fails under this Court's precedent. ................................................................................... 11

         (iii)   VirtaMove incorrectly claims that paragraphs 267, 268, and 272 of Mr. Malackowski's report concern non-infringing alternatives. ................................................................................. 13

     D.     Mr. Malackowski Properly Opines That IBM's Products Practice The '858 Patent. ....................................................................................... 14

III.   CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*ActiveVideo Networks, Inc., v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012).............................................................7, 15

*AU New Haven, LLC v. YKK Corp.*,
   No. 15-CV-3411 (GHW)(SN), 2019 WL 1254763 (S.D. N.Y. 2019)....................10

*Bianco, M.D. v. Globus Med., Inc.*,
   30 F. Supp. 3d 565 (E.D. Tex. 2014)..............................................11, 12

*Bowoto v. ChevronTexaco Corp.*,
   No. C 99-02506 SI, 2006 WL 294799 (N.D. Cal. Feb. 7, 2006)..............................9

*Brazos River Auth. v. GE Ionics, Inc.*,
   469 F.3d 416 (5th Cir. 2006) ...............................................................9

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015)..............................................................3

*Cytiva Sweden AB v. Bio-Rad Labs., Inc.*,
   No. 18-1899-CFC, 2021 WL 9511424 (D. Del. 2021)............................................10

*Empire Tech. Dev. LLC v. Samsung Elecs. Co.*,
   No. 2:23-CV-00427-JRG-RSP, 2025 WL 1669060 (E.D. Tex. June 12, 2025)....................15

*Entropic Commc'ns., LLC v. Charter Commc'ns., Inc.*,
   No. 2:22-CV-00125-JRG, 2023 WL 8437814, . (E.D. Tex. Dec. 5, 2023).....................3, 4, 5

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp. LLC*,
   879 F.3d 1332 (Fed. Cir. 2018)..............................................................8

*Finjan Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)..............................................................7

*Genband US LLC v. Metaswitch Networks Corp.*,
   No. 2:14-CV-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016)................................10

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v.*
   *U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) .......................2

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010)...............................................................4

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
    No. 2:20-CV-00050-JRG-RSP, 2020 WL 3512957 (E.D. Tex. June 29, 2020) ....................10

*Longitude Licensing Ltd. v. BOE Tech. Grp.*,
    Case No. 2:23-CV-00515-JRG-RSP ..............................................................................12, 15

*Micro Chem., Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003) ............................................................................................4

*Mojo Mobility, Inc. v. Samsung Elecs. Co.*,
    No. 2:22-CV-00398-JRG- RSP, 2024 U.S. Dist. LEXIS 130868 (E.D. Tex.
    July 23, 2024) ...................................................................................................................11, 12

*Monsanto Co. v. David*,
    516 F.3d 1009 (Fed. Cir. 2008) ..........................................................................................10

*PerdiemCo, LLC v. Industrack LLC*,
    No. 2:15-CV-726-JRG-RSP, 2016 WL 6611488 (E.D. Tex. Nov. 9, 2016) ...........................7

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015) .........................................................................................3, 4

*Uniloc USA, Inc., v. Samsung Elec. Am. Inc., No: 2:17-CV-00651-JRG*,
    2019 WL 2267212 (E.D. Tex. April 17, 2019) ....................................................................15

*United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*,
    80 F.3d 1074 (5th Cir. 1996) ................................................................................................6

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ............................................................................................3

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir.1987) ...............................................................................................14

**Rules**

Fed. R. Civ. P. 30 ...........................................................................................................9, 10

Fed. R. Evid. 702 ...................................................................................................................4

Fed. R. Evid. 703 ...............................................................................................10, 11, 12, 14

## I.    INTRODUCTION

VirtaMove, Corp.'s ("VirtaMove") Motion to Strike Opinions of James E. Malackowski relies on repeated mischaracterizations of Mr. Malackowski's opinions and ignores critical facts and evidence cited in Mr. Malackowski's reports. While VirtaMove may wish to dispute the import of the evidence Mr. Malackowski relies on, or the assumptions and conclusions he makes based on that evidence, VirtaMove may cross-examine him on those issues at trial. However, none of the criticisms VirtaMove offers are an appropriate basis to deprive the jury of hearing Mr. Malackowski's opinions under *Daubert*. Because Mr. Malackowski's damages opinions are consistent with the law, are based on sound economic principles, and are supported by substantial evidence, VirtaMove's motion to exclude should be denied.

## II.    ARGUMENT

### A.    Mr. Malackowski Properly Offers Opinions Pertaining to the Factual Underpinnings of IBM's Express and Implied License Defenses.

VirtaMove contends that Mr. Malackowski improperly engages in contract interpretation and provides legal opinions regarding IBM's license defenses. In fact, he does neither. Rather, Mr. Malackowski merely summarizes provisions of the parties' license agreements and discusses, based on his experience and expertise, how those agreements would impact the hypothetical negotiation. These opinions are squarely within Mr. Malackowski's expertise, are helpful to the jury, and are consistent with Fifth Circuit and Federal Circuit precedent.

### (i)    Mr. Malackowski properly opines that the reasonable royalty due to VirtaMove would be *de minimis*.

VirtaMove argues that Mr. Malackowski's reasonable royalty analysis based, in part, on the 2014 IBM Assistance Agreement should be excluded because "it is contrary to the law of the hypothetical negotiation." Dkt. 225 at 2. According to VirtaMove, Mr. Malackowski presents a "veiled license defense" even though he must assume that the patents-in-suit have been infringed.

*Id.* at 3. However, as VirtaMove itself concedes, Mr. Malackowski expressly states that he "assume[s] IBM is ***not*** licensed to use the Asserted VirtaMove Patents." Ex. 1 ¶¶ 49, 217 (emphasis added). Critically, that assumption does not prevent Mr. Malackowski from properly considering how license agreements between IBM and VirtaMove would inform the hypothetical negotiation. Where a willing licensor and a willing licensee are negotiating for a royalty, "the hypothetical negotiations would not occur in a vacuum of pure logic." *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) (holding that hypothetical negotiations would involve a marketplace confrontation of the parties, the outcome of which would depend on numerous factors, including any economic factor a normally prudent businessperson would consider). As such, while Mr. Malackowski expressly assumes infringement and the absence of a license defense, he also properly considers the existence of the 2014 Assistance Agreement and the parties' express business intent memorialized in the agreement as factors in the hypothetical negotiation—specifically using the Assistance Agreement not as evidence of a license defense, but of the "parties' intention [to] decline to change the economics/consideration of their arrangement" as of 2014. Ex. 1 ¶¶ 217–18.

VirtaMove also incorrectly asserts that Mr. Malackowski's analysis "delves into contract interpretation related to the 2014 IBM Assistance Agreement." Dkt. 225 at 3. In making this argument, VirtaMove mischaracterizes Mr. Malackowski's use of the contract terms to assess the parties' relative situations and motivations at the time of the hypothetical negotiation—using the contract as a factual predicate—for interpreting the contract as a legally operative instrument. Mr. Malackowski does not opine on what the Assistance Agreement "means" as a matter of law or whether it provides a license defense. Rather, he explains how

2

███████████ such as the one in the Assistant Agreement, and how those provisions bear on the *Georgia-Pacific* analysis. Ex. 2 ¶¶ 38-45, 186.

Courts routinely permit licensing experts to quote license language, to summarize operative provisions, and to explain how a given agreement would inform the hypothetical negotiation—just as Mr. Malackowski has done here—as long as the expert does not declare a legal ruling. For example, in *Entropic Communications, LLC v. Charter Communications, Inc.*, this Court denied a *Daubert* challenge where a licensing expert opined on "the applicability of a license," holding that "the applicability of a license, and matters of competition and economics are well within the realm of [the expert's] expertise in intellectual property transactions[.]"  No. 2:22-cv-00125-JRG, 2023 WL 8437814, at *3 (E.D. Tex. Dec. 5, 2023). Federal Circuit precedent similarly confirms that damages experts may rely on actual licensing discussions and negotiations if they explain their comparability and tie the analysis to the facts of the case; disputes about such inputs are a matter for the jury. *See, e.g.*, *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1300–07 (Fed. Cir. 2015); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295–99 (Fed. Cir. 2015).

Mr. Malackowski's opinions are consistent with this precedent and address precisely what his expertise qualifies him to address: why sophisticated parties include ███████████ in license agreements; how such provisions shift bargaining power and risk; and how those dynamics would have affected the parties' hypothetical negotiation and price. *See, e.g.*, Ex. 2 ¶¶ 40 █████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████, 41 ██████████████████████████████

███████████████████████████████████████████████████

3



Ex. 1 ¶¶ 216–18

These opinions provide specialized knowledge about licensing practices that are well within Mr. Malackowski's expertise, that the jury lacks, and that Rule 702 invites. *See* FED. R. EVID. 702(a)–(d).

At bottom, VirtaMove's objections to Mr. Malackowski's opinions regarding the 2014 Assistance Agreement are directed to the factual assumptions underlying his conclusions, including Mr. Malackowski's discussion of the ▮▮▮▮▮▮▮ and why such provisions are often negotiated. But Federal Circuit precedent is clear that challenges to an expert's "credibility, data, or factual assumptions" go to the weight of the expert's testimony and are "properly addressed by cross-examination, not exclusion." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296–99 (Fed. Cir. 2015); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003).

> **(ii)    Mr. Malackowski also properly discusses the factual underpinnings of IBM's implied license defense.**

Relying on *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-CV-00125-JRG, 2023 WL 8437814, at *3 (E.D. Tex. Dec. 5, 2023), VirtaMove asserts that Mr. Malackowski "expresses his legal conclusion that IBM is entitled to an implied license defense in this case." Dkt. 225 at 4. Not so—Mr. Malackowski merely discusses the factual underpinnings of VirtaMove's past interactions with IBM, stating that "the evidence of record ***indicates*** that th[os]e interactions . . . provided IBM with an implied license to use the subject matter of the Asserted

VirtaMove Patents." Ex. 2 ¶¶ 42-45. That opinion is consistent with *Entropic*, in which this Court found that an expert may discuss '"the factual underpinnings'" of a license defense and "apply the facts, as he understands them, to the language of the license." *Entropic*, 2023 WL 8437814, at *3. Mr. Malackowski should be permitted to discuss the facts underpinning IBM's implied license defense and to discuss what they indicate for purposes of the hypothetical negotiation.

> **B.  Mr. Malackowski Properly Apportions His Royalty Base When Opining on Damages for VirtaMove's Infringement of the Counterclaim Patents.**

VirtaMove contends Mr. Malackowski's royalty base is overbroad because it supposedly includes all of VirtaMove's software sales, instead of just sales of products that allegedly infringe IBM's Counterclaim Patents. Dkt. 225 at 4. That argument misstates the record and the law.

> **(i)  IBM's infringement analysis addresses both VirtaMove's V-Migrate and V-Maestro products, individually and together.**

As VirtaMove acknowledges, it "sells essentially two software products—'V-Migrate' and 'V-Maestro.'" *Id.* at 5. VirtaMove contends that "V-Migrate, itself, has not been asserted by IBM to infringe" and "IBM's infringement case requires V-Maestro." *Id.* That statement is incorrect. From the outset of this litigation, IBM has consistently accused ***both*** V-Migrate and V-Maestro, individually and in combination, of infringing the asserted Counterclaim Patents. *See*, *e.g.*, Ex. 3 at 3–5.

VirtaMove selectively cites testimony, out of context, to suggest that "IBM's technical expert, Dr. Wicker, confirmed, V-Migrate is only infringing to the extent that it includes V-Maestro." Dkt. 225 at 5. In fact, Dr. Wicker's expert reports and deposition testimony make clear that he conducted a thorough infringement analysis of ***both*** V-Migrate and V-Maestro, individually and together, and concluded that each product infringes the Counterclaim Patents.

For example, Dr. Wicker relies ***solely*** on the V-Migrate product's source code to show infringement of U.S. Patent Nos. 8,943,500, 9,697,038, and 10,606,634 (the "Havemose Patents"),

concluding that V-Migrate infringes on its own. *See* Ex. 4 at 224:11–225:6 (explaining that "for each limitation of the [Havemose] patents," he "compared the . . . V-Migrate software to the [Havemose] patents" and "pointed out where in the software the individual limitations were implicated"); *see also*, *e.g.*, Ex. 5 § VIII.E (exclusively identifying V-Migrate source code for each claim limitation of the '500 Patent). Thus, IBM has consistently treated V-Migrate as an accused product, and Dr. Wicker's technical analysis confirms that V-Migrate alone is capable of infringing at least the Havemose Patents. Accordingly, VirtaMove's attempt to exclude V-Migrate sales from Mr. Malackowski's royalty base on the ground that only V-Maestro is accused of infringement should be rejected.

### (ii)    Mr. Malackowski properly identifies the accused products and revenue base.

VirtaMove's assertion that "Mr. Malackowski's royalty base does not apportion VirtaMove's software sales to account for the requirement that V-Maestro be included [as an] accused product," Dkt. 225 at 6, mischaracterizes the record. Mr. Malackowski specifically identifies the accused V-Migrate and V-Maestro products and provides a detailed breakdown of the number of licenses sold and the corresponding revenues for each product when considering the Income Approach. *See* Ex. 2 ¶¶ 124–25. This is not a case where Mr. Malackowski swept in unrelated product lines or unaccused products. His analysis is limited to the products IBM has accused of infringement and the revenues those products generated.

To the extent VirtaMove contends that some V-Migrate sales did not include V-Maestro functionality and therefore (according to VirtaMove) could not infringe, that is a factual dispute regarding the scope of infringement, not a defect in Mr. Malackowski's methodology. *See United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (noting trial court must act "with proper deference to the jury's role as the arbiter of disputes

between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.") (internal quotation omitted). Mr. Malackowski expressly acknowledged at his deposition that if the Court or the jury were to find that certain sales *did not infringe*, the royalty base could be adjusted accordingly. *See* Ex. 6 at 41:8–14 ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████.[1] Mr. Malackowski's approach is consistent with the evidence. Contrary to VirtaMove's suggestion, he does not "fail to apportion"—rather, he uses the best available data and the infringement contentions as the basis for his analysis, as is standard in patent damages practice. *See ActiveVideo Networks, Inc., v. Verizon Commc'ns, Inc.,* 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("[A] party's quarrel with the facts the damages expert used go[es] to the weight, not admissibility, of the expert's opinion."); *PerdiemCo, LLC v. Industrack LLC,* No. 2:15-CV-726-JRG-RSP, 2016 WL 6611488, at *3 (E.D. Tex. Nov. 9, 2016) (allowing opinions regarding apportionment that are "not so opaque as to be immune from rigorous cross-examination") (internal citations omitted).

Notably, the Federal Circuit has made clear that apportionment is necessary only when the royalty base includes revenues from non-infringing products or features. *See, e.g., Finjan Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1309 (Fed. Cir. 2018). Where, as here, the accused products make up the entire royalty base, the apportionment requirement is satisfied. By including only the accused products in the royalty base, Mr. Malackowski's methodology likewise is consistent with

---

[1] Contrary to VirtaMove's misrepresentation, Mr. Malackowski did *not* ████████████████████

████████████████████████████████████████ Dkt. 225 at 6 (emphasis added).

the Federal Circuit's guidance that apportionment can be achieved "by careful selection of the royalty base to reflect the value added by the patented feature [or]…by adjustment of the royalty rate so as to discount for the value of a product's non-patented features; or by a combination thereof." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp. LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (internal quotation omitted). To the extent VirtaMove contends that certain sales of V-Migrate did not include the allegedly infringing functionality, that is, at most, a factual dispute about the proper scope of the royalty base and the technical overlap between V-Migrate and V-Maestro. These are classic issues for cross-examination and the jury, not grounds for exclusion. Because Mr. Malackowski's opinions are grounded in the record, are methodologically sound, and are subject to adjustment if the factfinder determines that certain sales are non-infringing, VirtaMove's attempt to manufacture an apportionment issue where none exists should be rejected.

### C.    Mr. Malackowski Properly Relies on Discussions with Chris Rosen.

VirtaMove challenges Mr. Malackowski's reliance on conversations with IBM engineer Chris Rosen on two grounds: (1) that IBM allegedly failed to disclose Mr. Rosen as an individual with knowledge of non-infringing alternatives; and (2) that Mr. Malackowski supposedly relies on inadmissible hearsay from Mr. Rosen. *See* Dkt. 225 at 8–9 (citing Ex. B ¶¶ 15, 24, 221, 267–68, 272). Both arguments lack merit.

#### (i)    IBM identified Mr. Rosen in its initial disclosures and did not refuse to produce him for deposition.

VirtaMove misrepresents the parties' discovery negotiations by claiming IBM "refused" to produce Mr. Rosen for deposition. *See id.* at 8. In fact, as an email from VirtaMove's own counsel confirms, the parties mutually agreed to forego Mr. Rosen's deposition as part of a reciprocal, good-faith effort to streamline discovery—not due to any refusal by IBM. *See id.* Ex. G

VirtaMove also incorrectly contends that it "never had an opportunity to examine Mr. Rosen on his opinions related to the availability and cost of non-infringing alternatives," which allegedly were "first expressed in Mr. Malackowski's report." *Id.* at 8. As noted above, VirtaMove voluntarily chose not to depose Mr. Rosen. In any event, IBM disclosed the availability and feasibility of the non-infringing alternatives well before Mr. Malackowski's expert report, including in its interrogatory responses. *See, e.g.*, Ex. 7 at No. 3. Moreover, VirtaMove had the opportunity to—and did—depose IBM's Rule 30(b)(6) witness, Mr. Brown, on this very topic. *See* Ex. 8 at 241:17–21, 243:16–18, 244:13–246:9, 246:14–249:10.

VirtaMove further argues that Mr. Rosen cannot provide the factual basis for Mr. Malackowski's opinions because he was not IBM's Rule 30(b)(6) designee on non-infringing alternatives, and because Mr. Malackowski did not speak with IBM's 30(b)(6) witness on that topic. *See* Dkt. 225 at 8. However, Rule 30(b)(6) does not require that a corporate designee be the "most knowledgeable" individual on a subject, only that the designee be adequately prepared through reasonable investigation, including by consultation with others who possess relevant information. *See, e.g.*, *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006); *Bowoto v. ChevronTexaco Corp.*, No. C 99-02506 SI, 2006 WL 294799, at *1 (N.D. Cal. Feb. 7, 2006). Here, IBM designated Mr. Brown as its 30(b)(6) witness on various technical topics, including non-infringing alternatives, and ensured that he was properly prepared. VirtaMove does not argue—nor does the record suggest—that it was denied the opportunity to depose Mr. Brown, or that he was unprepared. On the contrary, VirtaMove questioned him extensively about the availability, feasibility, and acceptability of alternative designs to the accused IKS product. *See, e.g.*, Ex. 8 at 241:17–21, 243:16–18, 244:13–246:9, 246:14–249:10.

Regardless of whom IBM designated as its Rule 30(b)(6) witness, VirtaMove cites no authority suggesting that once a party designates a 30(b)(6) witness on a topic, an expert may only rely on information that witness provides on the topic. On the contrary, Fed. R. Evid. 703 expressly permits experts to base their opinions on "facts or data in the case that the expert has been made aware of or personally observed"—there is no limitation on the source. FED. R. EVID. 703. Indeed, courts—including this one—routinely permit experts to rely on information from company personnel who were not deposed or designated under Rule 30(b)(6). *See, e.g.*, *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-CV-00050-JRG-RSP, 2020 WL 3512957, at *3 (E.D. Tex. June 29, 2020) ("Experts … may reasonably rely on information from persons who were properly disclosed during discovery."); *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 125503, at *3 (E.D. Tex. Jan. 9, 2016) (finding reliance on employee discussions "does not provide a basis to strike [expert's] testimony"); *Monsanto Co. v. David*, 516 F.3d 1009, 1015–16 (Fed. Cir. 2008) (rejecting challenge based on expert's reliance on tests performed by Monsanto employees); *Cytiva Sweden AB v. Bio-Rad Labs., Inc.*, No. 18-1899-CFC, 2021 WL 9511424, at *1 (D. Del. 2021) (expert's reliance on information provided by defendant's employee matter for cross-examination); *AU New Haven, LLC v. YKK Corp.*, No. 15-CV-3411 (GHW)(SN), 2019 WL 1254763, at *15 (S.D. N.Y. 2019) (rejecting as "frivolous" challenge to expert's report "based on tests conducted by [defendant's] employee without [the expert's] involvement"). Accordingly, Mr. Malackowski was entitled to rely on information provided by Mr. Rosen, whom IBM disclosed (Dkt. 225 Ex. H at 14), and who is an IBM employee with direct, firsthand technical knowledge bearing on the feasibility of the non-infringing alternatives identified by IBM's technical expert, Dr. Wicker.

Finally, VirtaMove's assertion that IBM did not identify Mr. Rosen in its Initial and

Additional Disclosures (*id.* at 8) is demonstrably false. IBM disclosed Mr. Rosen by name in its disclosures. *See id.* Ex. H at 14.

> **(ii)      VirtaMove's hearsay argument fails under this Court's precedent.**

VirtaMove contends that Mr. Malackowski's reliance on his conversations with Mr. Rosen constitutes the '"impermissible parroting of hearsay."' *Id.* at 9. However, even if Mr. Rosen's statements were hearsay—which they are not—experts can rely on hearsay in forming their opinions. *See Bianco, M.D. v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) ("expert witnesses are permitted to rely on hearsay to form their opinions"); *Mojo Mobility, Inc. v. Samsung Elecs. Co.,* No. 2:22-CV-00398-JRG- RSP, 2024 U.S. Dist. LEXIS 130868, at *15 (E.D. Tex. July 23, 2024) (citing *Bianco,* 30 F. Supp. 3d at 570 ) (holding, in rejecting argument that expert's reliance on declaration demonstrating public availability of prior art was hearsay, that this Court need not resolve the hearsay issue because expert was entitled to base his opinions on the declaration); FED. R. EVID. 703.

Regardless, Mr. Rosen's statements were not the sole or even the primary basis for Mr. Malackowski's conclusions. Rather, Mr. Rosen merely confirmed the feasibility of implementing the non-infringing alternatives that had already been identified by IBM's technical expert, Dr. Wicker. *See* Ex. 1 ¶¶ 15



24

128 (describing IBM's proposed non-infringing

alternatives and stating that ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ 130 ███████████████████████████

████████████████████████████████████████████████████████████

███████████████

     VirtaMove's reliance on *Longitude Licensing Ltd. v. BOE Tech. Grp.*, Case No. 2:23-CV-00515-JRG-RSP at Dkt. 242 at 6–7 (E.D. Tex. July 20, 2025), is misplaced. *See* Dkt. 225 at 9. In that case, the court excluded an expert's opinions where the only cited basis was a conversation with a company employee, the expert lacked relevant independent expertise, and he failed to reference any supporting documents. Under those circumstances, the court concluded that "Dr. Souri can only be relying on his conversations with Dr. Wang." *Longitude Licensing*, at Dkt. 242 at 7. Here, as noted above, Mr. Malackowski relied on Dr. Wicker's technical analysis and merely used Mr. Rosen' input to confirm the feasibility of implementing Dr. Wicker's alternatives within IBM's business operations—which is standard and proper for an expert witness. *See, e.g.*, *Bianco*, 30 F. Supp. 3d at 570. Moreover, unlike the expert in *Longitude*, Mr. Malackowski is not offering subjective opinions about product benefits or consumer perception based on secondhand conversations. Rather, he is applying his expertise to provide an opinion on the economic feasibility of implementing non-infringing alternatives, informed by input from a knowledgeable IBM engineer with direct implementation experience. This is precisely the kind of expert testimony that Rule 703 permits, and that courts routinely uphold. *See, e.g.*, *Mojo Mobility*, 2024 U.S. Dist. LEXIS 130868, at *15.

### (iii) VirtaMove incorrectly claims that paragraphs 267, 268, and 272 of Mr. Malackowski's report concern non-infringing alternatives.

VirtaMove wrongly contends that challenged paragraphs 267, 268, and 272 of Mr. Malackowski's report concern non-infringing alternatives. *See* Dkt. 225 at 8. These paragraphs do not address non-infringing alternatives at all—rather, they critique flaws in revenue apportionment methodology employed by VirtaMove's damages expert, Mr. Bergman. *See* Ex. 1 ¶¶ 267, 268, 272.

Paragraph 267 explains that unlike the accused IKS product, █████████████████████

████████████████████████ *See id.* ¶ 267. Mr. Malackowski

relies on Mr. Rosen solely to describe how IBM's management of the █████████████████

█████████



*Id.* Building on that foundation, paragraph 268 critiques Mr. Bergman's revenue apportionment approach, which erroneously attributes the entire price difference between █████████████

to the asserted VirtaMove patents:

*Id.* ¶ 268; *see also id.* ¶ 272 ████████████████████████████████

████████████████████ These paragraphs have nothing to do with non-infringing alternatives. Rather, they directly rebut the opinion of VirtaMove's damages expert by demonstrating that other factors—such as IBM's provision of managed services—drive the price differential.

### D.    Mr. Malackowski Properly Opines That IBM's Products Practice The '858 Patent.

It is well-established that damages experts are permitted to rely on the technical opinions of other experts, as well as the factual record, including deposition testimony and party admissions, when forming their opinions. *See* Fed. R. Evid. 703; *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir.1987) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration."). Mr. Malackowski's role as a damages expert in this case includes assessing the economic value and impact of the asserted patents. That assessment requires determining whether IBM's products embody the patented technology for purposes of damages and the *Georgia-Pacific* analysis. In his reports, Mr. Malackowski properly and expressly states that he is relying on conversations with Dr. Wicker and on Dr. Wicker's technical opinions to help conduct this analysis. *See*, *e.g.*, Ex. 2 ¶¶ 13–16; Ex. 1 ¶¶ 51, 93–96.

Notably, there is ample evidence supporting the conclusion that IBM's products embody the '858 Patent. Dr. Paradkar, an inventor and technical leader at IBM, testified that ███████ ████████████████████████ embody the patent. *See* Ex. 9 at 55:3–60:21. As an inventor of the '858 Patent, Dr. Paradkar is well-qualified to testify regarding the implementation of the patented technology in IBM's products, and Mr. Malackowski is entitled to rely on his testimony. Mr. Malackowski also properly relies on IBM's Interrogatory Responses, cited documents, testimony from other fact witnesses (Mr. Troy Sprague), and the opinions of Dr. Wicker. *See* Ex. 2 ¶¶ 102–11; Ex. 5 ¶¶ 121, 1617.

Far from merely "parroting" the statements of employees such as Dr. Paradkar, Mr. Malackowski properly considers their testimony in the context of the broader record and applies this information when conducting the economic analysis required under the *Georgia-Pacific*

14

framework. Accordingly, the cases that VirtaMove cites regarding "parroting" hearsay are inapposite. *See* Dkt. 225 at 9. In *Empire Tech. Dev. LLC v. Samsung Elecs. Co.*, No. 2:23-CV-00427-JRG-RSP, 2025 WL 1669060, at *2 (E.D. Tex. June 12, 2025), the court addressed an expert's failure to analyze potential non-infringing alternatives and his reliance on third-party hearsay. In contrast, Mr. Malackowski's opinions are well-grounded in Dr. Wicker's technical opinions and Dr. Paradkar's testimony, both of which support the conclusion that IBM's products practice the '858 Patent. In *Longitude Licensing*, the Court addressed an expert's failure to identify specific supporting documents and the expert's reliance on personal experience (which he did not have), along with inadmissible conversations with a third party. *See Longitude Licensing* at Dkt. 242 at 6–7. In contrast, Mr. Malackowski's opinions are supported by a robust record, including Dr. Paradkar's testimony, IBM's Interrogatory Responses, cited documents, testimony from other fact witnesses, and Dr. Wicker's technical opinions—to which Mr. Malackowski applies his own expertise as a damages expert. *See* Ex. 2 ¶¶ 102–11; Ex. 5 ¶¶ 121, 1617. To the extent VirtaMove disputes the sufficiency or credibility of the evidence that IBM's products practice the '858 Patent, those arguments go to the weight of Mr. Malackowski's opinions, not their admissibility. *See ActiveVideo,* 694 F.3d at 1333 ("[A] party's quarrel with the facts the damages expert used go[es] to the weight, not admissibility, of the expert's opinion."). VirtaMove is free to cross-examine Mr. Malackowski and present contrary evidence at trial. *See Uniloc USA, Inc., v. Samsung Elec. Am. Inc.,* No: 2:17-CV-00651-JRG, 2019 WL 2267212, at *13 (E.D. Tex. April 17, 2019).

## III.    CONCLUSION

For the reasons set forth above, VirtaMove's motion to strike certain expert opinions of James E. Malackowski should be denied.

Dated: August 11, 2025

Respectfully submitted,

*/s/ Todd M. Friedman*
Todd M. Friedman (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (*pro hac vice*)
Nathaniel Ngerebara (*pro hac vice)*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:     (415) 439-1400
Facsimile:      (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (*pro hac vice*)
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:     (714) 982-8822
Facsimile:      (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:     (903) 757-6400
Facsimile:      (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Defendant*
*International Business Machines Corp.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served on August 11, 2025, with a copy of this document via electronic mail.

*/s/ Todd M. Friedman*
Todd M. Friedman

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document is authorized to be filed under seal pursuant

to the Protective Order entered in this case.


_/s/ Todd M. Friedman_
Todd M. Friedman