# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## INTERNATIONAL BUSINESS MACHINES CORP.'S REPLY TO VIRTAMOVE'S OPPOSITION TO IBM'S MOTION TO EXCLUDE CERTAIN OPINIONS OF JIM BERGMAN

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 1

    A.    Mr. Bergman's Opinions Relying on the ███████████ Are
         Unreliable and Should Be Excluded. ....................................................... 1

    B.    Mr. Bergman's Income Approach Fails to Apportion to the Patented
         Claims. ...................................................................................................... 4

    C.    Mr. Bergman's Royalty Base and Apportionment Opinions Relying on the
         Flawed Opinions of Dr. Malek Should be Excluded. .............................. 5

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................................................................................1

*Headwater Rsch. LLC v. Verizon Commc'ns Inc.*,
  No. 2:23-CV-00352-JRG-RSP, 2025 WL 1739337 (E.D. Tex. June 23, 2025) ......................1

*LaserDynamics, Inc. v. Quanta Comp. USA, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ..................................................................................................3

*Longhorn HD LLC v. Netscout Sys., Inc.*,
  No. 2:20-CV-00349-JRG-RSP, 2022 WL 903934 (E.D. Tex. Mar. 27, 2022) .......................1

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ...............................................................................................4

**Rules**

Federal Rule of Evidence 702 ........................................................................................................1

## I.    INTRODUCTION

Under *Daubert* and Federal Rule of Evidence 702, expert opinions must be relevant and reliable, and they must be grounded in a sound methodology tied to the facts of the case. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Mr. Bergman's reliance on the ██████████ is fundamentally flawed and unreliable, his analytical model is not sufficiently tied to the facts of this case, and his income approach fails to apportion to the patented claims. Accordingly, the challenged opinions should be excluded.

## II.    ARGUMENT

### A.    Mr. Bergman's Opinions Relying on the ████████ Are Unreliable and Should Be Excluded.

As explained in IBM's opening brief, Mr. Bergman's profit-split opinions relying on the ████████ are arbitrary and not tied to the facts of this case. *See* Dkt. 231 ("Mot.") at 2-6. VirtaMove's arguments to the contrary are unavailing.

VirtaMove attempts to analogize Mr. Bergman's present opinions to those he offered in *Longhorn HD LLC v. Netscout Sys., Inc.*, No. 2:20-CV-00349-JRG-RSP, 2022 WL 903934 (E.D. Tex. Mar. 27, 2022), and *Headwater Rsch. LLC v. Verizon Commc'ns Inc.*, No. 2:23-CV-00352-JRG-RSP, 2025 WL 1739337 (E.D. Tex. June 23, 2025). *See* Dkt. 260 ("Opp.") at 4. In both *Longhorn* and *Headwater*, however, the profit-split analyses were grounded in a multi-faceted, fact-specific evaluation of the parties' actual licensing practices, industry standards, and the economic context of the hypothetical negotiation. *Longhorn*, 2022 WL 903934 at *3; *Headwater Rsch. LLC*, 2025 WL 1739337 at *4. In both cases, as VirtaMove notes, this Court ruled that Mr. Bergman's profit-split analyses should not be excluded because they were "not arbitrary and [were] based on the facts of the case." Opp. at 4. This situation is different.

1

**First,** Mr. Bergman incorrectly calculates a ██████████████████████ ████████████████████████████████████ Opp. at Ex. A ¶ 274. As Mr. Bergman's own discussion makes clear, *see id.* ¶ 198, ████████ ultimately did not agree to pay AppZero a ████████ on gross revenue. Instead, AppFirst agreed to pay a ████████, and an additional ████████████████ for that company's analysis of the relevant source code. *See* Mot. at 5. VirtaMove does not dispute that Mr. Bergman failed to account for this cost reimbursement, or that ████████ did not agree to AppZero's ████████████████ ████████████ profit-split opinion. As such, Mr. Bergman's profit-split opinion is not sufficiently tied to the facts of the ████████████ .

**Second,** in his attempt to shoehorn a ████ profit split into the facts of this case, Mr. Bergman relies solely on a claim by Mr. O'Connor that ██████████████████████ ██████████████████████████████████ Opp. at Ex. A ¶ 274. Yet, Mr. Bergman cites no evidence indicating that the VirtaMove technology at issue here is ████████████ ████████ *See id.*[1] On the contrary, the inventors of the asserted patents testified that they did ***not*** invent containerization or orchestration. *See* Mot. at 7. Mr. Bergman's profit-split opinion therefore is arbitrary and divorced from the facts of the case and should be excluded.

VirtaMove nevertheless contends that IBM's request to exclude Mr. Bergman's opinions relying on the ████████████████ "either ignores the record, and/or amounts to nothing but a factual disagreement with Mr. Bergman's inputs." Opp. at 4. Not so—IBM moves to exclude Mr. Bergman's profit-split opinions because his methodology is fundamentally flawed.

---

[1]    VirtaMove states Mr. O'Connor "is not an interested witness in this case." Opp. at 5. In fact, VirtaMove is ████████████████████████████████ in this litigation. *See* Ex. 9 (O'Connor 5/14/25 Tr.) at 23:20–25:9. In any event, Mr. O'Connor provides no support for his alleged statement that the VirtaMove technology is ████████████████████ .

As discussed above, the ███ profit split figure that Mr. Bergman adopts is not supported by any comparable licenses or industry practice. It is based solely on his flawed analysis of a single, non-comparable litigation settlement agreement relating to trade secret and copyright claims—not a patent license.  Although VirtaMove claims "Mr. Bergman considers that the ██████████ was a settlement," its citations confirm that he did not substantively account for it in his analysis. *See* Opp. at 4–5. While Mr. Bergman purports to summarize the settlement negotiations, nowhere in his report does he attempt to factor in the differences in economic circumstances between the ███████████, which took place within "the coercive environment" of litigation, and the hypothetical negotiation "between a willing licensor and a willing licensee" that is relevant here. *LaserDynamics, Inc. v. Quanta Comp. USA, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). VirtaMove offers no evidence to the contrary.

Faced with the obvious fact that the ████████████ is not a comparable license, VirtaMove asserts that Mr. Bergman's analysis is based on "multiple inputs." Opp. at 8.  Yet, the additional so-called "inputs" are either conclusory or not grounded in reliable evidence. For example, VirtaMove points to Mr. Bergman's reliance on the parties' supposed competitive relationship—although, when it is convenient, VirtaMove also contends the parties were partners, *see, e.g.*, Dkt. 264 at 2–3—as well as VirtaMove's alleged unwillingness to license its patents.  *See* Opp. at 8.  Yet, Mr. Bergman does not provide any evidence or analysis linking those factors to a ███ profit split. *See, e.g.*, Opp. at Ex. A ¶¶ 224, 226–32, 270–71. Similarly, Mr. Bergman's reliance on "Dr. Koskinen's technical NIA and comparability analysis," Opp. at 7, only highlights the flaws in his profit-split analysis. Mr. Bergman fails to discuss why the parties would agree to a ███ profit split in the hypothetical negotiation here when, as discussed above, the ████ ███████ provided only a ███ royalty for purportedly "comparable" technology. At bottom, Mr.

3

Bergman's report reveals that his profit-split methodology is based solely on Mr. O'Connor's unsupported assertion that ███████████████████████████████████ ████████ making it an arbitrary rule of thumb—precisely the type of unsupported approach courts have excluded. *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).

Ultimately, while VirtaMove attempts to cast Mr. Bergman's profit-split opinions as the product of a holistic, multi-factor analysis, Mr. Bergman provides no basis for the ████ figure apart from the ███████████████ (and his discussion with Mr. O'Connor). *See, e.g.*, Opp. at Ex. A ¶¶ 200, 203, 273–75 (repeatedly citing the ██████████████ as the ███████████████ ███████████████████ rate demanded—but not actually obtained—by AppZero as the primary benchmark for his allocation of incremental profits). The other factors Mr. Bergman references are either conclusory or unsupported by concrete evidence, and none justify the specific profit allocation he adopts. Accordingly, IBM properly seeks exclusion of those paragraphs of Mr. Bergman's report that are tainted by his improper reliance on the ███████████████, which infects the entirety of his profit-split analysis and renders it unreliable.

**B.    Mr. Bergman's Income Approach Fails to Apportion to the Patented Claims.**

VirtaMove's reliance on Dr. Koskinen's technical analysis regarding non-infringing alternatives as alleged support for Mr. Bergman's income approach misses the point and does not cure the fundamental problems with Mr. Bergman's analysis. *See* Opp. at 8–9. As explained in IBM's opening brief, Mr. Bergman's income approach is fundamentally flawed because it incorrectly attributes the entire alleged value of "containerization and orchestration" to the asserted patents, without any apportionment for the incremental value (if any) of the actual patented subject matter found in the asserted claims. *See* Mot. at 6-8. In particular, Mr. Bergman attributes the entire price difference between IBM's IKS product and virtual server systems to IKS's use of

containerization and container orchestration, and then apportions IKS revenue based entirely on that price difference. *See id.* But that approach ignores the undisputed testimony of VirtaMove's own witnesses that VirtaMove did not invent containerization and orchestration. *See id.* at 7. While VirtaMove contends that Mr. Bergman properly apportions IBM's IKS revenue by subtracting the price of what Dr. Koskinen opines ███████████████████████████████ Opp. at 9, Mr. Bergman's approach is fundamentally flawed because he does not further apportion the greater marginal price of IBM's container-based products to account for the value that is actually contributed by their allegedly infringing features. Instead, Mr. Bergman simply assumes— contrary to the record—that the asserted patents are responsible for the entire value of the containerization and orchestration technology that VirtaMove maintains distinguishes IKS from the non-infringing alternatives used in Mr. Bergman's analysis. That approach is contrary to established law and renders Mr. Bergman's analysis unreliable. *See* Mot. at 6–8.

### C.    Mr. Bergman's Royalty Base and Apportionment Opinions Relying on the Flawed Opinions of Dr. Malek Should be Excluded.

As explained in IBM's opening brief, IBM seeks exclusion of Mr. Bergman's opinions that rely on Dr. Malek's improper opinion that VirtaMove could have stopped selling V-Maestro, leaving V-Migrate as its sole product, as a non-infringing alternative. *See id.* at 8–9. While VirtaMove's response focuses on Mr. Bergman's critiques of Mr. Malackowski's damages base, *see* Opp. at 10, IBM does not seek exclusion of those critiques. Rather, IBM's request is directed to Mr. Bergman's opinions regarding the impact of removing V-Maestro as an offered product. *See id.* at Ex. D ¶¶ 166-175. To the extent this Court excludes Dr. Malek's underlying opinions that removing V-Maestro would be a valid non-infringing alternative, Mr. Bergman's discussion based on those opinions should likewise be excluded.

Dated: August 18, 2025

Respectfully submitted,

/s/ Todd M. Friedman
Todd M. Friedman (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (*pro hac vice*)
Nathaniel Ngerebara (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:    (415) 439-1400
Facsimile:     (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (*pro hac vice*)
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:    (714) 982-8822
Facsimile:     (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:    (903) 757-6400
Facsimile:     (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Defendant*
*International Business Machines Corp.*

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on August 18, 2025.

*/s/ Todd M. Friedman*
Todd M. Friedman

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Todd M. Friedman*
Todd M. Friedman