# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES | § | |
| CORP., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## DEFENDANT INTERNATIONAL BUSINESS MACHINES CORP.'S REPLY TO PLAINTIFF VIRTAMOVE, CORP.'S OPPOSITION TO DEFENDANT INTERNATIONAL BUSINESS MACHINE CORP.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................... 1

II.    THE DECLARATION OF WALTER FALK COMPLIES WITH IBM'S DISCLOSURE REQUIREMENTS AND SUPPORTS ITS REQUEST FOR SUMMARY JUDGMENT. ...................................................................................... 1

III.   THE UNDISPUTED RECORD ESTABLISHES IBM HAS A LICENSE TO THE ACCUSED TECHNOLOGY ................................................................... 6

IV.   VIRTAMOVE IS EQUITABLY ESTOPPED FROM ASSERTING INFRINGEMENT .................................................................................................. 9

V.    VIRTAMOVE FAILS TO SHOW IBM PERFORMS EVERY STEP OF THE ASSERTED CLAIMS. ................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992)................................................................................10

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
  605 F.3d 1305 (Fed. Cir. 2010)...............................................................................10

*Bitterroot Holdings, L.L.C. v. MTGLQ Invs., L.P.*,
  648 F. App'x 414 (5th Cir. 2016) ..............................................................................4

*Bitterroot Holdings, LLC v. MTGLQ Invs., L.P.*,
  No. 5:14-CV-862-DAE, 2015 U.S. Dist. LEXIS 144377 (W.D. Tex. Oct. 23,
  2015) ...........................................................................................................................5

*Brown v. Chertoff*,
  No. 406CV002, 2009 U.S. Dist. LEXIS 691 (S.D. Ga. Jan. 6, 2009) .......................3

*D.B. v. City of McKinney*,
  No. 4:16-CV-00965, 2017 U.S. Dist. LEXIS 207549 (E.D. Tex. Dec. 18,
  2017) ...........................................................................................................................5

*DIRECTV, Inc. v. Budden*,
  420 F.3d 521 (5th Cir. 2005) .....................................................................................5

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)................................................................................11

*HB Dev., LLC v. W. Pac. Mut. Ins.*,
  86 F. Supp. 3d 1164 (E.D. Wash. 2015) ...................................................................3

*Huawei Techs. Co. v. Verizon Commc'ns, Inc.*,
  No. 2:20-CV-00030-JRG, Order, Dkt. 462 (E.D. Tex. July 2, 2021)......................11

*McKesson Info. Sols., Inc. v. Bridge Med., Inc.*,
  434 F. Supp. 2d 810 (E.D. Cal. 2006)........................................................................2

*Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*,
  No. 2:22-CV-00494-JRG-RSP, 2025 WL 679189 (E.D. Tex. Jan. 27, 2025),
  *R&R adopted*, No. 2:22-CV-00494-JRG-RSP, 2025 WL 675448 (E.D. Tex.
  Mar. 3, 2025)............................................................................................................13

*Schering Corp. v. Roussel-UCLAF SA*,
  104 F.3d 341 (Fed. Cir. 1997)....................................................................................4

*Tittle v. Enron Corp.*,
    463 F.3d 410 (5th Cir. 2006) ...................................................................................7

*Van Maanen v. Youth with a Mission-Bishop*,
    852 F. Supp. 2d 1232 (E.D. Cal. 2012)...................................................................4

*White v. City of Middletown*,
    45 F. Supp. 3d 195 (D. Conn. 2014) ..................................................................3, 4

**Rules**

Fed. R. Civ. P. 26 ........................................................................................................3, 4

Fed. R. Civ. P. 37(c)(1)....................................................................................................4

## I.      Introduction

VirtaMove fails to raise any genuine dispute of material fact to undercut IBM's multiple bases for seeking summary judgment of non-infringement. ***First,*** despite VirtaMove's complaint, IBM properly identified Walter Falk during discovery as having knowledge relevant to IBM's license defenses, and his supporting declaration is admissible and appropriate. ***Second,*** notwithstanding VirtaMove's efforts to muddy the waters regarding IBM's express license, the parties' Assistance Agreement allows IBM to use AppZero's ███████ "███████ ████████ ███████"—which necessarily includes using it in a way that practices AppZero's existing patents. Moreover, VirtaMove does not materially dispute that AppZero's ██████ to IBM encompassed all the presently accused functionalities. ***Third,*** the undisputed evidence shows IBM has established the elements of equitable estoppel, including showing VirtaMove made an "affirmative grant" by encouraging IBM to implement Docker containers and then assisting with performing Docker-based migration. ***Fourth,*** VirtaMove has failed as matter of law to show infringement of the '814 Patent because it has not offered any evidence that different operating systems (or even different versions of the same OS) have ever been simultaneously deployed and used to perform the claimed method in the accused IBM Kubernetes Service ("IKS") product.

## II.     The Declaration of Walter Falk Complies With IBM's Disclosure Requirements and Supports Its Request for Summary Judgment.

The declaration of Walter Falk complies with the Federal Rules and adds to the evidentiary record warranting summary judgment of non-infringement.  VirtaMove's assertion that IBM never identified Mr. Falk in connection with IBM's license defenses, *see* Dkt. 258 at 21, is flatly contradicted by the record.  For example, in response to VirtaMove's interrogatory seeking information concerning IBM's interactions with VirtaMove, IBM expressly disclosed Mr. Falk as an IBM employee who interacted with VirtaMove during the relevant time period.  *See* Ex. 65 at

13 (2/4/25 Supp. Resp. to Rog No. 2).  IBM also expressly disclosed Mr. Falk and his deposition testimony in response to an interrogatory seeking information concerning "any license" covering "technology, patents and/or products comparable to the Patents-in-Suit." *Id.* at 82 (5/29/25 Supp. Resp. to Rog No. 8); *see also id.* at 99–101 (5/29/25 Supp. Resp. to Rog No. 13) (citing Mr. Falk's testimony, documents, and communications in describing support for license defense). IBM also incorporated those interrogatory responses, along with several of Mr. Falk's custodial documents, in response to VirtaMove's interrogatory regarding affirmative defenses—including documents that support facts Mr. Falk provided in his declaration which IBM now relies on to support its motions for summary judgment on its license and equitable estoppel defenses. *See id.* (5/29/25 Resp. to Rog No. 22) at 144–53 (describing bases for IBM's license and equitable estoppel defenses and citing, *inter alia*, IBM_VM_000094136, IBM_VM_000092769 (IBM and AppZero meeting involving Mr. Falk where AppZero recommended container technology to IBM and provided materials concerning its Docker integration); IBM_VM_000094281, IBM_VM_000092164, IBM_VM_000092166 (identifying Mr. Falk as primary contact in AppZero partnership); IBM_VM_000092365, IBM_VM_000092527 (Mr. Falk email communications and spreadsheet concerning alternative container solutions, including Joyent and Rackware); and IBM_VM_000092791, IBM_VM_000092794, IBM_VM_000092813, and IBM_VM_000094157 (IBM discussions between Mr. Falk, Mac Devine, and others regarding adopting container technologies based on VirtaMove's ███████ )).  In view of these numerous disclosures, VirtaMove's request to strike Mr. Falk's declaration should be denied. *See, e.g.*, *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812–13 (E.D. Cal. 2006) (denying motion to exclude witnesses identified in discovery, including via document production).

Moreover, despite VirtaMove's assertion that it "did not know to ask Mr. Falk about the

factual bases for IBM's affirmative defenses," Dkt. 258 at 22, VirtaMove **deposed Mr. Falk about these very topics**. *See, e.g.*, Ex. 66 (Falk 5/13/25 Tr.) at 25:23–26:1 ("███████████████ ████████████████████████████████████████████████████████████"), 15:19–17:7 (describing AppZero's suggestions that IBM implement "██████████████ ████████" on IBM Cloud), 17:8–19:16 (describing licensing requirements for partners' products to be made available on IBM Cloud), 22:16–23:2 (describing partner evaluation process that leads to license agreements), 23:21–25:2 (noting "███████████████" done with partners), 52:6–24 (discussing suggestions that IBM adopt containers over image-based migration), 84:8–85:13 (describing IBM's "███████████████"). Given this testimony, VirtaMove's claims of prejudice over the contents of Mr. Falk's declaration ring hollow. *See, e.g.*, *HB Dev., LLC v. W. Pac. Mut. Ins.*, 86 F. Supp. 3d 1164, 1174 (E.D. Wash. 2015) (denying motion to strike where deposition questions demonstrated attorneys' awareness of witness's role and areas of knowledge).

In addition, although VirtaMove complains that IBM did not identify Mr. Falk in its Rule 26 disclosures, *see* Dkt. 258 at 21, Rule 26(e) states that information already "made known to the other parties during the discovery process or in writing" need not be provided again via a formal disclosure or supplement. FED. R. CIV. P. 26(e); *see also Brown v. Chertoff*, No. 406CV002, 2009 U.S. Dist. LEXIS 691, at *12 (S.D. Ga. Jan. 6, 2009) (Rule 26(e) "recognize[s] that there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery"); *White v. City of Middletown*, 45 F. Supp. 3d 195, 209 (D. Conn. 2014) (duty to supplement under Rule 26(e) does not apply where "a party knew of the witnesses and the information they possessed" from discovery). Because IBM's discovery responses and productions had already disclosed Mr. Falk's identity and relevant knowledge, IBM was not required to supplement its Rule 26 disclosures.

This fact undercuts VirtaMove's baseless attempt to invoke Rule 37(c)(1) to preclude IBM from relying on Mr. Falk's declaration, Dkt. 258 at 21, because Rule 37(c)(1) applies only to information that a party did not disclose "***as required*** by Rule 26(a) or (e)." FED. R. CIV. P. 37(c)(1) (emphasis added). Regardless, even if Rule 37(c)(1) did apply here, the absence of references to Mr. Falk in IBM's Rule 26 disclosures was both substantially justified and harmless under the Fifth Circuit's four-factor test, which considers: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Bitterroot Holdings, L.L.C. v. MTGLQ Invs., L.P.*, 648 F. App'x 414, 419 (5th Cir. 2016) (citation omitted). **First,** Mr. Falk's declaration is important because he provides additional insight regarding how IBM invested significant resources in adopting Docker and Kubernetes in reliance on AppZero's ███████, which provides a "complete defense" to VirtaMove's infringement claim. *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344, 347 (Fed. Cir. 1997). **Second,** VirtaMove suffered no real prejudice because, as discussed above, it deposed Mr. Falk and knew to question him on these issues. **Third,** VirtaMove has not requested—even in the alternative— that Mr. Falk sit for a supplemental deposition on these topics. *See, e.g.*, *Van Maanen v. Youth with a Mission-Bishop*, 852 F. Supp. 2d 1232, 1237 (E.D. Cal. 2012) (finding party's failure to seek additional discovery weighed against claim of prejudice due to nondisclosure). **Fourth**, as explained above, IBM was not required to supplement its Rule 26 disclosures to identify Mr. Falk because it had already provided notice through discovery. *See White*, 45 F. Supp. 3d at 209.

Unable to legitimately criticize IBM's disclosure of Mr. Falk as a witness, VirtaMove suggests that Mr. Falk "may have no personal knowledge about certain alleged facts." Dkt. 258 at 23. However, given that Mr. Falk acted as a primary point of contact between IBM and AppZero

with respect to containerization technology, personal knowledge of the facts stated in his declaration can "be reasonably inferred from [his] position and the nature of his participation in the sworn matter." *Bitterroot Holdings, LLC v. MTGLQ Invs., L.P.*, No. 5:14-CV-862-DAE, 2015 U.S. Dist. LEXIS 144377, at *9 (W.D. Tex. Oct. 23, 2015) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)); *see also D.B. v. City of McKinney*, No. 4:16-CV-00965, 2017 U.S. Dist. LEXIS 207549, at *4 (E.D. Tex. Dec. 18, 2017) ("Generally, a declarant is competent to testify when her testimony is grounded in observation or other personal experience and is not based on speculation, intuition, or rumors about matters remote from that personal experience."). VirtaMove's claim that Mr. Falk did not "work[] on relevant technology at IBM after 2015" does not mean he is unaware that IBM invested substantial resources in the Accused Products following his discussions with AppZero in 2015. Dkt. 258 at 23. And while VirtaMove contends that it was "deprived of the ability to test the veracity of Mr. Falk's claims through cross-examination," *id.*, VirtaMove had—and took—the opportunity to depose Mr. Falk on license-related issues.

Further, contrary to VirtaMove's contention that Mr. Falk's declaration is "unsupported," *id.* at 22, Mr. Falk's statements are corroborated by ample other evidence in the record—including evidence of significant investments IBM makes in new technology, the alternative containerization technologies available to IBM at the time, the factors IBM considered in evaluating containerization technologies, and IBM's decision to implement Docker and Kubernetes in the Accused Products. *See, e.g.*, Ex. 65 at 119 (1/21/25 Resp. to Rog No. 18) (noting IBM's investments in technology); Ex. 67 (Malackowski Op. Rpt.) at 8 (same); Ex. 66 (Falk 5/13/25 Tr.) at 29:9–31:11 (discussing cloud market and factors in decision to adopt third-party solutions); Ex. 68 (Devine 5/29/25 Tr.) at 19:25–24:1 (discussing factors in IBM's selection of containerization technologies); Dkt. 241-6 (Wicker Reb. Rpt.) ¶¶ 416–29 (discussing non-infringing alternatives);

5

Ex. 69 (IBM_VM_000092365) and Ex. 70 (IBM_VM_000092527) (Mr. Falk's custodial documents concerning alternative container solutions referenced in his declaration). The record thus amply justifies IBM's request for summary judgment, independent of Mr. Falk's declaration.

At bottom, given IBM's previous identifications of Mr. Falk—and its other explanations of the basis for its license defenses—VirtaMove cannot credibly claim that it "was left to assume that IBM had no plausible factual basis for its license defense." Dkt. 258 at 24.[1] Mr. Falk's declaration is relevant and admissible, and it supports IBM's request for summary judgment.

## III. The Undisputed Record Establishes IBM Has a License to the Accused Technology.

### (a) The Plain Language of the Assistance Agreement Confirms IBM's License Extends to Preexisting Intellectual Property.

IBM agrees with VirtaMove that "the contract itself is the best evidence of the parties' intent." Dkt. 258 at 25. And the plain language of § 5.3 of the contract expressly grants IBM a license to use AppZero's qualifying "████████████████████████████████ ███████████████████" Dkt. 241-1 (VM_IBM_0022070) at -2071. VirtaMove relies on a provision in the accompanying Statement of Work that "███████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████" to argue that § 5.3 does not "████████" give IBM a license to use existing intellectual property. *See* Dkt. 258 at 26–37. However, as discussed in IBM's opposition to VirtaMove's cross-motion for summary judgment, *see* Dkt. 261 at 16–20, § 5.3 ██████ allows IBM to use *any* "█████████████████" provided by AppZero, with only two restrictions—the █████████ must "███████████████████" and be offered "█████████████████

---

[1]  VirtaMove's separate complaints regarding Andrew Wojnicki's testimony, *see* Dkt. 258 at 29, are immaterial because, as discussed above, IBM gave VirtaMove meaningful notice of the factual bases for its license defenses through discovery.

█████"—which are not at issue here. Dkt. 241-1 (VM_IBM_0022070) at -2071.  It follows from the plain language of this provision that if "████" AppZero's ██████ entails practicing an existing VirtaMove patent, IBM has a right to do so.  Indeed, the provision expressly grants IBM a "███████████████████████████████████████"—which, on its face, includes using it in a manner that practices an AppZero/VirtaMove patent.  *Id.* (emphasis added).

VirtaMove also points to § 5.1 of the Assistance Agreement, which states that the "█████████████████████████████████████████████████ ███████████████████," to argue the Agreement does not give IBM any rights in VirtaMove's software.  Dkt. 258 at 27.  However, as VirtaMove itself acknowledges, it is ***not*** accusing IBM of infringement based on any alleged use of VirtaMove's software.  *See id.* at 32.  Rather, its infringement claim is based on the Accused Products' implementation of Docker and Kubernetes technology.  Thus, to the extent § 5.1 arguably carves intellectual property rights to AppZero's ***software*** out of the rights that could be conveyed under § 5.3's "██████" provision, that carveout has no impact here, where AppZero's software is not at issue.  In claiming there is an inconsistency between §§ 5.1 and 5.3, VirtaMove would improperly have § 5.1's narrow exception for software rights swallow the entire broader grant conveyed by § 5.3.  That result would run contrary to basic contract-interpretation principles that require giving effect to every provision of the contract.  *See Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006) ("[A] court construing a contract must read that contract in a manner that confers meaning to all of its terms, rendering the contract's terms consistent with one another.").

**(b)    The Undisputed Evidence Shows IBM Is Using AppZero's ██████.**

Faced with the broad license granted under the agreement's "██████" provision, VirtaMove contends IBM did not actually "███" AppZero's ██████ in the Accused Products, such that (according to VirtaMove) the Accused Products are not covered by the license.  *See* Dkt.

258 at 28.  Specifically, VirtaMove contends "IBM did not implement Project Wocker, which forms the basis for the bulk of the '█████████' IBM relies upon." *Id.*  However, the █████████ █████████ that AppZero provided to IBM—even those that came in the context of Project Wocker—were by no means limited to a recommendation that IBM "implement Project Wocker." On the contrary, the undisputed evidence, including numerous documents sent from AppZero to IBM, shows that AppZero's █████████ included descriptions of the benefits and value of Docker and Kubernetes container technology.  *See, e.g.*, Dkt. 240-1 (SoF) ¶¶ 22–31.  The undisputed evidence also confirms that IBM acted on this █████████ by implementing Docker and Kubernetes in the Accused Products.  *See id.* ¶ 34; Dkt. 242-7 (Falk Decl.) ¶ 10; Ex. 66 (Falk 5/13/25 Tr.) at 15:19–17:7, 29:9–32:21.  Moreover, while VirtaMove suggests other sources also influenced IBM's decision to implement the accused containerization technology, *see* Dkt. 258 at 29, § 5.3 does not require AppZero's █████████ to be unique.  It is sufficient that each aspect of the Accused Products that VirtaMove's expert now identifies as infringing was included in AppZero's █████████ to IBM.  *See* Dkt. 240 at 10 (citing SoF ¶¶ 42–88).  VirtaMove's own infringement theory shows IBM is "█████" AppZero's █████████, and that use therefore is licensed.

**(c)    There Is No Genuine Dispute That AppZero's █████████ Included the Features VirtaMove Accuses of Infringement.**

VirtaMove misrepresents the record by arguing AppZero's █████████ was limited "to enabl[ing] and encourag[ing] IBM to use AppZero's [specific] containerization technology." Dkt. 258 at 30.  While AppZero may have described its technology in the █████████, there is no genuine dispute that it also provided numerous materials and suggestions describing Docker and Kubernetes.  Indeed, as referenced in IBM's opening brief, IBM's technical expert, Dr. Stephen Wicker, prepared a claim chart identifying where *each and every* accused functionality of the accused IBM products can be found in AppZero's █████████ to IBM.  *See* Dkt. 240 at 10; Dkt.

241-4 (Wicker Op. Rpt.) ¶¶ 150–68; Dkt. 241-6 (Wicker Reb. Rpt.) ¶¶ 378–80.

Although VirtaMove purports to quibble with certain aspects of Dr. Wicker's analysis, it fails to raise any genuine dispute. VirtaMove asserts that "AppZero did not encourage IBM to use a container repository for use with Docker or Kubernetes containers." Dkt. 258 at 31. In fact, AppZero's ███████ expressly demonstrated and proposed the use of Docker container repositories. *See, e.g.*, Dkt. 241-14 (VM_IBM_0036021) at -6026–30 (depicting Docker's "Repository of images"). VirtaMove also contends that AppZero's ███████ does not "identif[y] . . . a transition period [of 'worker nodes using the old operating system'] within a cluster or upgrading worker nodes from one operating system to a cluster." Dkt. 258 at 31. Yet, AppZero's ███████ expressly described using Docker and Kubernetes containerization technology for moving to "a newer OS." *See, e.g.*, Dkt. 241-21 (VM_IBM_0029923) at -9924–26. Ultimately, the undisputed evidence shows that AppZero's ███████ directly maps to the accused functionalities, leaving no genuine dispute that the accused technology falls within IBM's license.

## IV.    VirtaMove Is Equitably Estopped From Asserting Infringement.

Despite VirtaMove's contention that IBM "identifies no affirmative grant" because it "presents no evidence that VirtaMove was involved" with the Accused Products, Dkt. 258 at 32 (internal quotation marks omitted), the undisputed evidence shows that AppZero provided support and training to IBM and its customers regarding Docker-based migration, and directly assisted with migrating customer applications to IBM's cloud. *See* Dkt. 241-9 (Stokes 5/21/25 Tr.) at 451:17–452:6, 457:18–460:19. AppZero also affirmatively encouraged IBM to adopt Docker containers in IBM Cloud. *See, e.g.*, Dkt. 241-15 (VM_IBM_0036020) ("AppZero and Docker Overview" email referencing proposal to IBM and attaching presentation); Dkt. 241-14 (attached Docker proposal presentation).

The undisputed facts also show IBM relied on AppZero's conduct. Although VirtaMove

9

attempts to downplay the significance of the post-2017 years, the evidence shows the parties maintained a collaborative relationship for over a decade.  Dkt. 240-1 (SoF) ¶¶ 1, 32.  It is undisputed that AppZero never suggested to IBM that use of Docker and Kubernetes would be infringing, and IBM had no reason to suspect VirtaMove would later sue for infringement.  *See id.* ¶ 35; Dkt. 258 at 5 (responding to ¶ 35 as "Undisputed").  While VirtaMove asserts that Mr. Falk's statement that "IBM would have reevaluated its selection of containerization technologies" if VirtaMove had alleged infringement does not establish reliance, *see* Dkt. 258 at 33–34, Mr. Falk's declaration confirms that IBM "████████████████" (*i.e.*, adopting Docker and Kubernetes) based on VirtaMove's conduct, which is the definition of reliance.  *A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1042–43 (Fed. Cir. 1992).

Regarding material prejudice, VirtaMove faults Mr. Falk for not specifying "the **extent** of [IBM's] prejudice" by stating exactly "how many resources were devoted to the accused functionality."  Dkt. 258 at 34.  But the law does not require exact quantification to establish prejudice—IBM need only show "a change of economic position flowing from actions taken" by VirtaMove.  *Aspex Eyewear Inc. v. Clariti Eyewear, Inc*., 605 F.3d 1305, 1312 (Fed. Cir. 2010).  As explained above, IBM has presented evidence that it devoted time, effort, and expense to implementing Docker and Kubernetes in reliance on VirtaMove's conduct.  *See id.* (finding party's development of its business, in reliance on patentee's silence, constituted material prejudice).

## V.    VirtaMove Fails To Show IBM Performs Every Step of the Asserted Claims.

VirtaMove does not dispute that every asserted claim of the '814 Patent requires practicing the claimed method on "a system having a plurality of servers with operating systems that differ." Dkt. 240-1 (SoF) ¶ 97; Dkt. 258 at 11 (¶¶ 93–98). VirtaMove also does not dispute that mere capability is insufficient to satisfy this claim element and that VirtaMove must show that IBM or

IBM's customers **actually** deployed multiple, differing operating systems in IKS.[2]  *See* Dkt. 258 at 36–37.  As explained in IBM's opening brief, VirtaMove has no such evidence—and rather than point to any in its opposition, VirtaMove merely identifies IBM's **capability** for providing temporary **support** for multiple versions of the Ubuntu operating system and notes that one **possible** approach a customer could take to upgrade the OS might temporarily result in multiple operating system versions being deployed simultaneously—which VirtaMove erroneously contends indicates is how the upgrade "*must* be done." Dkt. 258 at 35; *see also id.* at 12 (¶¶ 109–10) ("[C]ustomers **could** continue to use Ubuntu 20. … [B]oth Ubuntu 20 and Ubuntu 24 **may** be returned …. [U]sers **can** continue to maintain Ubuntu 20 clusters and worker pools in IKS[.]"), 13 (¶ 113) ("[U]nsupported operating systems **may** still be used within IKS after support is withdrawn.") (emphases added).  However, "mere **evidence that the method could have been performed** or that [Defendant] touted the features in question **is not sufficient to avoid summary judgment**." *Huawei Techs. Co. v. Verizon Commc'ns, Inc.*, No. 2:20-CV-00030-JRG, Order, Dkt. 462 at *4 (E.D. Tex. July 2, 2021) (granting summary judgment of non-infringement because "[Plaintiff] has produced no evidence that any user … performed all of the method[] steps"); *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("Unless the claim language only requires the capacity to perform a particular claim element … **it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement**.") (emphasis added).

None of VirtaMove's arguments raise any triable dispute of fact.  VirtaMove misrepresents

---

[2]   VirtaMove also appears to offer the fallback argument that it need only show that one customer deployed **one** version of an operating system while a **separate** customer deployed another.  *See* Dkt. 258 at 35–36.  That claim interpretation is nonsensical, and is also beside the point, as VirtaMove has not even provided evidence of two different customers using two different operating system versions in IKS.  See *id.*; Ex. 71 (Wicker Reb. Rpt.) ¶¶ 144–54.

IBM's non-infringement position by suggesting IBM is relying solely on the undisputed fact that "all of the different supported operating systems within its accused system are named 'Ubuntu.'" Dkt. 258 at 35. But as explained in IBM's motion, even under VirtaMove's improper claim construction that different operating system *versions* constitute "operating systems that differ," VirtaMove has failed to identify a single instance where IBM or one of its customers deployed "a plurality of servers" with different versions of Ubuntu. *See* Dkt. 240 at 17–18. VirtaMove does not identify any such evidence or examples in its opposition brief, and instead continues to rely on allegations of capability. Dkt. 258 at 35-36 (relying on admissions that "IKS *supported* both Ubuntu 20 and Ubuntu 24" and on IBM's purported instructions, not actual examples, for upgrading IKS clusters). VirtaMove's reliance on Dr. Koskinen's report does not remedy its lack of evidence, as he too only provides conclusory opinions about an alleged capability. Dkt. 258 at 36 (citing Koskinen Op. Rpt. ¶¶ 239-240); Dkt. 241-7 (Koskinen Op. Rpt.) ¶¶ 239-240 (stating that "IBM's Cloud product offering . . . *can* have a wide variety of operating systems installed on them" and that for IKS, "operating systems are *permitted* to differ from one cluster to another").

VirtaMove also tries to sidestep its lack of evidence by claiming that IBM "expressly admits" infringement in its opening brief. Dkt. 258 at 36. But VirtaMove misleadingly omits (and does not dispute) the key portion of the statement it quotes, where IBM explained that IKS's upgrade process "*eliminates* the need to have multiple servers running different operating system versions." Dkt. 240 at 21 (emphasis added) (citing SoF ¶ 112). Critically, VirtaMove does not dispute that servers in a cluster *never* run different operating system versions in the scenario it references. *See* Dkt. 258 at 12–13 (responding to SoF ¶ 112). VirtaMove similarly mischaracterizes and truncates the testimony of Mr. Brown, *see* Dkt. 258 at 36, who addressed one *possible* upgrade scenario where the user-selected *name* of the cluster of nodes running the old

operating system version is the same as the upgraded cluster of nodes. *See, e.g.*, Dkt. 241-36 (Brown 5/22/25 Tr.) at 101:19–102:17. However, as Mr. Brown explained, that approach is not the recommended upgrading process, only related to a beta release of Ubuntu 24 that was not available on IBM's bare metal servers, and, in any event, still would not result in a system of nodes with operating systems that differ. *See id*. at 101:19–102:17, 264:2-13. Regardless, VirtaMove has offered no evidence that users have upgraded their clusters in this manner.

Further, while VirtaMove contends—without support—that IBM "owns and controls the IKS worker nodes," Dkt. 258 at 35, VirtaMove does not dispute IBM's Statement of Undisputed Fact 116, which states "[IBM's] customers themselves are responsible for updating their worker nodes to new versions of Ubuntu." Dkt. 240-1 (SoF) ¶ 116; *see also* Dkt. 258 at 13. VirtaMove further concedes that "IBM does not and cannot require that all of its customers upgrade to new operating system versions simultaneously." Dkt. 258 at 36.  Significantly, given these admissions, VirtaMove does not dispute that IBM's ***customers*** perform at least part of the step(s) required to allegedly directly infringe. Assuming for the sake of argument (because VirtaMove has not pointed to any evidence of a customer's actual implementation of IKS) that an IKS cluster could implement Ubuntu 20, Ubuntu 24, or both at the same time, it would be the ***customer***, ***not*** IBM, who controls the timing and manner of which operating system to deploy and whether to upgrade the version. Yet, VirtaMove has failed to adduce any evidence identifying what operating systems IBM's customers use, let alone any instances where customers have used different operating systems (or operating system versions) when the claimed method is allegedly performed.  Summary judgment of non-infringement therefore is warranted on this basis, as well. *See, e.g.*, *Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*, No. 2:22-CV-00494-JRG-RSP, 2025 WL 679189, at *5–7 (E.D. Tex. Jan. 27, 2025), *R&R adopted*, No. 2:22-CV-00494-JRG-RSP, 2025 WL 675448 (E.D. Tex. Mar. 3,

2025) (granting summary judgment of non-infringement where users of defendant's product, and not the product itself, controlled whether the claimed method was performed).

Finally, VirtaMove's argument that "IBM's motion does not challenge VirtaMove's or Dr. Koskinen's theory that IBM performs the 'storing' step" is a red herring. Dkt. 258 at 37. The claims require that this "storing" step be performed on a system having "a plurality of servers with operating systems that differ." *See* Dkt. 242-1 ('814 Patent), cl. 1. As explained above and in IBM's opening brief, VirtaMove has not presented evidence that ***any*** step taken when using the IKS product, let alone this claimed "storing" step, is performed in a system having "servers with operating systems that differ." Dkt. 240 at 20–22.

Dated: August 18, 2025

Respectfully submitted,

*/s/ Todd M. Friedman*
Todd M. Friedman (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (*pro hac vice*)
Nathaniel Ngerebara (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:    (415) 439-1400
Facsimile:     (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (*pro hac vice*)
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:    (714) 982-8822
Facsimile:     (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:    (903) 757-6400
Facsimile:     (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Defendant*
*International Business Machines Corp.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on August 18, 2025.

*/s/ Todd M. Friedman*
Todd M. Friedman

16

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

<u>/s/ Todd M. Friedman</u>
Todd M. Friedman