# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § | |
| | § | |
| Defendant. | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |

## INTERNATIONAL BUSINESS MACHINES CORP.'S REPLY TO VIRTAMOVE, CORP.'S RESPONSE TO IBM'S MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

I. Introduction ................................................................................................................... 1

II. Argument ....................................................................................................................... 2

    A. VirtaMove improperly tries to rewrite the plain language of the ▮▮▮ ▮▮▮▮▮▮ and the Comerica Letter. ................................................................... 2

    B. IBM's statutory standing challenge is proper and not waived. ............................... 6

    C. Contemporaneous documents cloud the Asserted Patents' chain of title. .............. 8

# TABLE OF AUTHORITIES

                                                                                                                            Page(s)

**Cases**

*Anderson v. Kimberly-Clark Corp.*,
   570 F. App'x 927, 931 (Frd. Cir. 2014) ...............................................................................7, 8

*In re Cirba Inc.*,
   No. 2021-154, 2021 WL 4302979 (Fed. Cir. Sept. 22, 2021) ...................................................3

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018)...................................................................................................7

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
   823 F.3d 615 (Fed. Cir. 2016)...................................................................................................6

*Lone Start Tech. Innovations, LLC v. ASUSTEK Computer Inc.*,
   No. 6:19-CV-00059-RWS, 2022 WL 1498784 (E.D. Tex. Mar. 18, 2022) ..............................8

*Regents of Univ. of California v. California Berry Cultivars, LLC*,
   No. 16-CV-02477-VC, 2017 WL 9531948 (N.D. Cal. Apr. 27, 2017) ...................................10

*Script Sec. Sols., LLC v. Amazon.com, Inc.*,
   No. 2:15-CV-1030-WCB, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016)................................7

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010).................................................................................................8

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..................................................................................................................7

*VirnetX, Inc. v. Microsoft Corp.*,
   6:07 CV 80, 2008 WL 8894682 (E.D. Tex. June 4, 2008) .......................................................6

**Rules**

Local Rule CV-5(a)(3)....................................................................................................................12

Rule 12(b)(1)....................................................................................................................................6

Rule 12(b)(6)................................................................................................................................6, 7

Rule 12(c)......................................................................................................................................6, 7

Rule 19 .............................................................................................................................................8

I.  **INTRODUCTION**

Unable to meet its burden to show that it has statutory and constitutional standing to bring this action, Plaintiff VirtaMove, Corp. ("VirtaMove" or "VirtaMove Canada")[1] resorts to misreading documents bearing on ownership of the patents-in-suit, including its ▮▮▮ and a letter from Comerica that VirtaMove recorded at the USPTO. The ▮▮▮. Yet, VirtaMove mischaracterizes the agreement as meaning that each entity only had rights in a ***portion*** of the Collateral. *See* Dkt. 270 at 12. Separately, VirtaMove argues that the Comerica Letter that it countersigned "mistakenly" stated that VirtaMove USA granted Comerica a security interest in the patents-in-suit. *Id.* at 2, 12. Yet, VirtaMove does not and cannot explain why **both** the ▮▮▮ *and* the Comerica Letter indicate that VirtaMove USA had an ownership right in and the power to transfer the Asserted Patents. In view of this unanswered evidence that VirtaMove USA also has rights in the patents, VirtaMove has failed to meet its burden to demonstrate that it holds all substantial rights needed to have statutory standing in this case.

With respect to constitutional standing, VirtaMove contends that the supposedly "unbroken" chain of recorded title from the patents' previous owner, AppZero Corp., to VirtaMove's predecessor, AppZero Software Corp., "creates a presumption" that VirtaMove owns the patents-in-suit. *Id.* at 6. However, VirtaMove acknowledges that AppZero Corp. granted to its ▮▮▮ including the Asserted Patents. *See id.* at 2–3. If the USPTO records showed the complete chain of title for the Asserted Patents, that ▮▮▮ would have been recorded. But no such record exists, which proves that the

---

[1]  VirtaMove was previously known as "AppZero Software Corp."

1

assignment records are incomplete and prevents VirtaMove from relying on them to establish ownership—especially when VirtaMove has not answered the significant questions raised by documents indicating that AppZero Corp.'s ▇ took possession of the patents *before* AppZero Corp. purportedly transferred them to AppZero Software Corp.

VirtaMove should not be permitted to try to establish statutory standing by disputing the plain language of a document it recorded with the USPTO (the Comerica Letter) while simultaneously relying on the same "mistaken" and incomplete assignment records to try to establish constitutional standing. Because VirtaMove cannot meet its burden to show that it has both statutory and constitutional standing, this case should be dismissed.

## II. ARGUMENT

### A. VirtaMove improperly tries to rewrite the plain language of the ▇ and the Comerica Letter.

As discussed in IBM's opening brief, VirtaMove's ▇ ▇ (which VirtaMove countersigned) both indicate that VirtaMove *USA* had ownerships rights in the Asserted Patents, including the right to transfer a ▇. *See* Dkt. 229 at 3–4. This evidence calls into significant question whether VirtaMove possesses all substantial rights needed to have statutory standing in this case. To try to show it has all substantial rights, VirtaMove now mischaracterizes the plain language of the ▇, and purports to dispute the accuracy of the Comerica Letter—even though VirtaMove itself acknowledged that letter with its CEO's countersignature and recorded it at the USPTO. VirtaMove's arguments are insufficient to carry its burden to demonstrate standing.

In 2015, VirtaMove entered into a ▇ stating that ▇ ▇ Dkt. 229-10 (Op. Br. Ex. 12),

2

VM_IBM_0024150 at -4173. The agreement identifies ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, *id.* at -4155, and thus indicates that *each* of those entities *independently* had ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In its opposition, VirtaMove runs from this plain language and argues the agreement meant that VirtaMove Canada and VirtaMove USA were providing separate collateral and that each merely had the power to transfer its *respective* collateral. *See* Dkt. 270 at 12. Yet, the Loan Agreement does not separate the ▇▇▇▇▇ into ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Rather, on its face, the agreement defines ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 229-10, VM_IBM_0024150 at -4150. It is uncontested that this ▇▇▇▇▇ included the Asserted Patents. Given VirtaMove USA's evident rights in the patents—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—VirtaMove has failed to show that it (*i.e.*, VirtaMove Canada) possesses "all substantial rights" needed for statutory standing. *See, e.g.*, *In re Cirba Inc.*, No. 2021-154, 2021 WL 4302979, at *3 (Fed. Cir. Sept. 22, 2021) (affirming dismissal for lack of standing because plaintiff's subsidiary had ownership rights in asserted patents and had not promised not to license them to others).

While the ▇▇▇▇▇ representations regarding the ▇▇▇▇ are plain on their face, to the extent there is any conceivable ambiguity, Comerica's 2018 letter to VirtaMove confirms that VirtaMove USA *also* provided a security interest in the patents. The Comerica Letter expressly references an "***Intellectual Property Security Agreement granted by VirtaMove USA in favour of the Bank*** and registered at the [USPTO] on September 17, 2015 ***against the intellectual property described in Exhibits*** 'A,' ***'B,'*** and 'C' ***attached hereto***," with Ex. B to the letter expressly listing the Asserted Patents. Dkt. 229-12 (Op. Br. Ex. 15), VM_IBM_0000530 at -0533; *see also id.* at -0535 (Comerica Letter Ex. B identifying Asserted Patents). Not only did

3

VirtaMove countersign the Comerica Letter, *see id.* at -0533, but VirtaMove itself recorded this document with the USPTO in August 2018. See Dkt. 230-4 (Op. Br. Ex. 16), VM_IBM_0024127 (redacted Comerica Letter and exhibits recorded with USPTO).

Despite countersigning and recording the Comerica Letter, VirtaMove now contends the letter is "erroneous" and that it "mistakenly" referred to a ▮▮▮▮▮▮▮ granted by VirtaMove USA. Dkt. 270 at 11; *see also* Dkt. 229-9 (Op. Br. Ex. 9) at 34. Yet, VirtaMove is faced with a problem—not only is it identifying this supposed error almost seven years after the fact, but its suggestion that the letter actually meant to refer to an ▮▮▮▮▮▮▮ ▮▮▮▮▮ granted by VirtaMove *Canada*, not VirtaMove USA, is undercut by the fact that the VirtaMove Canada agreement (which VirtaMove has produced to IBM) was recorded with the USPTO on September *21*, 2015. See Dkt. 230-3, VM_IBM_0020945. The Comerica Letter states that the VirtaMove USA agreement was recorded on September *17*, 2015, which further indicates that the letter is referring to a separate agreement and that Comerica was not confusing VirtaMove USA with VirtaMove Canada. See Dkt. 230-4, VM_IBM_0024127 at -4129.

To try to get around this fact, VirtaMove resorts to arguing that Comerica also "made a typographical error in stating the date of recordation as 'September 17, 2015' [because] the official date of recordation is September 21, 2015." Dkt. 270 at 12. However, while VirtaMove tries to latch onto a minor typo in IBM's brief (where IBM refers to "2025" instead of "2015"), VirtaMove fails to account for how there could be *two* separate errors in the same letter that conveniently happen to support its position. Indeed, although VirtaMove has submitted a declaration from its CEO asserting that the Comerica Letter referred to "VirtaMove USA by mistake," Dkt. 270-10, that declaration fails to explain why he would have countersigned a letter with such "mistake[s]," *see* Dkt. 230-4, VM_IBM_0024127 at -4132, or why VirtaMove would have recorded it at the

4

USPTO with these supposed errors. The most plausible interpretation of the facts, of course, is that there *is no* error here, and that VirtaMove USA *did*, in fact, transfer a security interest in the Asserted Patents to Comerica—just as the letter states.

Notably, VirtaMove's suggestion that Exhibit B to the Comerica Letter—which lists the Asserted Patents as among the collateral provided by VirtaMove USA—actually came from Comerica's agreement with VirtaMove *Canada* is undercut by the ███████████████ itself. While the ███████████████████████████████████ produced by VirtaMove contains an Exhibit B that is similar in substance to Exhibit B to the Comerica Letter (listing the same patents), differences in the font and layout of the text show it is *not* the same document:

| EXHIBIT B U.S. Patents | | | EXHIBIT B U.S. Patents | | |
|---|---|---|---|---|---|
| Description | Application / Patent Number | Issue Date / Filing Date | Description | Application / Patent Number | Issue Date / Filing Date |
| System for containerization of application sets | 10939903/7519814 | 04-14-2009/ 09-13-2004 | System for containerization of application sets | 10939903/7519814 | 04-14-2009/ 09-13-2004 |
| Malware containment by application encapsulation | 11432843/7757291 | 07-13-2010/ 05-12-2006 | Malware containment by application encapsulation | 11452843/7757291 | 07-13-2010/ 05-12-2006 |
| System including run-time software to enable a software application to execute on an incompatible computer platform | 11380285/7774762 | 08-10-2010/ 04-26-2006 | System including run-time software to enable a software application to execute on an incompatible computer platform | 11380285/7774762 | 08-10-2010/ 04-26-2006 |
| Computing system having user mode critical system elements as shared libraries | 10946536/7784058 | 08-24-2010/ 09-21-2004 | Computing system having user mode critical system elements as shared libraries | 10946536/7784058 | 08-24-2010/ 09-21-2004 |
| Software service application and method of servicing a software application | 11415028/NONE | 05-01-2006 | Software service application and method of servicing a software application | 11415028/NONE | 05-01-2006 |
| Method and system for providing a program for execution without requiring installation | 12075842/NONE | 03-13-2008 | Method and system for providing a program for execution without requiring installation | 12075842/NONE | 03-13-2008 |

*Compare* Ex. 17, VM_IBM_0023965 at -3972 (████████████████████████████████████████████████████████), *with* Dkt. 230-4, VM_IBM_0024127 at -4134 (Ex. B to the Comerica Letter recorded at the USPTO) (annotated on the right). These differences support that Exhibit B to the Comerica Letter came from a *different* agreement—namely, the █████████████████████████████████████████ that is referenced in the letter. Moreover, the fact that there are two versions of Exhibit B—███████████████████████████—is consistent with the ████████████ statement that *each* of these entities has rights in the collateral.

5

Ultimately, notwithstanding VirtaMove's attempt to rewrite the plain language of the ▇▇▇ and its unsupported argument that the Comerica Letter is "mistaken" about VirtaMove USA's transfer of rights to Comerica, these documents indicate on their face that VirtaMove USA possessed significant rights in the Asserted Patents. At a minimum, this evidence calls into serious question whether VirtaMove has all substantial rights required for statutory standing. Because VirtaMove has not provided any evidence to resolve this question and to account for the relative disposition of rights in the patents between itself and VirtaMove USA, VirtaMove has failed to meet it burden to demonstrate statutory standing. *See Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 621 (Fed. Cir. 2016) (finding plaintiff did not have all substantial rights because third party retained "exploitation" rights in patents); *VirnetX, Inc. v. Microsoft Corp.*, 6:07 CV 80, 2008 WL 8894682, at *6 (E.D. Tex. June 4, 2008) (finding "licensing of the Patents-in-Suit in the Security Agreement" weighed against finding plaintiff had all substantial rights).

### B.    IBM's statutory standing challenge is proper and not waived.

Unable to answer the significant questions posed by the ▇▇▇ and the Comerica Letter on their merits, VirtaMove argues that IBM's statutory standing challenge should have been brought under a different Federal Rule and is waived under Rule 12(b)(6). Dkt. 270 at 14. To the extent VirtaMove disputes whether a Rule 12(b)(1) motion is the most appropriate procedural vehicle for this statutory standing challenge, IBM submits in the alternative that this challenge is proper under Rule 12(c) and that it can be treated as a Rule 12(c) motion because a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. *See* FED. R. CIV. P. 12(c).[2] In addition, IBM properly preserved its challenge, as failure to

---

[2]    VirtaMove does not dispute that IBM's constitutional standing challenge is properly brought under Rule 12(b)(1). Regardless, Judge Bryson has held that "[w]hether the motion is viewed as a motion to dismiss under Fed. R. Civ. P. 12(b)(1) or simply as a suggestion of lack of

6

state a claim is the first affirmative defense in IBM's Answer. Dkt. 49 at 7. VirtaMove conveniently ignores the fact that—despite IBM's repeated requests that it produce standing-related discovery and answer the questions raised by the ▮▮▮ documents—VirtaMove did not supplement its interrogatory response or assert that the Comerica Letter is "erroneous" until June 11, 2025. Dkt. 229-9 at 34. IBM diligently followed up and filed this motion on July 28.

Moreover, despite VirtaMove's suggestion, *see* Dkt. 270 at 14–15, it is proper for the Court to consider the Comerica Letter ▮▮▮ because the letter and the ▮▮▮ are part of the USPTO assignment records and thus are a matter of public record (▮▮▮). *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) ("the court may consider 'matters of public record'" in a Rule 12(c) challenge); Dkt. 230-4; Ex. 17. Further, both parties have submitted evidence outside the pleadings, *see, e.g.*, Dkt. 270-8, and a "Rule 12(c) motion 'faces the same test as a motion under Rule 12(b)(6),'" when evaluating whether "a court may rely on documents outside the pleadings if they are integral to the plaintiff's claims and their authenticity is not disputed." *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014) (citation and quotation omitted).

VirtaMove also incorrectly asserts that the Court should simply accept its allegation that it owns all necessary rights in the Asserted Patents as true for purposes of pleading statutory standing. *See* Dkt. 270 at 14. Yet, that argument contradicts the Supreme Court's holding that a party invoking federal jurisdiction bears the burden to establish that it has both constitutional and statutory standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Viewing the facts in the

---

standing, the matter is properly before the Court, even though it was raised at a time after dispositive motions in this case were due." *Script Sec. Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *2 (E.D. Tex. Oct. 31, 2016) (citation omitted).

7

light most favorable to VirtaMove does not excuse its attempt to deny the plain language of the ▮▮▮▮▮ and the Comcast Letter. *See Anderson*, 570 F. App'x at 931 ("court need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

In addition, VirtaMove requests leave to add a party under Rule 19 if this Court finds in IBM's favor. *See* Dkt. 270 at 15. However, even setting aside the fact that adding a new party to this case on the verge of trial would be highly costly and prejudicial to IBM, VirtaMove has not articulated how that would cure the defect. A Rule 19 joinder also cannot cure the separate constitutional standing problem and thus would be futile.

      **C.    Contemporaneous documents cloud the Asserted Patents' chain of title.**

Citing USPTO assignment records, VirtaMove argues there is an unbroken chain of title to the Asserted Patents showing it now has ownership. *See* Dkt. 270 at 7. However, VirtaMove should not be entitled to rely on any presumption of ownership based on the USPTO assignment records, because (as discussed above) VirtaMove itself asserts that materials it recorded are "erroneous." VirtaMove cannot use the USPTO records as both a sword and a shield.

Moreover, if the assignment records presented a complete and accurate chain of title, as VirtaMove suggests, they should contain a record of AppZero Corp.'s assignment to ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—which VirtaMove concedes took place. Dkt. 270 at 2–3. But no such record exists. *See* Ex. 18 ('814 Patent USPTO Assignment Records). Given this evidence that the records are ***not*** complete, VirtaMove should not be permitted to rely on any presumption that the assignment records are full or accurate.[3]

---

[3] The cases VirtaMove cites on this point are inapposite. *See* Dkt. 270 at 6 (citing *Lone Start Tech. Innovations, LLC v. ASUSTEK Computer Inc.*, No. 6:19-CV-00059-RWS, 2022 WL 1498784, at *4 (E.D. Tex. Mar. 18, 2022), and *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327 (Fed. Cir. 2010)). Unlike here, the parties in *Lone Star* and *SiRF* did not dispute whether the chain of assignments was broken.

8

The fact that no record regarding the Creditors exists underscores the fatal cloud that over the Asserted Patents' chain of title—and hence over VirtaMove's constitutional standing. As discussed in IBM's opening brief, contemporaneous documents indicate that AppZero Corp.'s ███—following ███ by AppZero, and then ███. However, there is no record of any transfer of patents rights from AppZero Corp. to ███. *See* Dkt. 229 at 3. At the same time, while VirtaMove now invites the Court to ignore the ███ ███ and instead find standing based on a purported direct transfer of the patents from AppZero Corp. to AppZero Software Corp., *see* Dkt. 270 at 5, VirtaMove has not established what patent rights, if any, AppZero Corp. continued to hold after ███. Dkt. 229-2, VM_IBM_0022607 at -2608.

VirtaMove argues that representations in the ███ between ███ and AppZero Software Corp. show that AppZero Corp., ███ owned the patents. *See* Dkt. 270 at 4. If that were the case, however, AppZero Software Corp. would not have needed to ███—yet, the ███ ███. *See* Dkt. 229-3, VM_IBM_0022541 at -2545, -2548, -2550–51 (stating ███ ███ ███).

Further, in an ███, AppZero Corp. itself stated that ███ ███ Dkt. 229-2, VM_IBM_0022607 at -2608. AppZero Corp.'s acknowledgment that ███

9

███████ calls into question what rights in the Asserted Patents, if any, it continued to hold at that point, and further undermines VirtaMove's contention that AppZero Corp. made a valid direct transfer of the patents to AppZero Software Corp.

At best, the evidence in the record presents an impenetrable thicket of questions when it comes to discerning what entities held which rights to the Asserted Patents following AppZero Corp.'s ███████████████. Although the record contains two purported transfers of intellectual property to AppZero Software Corp., it is not clear which, *if either*, of the purported "sellers"—AppZero Corp. ███████—had any right to transfer title to the Asserted Patents. Critically, it is *VirtaMove's* responsibility to answer these important questions, because it is VirtaMove's burden to establish that it has constitutional standing to assert the patents —but VirtaMove has failed to resolve any of these issues.

VirtaMove now tries to turn the lack of appropriate documentation to its advantage by arguing that because there was no recorded assignment of the patents from AppZero Corp. to ███████, AppZero Software Corp. was a good-faith purchaser from AppZero Corp. even if ███████ previously obtained title. *See* Dkt. 270 at 5. However, a bona fide purchaser must be able to show that it *lacked notice* of a prior claim of interest in the property, which—given the express ████████████████████ and VirtaMove's predecessor, AppZero Software Corp.—VirtaMove cannot do. *See Regents of Univ. of California v. California Berry Cultivars, LLC*, No. 16-CV-02477-VC, 2017 WL 9531948, at *5 (N.D. Cal. Apr. 27, 2017) (defendant was not bona fide purchaser because it was aware of previous transactions at time of assignment). At bottom, given the unresolved cloud over the patents' chain of title, VirtaMove cannot meet its burden to demonstrate constitutional standing, and this case should be dismissed on that basis, as well.

10

Dated: August 21, 2025

Respectfully submitted,

/s/ Todd M. Friedman
Todd M. Friedman (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (*pro hac vice*)
Nathaniel Ngerebara (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:   (415) 439-1400
Facsimile:    (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (*pro hac vice*)
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:   (714) 982-8822
Facsimile:    (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:   (903) 757-6400
Facsimile:    (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Defendant
International Business Machines Corp.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on August 21, 2025.

*/s/ Todd M. Friedman*
Todd M. Friedman

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

                                        */s/ Todd M. Friedman*
                                        Todd M. Friedman