# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § | |
| | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |

**INTERNATIONAL BUSINESS MACHINES CORP.'S SUR-REPLY TO VIRTAMOVE, CORP.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO PRE-SUIT WILLFUL OR INDUCED INFRINGEMENT**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION

II. ARGUMENT

    A.    Genuine Disputes of Fact Exist as to VirtaMove's Pre-Suit Knowledge. ............... 2

    B.    VirtaMove's Attempt To Distinguish the Parties' Willfulness Theories Fails. ........................................................................................................................ 4

    C.    VirtaMove's Preclusion Argument Misstates the Facts.......................................... 4

# TABLE OF AUTHORITIES[1]
**Cases**                                                                                                          **Page(s)**

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
 131 S. Ct. 2060 (2011)..................................................................................................2

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
 2:20-CV-00319-JRG-RSP, Dkt. 620 (E.D. Tex. April 29, 2022).............................................3

**Rules**

FED. R. CIV. P. 26(e) ...................................................................................................................5

---

[1] All emphases are added unless otherwise noted.

**I.      INTRODUCTION**

In an unconvincing bid to distinguish its own, identical willfulness theory that partnership and collaborations between the parties should have put IBM on notice of its specific patents-in-suit, VirtaMove presents the results of a Google Patent search that purports to include **_100,000_** IBM patents. Yet, this extremely broad search was directed at **_any_** patent with IBM as the assignee, which encompasses every IBM patent and application **_in the entire world_**, without any regard to country, timeframe, issuance status, language, or even field of technology. Indeed, the oldest patent in the search results has a priority date of December 1970. Nevertheless, on the basis of this grossly overbroad search, VirtaMove asserts that its portfolio is much smaller than IBM's, such that IBM supposedly should have been on notice to study VirtaMove's patents for potential infringement, whereas (according to VirtaMove) it had no reciprocal duty. However, when relevant search criteria are applied—including using the broad but pertinent subject matter search terms "migration" and "isolation," and adding IBM personnel VirtaMove often interacted with[2]—the resulting pool of IBM patents includes only **_three_** families with **_six_** total U.S. patents (including the asserted IBM patent), which is comparable to VirtaMove's six total patents.  *See* Exs. 20, 21.

In addition to massively misrepresenting the number of relevant IBM patents, VirtaMove falsely blames IBM for reneging on an "agreement" regarding pre-suit willfulness.  However, even a cursory review of the correspondence shows there was no such agreement. VirtaMove conveniently ignores IBM's statement (made before depositions were taken) that it would supplement its interrogatory response if and when relevant discovery appeared. That is exactly

---

[2]   The search included the following current and former IBM employees whom VirtaMove has identified as having had the most interactions with AppZero: Mac Devine, Walter Falk, Vinay Parisa, and Phuong Nguyen in the relevant timeframe. By default, Google Patent de-duplicates search results based on patent family (*i.e.*, grouping related patents in the same family) De-selecting that choice yields six total IBM U.S. patents. *See* Exs 20, 21.

what IBM did, supplementing its response with VirtaMove's own corporate and witness testimony within two days of receiving the transcript to highlight facts regarding the parties' close collaboration. *See* Dkt. 228-2 at 91–92. If the Court is inclined to adopt the theory of pre-suit knowledge based on those collaborations that VirtaMove is advancing against IBM—a theory that, to be clear, IBM contests—then the Court should deny VirtaMove's motion.

## II.     ARGUMENT

### A.     Genuine Disputes of Fact Exist as to VirtaMove's Pre-Suit Knowledge.

VirtaMove incorrectly asserts that "there is no evidence that VirtaMove had pre-suit knowledge of the asserted patents" and IBM "does not even allege that VirtaMove had such knowledge." Dkt. 282 at 1. As an initial matter, IBM disagrees with VirtaMove's theory of pre-suit knowledge. Dkt. 257 at 6. That said, in the event the Court is inclined to adopt VirtaMove theory, IBM is entitled to assert the same theory of pre-suit knowledge ***against*** VirtaMove. Indeed, this Court should either grant ***both*** parties' motions for summary judgment on this topic or grant ***neither***. Here, applying VirtaMove's own theory that the parties' technical collaboration and exchanges were sufficient to provide pre-suit notice of specific patents—even if those patents were never mentioned—IBM has adduced evidence regarding the timing of the issuance of the patents, the parties' collaborations, and the nature of those collaborations, which, given the overlap with the technology of the patents, supports (under VirtaMove's theory) a reasonable inference that VirtaMove knew of IBM's patents and, at a minimum, was willfully blind. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2062–63 (2011) (willful blindness sufficient to show knowledge).

Specifically, VirtaMove ignores evidence regarding AppZero's ▌▌▌▌▌ with IBM and the nature of the technology involved in the parties' collaborations, which is indicative of VirtaMove's pre-suit knowledge under its own theory. *See, e.g.*, Dkt. 241-9 (Stokes 5/21/25 Tr.) at 451:17–452:19; Dkt. 242-5 (VM_IBM_0000809) ▌▌▌▌▌

2

███████████████████████████████████████████████████████████████;

Ex. 23 (O'Connor 5/15/25 Tr.) at 222:18–223:2 (IBM was ██████████████████████

████████ and █████████████████████████████████████████████████████████).

VirtaMove was intimately familiar with the nature and development of IBM's technology. *See, e.g.*, Dkt. 241-16 (VM_IBM_0029997–99) (████████████████████████████████████

████████████████████████████████████). Indeed, VirtaMove undoubtedly knew IBM was working on the IBM patented technologies because its presentation to IBM discussed numerous terms overlapping with IBM's asserted patent, including "IBM SmartCloud," "migration," "move to the cloud," "virtual machine," "Platespin," "p2v," "v2v," "target server," and "source server." *See* Ex. 24 (VM_IBM_0017102) at -7104, -7109–18; Dkt. 259-1 ('858 Patent) at title ("Migration"), abstract ("source" and "target,"), Fig. 5 ("p2v," "v2v," "Platespin"), 15:24–29 ("IBM SmartCloud"), Fig. 34 ("Virtual Machine"). This knowledge is unsurprising as AppZero was IBM's ████████████████████████████ and signed an ████████████████ █████████████████ that refers to ██████████████████████████████████ also discussed in the IBM patent. *See* Ex. 25 (VM_IBM_0000849) at -0858; Dkt. 242-5.

Further, IBM's expert opined that VirtaMove's partnership with IBM "would have enabled it to learn of IBM's patents in the migration and application isolation technology." Dkt. 282 at 1-2 (quoting Ex. 4 (Wicker Rpt.) ¶ 1624). Moreover, as VirtaMove acknowledged, *see id.* at 2, this partnership involved technical exchanges and joint efforts in the very fields covered by the Counterclaim Patents—"migration and application isolation technology." Dkt. 257 at 6–7. Thus, to the extent the Court adopts VirtaMove's theory, it should, at a minimum, find that the evidence IBM has presented is sufficient to raise a genuine dispute of fact under that theory. *See, e.g.*, *United Servs. Auto. Ass'n v. PNC Bank N.A.*, 2:20-CV-00319-JRG-RSP, Dkt. 620 (E.D. Tex. April 29,

3

2022), *report & recommendation adopted*, 2022 WL 1463985 at *1 (E.D. Tex. May 6, 2022).

### B. VirtaMove's Attempt To Distinguish the Parties' Willfulness Theories Fails.

VirtaMove strains to distinguish its willfulness theory from IBM's based on an alleged difference in the size of the parties' patent portfolios and the alleged specificity of the notice. *See* Dkt. 282 at 3–4. As to the degree of specificity, however, VirtaMove has failed to adduce any evidence that it has provided any specific patent numbers to IBM—indeed, its witnesses uniformly deny having provided specific notice of patents. *See* Dkt. 240 at 8 .

Moreover, VirtaMove's purported comparison between the size of the parties' patent portfolios is factually misleading and legally irrelevant. As noted above, the Google Patent search that VirtaMove conducted was for IBM's ***entire patent portfolio***—based on the search "assignee:(International Business Machines)"—and the results include **all** IBM patents and application, regardless country, field of technology or subject matter, inventor, language, timeframe, or whether the applications are issued. *See* Dkt. 282-3. The resulting list of over 100,000 IBM patents—with priority as early as December 4, 1970—grossly exaggerates the number of relevant patents, and does not identify how many U.S. patents were issued to IBM has been issued in relevant technological fields during the relevant timeframe, let alone in connection with specific IBM employees who collaborated with AppZero. *Compare* Ex. 22 (samples from VirtaMove's search), *with* Exs. 20, 21 (search results after applying subject matter terms "migration" or "isolation" and specifying IBM personnel who interacted with VirtaMove and timeframe). When properly limited, the pool of IBM patents includes only ***three*** families, with six total U.S. patents (including the asserted IBM patent). *See id.* And unsurprisingly, VirtaMove fails to cite even a single case indicating that the ***overall size*** of a litigant's patent portfolio is relevant to willfulness.  Inferring pre-suit knowledge based on such a comparison invites legal error.

### C. VirtaMove's Preclusion Argument Misstates the Facts.

4

In arguing IBM should be precluded from asserting pre-suit willfulness, VirtaMove asserts that IBM was "explicit that it was not aware of evidence supporting any claim for pre-suit willful infringement" and that IBM then "contradicted itself" by supplementing its discovery responses. Dkt. 282 at 4–5. Nothing could be further from the truth. There was never any "agreement" that IBM would not pursue pre-suit willfulness. *Id*. **Over a month** before the close of fact discovery, when no depositions had yet taken place, IBM wrote that "*VirtaMove* has yet to produce evidence that it was aware of the IBM Counterclaim Patents before this litigation." Dkt. 282-6. Importantly, however, IBM clarified in the same response that, "[t]o the extent that relevant, new evidence is produced in this case or comes up in other types of discovery, IBM will supplement its response to this interrogatory accordingly." *Id.* IBM also stated that "IBM's investigation into information responsive to this interrogatory is ongoing, and **IBM reserves all rights** to amend, modify, and/or supplement its response." *Id.* VirtaMove conveniently ignores all of those statements.

Given those express reservations set forth in the interrogatory response, IBM has not "contradicted itself." IBM's supplemental response addresses evidence that came to light afterward—specifically, VirtaMove's deposition testimony. *See* Dkt. 257-2 at 91–92 (citing Stokes and O'Connor transcripts). VirtaMove's criticism is even more baseless given that IBM supplemented its response to add the new testimony (and the willfulness theory stated therein) along with related documents **within two days** of receiving the Stokes deposition transcript. *See* Ex. 26. IBM has inarguably complied with its disclosure requirements. *See* FED. R. CIV. P. 26(e). At bottom, the VirtaMove testimony that IBM cited in its supplemental interrogatory response confirms that a genuine issue of material fact exists pursuant to VirtaMove's own theory. As IBM explained, what is good for the goose is good for the gander. This Court should either grant both parties' motions of summary judgment of pre-suit willful or induced infringement, or grant neither.

5

Dated: August 26, 2025                                   Respectfully submitted,

/s/ Todd M. Friedman
Todd M. Friedman (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (*pro hac vice*)
Nathaniel Ngerebara (*pro hac vice)*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:     (415) 439-1400
Facsimile:     (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (*pro hac vice)*
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:     (714) 982-8822
Facsimile:     (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:     (903) 757-6400
Facsimile:     (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Defendant
International Business Machines Corp.*

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on August 26, 2025.

　　　　　　　　　　　　　　　　　　　　*/s/ Todd M. Friedman*
　　　　　　　　　　　　　　　　　　　　Todd M. Friedman