UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00093-JRG |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § | |
| | § | |
| Defendant. | § | |
| VIRTAMOVE, CORP., | § | Case No. 2:24-cv-00064-JRG |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT INTERNATIONAL BUSINESS MACHINES CORP.'S SUR-REPLY TO PLAINTIFF VIRTAMOVE'S MOTION FOR SUMMARY JUDGMENT OF DEFENDANT IBM'S SIXTH, SEVENTH, EIGHTH AND ELEVENTH AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

      **Page**

I. **IBM Has Presented Evidence Showing It Has an Express License** ............................. 1

    A.    Section 5.3 Grants IBM a License To Use VirtaMove's ▮▮▮▮▮ ....................... 1

    B.    While IBM's License Under Section 5.3 Is Not Conditioned on Actual Use, IBM Has Provided Proof of Use ................................................................. 4

II. **There Are Genuine Disputes of Material Facts Relating to the Applicants' Inequitable Conduct** ................................................................................................... 5

    A.    IBM Has Shown That The Applicants Were Aware of The Materiality of their EPO Representations ...................................................................... 5

    B.    IBM Has Presented Evidence Showing That The Applicants Were Aware of Solaris Zones and Their Materiality. .................................................. 7

III. **IBM Has Presented Sufficient Evidence in Support of Its Defense of Waiver** ............ 9

IV. **IBM Has Presented Sufficient Evidence in Support of Its Defense of Acquiescence** ............................................................................................................... 10

V. **IBM Has Presented Sufficient Evidence in Support of Its Defense of Unclean Hands** ................................................................................................................... 10

III. **CONCLUSION** ................................................................................................... 10

# TABLE OF AUTHORITIES [1]

**Cases**

*Beal Sav. Bank v. Sommer*,
    8 N.Y.3d 318 (N.Y. 2007) ................................................................................................4

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
    326 F.3d 1226 (Fed. Cir. 2003)........................................................................................6

*Digital Control, Inc. v. Charles Mach. Works*,
    437 F.3d 1309 (Fed. Cir. 2006).........................................................................................5

*Fox Indus. Inc. v. Structural Pres. Sys., Inc.*,
    922 F.2d 801 (Fed. Cir. 1990)...........................................................................................8

*Headwater Rsch. LLC v. AT&T Inc.*,
    No. 2:23-CV-397-JRG-RSP, Dkt. 242 (E.D. Tex. July 7, 2025)..............................10

*Jumpsport, Inc. v. Academy, Ltd.*,
    No. 6:17-CV-414-RWS-JDL, 2018 WL 10124888 (E.D. Tex. Sept. 6, 2018).........10

*Mars, Inc. v. TruRx LLC*,
    No. 6:13-cv-526-RWS-KNM, 2016 WL 4034789 (E.D. Tex. Mar. 1, 2016),
    *R&R adopted*, 2016 WL 4055676 (E.D. Tex. Apr. 29, 2016) ...................................10

*SB IP Holdings, LLC v. Vivint, Inc.*,
    No. 4:20-CV-00886, 2023 WL 5615780 (E.D. Tex. Aug. 30, 2023) ........................5

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)........................................................................................6

*TVT Recs. v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005)................................................................................................2

**Statutes**

37 C.F.R 1.56 ...................................................................................................................6, 9

---

[1] All emphases added unless otherwise noted.

I. **IBM HAS PRESENTED EVIDENCE SHOWING IT HAS AN EXPRESS LICENSE.**

As set forth in IBM's co-pending motion for summary judgment of non-infringement (Dkt. 240), there is no genuine dispute of fact that the accused Docker and Kubernetes features were part of AppZero's ▇▇▇ to IBM and that IBM is licensed to use them. VirtaMove's reply confirms why this Court should deny VirtaMove's motion and grant IBM's: VirtaMove does not dispute the crucial facts that "[it] provided IBM with ▇▇▇ . . . regarding the application migration and the adoption of Docker-based containerization technology on IBM's Cloud" (Dkt. 261 at 6 (IBM Add'l SoF ¶ 11)) and that "[it] provided ▇▇▇ suggesting that IBM implement containerization on its cloud platform—and that IBM adopted this ▇▇▇." *Id.* at 8 (IBM Add'l SoF ¶ 15); *see* Dkt. 283 at 2 (not disputing IBM Add'l SoF ¶¶ 11–15 "to the extent that the ▇▇▇ 'related to' certain topics"). VirtaMove also does not dispute that § 5.1 of the Assistance Agreement restricts IBM's rights only with respect to AppZero's ***Software***, and does not override or limit IBM's license to use any other "▇▇▇" provided by VirtaMove. *See id.* at 2 (not disputing IBM Add'l SoF ¶¶ 17, 19).

A. **Section 5.3 Grants IBM a License To Use VirtaMove's ▇▇▇.**

VirtaMove now argues—for the first time, on reply—that § 7.0 of the Statement of Work ("SOW") nullifies the license granted in § 5.3 of the Assistance Agreement because the use of the term "▇▇▇" in § 7.0 of the SOW supposedly requires "an express statement" of a transfer of intellectual property rights "***within the SOW***." Dkt. 283 at 3–4. VirtaMove waived this argument by failing to raise it in its opening brief, where VirtaMove merely contended that an express statement of the transfer of ***preexisting*** IP rights was required in the SOW ***or*** the Assistance Agreement. *See* Dkt. 227 at 13 (asserting "any intellectual property rights regarding IBM's use of ▇▇▇ in the IBM Systems could potentially be transferred to IBM under Section 5.3, ***so long***

1

*as those IP rights arose after the effective date of the Agreement* (and are otherwise consistent with the limitations in Section 5.1 of the Statement of Work)."). After IBM showed that § 5.3 plainly covers "preexisting" rights, *see* Dkt. 261 at 13–16, VirtaMove now improperly pivots to argue the grant must appear specifically in the SOW.

In any event, VirtaMove is wrong. Its suggestion that "▮▮▮" refers to the SOW alone, and does not also include the Assistance Agreement operating in tandem with it to define the terms of the agreement, requires the Court to construe these paired documents as separate agreements. Under New York law, the "legally operative question" for determining whether multiple writings constitute a single agreement is "whether the contracts were part of a single transaction intended to effectuate the same purpose." *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 90 (2d Cir. 2005). Here, as VirtaMove acknowledges, § 9.13 of the Assistance Agreement states: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Dkt. 227 (SoF) ¶ 18. Further, ***the SOW expressly*** "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Dkt. 227-11 at 1. Thus, "▮▮▮" refers not just to statements in the SOW, but also provisions in the Assistance Agreement—including § 5.3.

VirtaMove wrongly contends that IBM did not dispute its more restrictive—and incorrect—interpretation of § 7.0 of the SOW. *See* Dkt. 283 at 3 (addressing SoF ¶ 19). Again, however, VirtaMove did not previously articulate this argument. While IBM did not dispute that ¶ 19 of VirtaMove's Statement of Undisputed Facts accurately ***quoted*** § 7.0 of the SOW, ¶ 19 did not set forth VirtaMove's new (and untimely) position that § 7.0 requires "an express statement" within the SOW. *See* Dkt. 227 (SoF) ¶ 19. In any event, the arguments in IBM's opposition make clear that IBM disagrees with that interpretation. *See* Dkt. 261 at 13–14 (discussing the exception

for the transfer of IP rights set forth in § 7.0 of the SOW and arguing "Section 5.3 of the Assistance Agreement falls squarely within that exception").

VirtaMove further asserts that "IBM has never set forth evidence that the ▮▮▮ was unrelated to VirtaMove's Software," and it contends § 5.1's limitation on the transfer of Software rights precludes a license to this ▮▮▮ under § 5.3. Dkt. 283 at 4. However, whether VirtaMove's ▮▮▮ was "related" to VirtaMove's Software is irrelevant. On its face, § 5.1 does not limit IBM's rights in materials that are "related" to AppZero's Software—rather, it limits IBM's rights "▮▮▮" *itself*. Dkt. 227-9 § 5.1; *see also* Dkt. 283 at 2 (not disputing IBM Add'l SoF ¶ 17). The ▮▮▮ that AppZero provided to IBM was by no means limited to recommendations that IBM use the specific Software. On the contrary, the undisputed evidence—including numerous documents sent from AppZero to IBM—shows that AppZero's ▮▮▮ included extensive materials and suggestions regarding the benefits and value of Docker and Kubernetes technology. *See, e.g.*, Dkt. 261 at 6–8 (IBM Add'l SoF ¶¶ 11–15). Moreover, as VirtaMove itself acknowledges, it is **not** accusing IBM of infringement based on any alleged use of VirtaMove's Software. *See* Dkt. 258 at 32. Rather, its infringement claims are based on the Accused Products' implementation of Docker and Kubernetes technology. Thus, to the extent § 5.1 carves IP rights to AppZero's Software out of the rights that could be conveyed under § 5.3's "▮▮▮" provision, that carveout is irrelevant here, where AppZero's Software is not at issue.

Unable to show that § 7.0 of the SOW requires the transfer of IP rights to be granted in the SOW, VirtaMove also incorrectly argues that § 5.1 separately requires that "transfers of IP rights can only be found in the attachments to the Assistance Agreement (such as the SOW)." Dkt. 283 at 5. Again, however, that provision in § 5.1 is expressly directed to the grant of "▮▮▮ ▮▮▮," Dkt. 227-9 § 5.1, and neither VirtaMove nor IBM contends that

3

IBM is practicing (or has received a license to) AppZero's Software. VirtaMove's attempt to use § 5.1 to read § 5.3 out of the agreement is improper and should be rejected. *See Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (N.Y. 2007) ("A reading of the contract should not render any portion meaningless.") (citations omitted).

B. **While IBM's License Under Section 5.3 Is Not Conditioned on Actual Use, IBM Has Provided Proof of Use.**

Contrary to VirtaMove's argument, *see* Dkt. 283 at 5, IBM's "███████████████████████████████████████████████████" is not conditioned on any specific use of the Feedback. Dkt. 227-9 § 5.3. When the parties to the Assistance Agreement intended to impose any specific limitations on a grant, as they did with respect to the "██████" addressed in § 5.1, they did so expressly. Under New York law, the lack of any such express restrictions in the grant language in § 5.3 is dispositive. *See* Dkt. 261 at 15–18 (collecting authority).

Regardless, the evidence shows that IBM *did* use the ██████ AppZero provided. While VirtaMove contends that "IBM presents no evidence that it used Project Wocker (or any materials describing it) in implementing the Accused Products," Dkt. 283 at 5, as noted above, the materials and suggestions that AppZero provided to IBM (even those that came in the context of discussions of Project Wocker) were not limited to the specific technology or use of Project Wocker. Rather, the undisputed evidence shows AppZero offered ██████ regarding "the adoption of Docker-based containerization technology on IBM's cloud" and "suggesting that IBM implement containerization on its cloud platform." Dkt. 261 at 6-7 (IBM Add'l SOF ¶¶ 11, 15); *see* Dkt. 283 at 2 (not disputing IBM Add'l SoF ¶¶ 11, 15); Dkt. 280 at 7–8. This is the same technology *being used by IBM* that now serves as the basis for VirtaMove's infringement claims. *See* Dkt. 261 at 19–20; Dkt. 280 at 8–9. VirtaMove does not argue otherwise. *See generally* Dkt. 283 at 5–6.

Further, VirtaMove's assertion that IBM relies solely on the declaration of Walter Falk to

4

show its use of the ▮▮▮▮ is untrue. *See id.* For example, as discussed at length in IBM's opening brief in support of its co-pending motion for summary judgment of non-infringement, IBM's technical expert, Dr. Stephen Wicker, prepared a claim chart identifying where ***each and every*** accused functionality of the accused IBM products can be found in AppZero's ▮▮▮▮ to IBM. *See* Dkt. 240 at 10; Dkt. 240-1 ¶¶ 41–73; Dkt 241-4 ¶¶ 150–68; Dkt. 241-6 ¶¶ 378–80. The evidence shows that AppZero's ▮▮▮▮ maps directly onto the accused features, proving both that IBM is "using" the ▮▮▮▮ and is licensed to do so under § 5.3 of the Assistance Agreement.

## II. THERE ARE GENUINE DISPUTES OF MATERIAL FACTS RELATING TO THE APPLICANTS' INEQUITABLE CONDUCT

### A. IBM Has Shown That The Applicants Were Aware of The Materiality of their EPO Representations

In its reply, VirtaMove admits that several of IBM's material "Additional Facts" are ***disputed***, including (1) whether the EPO prosecution documents demonstrated that the alleged invention requires an otherwise unclaimed "unique identifier" to be required and enabled in claim 1 of the '814 patent; and (2) whether the named inventors knew Solaris Zones technology predated and was material to their alleged invention. Dkt. 261 at 3–5; Dkt. 283 at 1–2, 7–8. "Because of the inherently fact-intensive nature of both elements, summary judgment on inequitable conduct is permissible, but uncommon." *SB IP Holdings, LLC v. Vivint, Inc.*, No. 4:20-CV-00886, 2023 WL 5615780, at *2–3 (E.D. Tex. Aug. 30, 2023) (*quoting Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1317 (Fed. Cir. 2006)). These factual disputes preclude summary judgment.

VirtaMove's arguments on reply are otherwise unavailing. VirtaMove first argues that there is "no evidence that the applicant knew the EPO Office Action Responses were material." Dkt. 283 at 6. Not so: in those responses, the Applicants represented that the "unique identifier" feature was "important for the capability of the instant invention ***to make it possible*** for applications to be executed on an operating system for which they were not intended or

5

programmed" and "differ[ed] significantly from the [prior art]." Dkt. 227-3 at 1575-79; Dkt. 261 at 4 (¶ 3); *see also* Dkt. 227-3 at -1552–70; Dkt. 261 at 3–4 (¶¶ 1–2). Contradicting these statements, the '814 Patent's independent claim 1 does not require that "important" "unique identifier," and neither the patent nor file history otherwise contain language suggesting it is required. Dkt. 261-44 ¶ 1533; *see* Dkt. 283 at 1, 6. When patent examiners are informed that a particular feature is necessary for the invention to work and/or be distinct from the prior art, they will require additional claim limitations. *See* Ex. 50 (Stoll Op. Rpt.) ¶¶ 120–31; Ex. 51 (Stoll 7/16/25 Tr.) at 57:7–17. A reasonable fact-finder can thus conclude that the USPTO would not have granted claim 1 of the '814 Patent without requiring the "unique identifier" feature.

This allegation does not require IBM to levy a separate "enablement" ground (*see* Dkt. 283 at 6), as determining materiality based on enablement "is a separate issue from whether the invention is actually enabled." *See Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1238-39 (Fed. Cir. 2003). Thus, whether or not the broadly-claimed invention of the '814 Patent *as issued* is enabled and distinct from the *Schaefer* reference is a separate issue from whether the examiner would have issued the '814 Patent in view of the *Schaefer* reference "but-for" the withholding of the Applicants' material representations regarding the importance of the "unique identity" requirement. *See* Dkt. 227-3 at -1550–570. And as Dr. Wicker explained, these representations and amendment is but-for material to claim 1 of the '814 Patent because "requiring each container of applications to have a unique identity further limits Claim 1 and excludes copies of containers, which the claim would otherwise allow." Dkt. 261-44 (Wicker Op. Rpt.) ¶ 1533.

VirtaMove incorrectly contends that such statements made to foreign patent offices are immaterial. Dkt. 283 at 7. The Court has already confirmed otherwise. Dkt. 158 at 7. And VirtaMove's argument that 37 C.F.R 1.56 (Rule 56) is irrelevant is also wrong, as *Therasense*

6

merely clarifies the "but-for" materiality standard—information subject to the duty of disclosure is material for purposes of inequitable conduct if it would have precluded issuance of the patent.

Relatedly, VirtaMove suggests IBM is relying solely on the materiality of the EPO prosecution documents alone for its claim. *See* Dkt. 283 at 6–7. Not so: IBM alleges, and VirtaMove does not dispute, that it had significant financial and business incentives for securing the '814 Patent. *See* Dkt. 261 at 6 (¶ 9), 23; Dkt. 283 at 2; *see also* Ex. 52 (VM_IBM_0001609) at -1649 (meeting notes between named inventor and potential investors stating that VirtaMove's predecessor, Trigence, needed to obtain patents that would " ████████████ "). Far from being similar to "every applicant" applying for a patent (Dkt. 283 at 8), the evidence specific to this case shows that: (1) the primary, if not exclusive, reason for filing patents was to attract investors (Dkt. 261 at 6 (¶ 9), 23; Dkt. 261-8 at 59:4–7; Dkt. 261-9 at 368:5–25); (2) Trigence specifically sought out patents in order to " ████████████ " (Ex. 52 (VM_IBM_0001609) at -1649); and (3) the named inventors ultimately leveraged the filing of its patents to qualify for tax incentives, all of which bolster motive and intent. Dkt. 261-16.

Accordingly, a reasonable fact-finder could conclude that because the Applicants (1) knew they had a duty to disclose (*see* Ex. 53 (Santurri 5/1/25 Tr.) at 50:13–19); (2) knew the disclosure would have resulted in substantial questions regarding the validity of the '814 Patent's claims; and (3) had significant financial and business incentives, the single most reasonable inference is that the Applicants intended to deceive the USPTO.

### B. IBM Has Presented Evidence Showing That The Applicants Were Aware of Solaris Zones and Their Materiality.

VirtaMove's argument that IBM "presents no evidence that applicant supposedly knew that Solaris Zones was prior art" is incorrect. Dkt. 283 at 7–8 (emphasis omitted). Internal communications among the named inventors confirmed that they were not only intimately aware

7

of Solaris Zones technology and its similarities to the technology they were developing (*see* Dkt. 261 at 5-6 (¶¶ 8–9), 23–24 (collecting evidence)), but also aware that Solaris Zones predated their own purported invention.  For example, in September 2004, the named inventors exchanged documents describing how the Solaris Zones technology was first completed by Sun Microsystems in January 2002, and how it was being used in "███████████" by April 2002—*i.e.*, several months before the inventors even began working on the alleged invention and years before filing the '814 Patent application.  *See* Dkt. 261-4 (September 23, 2004 email regarding "████████████████████████" and attaching Dkt. 261-5); Dkt. 261-5 at -4820 (showing "Build 1" completed by January 2002 and used on "████████████████████" by April 2002); Ex. 54 (Huffman 5/23/25 Tr.) at 311:6–314:22; *see also* Dkt. 261-8 at 224:9–231:23 (Solaris Zones practiced the limitations of the '814 Patent claims by 2002).  Subsequent emails from named inventor Paul O'Leary confirmed ongoing analysis of Solaris Zones, including specific features and capabilities relevant to the '814 Patent that had already been developed.  *See* Dkt. 261-6 (VM_IBM_0024866); Exs. 55–56 (O'Leary 5/15/25 Tr.) at Ex. 30, 436:15–439:25.  Although VirtaMove contends there is testimony to the contrary (*see* Dkt. 283 at 8), there is significant evidence and testimony that contradicts the testimony VirtaMove relies on, squarely creating a factual dispute not ripe for summary judgment.  *E.g.*, Dkt. 261-8 at 87:24–89:23, 222:1–9; Ex. 54 (Huffman 5/23/25 Tr.) at 225:4–226:4, 280:2–5; Ex. 57 (Wicker Op. Rpt.) at 22–34.  And although VirtaMove asserts that the inventors did not become aware of Solaris Zones until after the '814 Patent's provisional filing (Dkt. 283 at 8), that only confirms that the inventors were at least aware during prosecution that the Solaris technology existed prior to the date of their own purported invention.  *See Fox Indus. Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801, 803 (Fed. Cir. 1990) ("The duty of candor extends throughout the patent's entire prosecution history."); *see also* 37

8

C.F.R. § 1.56(a). This evidence establishes genuine issues of material fact and precludes determination at summary judgment.[2]

### III. IBM HAS PRESENTED SUFFICIENT EVIDENCE IN SUPPORT OF ITS DEFENSE OF WAIVER.

VirtaMove contends that was not aware that IBM's use of publicly available Kubernetes and Docker technology would infringe VirtaMove's own patents (*see* Dkt. 283 at 9), but in co-pending briefing, contends that IBM is a willful infringer because it ***should have known*** what VirtaMove did not. *See* Dkt. 264 at 19–20. Notwithstanding that contradiction, VirtaMove acknowledges that it had far more knowledge than IBM, conceding that it had implicitly threatened its patents against Docker in January 2023. *Id.* at 18 (¶ 15). It was this very Docker and Kubernetes technology that VirtaMove encouraged IBM to use. Dkt. 240-1 (SoF) ¶¶ 1–92; Dkt. 283 at 2 (not disputing Dkt. 261 at 6 (¶ 11)). Although VirtaMove contends that it "accuses IBM's specific implementation of ***containerization*** technologies" (Dkt. 283 at 2–3), there is significant testimony that the accused IBM's Kubernetes Service provides the same open-source Kubernetes technology that is publicly available. *See* Ex. 58 (Wicker Reb. Rpt.) ¶¶ 77–82; Ex. 59 (Brown 5/22/25 Tr.) at 17:17–18:3; Ex. 60 (Brahmaroutu 5/9/25 Tr.) at 12:12–25, 39:10–19; Ex. 61 (Koskinen 7/25/25 Tr.) at 279:12–15, 431:2–439:17, 450:3–17.

Lastly, VirtaMove's contention that it did not work with IBM between 2017 and 2023 is factually incorrect. *See, e.g.*, Ex. 62 (VM_IBM_0033165) (August 23, 2017 email to " ███ " regarding " ███ ."); Ex. 63 (VM_IBM_0001516) (2018); Ex. 64 (VM_IBM_0034516) (2020); Ex. 65 (VM_IBM_0034673) (2021). IBM has amassed evidence that VirtaMove knew of the accused features, remained silent regarding any alleged infringement,

---

[2] Further, as explained previously (*see supra* Section B), there are also genuine disputes of material fact as to the Applicants' intent to deceive, which also precludes determination at summary judgment.

9

and instead sought new business opportunities with IBM, thus putting forward a viable defense of waiver. *Headwater Rsch. LLC v. AT&T Inc.*, No. 2:23-CV-397-JRG-RSP, Dkt. 242 at 4–5 (E.D. Tex. July 7, 2025); *Mars, Inc. v. TruRx LLC*, No. 6:13-cv-526-RWS-KNM, 2016 WL 4034789, at *6 (E.D. Tex. Mar. 1, 2016), *R&R adopted*, 2016 WL 4055676 (E.D. Tex. Apr. 29, 2016).

### IV. IBM HAS PRESENTED SUFFICIENT EVIDENCE IN SUPPORT OF ITS DEFENSE OF ACQUIESCENCE

Despite VirtaMove's contention, there is no "inconsisten[cy]" (Dkt. 283 at 10) in IBM's allegations on acquiescence: VirtaMove simultaneously encouraged IBM to adopt Docker and Kubernetes, while assuaging IBM that such products were "▮▮▮▮▮▮▮▮" with VirtaMove's offerings. Dkt. 261 at 27–28. Nor should the Court disregard Mr. Falk's undisputed factual declaration for the reasons IBM previously argued. Dkt. 280 at 1–6. Even without that declaration, a reasonable fact-finder can conclude that IBM would have acted differently had VirtaMove provided any indication that IKS was infringing. *See* Dkt. 261 at 27–28.

Because the evidence supporting the denial of summary judgment as to IBM's defense of waiver applies equally to its defenses of acquiescence and equitable estoppel (*see supra* Section III), summary judgment is inappropriate. *Jumpsport, Inc. v. Academy, Ltd.*, No. 6:17-CV-414-RWS-JDL, 2018 WL 10124888, at *4 (E.D. Tex. Sept. 6, 2018) (finding that the same allegations supporting equitable estoppel "could [] give rise to defenses of acquiescence and waiver").

### V. IBM HAS PRESENTED SUFFICIENT EVIDENCE IN SUPPORT OF ITS DEFENSE OF UNCLEAN HANDS

Because IBM has demonstrated genuine disputes of material facts as to its claim of inequitable conduct, summary judgment is inappropriate here for the same reasons.

### III. CONCLUSION

For the reasons set forth above, IBM respectfully asks the Court to dismiss VirtaMove's motion for summary judgment.

Dated: August 26, 2025

Respectfully submitted,

*/s/ Todd M. Friedman*
Todd M. Friedman (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
todd.friedman@kirkland.com

Brandon H. Brown
State Bar No. 266347
Kyle Calhoun (*pro hac vice*)
Nathaniel Ngerebara (*pro hac vice)*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:   (415) 439-1400
Facsimile:   (415) 439-1500
brandon.brown@kirkland.com
kyle.calhoun@kirkland.com
nate.ngerebara@kirkland.com

Yimeng Dou
State Bar No. 285248
Andrew Morrill (*pro hac vice)*
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone:   (714) 982-8822
Facsimile:   (714) 982-8844
yimeng.dou@kirkland.com
drew.morrill@kirkland.com

*Of Counsel:*

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:   (903) 757-6400
Facsimile:   (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Defendant
International Business Machines Corp.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on August 26, 2025.

*/s/ Todd M. Friedman*
Todd M. Friedman

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

                                                */s/ Todd M. Friedman*
                                                Todd M. Friedman